Mitchell P. Hurley
Dean L. Chapman Jr.
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

Elizabeth D. Scott (admitted *pro hac vice*)
Nicholas R. Lombardi (admitted *pro hac vice*)
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone:  (214) 969-2800
Facsimile:  (214) 969-4343

*Special Litigation Counsel for Debtors and*
*Plaintiff Celsius Network Limited*

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |
| CELSIUS NETWORK LIMITED, | |
| Plaintiff, | Adversary Proceeding No. 23-_____ (MG) |
| v. | **ADVERSARY COMPLAINT** |
| STAKEHOUND SA, | |
| Defendant. | |

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The Debtors' service address in these Chapter 11 Cases is 121 River Street, PH05, Hoboken, New Jersey (07030).

Plaintiff Celsius Network Limited ("Plaintiff" or "Celsius") by and through its undersigned counsel, brings this action against Defendant StakeHound SA ("StakeHound" or "Defendant") and alleges as follows:

## NATURE OF THE ACTION[2]

1.      This is an action for turnover, violation of the automatic stay and breach of contract, and arises from Defendant StakeHound's:  (i) failure to turn over to Celsius certain tokens belonging to Celsius worth in excess of $150 million, and (ii) commencement of arbitration against Celsius after StakeHound was confronted with its breaches of duty to Celsius, in knowing violation of Section 362 of the United States Bankruptcy Code.  StakeHound should be required to immediately turn over Celsius' property, pay compensatory damages arising from its breaches of contractual and other duties, and damages, sanctions and attorneys' fees associated with StakeHound's willful misconduct, and should be temporarily and permanently enjoined from continuing its arbitration against Celsius in violation of the automatic stay.

2.      StakeHound is in the business of providing liquidity to customers who own "staked" Native Tokens, or who wish to stake Native Tokens.  Staked Native Tokens can earn substantial interest and other Rewards, but cannot be deployed in other decentralized finance investments or otherwise used for as long as they remain staked.  In exchange for controlling the validator nodes for its customers' staked Native Tokens, and a share of the Rewards earned, StakeHound issues the customer so-called "stTokens," which the customer is supposed to be able to deploy in other investments, and present to StakeHound when the customer demands return of its Native Tokens (plus Rewards).

---

[2] Capitalized terms undefined in the "Nature of the Action" have the meaning ascribed elsewhere.

3.      As discussed below, however, despite due demand, StakeHound has failed and refused to return, or otherwise provide, to Celsius vast sums of Native Tokens in exchange for stTokens.  When confronted with its breaches of contract and other duties, StakeHound willfully violated the automatic stay.  Despite its knowledge of the pendency of these bankruptcy cases, StakeHound commenced a (legally void) arbitration proceeding against Celsius seeking declaratory relief in Switzerland.  StakeHound since has ignored Celsius' demand that the Swiss arbitration be withdrawn based on the automatic stay.

4.      The number and value of the tokens at issue is substantial.  Celsius entrusted to StakeHound:  (i) in January 2021, the nodes for approximately 25,000 staked native ETH (with Rewards, worth more than $50 million at recent prices) that Celsius previously had staked in November 2020, and (ii) in February 2021, approximately 35,000 native ETH which were then staked by StakeHound (with Rewards, worth more than $70 million at recent prices).  These staked native ETH tokens were locked and unavailable for withdrawal by anyone until the occurrence of a long-awaited "Upgrade" to the Ethereum blockchain, an event which happened on or around April 12, 2023.  In April 2021, Celsius also entrusted to StakeHound 40,000,000 (40 million) native MATIC tokens (worth approximately over $30 million at recent prices) and 66,000 native Polka DOT ("DOT") tokens (worth more than $300,000 at recent prices) for staking.

5.      StakeHound continues to wrongfully withhold or otherwise deprive Celsius of possession of all of these valuable Native Tokens.  On October 23, 2022, while the ETH was still locked, Celsius warned StakeHound to remain vigilant against any attempts by Jason Stone—the former U.S.-based CEO of Celsius KeyFi—to seize Celsius' ETH upon occurrence of the Upgrade.  Celsius later sought to confirm that StakeHound was making necessary preparations to safeguard and turn over the native ETH to Celsius' estates in exchange for stTokens as soon as the native

ETH unlocked.  According to StakeHound, however, because keys associated with the 35,000 Celsius ETH (plus Rewards) allegedly had been misplaced, StakeHound not only was relieved of its obligation to return those tokens, StakeHound also was no longer required to return the 25,000 Celsius ETH (plus Rewards) in their entirety.

6.      Celsius promptly explained that StakeHound was mistaken, but offered to discuss a resolution of the parties' disputes provided that StakeHound took reasonable steps to ensure that the native ETH (plus Rewards) would remain secure and available for distribution in accordance with any later judgment or other resolution.  StakeHound ignored Celsius' overture.  On or around April 24, 2023, without any prior notice or warning, StakeHound commenced arbitration against Celsius in Switzerland seeking declaratory relief, despite StakeHound's knowledge of the pendency of these bankruptcy cases.

7.      In its demand for arbitration, StakeHound went even further than it had in prior correspondence, arguing that StakeHound "has ***no obligation*** to exchange native ETH" for the stTokens that StakeHound previously issued to Celsius, thus threatening to permanently deprive Celsius and its creditors of native ETH worth more than $50 million, in addition to the more than $70 million worth of native ETH associated with the keys StakeHound has reported as missing. On May 1, 2023, Celsius reminded StakeHound that the arbitration violated the automatic stay and demanded its withdrawal.  StakeHound ignored Celsius' May 1, 2023 demand entirely.

8.      On May 25, 2023, as its right under the relevant agreements, Celsius demanded that StakeHound immediately return the native MATIC and DOT tokens that Celsius provided to StakeHound in April 2021 (plus Rewards) in exchange for the corresponding stTokens issued by StakeHound.  In breach of the parties' agreements, StakeHound has not returned any of the native MATIC and DOT tokens, or even acknowledged Celsius' letter.  Collectively, the MATIC, DOT

and ETH tokens that rightfully belong to Celsius, and that StakeHound has failed to return, are worth at least in excess of $150 million.

9.      StakeHound should be required to turn over to Celsius the tokens in its actual or constructive possession or otherwise provide the Native Tokens in exchange of the stTokens, and pay actual and exemplary damages, attorneys' fees, and pre- and post-judgment interest arising from its breaches of duty and willful misconduct, and should be enjoined from continuing to pursue arbitration against Celsius in violation of the automatic stay.

## PARTIES

10.     Plaintiff Celsius is a private limited company incorporated under the laws of England and Wales with its principal place of business located at The Harley Building, 77-79 New Cavendish Street, London, UK W1W 6XB.

11.     Defendant StakeHound is a public limited company incorporated under the laws of Switzerland with its registered offices c/o MN Associés, Place de Longemalle 1, 1204 Genève, Switzerland.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a); (b); and (e) and the *Amended Standing Order of Reference* M10-468 of the United States District Court for the Southern District of New York (the "Southern District of New York") dated February 1, 2012 referring to the Bankruptcy Judges of the Southern District of New York all cases and proceedings arising under, arising in, or related to a case under title 11 of the United States Code (the "Bankruptcy Code") issued pursuant to 28 U.S.C. § 157.

13.     This adversary proceeding constitutes a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A); (E); (G); and (O). In the event that this or any other appropriate Court finds any part of this adversary proceeding to be "non-core," Plaintiff consents to the entry of final

orders and judgments by the Bankruptcy Court, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure.

14.    Venue in the Southern District of New York is proper under 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises under, arises in and relates to cases commenced under the Bankruptcy Code.

15.    StakeHound purposefully avails itself of the privilege of conducting activities within the United States, and its contacts with the forum give rise to, or are related to Celsius' claims.  For example, upon information and belief, StakeHound sought to solicit interest in its services amongst persons located in the United States, one of the largest markets for ETH and other digital assets.  StakeHound's website is maintained in English (which is not one of the four national languages of Switzerland) and on information and belief does not include any options for any of the four national languages of Switzerland.  StakeHound also conducted a significant amount of its messaging and advertising on Twitter, which both operates and is headquartered in the United States and whose greatest number of users are in the United States.  The level of Twitter activity was such that StakeHound's Twitter account operated as a de facto marketing arm for StakeHound, including by providing digital forms through Twitter and soliciting job applications, questions and information from users.  Upon information and belief, StakeHound's website was at all relevant times highly interactive and allowed customers to:  1) access and download StakeHound's terms and conditions; 2) interact and contact sales representatives; and 3) register cryptocurrency wallets and ETH.  Upon information and belief, StakeHound made no attempt to block U.S. IP addresses.

16.    Upon further information and belief, Celsius personnel were located in the United States when they communicated with StakeHound concerning the transactions from which

Celsius' claims arise and when those personnel participated in negotiating related agreements among the parties. Celsius further believes that the contracts at issue were executed by Celsius personnel located in the United States. Moreover, many of the transactions at issue in this action involve Ethereum. Validator nodes for the Ethereum blockchain provide the basis for interest, fees and other rewards (collectively, "Rewards") and to further grow the blockchain (providing more value for holders of ETH), which are the major incentive for individuals and entities to buy and stake their ETH. Without nodes and validation, ETH would hold no value. There are approximately 6.850 nodes on the Ethereum blockchain, and a plurality (approximately 43%),[3] are located in the United States.

17.     Upon information and belief, StakeHound has at least one and possibly more accounts with staked.us ("Staked.us"), a U.S.-based entity for the purposes of sending, receiving, and facilitating the staking of cryptocurrency. StakeHound's Staked.us account was used to effectuate the transfer of the November 2020 Staked ETH from Celsius to StakeHound, at least, and may have been involved in the other transactions at issue in this action.

18.     StakeHound engaged in a series of specific targeted acts with individuals and cryptocurrency businesses in New York and the United States that were designed to purposefully avail itself of the protections and benefits of the United States, and did so for multiple years.

19.     For example, from the time period of around September 2020 through at least June 2022 and possibly into August 2022, StakeHound engaged in frequent, persistent and targeted communications with numerous U.S-based Celsius personnel at different Celsius entities via

---

[3] Approximately 14% of nodes are hosted in Germany, and no other nation has more than 5% of the total amount of nodes. Therefore, the nodes located in the United States represent a substantial plurality of all nodes globally. Switzerland hosts approximately 1.7% of Nodes. *See* www.ethernodes.org/countries (last accessed July 11, 2023 at 10:15 p.m. EDT).

phone, zoom, and email with the explicit and deliberate purpose of engaging and partnering with a business, Celsius, that had access to U.S. customers and markets.

20.     In addition to its multi-year relationship with Celsius and as a regular practice, StakeHound targeted and availed itself of the benefits of the U.S. forum.  For example, StakeHound specifically created stTokens for deployment on "DeFi" platforms, and expressly identifies in its terms of use DeFi platforms organized or with significant operations in the United States, such as Uniswap and Curve.  StakeHound also engaged in active business discussions with several U.S. based cryptocurrency entities in connection with its business relationship with Celsius.  For example, on information and belief, in October 2020, Albert Castellana, through U.S. based Jason Stone, was introduced to Rosario Pabst and Robert Viglione of Horizen Labs, Inc. ("Horizen Labs").  Horizen Labs is a U.S. Based company that on information and belief has its principal place of business in Austin, Texas and is a company that designs web 3.0 tools that enable programmable blockchains.  StakeHound stated they wanted to "have a call and discuss what we could do together.  We are currently defining our roadmap for 2021, especially the listings and platforms to integrate with" and StakeHound engaged in discussions to expand its business with Horizen Labs as part of its dealings with Celsius to derive a benefit from the U.S. market.

21.     On information and belief, StakeHound reached out to and engaged and negotiated with two more U.S. cryptocurrency business during the course of its dealing with Celsius.  ***First,*** throughout the end of 2020, StakeHound engaged in negotiations with Bison Trails, a U.S.-based entity that designed and operated a blockchain infrastructure program that allowed users to run infrastructure on multiple blockchains for the purpose of enabling services like cryptocurrency staking.  StakeHound engaged with Bison Trails for the purposes of integrating Bison Trail's eth2 product into their arrangement and on information and belief, StakeHound and Celsius executed a

non-disclosure agreement to gain access to Bison Trail's data room.  Bison Trails was ultimately acquired by Coinbase around January 2021.  ***Second,*** StakeHound also negotiated with and had discussions about partnering with Totle, Inc. ("Totle"), a U.S.-based entity that on information and belief has its principal place of business in Michigan, and exchanged emails and communicated with its CEO, David Bleznak, who is U.S.-based.   Totle is in the business of aggregating decentralized exchanges and asset providers for the purpose of allowing access to liquidity for DeFi assets and the conversion and transferring of tokens.

22.      In addition to the agreements, on information and belief, StakeHound also engaged in discussions with Celsius in marketing deals and other joint ventures, and on or around November 23, 2020 (the day before Mr. Stone staked the November 2020 ETH), Mr. Castellana wrote to Celsius personnel that "we are happy to commit to exclusively doing co-marketing campaigns with Celsius and really focus our efforts on growing this relationship by pushing Celsius to be our main onboarding flow for individual users."

## BACKGROUND

### A.      StakeHound's Business

23.      StakeHound is a public limited company primarily engaged in the business of staking native digital assets and holding the nodes for staked native digital assets, such as ETH, MATIC and DOT ("Native Tokens").  The staked Native Tokens are used to validate transactions on the associated blockchain, and in exchange earn interest, fees and other Rewards.  Celsius and other StakeHound customers entrust their Native Tokens to StakeHound and StakeHound mints and issues to its customers stTokens ("stTokens"), allowing the customer (in theory) to use the stTokens as liquidity in the DeFi ecosystem.  For example, StakeHound provided Celsius with the same number of stETH tokens as Celsius' staked native ETH tokens (plus periodic Rewards), the same number of stMATIC tokens as Celsius' staked native MATIC tokens (plus periodic Rewards)

and the same number of stDOT tokens as Celsius' staked native DOT tokens (plus periodic Rewards). Under the parties' agreements, Celsius has the right to return of Native Tokens by tendering its stTokens.

24.     Celsius is by far StakeHound's largest customer and on information and belief, Celsius's staking of Native Tokens represented significantly more than 90% of the total Native Tokens managed by StakeHound and (correspondingly) more than 90% of the stTokens issued by StakeHound. At all relevant times, Celsius had substantial operations in the United States, and a substantial portion of Celsius' coins were loaned by U.S. customers. Celsius was also registered with the U.S. Treasury's Financial Crimes Enforcement Network bureau as a money services business. Celsius ultimately filed its chapter 11 petition in the United States. StakeHound derived substantial benefits from its business relationship with Celsius, including because Celsius is and was StakeHound's most important business relationship (by far). It is not unreasonable for StakeHound to be subject to the jurisdiction of this Court for these claims, which flow directly from StakeHound's relationship with Celsius.

**B.      The Staked ETH**

25.     Prior to Celsius becoming a customer of StakeHound, Mr. Stone (who is based in the U.S.), and the CEO of StakeHound, Mr. Castellana, were on friendly terms and had previously discussed potential dealings in the cryptocurrency business. On information and belief and prior to and leading up to the execution of the SSA (defined herein) that related the staking of certain of the ETH, Mr. Castellana discussed potential transactions with Mr. Stone, with then-General Counsel and CCO, Jeremie Beaudry and with co-founder and then CEO of Celsius Network LLC, Alex Mashinsky. Upon information and belief, all three Celsius personnel were located in New York when these discussions occurred.

26.    In connection with those discussions, Celsius determined to provide keys to nodes associated with a substantial amount of ETH previously staked by Celsius to StakeHound during the pendency (the "Lockup Period") of a major Upgrade to the Ethereum blockchain (the "Upgrade").[4]

27.    Celsius had staked those coins on or around November 24, 2020. On that date, Mr. Stone transferred (or caused to be transferred) 25,000 ETH owned by Celsius to a wallet with the address 0x3fb9d44bc83d0da2902e6230aed42fc219f8a426 (the "0x3fb9 Wallet").

28.    Through five different transfers executed over the next several hours, a total of 24,960[5] ETH (the "November 2020 Staked ETH") from the 0x3fb9 Wallet was transferred to an ETH2 deposit contract with the address 0x00000000219ab540356cBB839Cbe05303d7705Fa (the "Deposit Smart Contract") to accrue interest and Rewards during the Lockup Period with the expectation that the November 2020 Staked ETH would be unlocked upon or immediately following the Upgrade.

29.    StakeHound engaged in significant contact with the United States and Celsius assets and personnel to effect the transactions at issue here. StakeHound required Celsius to onboard with its compliance partner, Altcoinomy. As part of this process, StakeHound and Altcoinomy specifically asked whether Celsius was regulated in the US or the UK. Celsius replied that it was registered as a money services business with FinCEN, but that it had only a pending

---

[4] The Upgrade is sometimes referred to in the Ethereum community as the "Shapella" or "Shanghai" Upgrade.
[5] ETH must be staked in multiples of 32. It is unclear, however, why Mr. Stone staked 24,960 ETH rather than 24,992 ETH, a figure that also is divisible by 32.

application with the UK's Financial Conduct Authority.[6]   Celsius also specifically informed StakeHound that it provided services in New York through PrimeTrust LLC, which held a BitLicense required for operation in New York.   Furthermore, Celsius confirmed that the persons named on the certificate of incumbency of Celsius Network, Inc. (a U.S. organized entity) were authorized signers on behalf of Celsius Network, Inc., those persons being Alex Mashinsky, Shlomi Daniel Leon and Harumi Urata-Thompson, all U.S. based personnel.

30.   On or about January 20, 2021, Celsius, through Mr. Mashinsky—who on information and belief was in New York at the time and e-signed from New York—and StakeHound, through Mr. Castellana, entered into the Staking Services Agreement (the "SSA"). Under the SSA, Celsius agreed to provide StakeHound with the withdrawal and node keys for Ethereum version 2.0 validator nodes for the November 2020 Staked ETH.   In exchange, StakeHound agreed to provide Celsius with liquidity in the form of its own minted stETH ("stETH") in the equivalent amount of the November 2020 Staked ETH (plus Rewards).   The parties agreed that after the November 2020 Staked ETH was unlocked (i.e., after the occurrence of the Upgrade at which time the ETH would become liquid), Celsius would be able to exchange its stETH for Native ETH (including accrued rewards) on a "one-to-one" basis.

31.   Significantly, the transfer on or around January 20, 2021 *was directly connected to the U.S. forum*.   StakeHound and Celsius both had accounts with Staked.us, which on information

---

[6] On June 23, 2021, Celsius announced that it "will be migrating our main business activity and headquarters from the United Kingdom to the United States and where applicable, to several other jurisdictions.   This will provide Celsius and its community with more stability, clarity, and developmental opportunities to continue expanding our global impact and infrastructure.   This decision also means that we have chosen to withdraw our application from the UK Financial Conduct Authority's (FCA) temporary registration regime for crypto asset firms.   Instead, our efforts will be focused on securing licenses and registrations in the US and other jurisdictions that will ensure the long-term viability of Celsius and its community. . . ."   Celsius subsequently closed registration for new customers residing in the UK.   This announcement formalized how Celsius had been operating as an enterprise, as a U.S. based business regulated by FinCEN, and StakeHound continued to engage with Celsius for at least one year after Celsius had shut down its (smaller) UK operations.

and belief is a U.S. based corporation that provides non-custodial staking infrastructure whose customers consist of primarily institutional cryptocurrency businesses.  Celsius had previously transferred rights of the ETH to StakeHound, but because the ETH was locked, the ownership of the nodes needed to be transferred as well.  The nature of Staked.us's system meant that the validator keys could not be provided to StakeHound and instead ***StakeHound requested that Staked.us transfer the nodes for the November 2020 Staked ETH "from Celsius' [S]taked.us account to StakeHound's staked.us account*.**"  This means, on information and belief, that the actual transfer of the nodes for the November 2020 Staked ETH ***took place in the U.S., between a Celsius account in the U.S. and a StakeHound account in the U.S., and was effected by U.S. entities at the explicit request of StakeHound's direction to parties located in the U.S. forum.***  It is clear that StakeHound purposefully availed itself of the U.S. forum to effect this transaction and others.

32.     Moreover, Celsius had previously informed StakeHound's compliance partner, Altcoinomy that "all digital asset transactions are screened through Chainalysis."  Chainalysis is a New York blockchain analysis firm that provides a multitude of blockchain analytics services.

33.     In February 2021, Celsius provided an additional approximately 35,000 native ETH (the "February 2021 Staked ETH") to StakeHound.  As with the November 2020 Staked ETH, StakeHound was to provide Celsius with stETH in an amount equivalent to the February 2021 Staked ETH, plus earned Rewards, to use for liquidity.  At all times Celsius was entitled to obtain Native ETH (plus Rewards) by tendering its stETH on a one-to-one basis.

34.     The Upgrade was completed on or around April 12, 2023.  At that time, the ETH at issue in this litigation presumably became unlocked, though StakeHound has refused Celsius'

several requests for confirmation.  Celsius thereafter sought to exchange its stETH for Native ETH

as contemplated under the relevant agreements, StakeHound failed and refused to comply.

**C.**      **The Staked MATIC and DOT**

35.      On or around April 21, 2021, Celsius and StakeHound entered into a Revenue

Sharing Agreement (the "RSA") setting forth the terms of revenue sharing whereby StakeHound

would issue stTokens to earn Rewards in exchange for Native Tokens provided by Celsius and the

sharing of Rewards earned on those Native Tokens.

36.      On or around April 21, 2021, Celsius and StakeHound entered into a term sheet

(the "MATIC Term Sheet") whereby Celsius transferred 40,000,000 native MATIC tokens

pursuant to the RSA.  In turn, StakeHound was required to issue 40,000,000 stMATIC to Celsius,

with periodic additions as the native MATIC earned Rewards.  On or around April 27, 2021,

Celsius and StakeHound entered into a term sheet (the "DOT Term Sheet" together with the

MATIC Term Sheet, the "Term Sheets") whereby Celsius agreed to transfer 66,000 native DOT

tokens pursuant to the RSA.  In turn, StakeHound was required to issue 66,000 stDOT tokens to

Celsius, with periodic additions as the native DOT earned Rewards.

37.      Pursuant to the RSA, Celsius was entitled to exchange its stMATIC and stDOT "at

any time" after the lockup period for the Native Tokens and "25% of the Net Reward generated

by the Native Tokens brought in by the Client to StakeHound for the purpose of

Staking."  *See* RSA §§ 2.3; 2.7 ("In the absence of any specific lockup period (during which the

stTokens cannot be exchanged into Native Tokens), ***such exchange shall be available to [Celsius]***

***at any time*** (subject to the applicable processing time of such exchange)."

38.      There is no doubt that Celsius bargained for the absolute right to exchange its

stMATIC for MATIC at a 1 to 1 ratio subject only to a lockup period.  Among other things, that

exact arrangement was confirmed expressly by Mr. Castellana in writing.  Specifically, on or

around April 19, 2021 he wrote to Celsius, "[a]s a final note, since we plan on launching stMATIC by the end of the week, you will be receiving the stMATIC at that point, already including the rewards obtained until then. ***After that, you can send MATIC and get stMATIC at a 1 to 1 ratio at any time. You can do vice versa also***, but there is a 9 days unlock period that we will try to mitigate."

39.      On May 25, 2023 (the "May 25 Letter"), Celsius wrote StakeHound and demanded the transfer of all of Celsius' native MATIC tokens and all Rewards, net Rewards and revenue share, and all Celsius' native DOT tokens and all Rewards, net Rewards and revenue share. The number of Celsius native MATIC tokens at issue is at least 46,238,332, the value of which was approximately $41,614,000 on May 25, 2023; the number of Celsius native DOT tokens at issue is at least 78,426, the value of which was approximately $411,000 on May 25. 2023.

40.      In the same letter, Celsius demanded that StakeHound provide all "data and reports setting out the relevant information" that Celsius "may need" for "the calculation of the Revenue Share and the assessment of the performance by StakeHound of its services" under the RSA and Term Sheets. *See* RSA § 2.6. StakeHound has not provided this information, which it is required to do "upon request" of Celsius. *See id.*

41.      StakeHound has not responded to the May 25 Letter and has not performed any of its obligations pursuant to the RSA and Term Sheets. It is in breach of these agreements and liable for all damages accruing from its nonperformance and breach.

**D.      StakeHound Uses Misplacement of Keys as an Excuse to Refuse to Return Any ETH to Celsius**

42.      According to StakeHound, on or around May 2, 2021, private keys associated with the February 2021 Staked ETH were misplaced. StakeHound blamed Fireblocks, a third-party security provider, for the loss. While Fireblocks may indeed have substantial liability associated

with the key incident, StakeHound's failure to return the February 2021 Staked ETH to Celsius, regardless of the explanation, represents a clear breach of StakeHound's duties to Celsius.

43.    Incredibly, however, StakeHound has attempted to use the May 2, 2021 incident as an excuse for depriving Celsius even of the November 2020 Staked ETH (for which StakeHound still has the necessary keys). In October, 2022, Celsius wrote StakeHound in connection with Celsius' then pending litigation with Mr. Stone, the former DeFi executive who had led Celsius' dealings with StakeHound. Concerned that Mr. Stone might wrongfully have retained related confidential information, Celsius urged StakeHound to take precautions to prevent Mr. Stone from seizing any of Celsius' ETH after the Upgrade occurred.[7]

44.    In response, StakeHound agreed it would cooperate with Celsius in preventing any misappropriation by Mr. Stone. StakeHound claimed, however, that as a result of the May key incident, StakeHound no longer was obligated to return ETH to Celsius in exchange for stETH on a one-to-one basis, not even the November 2020 Staked ETH with respect to which StakeHound still maintained the necessary withdrawal keys. StakeHound wrote that its "position may change if matters are resolved with Fireblocks, until then any exchange would be at less than parity." StakeHound also indicated it was considering intervening in the adversary proceeding pending against Mr. Stone in this Court.

45.    In a letter dated April 10, 2023, Celsius explained that "StakeHound's dispute with FireBlocks in no way limits or otherwise modifies StakeHound's obligations to Celsius" and demanded that StakeHound confirm in writing that it would: "(i) immediately upon its unlocking, transfer the Assets to a new wallet and (ii) thereafter, without excuse or delay, transfer the Assets to Celsius in exchange for the stETH previously provided by StakeHound to Celsius." Celsius

---

[7] In a response to Celsius November 14, 2022 motion for a preliminary injunction, Stone declared under oath that neither he nor KeyFi retained private keys necessary to withdraw Celsius' staked ETH.

followed up on or around April 17, 2023, offering to engage in efforts to resolve the parties'

disputes without costly and time consuming litigation provided that StakeHound, among other

things, agreed in the meantime not to dissipate any of the ETH at issue.

**E.      Despite the Stay, StakeHound Commences, and Refuses to Withdraw, Arbitration
Against Celsius with Respect to Property Belonging to the Estates**

46.     Without responding to Celsius' proposal, on or around April 24, 2023 StakeHound

filed a notice of arbitration (the "Arbitration Notice") with the Swiss Arbitration Centre in Geneva,

naming Celsius as the respondent.  In its Arbitration Notice, StakeHound contended for the first

time that it is not required to return ***any*** of the native ETH provided to it by Celsius.  And in fact,

StakeHound wrongfully has failed and refused to return any such ETH to Celsius.

47.     There can be no serious question that StakeHound commenced the arbitration (the

"Arbitration") with full knowledge of Celsius' bankruptcy filing.  Celsius advised StakeHound of

its bankruptcy proceeding by letter on three separate occasions and StakeHound referenced

Celsius' bankruptcy filings in its replies.  Indeed, StakeHound actually indicated it was considering

intervening in the bankruptcy proceeding in one of its letters to Celsius.

48.     Nevertheless, after StakeHound filed the Arbitration Notice, by letter dated May 1,

2023, Celsius reminded StakeHound of the pendency of Celsius' bankruptcy, and demanded its

withdrawal in accordance with the automatic stay:

> As StakeHound is or should be well aware, including based on its
> substantial communications with Celsius over the past six months,
> Celsius is a debtor in a pending bankruptcy case [the filing of which]
> operates as an automatic stay of, among other things, the
> commencement of legal proceedings against the debtor and any act
> to exercise control over property of the debtor's estate ….
>
> Please be advised that … the Swiss Arbitration … is a clear violation
> of the Automatic Stay and a legal nullity.  Moreover, because the
> filing was made willfully with full knowledge of Celsius's
> bankruptcy case, Celsius is entitled to recover all actual damages
> incurred as well as punitive damages.

Celsius hereby demands that StakeHound cease and desist from taking any further action to advance the Swiss Arbitration and withdraw the Swiss Arbitration in full.

49.     StakeHound ignored Celsius May 1, 2023 letter and has not withdrawn the Arbitration Notice.  Notwithstanding StakeHound's knowing violation of the automatic stay, Celsius continued to try to negotiate a consensual resolution including by offering a standstill of all litigation and arbitration to consensually resolve all claims, which StakeHound refused.  Upon information and belief, StakeHound intends neither to cease prosecution of the Arbitration nor to withdraw the Arbitration.

## FIRST CAUSE OF ACTION

### (Violation of the Automatic Stay)

50.     Plaintiff repeats and realleges the preceding allegations as if more fully set forth herein.

51.     On July 13, 2022, the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Petition Date").

52.     Upon the filing of the petition, the automatic stay under section 362(a) became immediately operative and barred and continues to bar:  (i) the commencement of legal proceedings against the Debtors that could have been commenced before the Petition Date and (ii) any act to exercise control over property of the Debtors' estate.

53.     On or about April 24, 2023, StakeHound commenced the Arbitration.

54.     The Arbitration seeks, among other things, a declaration that its pre-petition suspension of its platform following the StakeHound BLS Incident does not breach the SSA, as well as other declaratory relief regarding the proper meaning and interpretation of the SSA and the StakeHound Terms and Conditions.  As such, it is a legal proceeding that could have been commenced before the Petition Date.

55.     Furthermore, the Arbitration, which seeks an adjudication of Celsius' rights in and to the November 2020 Staked ETH as well as to recover substantial costs, fees and expenses from Celsius, is an act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

56.     Prior to the filing of the Arbitration, StakeHound was aware that Celsius was a debtor in these Chapter 11 Cases and knew or should have known that the automatic stay barred the commencement and prosecution of the Arbitration.

57.     On May 1, 2023, Celsius informed StakeHound that the Arbitration was a legal nullity and that the commencement and prosecution of the Arbitration was a violation of the automatic stay and that failure to cease and desist the prosecution of the Arbitration could lead to an award of compensatory and punitive damages against StakeHound.

58.     Notwithstanding this express notice, StakeHound continues to prosecute the Arbitration and has no intention to cease and desist that prosecution.

59.     Celsius is entitled to a judgment:  (i) declaring any and all actions taken by StakeHound in commencing and prosecuting the Arbitration to be void and a legal nullity; (ii) enjoining StakeHound from continuing, prosecuting, or in any way participating in arbitration proceedings against Celsius; and (iii) awarding actual damages and sanctions against StakeHound, including but not limited to all costs incurred by Celsius in connection with the Arbitration.

## SECOND CAUSE OF ACTION

(28 U.S.C. §§ 542(a); 542(b):  Turnover of Estate Property)

60.     Plaintiff repeats and realleges the preceding allegations as if more fully set forth herein.

61.     The November 2020 Staked ETH (and Rewards), the February 2021 Staked ETH (and Rewards), the Native MATIC (and Rewards) and the Native DOT (and Rewards) can be used, sold or leased by Celsius under section 363 of the Bankruptcy Code and is of more than inconsequential value and benefit to the estate.

62.     StakeHound is an entity other than a custodian that had or has constructive or actual possession, custody or control of the November 2020 Staked ETH (and Rewards), the February 2021 Staked ETH (and Rewards), the Native MATIC (and Rewards) and the Native DOT (and Rewards) at some period of time during the pendency of the Chapter 11 Cases.

63.     StakeHound refuses to deliver the November 2020 Staked ETH (and Rewards), the February 2021 Staked ETH (and Rewards), the Native MATIC (and Rewards) and the Native DOT (and Rewards) to Celsius in violation of section 542(a) of the Bankruptcy Code.

64.     Alternatively, the November 2020 Staked ETH (and Rewards), the February 2021 Staked ETH (and Rewards), the Native MATIC (and Rewards) and the Native DOT (and Rewards) and/or its equivalent is a debt that is property of the estate and is matured, payable on demand or payable on order and must be paid to the Debtor in Possession pursuant to section 542(b) of the Bankruptcy Code.

65.     Celsius is entitled to turnover of the November 2020 Staked ETH (and Rewards), the February 2021 Staked ETH (and Rewards), the Native MATIC (and Rewards) and the Native DOT (and Rewards)  pursuant to section 542 of the Bankruptcy Code, or recovery of an equivalent judgment for the value of the property of the estate.

### **THIRD CAUSE OF ACTION**

(Breach of Contract)

66.     Plaintiff repeats and realleges the preceding allegations as if more fully set forth herein.

67.     Celsius provided StakeHound with Native Tokens, and/or keys for validator nodes associated with Native Tokens, including the November 2020 Staked ETH, the February 2021 Staked ETH, MATIC and DOT (collectively, and including accumulated Rewards, the "Celsius Native Tokens") in connection with agreements entered into with StakeHound under Swiss law, including the SSA and the RSA (collectively the "Agreements").

68.     Celsius duly tendered its stETH to StakeHound, but StakeHound has wrongfully refused to provide to Celsius the Celsius Native Tokens or their equivalent, in violation of the Agreements.

69.     Celsius has fully performed all its obligations under the Agreements.

70.     StakeHound's breach of contract constitutes a delay in performance under Swiss law and as a result StakeHound is liable for damages in an amount to be proved at trial. Alternatively, Celsius is entitled to specific performance of the Agreements and damages due to the delay in performance in an amount to be proved at trial.

71.     StakeHound's breach of contract also constitutes defective performance and as a result StakeHound is liable to Celsius for general damages in an amount to be proved at trial.

*[The remainder of this page intentionally left blank.]*

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request as follows:

a)        Judgment in favor of Plaintiff and against Defendant on all causes of action;

b)        Declaring StakeHound's commencement and prosecution of the Arbitration void *ab initio*;

c)        Temporarily and permanently enjoining StakeHound from continuing the Arbitration;

d)        Turnover of all property of the estate in the actual or constructive possession, custody, or control of StakeHound, including the November 2020 Staked ETH, the February 2021 Staked ETH, the 40 million MATIC, the 66,000 DOT and the Rewards associated with all of the preceding property, or recovery of a money judgment for the value of that property.

e)        Turnover of the November 2020 Staked ETH, the February 2021 Staked ETH, the 40 million MATIC, the 66,000 DOT and the Rewards associated with all of the preceding property as a debt that is property of the estate and that is matured, payable on demand, or payable on order.

f)        Awarding actual damages to Celsius for StakeHound's breach of the automatic stay in an amount to be proved at trial;

g)        Awarding punitive damages to Celsius for StakeHound's breach of the automatic stay;

h)        Directing StakeHound to exchange:  (i) Celsius' 60,000 stETH against ETH, including Rewards in accordance with the SSA and the StakeHound Service Terms and Conditions and (ii) Celsius' 40 million stMATIC and 66,000 stDOT against 40 million MATIC and 60,000 DOT, including Rewards, in accordance with the RSA;

i)      Alternatively, awarding Celsius actual damages for StakeHound's breaches of contracts in an amount to be proved at trial;

j)      Awarding pre and post-judgment interest at the maximum amount permitted by law;

k)      Awarding attorneys' fees, costs and expenses in an amount to be proved at trial;

l)      Awarding all other relief that this Court deems just and proper.

Dated:      July 11, 2023
            New York, New York

AKIN GUMP STRAUSS HAUER & FELD LLP

By:   */s/ Mitchell P. Hurley*_____
      Mitchell P. Hurley
      Dean L. Chapman Jr.
      One Bryant Park
      New York, New York 10036
      Telephone: (212) 872-1000
      Facsimile: (212) 872-1002
      mhurley@akingump.com
      dchapman@akingump.com

      Elizabeth D. Scott (admitted *pro hac vice*)
      Nicholas R. Lombardi (admitted *pro hac vice*)
      2300 N. Field Street, Suite 1800
      Dallas, TX 75201
      Telephone: (214) 969-2800
      Facsimile: (214) 969-4343
      edscott@akingump.com
      nlombardi@akingump.com

      *Special Litigation Counsel for Debtors and*
      *Plaintiff Celsius Network Limited*