Mitchell P. Hurley
Dean L. Chapman Jr.
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
mhurley@akingump.com
dchapman@akingump.com

Elizabeth D. Scott (admitted *pro hac vice*)
Nicholas R. Lombardi (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
edscott@akingump.com
nlombardi@akingump.com

*Special Litigation Counsel for Debtors and*
*Plaintiff Celsius Network Limited*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |
| CELSIUS NETWORK LIMITED, | |
| Plaintiff, | Adversary Proceeding |
| v. | No. 23-01138 (MG) |
| STAKEHOUND SA, | |
| Defendant. | |

**PLAINTIFF CELSIUS NETWORK LIMITED'S MOTION FOR AN ORDER**
**AUTHORIZING ALTERNATIVE SERVICE ON DEFENDANT STAKEHOUND SA**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The Debtors' service address in these Chapter 11 Cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 3

ARGUMENT ............................................................................................................................ 8

      A.      Service on StakeHound Through Email to Its CEO and Counsel Comports with Due Process and Is Not Prohibited by International Law ............................... 8

      B.      Alternative Service Is Appropriate Under Rule 4(f)(3) for Service of StakeHound and StakeHound Counsel in the First Instance and Without Requiring Prior Exhaustion of the Hague Convention .......................................... 13

CONCLUSION ....................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bibox Grp. Holdings Ltd. Sec. Litig.*,
   No. 20-CV-2807 (DLC), 2020 WL 4586819 (S.D.N.Y. Aug. 10, 2020) ................................12

*Comercia Ltda. v. Bertin*,
   No. 22 CIV. 4594 (PGG), 2022 WL 2758417 (S.D.N.Y. July 14, 2022)...............................10

*Crockett v. Luitpold Pharms., Inc.*,
   No. 19-276, 2020 WL 4039046 (E.D. Pa. July 17, 2020) .......................................................13

*Equipav S.A. Pavimentacao, Engenharia e Comercia Ltda. v. Bertin,*
   No. 22 CIV. 4594 (PGG), 2022 WL 2758417 (S.D.N.Y. July 14, 2022)...............................10

*F.T.C. v. PCCare247 Inc.*,
   No. 12 CIV. 7189 PAE, 2013 WL 841037 (S.D.N.Y. Mar. 7, 2013)...............................12, 13

*Fed. Trade Comm'n v. Dluca*,
   No. 0:18-cv-60379-RKA, 2018 WL 1830800 (S.D. Fla. Feb. 28, 2018) ...............................15

*In re GLG Life Tech Corp. Sec. Litig.*,
   287 F.R.D. 262 (S.D.N.Y. 2012) .......................................................................................8, 13

*Grp. One Ltd. v. GTE GMBH*,
   523 F. Supp. 3d 323 (E.D.N.Y. 2021) .......................................................................8, 10, 12

*Jacobo v. Doe*,
   No. 1:22-cv-00672-DAD-BAK(BAM), 2022 WL 2052637 (E.D. Cal. June 7,
   2022) ......................................................................................................................................15

*Jacobs v. Terpitz (In re Dewey & Lebouef)*,
   Case No. 14-01991-mg (S.D.N.Y)..........................................................................................14

*Levin v. Ruby Trading Corp.*,
   248 F. Supp. 537 (S.D.N.Y. 1965) ..........................................................................................9

*Luessenhop v. Clinton Cty., N.Y.*,
   466 F.3d 259 (2d Cir. 2006)......................................................................................................9

*Nat'l Cas. Co. v. W. Express, Inc.*,
   No. CIV-15-1222-R, 2017 WL 2241536 (W.D. Okla. May 22, 2017) ...................................10

*Nexon Korea Corp. v. Ironmace Co.*,
   No. C23-576-MLP, 2023 WL 3599548 (W.D. Wash. May 23, 2023) ...................................15

*Philip Morris Inc. v. Veles Ltd.*,
    No. 06 Civ. 2988, 2007 WL 725412 (S.D.N.Y. 2007) ........................................................... 9

*Ryder Truck Rental, Inc. v. Chanje Energy, Inc.*,
    No. 21-CV-21044-JLK, 2021 WL 9565825 (S.D. Fla. Aug. 8, 2021) .................................. 11

*Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd.*,
    312 F.R.D. 329 (S.D.N.Y. 2015) ........................................................................................ 11

*Suntech Power Holdings Co. v. Shenzhen Xintian Solar Tech. Co.*,
    No. 08-CV-01582 H (NLS), 2008 WL 11337501 (S.D. Cal. Sept. 12, 2008) ..................... 14

*Swarna v. Al-Awadi*,
    2007 WL 2815605 (S.D.N.Y. Sept. 20, 2007) ............................................................... 13, 14

*In re Three Arrows Cap., Ltd.*,
    647 B.R. 440 (Bankr. S.D.N.Y. 2022) ................................................................................ 13

*United States v. Mrvi*c,
    No. 1:21-CV-8792 (JLR), 2023 WL 375223 (S.D.N.Y. Jan. 24, 2023) .............................. 12

*Williams-Sonoma Inc. v. Friendfinder Inc.*,
    No. C06-06572 JSW, 2007 WL 1140639 (N.D. Cal. Apr. 17, 2007) ................................. 12

*Zanghi v. Ritella*,
    No. 19 CIV. 5830 (NRB), 2020 WL 6946512 (S.D.N.Y. Nov. 25, 2020) .......................... 12

*ZURU Inc. v. Individuals, P'ships & Unincorp. Assocs. Identified on Schedule
    "A"*,
    No. 1:23-CV-01852-ER, 2023 WL 2432477 (S.D.N.Y. Mar. 9, 2023) .............................. 14

**Statutes**

Fed. R. Civ. P. 7004(a) .................................................................................................................... 8

Fed. R. Civ. P. 4(f) .................................................................................................................... 8, 13

Fed. R. Civ. P. 4(f)(1) ................................................................................................................ 2, 13

Fed. R. Civ. P. 4(f)(2) ...................................................................................................................... 2

Fed. R. Civ. P. 4(f)(3) ............................................................................................................. *passim*

Fed. R. Civ. P. 4(h) .......................................................................................................................... 8

**Other Authorities**

Hague Convention Article 10 ................................................................................................... 11, 12

Plaintiff Celsius Network Limited ("Celsius") by this motion (the "Motion") respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, authorizing Celsius to serve process in the above-captioned adversary proceeding pursuant to Federal Rule of Civil Procedure 4(f)(3) as made applicable to this adversary proceeding (the "Adversary Proceeding") by Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 7004(a)(1) on Defendant StakeHound SA ("StakeHound"), including by serving a copy of Celsius' summons with notice [ECF No. 7] and Adversary Complaint [ECF No. 1] (together, the "Complaint") on StakeHound via email on Mr. Albert Castellana Lluís, co-founder and Chief Executive Officer of StakeHound, and upon StakeHound's United States, United Kingdom, and Swiss counsel (collectively, "StakeHound Counsel"), all of whom have previously communicated with Celsius and its counsel in connection with the claims and transactions alleged in the Complaint. In support of the relief requested in the Motion, Celsius further states and alleges as follows:

**PRELIMINARY STATEMENT**

1. Celsius seeks permission to serve its Complaint on Defendant StakeHound without the very substantial delay, cost, and burden that would be associated with service through the Hague Convention.[2] Prompt action in this Court is necessary to redress StakeHound's continuing and knowing violation of the automatic stay, and ensure that the substantial Celsius assets at issue—worth more than $150 million—are not dissipated while the case is pending. Celsius' proposed service by email on StakeHound's CEO and counsel is certain to provide actual notice

---

[2] *Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.* Specifically, Celsius seeks permission to serve StakeHound by emailing copies of the summons with notice and Complaint to StakeHound's CEO at albert@stakehound.com, StakeHound's U.S. counsel at swickouski@lockelord.com, Celsius' U.K. counsel at acarter-silk@keystonelaw.co.uk and StakeHound's Swiss counsel at Stefan.Leimgruber@swlegal.ch, Benjamin.Gottlieb@swlegal.ch and Nadine.Wipf@swlegal.ch.

1

of this action to StakeHound. Indeed, Celsius and its counsel have been in direct contact via email with StakeHound, and StakeHound's U.S., U.K. and Swiss law firms on multiple occasions, over many months, concerning the exact facts and transactions that are at issue in this action. Service on StakeHound through those same channels is completely reliable, and justified under the circumstances.

2. Rules 4(f)(1)–(3) of the Federal Rules of Civil Procedure establish three equally valid methods for service of a foreign defendant. While service through the Hague Convention is one valid means of effecting service under Rule 4(f)(1), courts in this district have increasingly recognized the importance of being able to serve a defendant quickly using alternative means when the circumstances warrant, and the requested alternative method of service is reasonably calculated to provide timely, actual notice to the party being served.

3. The present case is just such a matter. Celsius first confronted StakeHound months ago with StakeHound's numerous breaches of duty relating to property of these bankruptcy estates (ETH and other tokens worth well in excess of $150 million at recent prices), but sought to resolve the parties' disputes through negotiation rather than costly litigation. StakeHound refused to engage, choosing instead to preemptively institute arbitral proceedings in Switzerland, in a clear and knowing violation of the automatic stay in these Chapter 11 Cases. StakeHound since has refused to withdraw that proceeding despite Celsius' due and repeated demands. StakeHound also has refused to confirm that it will not use or otherwise dissipate the Celsius assets at issue in this case until an appropriate judgment can be entered or agreement reached.

4. Service via the Hague Convention would likely delay by months a reckoning for StakeHound's open violation of the stay, a period during which StakeHound could dissipate valuable estate property that should be returned for the benefit of Celsius' creditors. And service

2

via the Hague Convention would not provide superior notice of this action to StakeHound compared to the email service Celsius proposes. StakeHound and Celsius stipulated in their agreements to provide notices and communications required or permitted under the agreement to one another by email. *See, e.g.*, SSA[3] § 8.2;[4] RSA § 8.2.[5] Celsius initially emailed StakeHound's CEO, Albert Castellano, concerning this dispute, which elicited a response (also by email) from StakeHound's counsel. Since then, all three of the law firms representing StakeHound have emailed Celsius' counsel concerning the matters alleged in Celsius' complaint, on multiple occasions, during a period spanning months, in a manner demonstrating conclusively that they are in close, regular contact with StakeHound regarding this dispute.

5. Under the particular circumstances of this case, in which Celsius must act quickly to enforce the automatic stay and prevent StakeHound from dissipating valuable estate assets, Celsius should not be required to engage in costly and time-consuming efforts to serve StakeHound via the Hague Convention. Instead, Celsius respectfully submits it should be authorized to immediately serve StakeHound via the same email addresses with which Celsius and StakeHound have been communicating concerning this matter for months.

## FACTUAL BACKGROUND[6]

6. Celsius filed this Adversary Proceeding on July 11, 2023. Celsius' claims against StakeHound include breach of the automatic stay, based on StakeHound's improper bid to commence arbitration against Celsius in Switzerland after Celsius confronted it concerning StakeHound's wrongful retention of estate property worth well over $150 million. As alleged in

---

[3] Capitalized terms undefined herein shall have the meaning set forth in the Complaint.
[4] *See* Hurley Decl. Ex. U.
[5] *See* Hurley Decl. Ex. V.
[6] The Motion incorporates the factual allegations in the Complaint as though fully set forth herein.

3

more detail in the Complaint, that property includes the folllowing: (i) 25,000 native ETH staked by Celsius in November 2020 and entrusted to StakeHound in January 2021 (with Rewards, worth more than $50 million); (ii) 35,000 native ETH entrusted to StakeHound in February 2021 (with Rewards, worth more than $70 million); (iii) 40,000,000 (40 million) native MATIC (with Rewards, worth more than $30 million); and (iv) 66,000 native DOT tokens (with Rewards, worth over $300,000). Also as alleged in greater detail in the Complaint, despite due demand, StakeHound has wrongfully failed and refused to turnover to Celsius any of this valuable property.

7. Celsius has been in contact with StakeHound and StakeHound Counsel via email, letter, and telephone concerning the issues alleged in the Complaint for many months. For example, on October 24, 2022, Celsius' Ron Sabo emailed a letter[7] from Celsius' CEO, Chris Ferraro, to StakeHound's CEO, Albert Castellana, at Mr. Castellana's email address, albert@stakehound.com.[8] In the letter, Celsius urged StakeHound to take precautions to safeguard the November 2020 Staked ETH from any theft or other interference by Jason Stone. It is certain that Mr. Sabo's email to Mr. Castellana reached StakeHound because it elicited a letter response from StakeHound's U.K. counsel, Alexander Carter-Silk. The Carter-Silk letter was dated November 15, 2022, but emailed to Celsius on November 16, 2022,[9] from the email address acarter-silk@keystonelaw.co.uk. Mr. Carter-Silk's cover email to Celsius described his letter as "our response" to the letter emailed by Mr. Sabo to Mr. Castellana "on behalf of our client STAKEHOUND SA."

---

[7] *See* Hurley Decl. Ex. A.

[8] Agreements entered into by the parties expressly contemplate that notices will be provided to one another by email. *See, e.g.*, SSA § 8.2, RSA § 8.2; *see also* SSA Ex. B, StakeHound Terms and Conditions § 3(c) - Dispute Resolution; Arbitration (providing that StakeHound is to receive notice via email of any dispute).

[9] *See* Hurley Decl. Ex. B.

4

8.      Correspondence via email with Mr. Carter-Silk on behalf of StakeHound concerning this matter continued. On April 10, 2023, Celsius emailed a response[10] to Mr. Carter-Silk's November 16, 2023 email, directing its correspondence to the same address from which Mr. Carter Silk sent his letter, acarter-silk@keystonelaw.co.uk. Mr. Carter-Silk emailed a reply to Celsius' April 10, 2023 letter on April 11, 2023.[11] Celsius emailed Mr. Carter-Silk again on April 17, 2023,[12] including to propose a standstill so the parties could negotiate, rather than proceed to immediate litigation of Celsius' turnover and other claims. On April 18, 2023,[13] Mr. Carter-Silk emailed his acknowledgment of receipt of Celsius' letter. On April 19, 2023,[14] Mr. Carter-Silk responded to a further email inquiry from Celsius by indicating "we anticipate being able to respond [to Celsius April 17 letter] by Monday." On April 24, 2023,[15] however, rather than respond to Celsius standstill overture, Mr. Carter-Silk emailed a letter to Celsius' counsel announcing that StakeHound had preemptively filed arbitration against Celsius in Switzerland, in rank violation of the automatic stay.

9.      On April 25, 2023,[16] the Swiss Arbitration Centre ("SAC") emailed a letter and attachments to Celsius' counsel, and to StakeHound's Swiss counsel at the Schellenberg Wittmer ("SW") firm. The email included a notice of arbitration signed by the SW firm, which effectively seeks a declaration that the claims Celsius previously had asserted in email correspondence with StakeHound, and that Celsius since has alleged in its complaint, are without merit. In the notice, the SW firm identified email addresses for three of its lawyers, and instructed that any related

---

[10] *See* Hurley Decl. Ex. C.
[11] *See* Hurley Decl. Ex. D.
[12] *See* Hurley Decl. Ex. E.
[13] *See* Hurley Decl. Ex. F.
[14] *See* Hurley Decl. Ex. G.
[15] *See* Hurley Decl. Ex. H.
[16] *See* Hurley Decl. Ex. I.

5

"correspondence" and "notices . . . should be sent to the (electronic) address(es) set out . . . above, which are valid addresses for service for the purposes of this arbitration." SW also acknowledged "correspondence leading up to the dispute and exchanged prior to this notice of arbitration" and provided the email address for Celsius' counsel.

10. On May 1, 2023,[17] Celsius emailed the SW firm at the email addresses they designated to demand withdrawal of the arbitration as a violation of the automatic stay. Neither SW nor StakeHound bothered to respond. On May 25, 2023,[18] Celsius filed via email an Answer to the Notice of Arbitration solely to assert that the arbitration constituted a violation of the automatic stay applicable in those Chapter 11 Cases. Since Celsius' answer, StakeHound has continued to correspond with Celsius and the SAC concerning this matter via email through StakeHound's counsel, including to make arguments concerning the pendency and alleged (in)significance of this bankruptcy.

11. In a final attempt to stave off expensive and time-consuming cross-border litigation, a Celsius executive reached out directly to Mr. Castellana via Whatsapp on or around July 3, 2023 to urge a standstill and negotiation. In reply, Mr. Castellana advised that Celsius' U.S. counsel should contact StakeHound's U.S. counsel, Stephanie Wickouski, a bankruptcy lawyer in the New York City office of Locke Lord. On July 5, 2023,[19] Celsius' counsel emailed Ms. Wickouski to again propose a standstill and negotiation period, and requesting an answer by July 7, 2023. Ms. Wickouski emailed back on July 6, 2023,[20] advising that she would "provide a further response once I have had a chance to discuss with StakeHound." On July 7, 2023, Ms. Wickouski

---

[17] *See* Hurley Decl. Ex. J.
[18] *See* Hurley Decl. Ex. K.
[19] *See* Hurley Decl. Ex. L.
[20] *See* Hurley Decl. Ex. M.

6

telephoned Celsius' counsel and advised that she did not yet have an answer to Celsius' inquiry, but would discuss it with StakeHound. Celsius' counsel advised that, absent agreement, Celsius needed urgently to prosecute its claim for a violation of the automatic stay. Ms. Wickouski asked Celsius' counsel to provide her notice in advance if Celsius planned on filing anything.

12. On Monday, July 10, 2023,[21] StakeHound's Swiss counsel emailed Celsius' counsel in a manner indicating that StakeHound intended to proceed with the arbitration rather than enter into a standstill. On Monday, July 11, 2023,[22] consistent with Ms. Wickouski's request, Celsius' counsel emailed her brief advance notice that Celsius was filing the Complaint, using the same email address Ms. Wickouski previously had used to communicate with Celsius concerning this matter. Later on July 11, 2023, Celsius filed its Complaint. On July 12, 2023,[23] Celsius' counsel emailed a copy of the as-filed Complaint to Ms. Wickouski and asked whether she would accept service of the Complaint. Ms. Wickouski emailed back that StakeHound had not authorized her to do so.[24] The Court issued the summons with notice on July 13, 2023. Later that evening, Celsius emailed the summons with notice and Complaint to each of the attorneys at the SW firm[25] and Mr. Carter-Silk[26] at the email addresses they previously used to communicate with Celsius concerning the matters addressed in the Complaint, and asked whether they would accept service. Each ignored Celsius' email. The same evening, Celsius also emailed a copy of the summons with notice and Complaint to Ms. Wickouski.[27]

---

[21] *See* Hurley Decl. Ex. N.
[22] *See* Hurley Decl. Ex. O.
[23] *See* Hurley Decl. Ex. P.
[24] *See* Hurley Decl. Ex. Q.
[25] *See* Hurley Decl. Ex. R.
[26] *See* Hurley Decl. Ex. S.
[27] *See* Hurley Decl. Ex. T.

7

13. The Plaintiff has contacted multiple process servers regarding the anticipated timeframe for effecting service via the Hague Convention. The estimates for service via the Hague Convention from these process servers range from 3–6 months.

## ARGUMENT

14. Prompt action is required to remedy StakeHound's continuing, open violation of the automatic stay in the Chapter 11 Cases, and to ensure that the substantial amount of Celsius' property currently in StakeHound's possession and control is not dissipated during the pendency of the Chapter 11 Cases. Service through the Hague Convention could take as long as 6 months, at substantial expense to Celsius' creditors and, as discussed elsewhere, would in no way enhance the likelihood that actual notice of this action is provided to StakeHound. This truly is a case where "service via the Hague convention would be a pointless and lengthy exercise [and] an order of alternative service is justified." *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012).

### A. Service on StakeHound Through Email to Its CEO and Counsel Comports with Due Process and Is Not Prohibited by International Law

15. Federal Rule of Civil Procedure 4(h)—applicable here pursuant to Bankruptcy Rule 7004(a)—governs service of process made on a foreign corporation, partnership, or other unincorporated association and allows service "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery." *See* Fed. R. Civ. P. 4(h). Rule 4(f) in turn provides three alternative methods for effecting service, including in Rule 4(f)(3) "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).

16. To be permissible under Federal Rule of Civil Procedure 4(f)(3), the method of alternative service must comport with constitutional notions of due process and must not be prohibited by international agreement. *See Grp. One Ltd. v. GTE GMBH*, 523 F. Supp. 3d 323, 342

8

(E.D.N.Y. 2021) ("Under [Rule 4(f)(3), a [c]ourt may fashion means of service on an individual in a foreign country, so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." (internal quotation marks and citation omitted)).  Service by email under the circumstances here is reasonably calculated to put StakeHound on notice in accordance with due process standards, is not prohibited by international agreement, and is therefore an appropriate means of alternative service in this case.

17.    Service by email to StakeHound's CEO and StakeHonud Counsel comports with due process as it is reasonably calculated to provide StakeHound with actual notice of the Adversary Proceeding and an opportunity to be heard in response and is particularly appropriate here because the parties have communicated over the property at issue in the Complaint via email—the method of communication that was expressly contemplated by the agreements between the parties—for months, including with StakeHound's CEO and each of the three law firms representing StakeHound in this matter.

18.    "[T]he Constitution itself does not specify or require any particular means of service of process, only that the method be reasonably calculated to provide notice and an opportunity to respond." *Philip Morris Inc. v. Veles Ltd.*, No. 06 Civ. 2988, 2007 WL 725412, at *2 (S.D.N.Y. 2007).  Accordingly, to satisfy due process, a method of service need only be "reasonably calculated, under all the circumstances, to give actual notice to the party whose interests are to be affected by the suit or proceeding, and to afford him an adequate opportunity to be heard; and the practicalities in a given case are a factor in determining whether constitutional requirements have been satisfied." *Levin v. Ruby Trading Corp.*, 248 F. Supp. 537, 540-541 (S.D.N.Y. 1965); *see also Luessenhop v. Clinton Cty., N.Y.*, 466 F.3d 259, 269 (2d Cir. 2006).

9

19. To make this showing with respect to service by email, "the moving party must provide some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address. . . . And where a party seeks permission to serve a foreign person's attorney, due process requires that the moving party show adequate communication between the individual and the attorney." *Equipav S.A. Pavimentacao, Engenharia e Comercia Ltda. v. Bertin*, No. 22 CIV. 4594 (PGG), 2022 WL 2758417, at *2 (S.D.N.Y. July 14, 2022).

20. That showing is easily made here. Celsius and its counsel, and StakeHound and StakeHound Counsel, have repeatedly communicated via email; emails sent to StakeHound have been answered by StakeHound Counsel, indicating close coordination between StakeHound and its counsel; counsel for Celsius and StakeHound have exchanged emails concerning the disputes at issue in this case for months; and StakeHound has utilized email for service in connection with the void arbitration proceedings in Switzerland. There is thus no question that StakeHound will receive the Complaint if served by email on StakeHound and StakeHound Counsel. *See, e.g.*, *Grp. One Ltd.*, 523 F. Supp. 3d at 345 (service on defendants by email comported with due process "because [d]efendants communicated directly with [p]laintiff's counsel concerning anticipated or pending patent infringement litigation on prior occasions via email . . . and received adequate notice of this litigation via email"); *see also Nat'l Cas. Co. v. W. Express, Inc.*, No. CIV-15-1222-R, 2017 WL 2241536, at *3 (W.D. Okla. May 22, 2017) ("To the extent Defendant's counsel complains that Plaintiff effected service via email, the communications between the parties indicate that counsel agreed to this method.").

21. Indeed, StakeHound expressly agreed to receive notices related to this matter by email in the agreements governing the assets in dispute here, which courts have found supports

10

alternative service. *See, e.g.*, *Ryder Truck Rental, Inc. v. Chanje Energy, Inc.*, No. 21-CV-21044-JLK, 2021 WL 9565825, at *1 (S.D. Fla. Aug. 8, 2021). For example, in *Ryder*, plaintiffs sued defendant-guarantor on a debt owed under two promissory notes. In language almost identical to that in the SSA and RSA here, the promissory notes permitted notice by email and provided that "[a]ll **notices, requests, or other communications required or permitted to be delivered hereunder** shall be delivered in writing" and proceeded to list addresses and emails of the defendant-guarantor. *Compare id.* with SSA § 8.2 ("Any **notice or communication required or permitted under this Agreement** shall be sufficiently given if delivered in person or by registered mail . . . or by email.") and RSA § 8.2 ("**Any notice or communication required or permitted under this Agreement** shall be sufficiently given if delivered in person or by email to the relevant Party's contact person."). The *Ryder* court held that "[b]ased on the demonstrated delays in effecting service via the Hague Convention and the existence of an agreement between the Parties that contemplates the receipt of notice via e-mail, the Court finds that service via e-mail is warranted and reasonably calculated to give Defendant FDG notice of the pendency of this action." *Id.* at *3.

22. Further, service by email is not prohibited by international law. While Switzerland—where Celsius understands that StakeHound is located—has objected to Article 10 of the Hague Convention regarding service by "postal channels," that does not prohibit service by email or other electronic means. Article 10 says nothing about email, and the majority of courts in this district have held that a country's objection to Article 10 does not prohibit means of service not specifically enumerated in the Article. *See, e.g.*, *Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd.*, 312 F.R.D. 329, 331 (S.D.N.Y. 2015) (declining "to extend countries' objections to specific forms of service permitted by Article 10 of the Hague Convention, such as postal mail, to service

11

by other alternative means, including email"); *Grp. One Ltd.*, 523 F. Supp. 3d at 342-43 ("Courts in the Second Circuit have generally found that email is not a postal channel and that service by email is authorized if the signatory country has not explicitly objected to service by electronic means."); *In re Bibox Grp. Holdings Ltd. Sec. Litig.*, No. 20-CV-2807 (DLC), 2020 WL 4586819, at *3 (S.D.N.Y. Aug. 10, 2020) (permitting service via email notwithstanding China's objection under Article 10); *F.T.C. v. PCCare247 Inc.*, No. 12 CIV. 7189 PAE, 2013 WL 841037, at *5 (S.D.N.Y. Mar. 7, 2013) (permitting service via email notwithstanding India's objection under Article 10); *see also Williams-Sonoma Inc. v. Friendfinder Inc.*, No. C06-06572 JSW, 2007 WL 1140639, at *1 (N.D. Cal. Apr. 17, 2007) (permitting service by email to defendants in Switzerland but not permitting service via mail given Article 10 objections).

23.     As to serving StakeHound via its U.S. counsel, the overwhelming majority of decisions in the Southern District of New York hold that service on a defendant located abroad via U.S. based counsel is permitted under Federal Rule of Civil Procedure 4(f)(3). *See United States v. Mrvic*, No. 1:21-CV-8792 (JLR), 2023 WL 375223, at *2 (S.D.N.Y. Jan. 24, 2023) (collecting cases); *see also Zanghi v. Ritella*, No. 19 CIV. 5830 (NRB), 2020 WL 6946512, at *3 (S.D.N.Y. Nov. 25, 2020) ("[C]ourts ***commonly approve service on a foreign defendant's U.S. counsel*** under Rule 4(f)(3)") (emphasis added). It is not necessary that StakeHound's U.S. counsel be explicitly (or implicitly) authorized by StakeHound to accept service on behalf of StakeHound, as it is "assumed" that as "officers of the court . . . they would comport with a Court directive to provide information to [a] Defendant." *Mrvic*, at *4.

24.     In short, there can be no serious doubt that the alternative means of service proposed by Celsius will provide StakeHound notice of, and a reasonable opportunity to respond to, the Complaint.

12

**B.     Alternative Service Is Appropriate Under Rule 4(f)(3) For Service of StakeHound and StakeHound Counsel in the First Instance and Without Requiring Prior Exhaustion of the Hague Convention**

25.     While service by alternative means is the last of the three listed methods for service of foreign defendants, courts in this district "have repeatedly recognized that there is no hierarchy among the subsections in Rule 4(f)." *In re GLG*, 287 F.R.D. at 265 (recognizing that "nothing in Rule 4(f) itself or controlling case law suggests that a court must always require a litigant to first exhaust the potential service under the Hague Convention before granting an order permitting alternative service under Rule 4(f)(3)") (citation omitted); *accord Swarna v. Al-Awadi*, 2007 WL 2815605, at *1 (S.D.N.Y. Sept. 20, 2007); *Crockett v. Luitpold Pharms., Inc.*, No. 19-276, 2020 WL 4039046, at *2 (E.D. Pa. July 17, 2020) ("Rule 4(f)(3) is an equally valid method for service as Rule 4(f)(1) [authorizing service under the Hague Convention]."). Service "under Rule 4(f)(3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *F.T.C. v. PCCare247 Inc.*, No. 12 CIV. 7189 PAE, 2013 WL 841037, at *2 (S.D.N.Y. Mar. 7, 2013).

26.     Under circumstances different than those presented here, some courts in this district have required a "prior diligent attempt" to effect personal service before authorizing service by alternative means. And even then, "the caselaw in this district is not entirely consistent in imposing this requirement, and other cases have found that it is not necessary to show prior attempts at standard service before seeking court approval." *In re Three Arrows Cap., Ltd.*, 647 B.R. 440, 454 (Bankr. S.D.N.Y. 2022). Thus, ultimately, "whether prior diligent attempts are required will depend on the circumstances of each case and the reasons why alternative service is sought." *Id.*; *see also, e.g.*, *In re GLG*, 287 F.R.D. at 266 (concluding prior efforts to serve under the Hague Convention were not required in part based on concerns "that the length of time required for service

13

under the Hague Convention, approximately six to eight months . . . [could] unnecessarily delay [the] case").

27. Notably, in this action Celsius seeks a temporary and permanent injunction (among other relief), and Celsius intends to move promptly for a provisional order in connection with StakeHound's stay violation, and an order freezing in place the very substantial Celsius assets still wrongfully controlled by StakeHound. Delaying such motion practice for the many months that would be required to effect Hague service could easily render it moot, and deny Celsius a remedy for StakeHound's open and continuing violations of the Bankruptcy Code and the parties' agreements. These are precisely the sort of "circumstances that make it extremely important that service be effected promptly and the matter go forward" without first requiring an attempt at time-consuming Hauge service. *See Jacobs v. Terpitz (In re Dewey & Lebouef)*, Case No. 14-01991-mg (S.D.N.Y.), Transcript of Hearing of August 18, 2014 [ECF No. 12], 31:5–7; *see also Suntech Power Holdings Co. v. Shenzhen Xintian Solar Tech. Co.*, No. 08-CV-01582 H (NLS), 2008 WL 11337501, at *1 (S.D. Cal. Sept. 12, 2008) (permitting plaintiff to serve Hongkonger defendant via email, facisimile, and Federal Express in the first instance without requiring prior attempts due to the fact that the three-month estimate for effectuating service via the Hague Convention would be too late to prevent harm caused by alleged patent infringement).

28. Further, service by email is particularly appropriate in the first instance, without requiring previous attempts, when the defendant operates an entirely online business, as is the case here. *See ZURU Inc. v. Individuals, P'ships & Unincorp. Assocs. Identified on Schedule "A"*, No. 1:23-CV-01852-ER, 2023 WL 2432477, at *3 (S.D.N.Y. Mar. 9, 2023) (finding that a prior attempt at service was not required and explaining that "given that the Defendants operate via the

14

Internet and rely on electronic communications for the operation of their businesses, email is the most likely means of communication to reach Defendants").

29. Alternative service in the first instance is both appropriate and necessary here to protect Celsius from the cost and delay of attempting service through the Hague Convention given StakeHound's willful and continuing violation of the automatic stay in connection with the arbitral proceedings in Switzerland. Were Celsius required to wait several or even just a few months[28] to first attempt service under the Hague Convention, the arbitration will continue, requiring Celsius to continue to incur significant costs and damages defending itself in those proceedings, frustrating Celsius' ability to enforce and uphold the automatic stay and risking inconsistent results.[29] *Cf. Nexon Korea Corp. v. Ironmace Co.*, No. C23-576-MLP, 2023 WL 3599548, at *2 (W.D. Wash. May 23, 2023) (authorizing service of foreign defendant's U.S. counsel under Rule 4(f)(3) when plaintiffs credibly alleged that service in South Korea under the Hague Convention would not be completed in time to prevent harm caused by alleged copyright infringement).

30. Under these circumstances, prior efforts to effect service under the Hague Convention should not be required, and Celsius should be permitted to proceed immediately by alternative means as allowed under the express terms of Federal Rule of Civil Procedure 4(f)(3).

## CONCLUSION

31. For the reasons set forth in greater detail above, Celsius respectfully requests that this Court grant the Motion and enter an order permitting alternative service of the Complaint by

---

[28] Effecting service of process via the Hague Convention in Switzerland can take as long as six months, more than enough time for StakeHound to dissipate Celsius' assets, particularly in light of the "heightened risk of asset dissipation" associated with cryptocurrencies, and work further mischief through its void arbitration. *See Fed. Trade Comm'n v. Dluca*, No. 0:18-cv-60379-RKA, 2018 WL 1830800, at *2–3 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, No. 0:18-cv-60379-KMM, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018); *see also Jacobo v. Doe*, No. 1:22-cv-00672-DAD-BAK(BAM), 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022).

[29] As explained above, Celsius' U.S. counsel indicated that StakeHound instructed here not to accept service voluntarily. StakeHound's U.K. and Swiss counsel both have ignored Celsius' inquiry into whether either firm would accept service.

15

email to StakeHound and StakeHound Counsel pursuant to Federal Rule of Civil Procedure (4)(f)(3).

Dated:    July 19, 2023
           New York, New York

           AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Mitchell P. Hurley*
Mitchell P. Hurley
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
mhurley@akingump.com
dchapman@akingump.com

Elizabeth D. Scott (admitted *pro hac vice*)
Nicholas R. Lombardi (admitted *pro hac vice*)
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
edscott@akingump.com
nlombardi@akingump.com

*Special Litigation Counsel for Debtors and Plaintiff Celsius Network Limited*

16