# EXHIBIT D

**REDACTED**

**From:** Alexander Carter-Silk <acarter-silk@keystonelaw.co.uk>
**Sent:** Tuesday, April 11, 2023 2:28 PM
**To:** Hurley, Mitchell <mhurley@AkinGump.com>
**Subject:** 2023-04-11 LETTER TO AIKEN GUMP STAKEHOUND SA REF CELSIUS

**\*\*EXTERNAL Email\*\***

Dear Mr Hurley

Please find attached our response to your letter is

*Kindest Regards*

*Alex*

Technology; Digital Commerce; Creative Industries
LINKED IN PROFILE

**Alexander Carter-Silk** | **Consultant Solicitor**
*Recognised by The Legal 500 2023 for Intellectual Property*

**t:** +44 (0)20 3319 3700 | **m:** +44 (0)7502 348153
48 Chancery Lane, London WC2A 1JF, United Kingdom



CarbonNeutral.com

# KEYSTONE LAW



Keystone Law is a trading name of Keystone Law Limited, a company authorised and regulated by the Solicitors Regulation Authority with its registered office at First Floor, 48 Chancery Lane, London WC2A 1JF, United Kingdom. Company number: 4650763. VAT number: GB 200 7302 72. SRA number: 400999. A list of its directors is open to inspection at its registered office. Keystone Law Limited provides its services under these terms and purchases services subject to these additional terms. This email and the information it contains are confidential and may be privileged. If you have received this email in error, please notify us immediately and refrain from disclosing its contents to any other person. This email has been checked for potential computer viruses using technology supplied by Mimecast. Keystone Law does not accept service of documents by email. The title 'Partner' is a professional title only. Our Partners are not partners in the legal sense. They are not liable for the debts, liabilities or obligations, nor are they involved in the management of any entity in our international network.

# KEYSTONE LAW

48 Chancery Lane | DX 193 Chancery Ln | 🐦 @keystone_law
London WC2A 1JF | t +44 (0)20 3319 3700 | enquiries@keystonelaw.co.uk
United Kingdom | f +44 (0)845 458 9398 | www.keystonelaw.co.uk

Mitchell P Hurley
Akin Gump
Strauss Hauer & Feld LLP
One Bryant Park
New York
New York
USA

Your ref:  Mitchell P Hurley
Our ref: acs/

acarter-silk@keystonelaw.co.uk

11 April 2023

Dear Aitken Gump,

**Re:  CELSIUS NETWORK LIMITED;  STAKING SERVICES AGREEMENT**

We acknowledge receipt of your letter dated April 10, 2023, responding to our letter (apparently) of 15th November 2022. You now, over 6 months later, accuse us of *"wilfully misconstruing"* your client's letter of 23rd October 2022,

Despite an offer to discuss how the best outcome could be achieved for all concerned, you waited for some 6 months until the eve of the Ethereum unlock event without responding or raising any concerns. You then threatened our client with what you suggest are serious but unspecified consequences if our client did not agree to a broad range of issues by 12:00 EST.  As Monday 10th was Easter Monday and our client is resident in Switzerland, you provided less than one working day for a response. As a courtesy we and our client dropped other commitments to respond. We trust this behaviour will not be repeated.

There was absolutely no basis for making such pre-emptive and unfounded allegations at such short notice having waited for 6 months.

As to the loss of control of keys by your client, it is irrelevant, why or how or what your client has lost, mislaid, lost control of etc.  You appear to suggest that Celsius Network Limited,  ("CNL" )has lost control of certain keys, credentials or information which it undertook to protect (Clause 1.6.) that is not a matter for our client.

## Transfer Of ETH To Our Client's Wallet.

Our client has executed the initiation of transfers which will automatically execute. This process has additional security which is irreversible and extremely unlikely to be interceded by any third party.

## Termination;

The Staking services agreement terminates upon the vote to unlock (or at the latest on the unlock event).

Keystone Law is a trading name of Keystone Law Limited, a company authorised and regulated by the Solicitors Regulation Authority with its registered office at First Floor, 48 Chancery Lane, London WC2A 1JF, United Kingdom. Company number: 4650763. VAT number: GB 200 7302 72. SRA number: 400999. A list of the directors is available for inspection at the registered office.

In accordance with your request, our client has executed the transfer procedure, the Staking Services Agreement is now at an end. Clause 1.4 and Clause 1.5 and the instructions are irreversible.

## Transfer To Our Client's Wallet

We did not accept that your client is entitled to exchange its stETH for "the Assets".  You insisted that the ETH when unlocked should be transferred to our client's wallet which has been pre-emptively executed.

The Agreement defines "the Assets" as *the locked ETH plus the staking rewards which are to be transferred to its custodian* once transferred to our client's custodian your client's  right to "delivery up" (as you put it) under the Staking Service Agreement ceases, and the Agreement terminates.

Your client is now entitled, as with any other user, to exchange (*sic* all or part) of any stETH it owns (*upon availability)* against ETH *through Stakehound' s Platform" in accordance with the Stakehound Terms and Conditions.*

The entitlement to exchange on platform *on availability* is not an obligation on our client's to deliver up, but an entitlement for your client to request an exchange (if available). There is no right of redemption.

We are aware your client has been trading stETH on liquidity pools, and that it has been transferring tokens between wallets. We have no visibility over who owns or controls those tokens or what steps were taken to ensure that the tokens your client now possesses are not proceeds of crime etc, Liquidity pools provide no KYC/AML protection.

## Loss Of Parity

There has been a de facto loss of parity because of the loss of keys/seeds by Fireblocks, it is unfortunate, but it is one of the risks your client was aware of and accepted to secure the ability to trade an asset, whilst benefitting from the staking rewards in the locked tokens.

Your client was intimately involved with setting up the security protocols (indeed specified them), so it understands what that means. Your client was also involved with the discussions with Fireblocks, so it cannot now say it does not understand the relevance.

We remind your client of our Client's entitlement to suspend exchange of stETH.

> *"The Company may suspend an account or a transfer of StakedTokens temporarily and access to the Platform or stop any transaction immediately at any time, without notice, at its sole discretion."*

Our client legitimately suspended operation of the Platform and will continue with that suspension until all customers accept pro-rated exchange, or parity can be restored. As advised it is hoped that the action against Fireblocks will enable the latter to happen.

2



### Representational Tokens

Each stETH is a "representation" of an ETH, which means it emulates the nature, risks and characteristics, number and exchangeability of the underlying token, it can be no more and no less than the token it "represents".

The representative token cannot exist without the collateral native token, impairment of ETH is reflected by its counterpart.  Your client cannot claim available ETH when those ETH cannot be transferred because access to the parallel native token has been lost. That risk is one which your client accepted. (Acknowledgement and Assumption of Risks).

### Breaches of US bankruptcy code.

You allege "grave breaches", without setting out what terms, express or implied, of any contract, that might be engaged. You do not point to any legal or contractual obligation, statutory, or other provision, nor condescend to any facts which you alleged to have constituted, or which if they occur, would do so. Without more your allegations are unjustified, and inflammatory.

If you are proposing to base any action, however misconceived, on your letter, you would certainly need to explain what you believe constitutes irreparable harm. Our understanding is that this means a form of loss that could not be remedied by the payment of damages.

There is no suggestion that any assets would be put beyond reach, indeed it is the nature of the blockchain that you can see when any movement occurs.

### Jurisdiction

You omit any explanation as to how an agreement between a UK registered company with a Swiss company, which is expressly subject to Swiss law and Swiss arbitration, could give rise to an (unspecified) duty to a US company which is not a party to the Staking Services Agreement.

You reference (by implication) a company that is subject to the US bankruptcy code, which is strange because the Staking Services Agreement precludes any engagement with US citizens, (directly or indirectly) and excludes conflict of law's provisions?

### Using the Platform

When the operation of the Stakehound Platform is restored, your client will, upon satisfying all compliance obligations as regards identity and source of assets be able to make such exchanges as may be available in accordance with the terms and conditions of the Platform.

If your client (whoever that might be) wishes to exchange stETH our client will require evidence that it owns and controls the relevant wallets has full unencumbered legal and beneficial rights to exchange whatever stETH it controls, and wishes to exchange for ETH.

If an exchange of stETH were to fall within the purview of the US regulator and the scope of the SEC's current views as "securities" might be considered an investment contract, then additional considerations might apply. We understand that at a high level such contracts may be void under US law.

3



### The Fireblocks Claim

As a result of what our client asserts was a breach of contract and/or gross negligence by the security/custody provider Fireblocks, approx. 60% of the population of ETH tokens (which are represented by stETH) have been irretrievably lost, which means that a 1:1 exchange is not "*available*".

Without prejudice and without any admission of liability or waver, as of today, our client would be willing to consider (subject to contract) an exchange of 63,073.23 stETH at the rate of 0.4173ETH for one stETH.

That is to say on exchange our client will exchange 26,317.47 Eth in exchange for 63,073.23 stETH at which time all legal and beneficial title in 63,073.23 stETH will transfer to our client. This would be a one-off final exchange.

The Staking Services Agreement does not require the exchange to be at 1:1 merely that there is an exchange, against what is available.

Your client could, if it wished, wait and choose a later date for exchange when (assuming that action against Fireblocks is successful) a better exchange may be available.

Until the litigation with Fireblocks is concluded the operation of the Platform will remain suspended.

We have set out an entirely logical and structured response to what was a less than compelling demand. If you wish to engage with a reasonable discussion or engage the ADR process in the agreement our client will do so constructively, within the available economic parameters.

Given that there does not appear to be any impending threat or (unspecified ) irreparable harm and as you have taken 6 months to respond, only doing so on the eve of an event which has been publicly known about for many months, there would be no justification for pre-emptive action.

If that's what you were considering (you do not say this) you should place this letter before any tribunal that you choose to engage, together with all of the previous correspondence whereby, we, or our client attempted to open a dialogue.

It being our case that there is a binding choice of law and jurisdiction agreement. If you do intend to proceed other than in Switzerland, please advise by return in which case please be on notice we will advise our client to proceed to anti-suit such attempt.

All rights are reserved.

Yours faithfully

*Keystone Law*

**Keystone Law Limited**

4

5