Mitchell P. Hurley
Dean L. Chapman Jr.
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
mhurley@akingump.com
dchapman@akingump.com

Elizabeth D. Scott (admitted *pro hac vice*)
Nicholas R. Lombardi (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
edscott@akingump.com
nlombardi@akingump.com

*Special Litigation Counsel for Debtors and
Plaintiff Celsius Network Limited*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |
| CELSIUS NETWORK LIMITED, | |
| Plaintiff, | Adversary Proceeding |
| v. | No. 23-01138 (MG) |
| STAKEHOUND SA, | |
| Defendant. | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER
AUTHORIZING ALTERNATIVE SERVICE ON DEFENDANT STAKEHOUND SA
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The Debtors' service address in these Chapter 11 Cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**INTRODUCTION**

1.      The purpose of Rule 4's service requirement is to provide defendants with notice and an opportunity to respond to actions instituted against them.  There is no doubt the alternative service methods proposed by Celsius[2] satisfy those requirements where, as here, StakeHound is not only aware of the action but has already appeared through U.S. counsel, including in opposition to this very motion.

2.      According to StakeHound, service on a Swiss company via email to StakeHound's Spanish CEO and co-founder is barred by the Hague Convention.  But that argument stands on a predicate that has been rejected by countless cases in this Circuit and beyond:  that a nation's objection to Article 10 of the Hague Convention constitutes an objection to service by email, not just to service through "postal channels" as referenced in the Article.  ***Critically, moreover, even if the Court were to accept that predicate, service on StakeHound's U.S. counsel still would be appropriate under Rule 4(f)(3).***  As the United States Supreme Court has held, service on a foreign party through its domestic agent does not implicate the Hague Convention at all, since the plaintiff is not required to transmit documents abroad to effect service.  Hence, such service is not, and cannot be, "forbidden" by the Hague Convention or any other "international agreement" within the meaning of Rule 4(f)(3).  In its opposition, StakeHound does not so much as mention Celsius' request to complete service by email to StakeHound's U.S. counsel, all but conceding that such service is permissible under Rule 4(f)(3).

3.      Nor must Celsius first undertake the three to six month process that would be required to invoke the power of this Court by service through the Hague convention.  Service under Rule 4(f)(3) is neither a last resort nor extraordinary relief, but rather it is committed to the sound

---

[2] Capitalized terms undefined herein have the meaning ascribed to them in the Motion [ECF No. 9].

1

discretion of the trial court, as countless decisions within this Circuit have found. And even courts that generally prefer a plaintiff first to undertake service via the Hague Convention recognize that, in some cases, alternative service should be authorized immediately.

4.   This is just such a case. It is undisputed that service via the Hague Convention could take three to six months. During that extended period of time, StakeHound would be in a position to take advantage of the blockchain to secrete and dissipate assets – worth $100 million or more – that Celsius provided to StakeHound, and that likely are the only assets that will be available to satisfy a Celsius judgment in this case. Notably, StakeHound has ignored or refused Celsius' repeated requests that StakeHound voluntarily forbear from secreting Celsius' assets while this matter is pending. In addition, StakeHound would be permitted to continue for months its rank, willful violation of the automatic stay. These are precisely the kind of exigent circumstances that warrant the Court exercising its (undoubted) discretion to authorize alternative service via email, particularly where, as here, such service is *guaranteed* to provide notice to StakeHound, including through its U.S.-based counsel. Celsius respectfully requests that the Court do so, which will enable Celsius to seek appropriate provisional relief on a timely basis.

## ARGUMENT

### A. The Hague Convention Does Not Even Apply to One of the Methods of Service Proposed by Celsius: Delivery to StakeHound's U.S. Counsel

5.   Even if StakeHound were correct that the Hague Convention bars service of process by email to StakeHound's Spanish CEO and co-founder, Albert Castellano—and StakeHound is not correct, as discussed below—the Court still would have the discretion to authorize service by email to StakeHound's U.S. counsel, Locke Lord. The Hague Convention simply does not apply to service on a foreign defendant through delivery of papers in the U.S. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 701 (1988) (holding that service on foreign defendant

2

through its U.S. subsidiary does not require transmittal of a judicial document for service abroad, and "[t]herefore the Hague Service Convention does not apply"). That includes service on a foreign defendant's U.S. counsel. *See, e.g., In re One Apus Container Ship Incident on November 30, 2022*, No. 22 MD. 3028 (PAE), 2022 WL 17370122, at *2 (S.D.N.Y. Dec. 2, 2022) (authorizing service under FRCP 4(f)(3) on foreign defendant's U.S. counsel and holding that such service "'would not run afoul of the Hague Convention … [because] no documents would be transmitted abroad'") (modifications in original) (quoting *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012); *see*; *Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 80 (D.C. Cir. 2014) (notwithstanding Austria's objections (at the time) to all forms of service but letters rogatory, the district court could consider a motion under Rule 4(f)(3) to serve OPEC through its U.S. counsel under Rule 4(f)(3)).

6.       Numerous courts in this Circuit and elsewhere have reached the same conclusion, authorizing FRCP 4(f)(3) service on defendants located in nations that are Hague-signatories via their U.S. counsel. *See, e.g.*, *United States v. Mrvic*, No. 1:21-CV-8792 (JLR), 2023 WL 375223, at *2 (S.D.N.Y. Jan. 24, 2023) ("[T]he Hague Convention, to which Bosnia-Herzegovina is a party, does not prohibit service through a representative in the United States."); *see also Zanghi v. Ritella*, No. 19 CIV. 5830 (NRB), 2020 WL 6946512, at *3 (S.D.N.Y. Nov. 25, 2020) ("[C]ourts commonly approve service on a foreign defendant's U.S. counsel under Rule 4(f)(3)") (emphasis added); J*ian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013) (noting that service through U.S. counsel "is a common form of service ordered under Rule 4(f)(3)"); *Ehrenfeld v. Salim a Bin Mahfouz*, No. 04-cv-9641 (RCC), 2005 WL 696769, at *3 (S.D.N.Y. Mar. 23, 2005) (permitting service under Rule 4(f)(3) of U.S. counsel and U.K. counsel).

3

7. The fact that U.S. counsel has not agreed to accept service is irrelevant. Indeed, by definition, that is the circumstance in *every* case in which a court orders that service may be effected on U.S. counsel. "Instead, the question under Rule 4(f)(3) … is whether service on the United States counsel is 'reasonably calculated, under all the circumstances,'' to notify Defendant of the action." *Mrvic*, 2023 WL 375223, at *4 (citing *Fisher v. Petr Konchalovsky Found*., No. 15-cv-09831, 2016 WL 1047394, at *2 (S.D.N.Y. Mar. 10, 2016); *see also* ; *KPN B.V. v. Corcyra D.O.O.*, No. 08 Civ. 1549 (JGK), 2009 WL 690119, at *1 (S.D.N.Y. Mar. 16, 2009) (similar). Evidence of communications between the defendant and its U.S.-based counsel is sufficient to demonstrate the requisite likelihood of notice. *E.g., Paushok v. Ganbold*, 487 F. Supp. 3d 243, 246 n.3 (S.D.N.Y. 2020).

8. Here, there can be no doubt that service on Locke Lord in the U.S. will result in actual notice of the action to StakeHound, and indeed, has already. StakeHound retained Locke Lord to represent it in connection with Celsius' claims even before the Complaint was filed. At the direction of Celsius' CEO and founder, Celsius' counsel communicated with Locke Lord concerning this dispute on multiple occasions, by email and telephone, both before and after Celsius commenced this action. In response to an initial email from Celsius' counsel proposing a standstill agreement, Locke Lord replied: "Thank you for your email. I will provide a further response ***once I have had a chance to discuss with StakeHound.***" Hurley Decl. [ECF No. 10] Exs. L & M (emphasis added). During a telephone call the next day, StakeHound's U.S. counsel again indicated that she planned to speak to StakeHound concerning Celsius' claims. After Celsius filed the instant motion, Locke Lord contacted Celsius' counsel by email, which, after speaking with Lock Lord by telephone, agreed to extend StakeHound's deadline to respond to this motion.

4

9. And of course StakeHound's U.S. counsel has now appeared on StakeHound's behalf, and at its direction, a fact that guarantees notice to StakeHound by service on Locke Lord. *See, e.g., Mrvic*, 2023 WL 375223, at *2 (holding that, "as officers of the Court" it is "assumed" counsel "would comport with a Court directive to provide information to Defendant"). To be sure, this may put counsel in a "somewhat awkward position," since by "appearing on … defendant's behalf to contest service" counsel actually "facilitates service." *See Paushok v. Ganbold*, 487 F. Supp. 3d 243, 246 n.3 (S.D.N.Y. 2020). But that outcome is "compelled by the Federal Rules":

> The purpose of the service of process requirement is not to invite gamesmanship but rather to ensure that a defendant is notified of the pendency of the action and the consequences of failing to respond. When defense counsel appears, the Court may more easily assure itself of defendants' awareness of the action by permitting service upon those defendants through counsel. This should not discourage appearance. Defense counsel are generally better able to represent their clients' interests by appearing in an action than by evading service. Appearing is also consistent with attorneys' and their clients' duties to avoid expense and delay.

*Id.*. Here, as in *Paushok*, the Court can be certain that StakeHound already is aware of the pendency of this action, and will receive a copy of the Complaint (if it has not already) if served on U.S. counsel. *Id.* Alternative service via Locke Lord should be authorized accordingly.

**B. Email Service Through StakeHound's Spanish Co-Founder Is Not Prohibited by International Agreement**

10. Citing *Smart Study Co., Ltd. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1390 (S.D.N.Y. July 21, 2022), StakeHound argues that email service on StakeHound's Spanish Co-Founder and CEO is forbidden by international treaty because Switzerland's objection to Article 10 of the Hague Convention (permitting service by "postal channels") supposedly extends to service by email. But *Smart Study* involved service in China, not Switzerland, and was based on pronouncements by China's Supreme People's Court that *Smart Study* interpreted as indicating that *China's* objection to Article 10 encompassed service by email. *See id.* at 195 (citing guidance

5

provided to Chinese courts indicating view of the Supreme People's Court of China that an objection to service by mail under the Hague Convention should be presumed to include electronic service).

11. Virtually all of the other cases StakeHound characterizes as "following" *Smart Study* likewise involve service in China, and are based on statements by the Supreme People's Court. *Moonbug Ent. Ltd. v. www.blippimerch.com*, No. 23-CV-1384 (JHR), 2023 WL 2730107, at *4 (S.D.N.Y. Mar. 28, 2023); *Kyjen Co., LLC v. Individuals, Corps., Ltd. Liab. Co mpanies, Partnerships, & Unincorporated Associations Identified on Schedule A to Complaint*, No. 23 CIV. 612 (JHR), 2023 WL 2330429, at *1 (S.D.N.Y. Mar. 2, 2023); *Schluter Sys., L.P. v. Sanven Corp.*, No. 822CV155TJMCFH, 2023 WL 130888, at *2 (N.D.N.Y. Jan. 6, 2023); *Shenzhen Chengront Tech. Co. v. Besign Direct*, No. 1:22-CV-10281 (JLR), 2022 WL 17741496, at *2 (S.D.N.Y. Dec. 9, 2022). Here, by contrast, StakeHound has offered no evidence that Switzerland's objection to Article 10 regarding "postal channels" was intended to encompass service by email.

12. StakeHound appears to argue that *Smart Study*'s conclusion applies equally to all nations that object to Article 10 of the Hague Convention, including Switzerland. Even if that were true, it would not be binding on this Court. Not only would such a holding be *dicta,* it would be in conflict with holdings by many other district courts that have found just the opposite, including cases decided after both *Smart Study* and the Supreme Court's decision in *Water Splash*. *See, e.g.*, *Pearson Educ., Inc. v. Aggarwal*, No. 17-CV-203 (KMW), 2022 WL 3700142, at *5–6 (S.D.N.Y. Aug. 26, 2022) (granting to service via email to defendants in India despite India's objection to Article 10); *Makina v. Kimya Endustrisi A.S*, No. 22 CIV. 3933 (PGG), 2022 WL 3018243, at *3 (S.D.N.Y. July 29, 2022) (allowing service via email to defendants in Turkey despite Turkey's objection to Article 10); *see also Group One Ltd. v. GTE GmbH*, 523 F. Supp.

6

3d 323, 343 (E.D.N.Y. 2021) ("Courts in the Second Circuit have generally found that email is not a postal channel and that service by email is authorized if the signatory country has not explicitly objected to service by electronic means."). Indeed, some courts even disagree with *Smart Study's* conclusion as to service by email ***in China***. *ZURU Inc. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 1:23-CV-01852-ER, 2023 WL 2432477, at *2 (S.D.N.Y. Mar. 9, 2023) (holding that China's objection to Article 10 does not encompass email); *Viahart, L.L.C. v. GangPeng*, No. 21-40166, 2022 WL 445161, at *3 (5th Cir. Feb. 14, 2022) (same)

13.  Finally, StakeHound's reliance on Swiss Criminal Code, Art. 271 is misplaced. First, the provision cited by StakeHound appears to be inapplicable since, on information and belief, StakeHound's co-founder and CEO, Mr. Castellano, is citizen and resident of Spain, not Switzerland. *Compare* Opp. Br. at 9 (contending Swiss law prohibits service by email on "someone ***in*** Switzerland" (emphasis added)). Second, even if Mr. Castellano lived in Switzerland, such service would be permissible under U.S. law. "[A]s long as [service is] court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Swiss Criminal Code is not an international agreement, and therefore is immaterial under Rule 4(f)(3). *See Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, No. 17 CIV. 5553 (LGS), 2020 WL 7093592, at *5 (S.D.N.Y. Dec. 4, 2020) (noting that whether service conflicts with foreign law is "inapposite to the Rule 4(f)(3) inquiry," since Rule 4(f)(3) only requires that the service not conflict with an "international agreement"(quoting *Advanced Access Content Sys. Licensing Adm'r, LLC*, 2018 WL 4757939 at *8.)); *Payne v. McGettigan's Mgmt. Services LLC*, No. 19CV1517 (DLC), 2019

7

.
WL 6647804, at *1 (S.D.N.Y. Nov. 19, 2019) (same) (quoting *Freedom Watch, Inc. v. Org. of the Petrol. Exporting Countries*, 766 F.3d 74, 84 (D.C. Cir. 2014) (cleaned up))); *see also Williams Sonoma Inc. v. Friendfinder Inc.*, No. C06-06572 JSW, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007) (authorizing alternative service via email to a defendant in Switzerland).

### C. Immediate Authorization to Serve StakeHound Via Email is Warranted

14. StakeHound tacitly admits that service under the Hague Convention on StakeHound in Switzerland could take three to six months. Opp. Br. (*passim*) (not disputing Celsius' estimated time to complete Hague service).[3] Nor does StakeHound dispute that it could dissipate tens of millions of dollars' worth of Celsius' assets, and remain in open violation of the automatic stay, during that extended period if Celsius is required first to undertake Hague service before invoking the power of this Court.

15. But this circumstance is not "mandatory," as StakeHound contends. On the contrary, "a plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3). *See Pearson Educ., Inc. v. Aggarwal*, No. 17-CV-203 (KMW), 2022 WL 3700142, at *4 (S.D.N.Y. Aug. 26, 2022). "Service under subsection [4(f)](3) is 'neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant.'" *Advanced Aerofoil Techs., AG v. Todaro*, No. 11-CV-9505, 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012) (Carter, J.) (quoting *Rio Props., Inc.*, 284 F.3d at 1015); *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265 (S.D.N.Y. 2012) ("'court-directed service under Rule 4(f)(3) is as favored as service

---

[3] Although undisputed by StakeHound, Celsius provides herewith a declaration from a professional process server confirming that Hague Convention service on StakeHound in Switzerland likely would take three to six months. *See* Declaration of Maria J. Guitierrez dated July 31, 2023.

8

under Rule 4(f)(1)'") (quoting *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1015 (9th Cir. 2002)).

16.   Hence, the decision to allow alternative means of service is "'committed to the sound discretion of the district court'" based on the circumstances of the particular case. *See, e.g.*, *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. at 265 (quoting *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010)); *In re Three Arrows Cap., Ltd.*, 647 B.R. 440, 454 (Bank. S.D.N.Y. 2022) (whether prior diligent attempts at service under the Hague Convention are required "will depend on the circumstances of each case and the reasons why alternative service is sought"). Where, as here, the circumstances "make it extremely important that service be effected promptly and the matter go forward," efforts to comply with the Hague Convention need not be exhausted prior to authorizing alternative service pursuant to Rule 4(f)(3). *See, e.g.*, *Jacobs v. Terpitz (In re Dewey & Lebouef)*, Case No. 14-01991-mg (S.D.N.Y.), Transcript of Hearing of August 18, 2014 [ECF No. 12], 31:5–7.[4]

17.   Celsius has an urgent need to effect service of process here. In the Arbitration Proceeding, StakeHound has taken the position not only that Celsius cannot redeem its ETH by tendering stETH for exchange on a one to one basis for Native ETH, but also that Celsius is entitled

---

[4] StakeHound argues that there is no "exigency exception" that permits service by a method prohibited by international agreement. This is a red herring. The service methods Celsius requests are ***not*** prohibited by international agreement, as discussed elsewhere. And exigent circumstances ***do*** justify authorizing immediate alternative service. Indeed, the advisory committee notes to Rule 4 provide expressly that "the court may direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement" in "cases of urgency," and courts have proceeded accordingly. *See* Fed. R. Civ. P. 4 advisory committee's note - 1993 amendment; *see also Suntech Power Holdings Co. v. Shenzhen Xintian Solar Tech. Co.*, No. 08-CV-01582 H (NLS), 2008 WL 11337501, at *1 (S.D. Cal. Sept. 12, 2008) (permitting plaintiff to serve without requiring prior attempts at Hague service, which could take three months, too long to prevent harm caused by alleged patent infringement); *In re One Apus Container Ship Incident on Nov. 30, 2022*, 2022 WL 17370122, at *2 (S.D.N.Y. Dec. 2, 2022) ("[T]he advisory notes [to Rule 4] suggest that in cases of 'urgency,' Rule 4(f)(3) may allow the district court to order a 'special method of service,' even if other methods remain incomplete or unattempted.") (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)). Even the cases StakeHound cites agree. *See RSM Prod. Corp. v. Fridman*, 06 CIV. 11512 (DLC), 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2004) (acknowledging that "Court-directed service pursuant to Rule 4(f)(3) may be justified under certain circumstances … such as when the Hague Service Convention methods do not permit service 'within the time required by the circumstances'") (citing Advisory Committee notes to Rule 4).

to the return of Native ETH only to the extent that it has the same dollar value as stETH.  Since stETH is effectively worthless, StakeHound argues, in substance, that it is entitled to keep all of Celsius' Native ETH, worth $50 million or more.  And StakeHound has never even tried to justify its refusal to turnover to Celsius the approximately $40 million worth of MATIC and DOT Celsius entrusted to StakeHound, despite Celsius' due demand.  Worryingly, StakeHound has refused to enter into a voluntary freezing and standstill pending resolution of the parties' disputes, suggesting that StakeHound may indeed plan to dissipate and secrete these assets – the only assets available to satisfy a Celsius judgment – absent injunctive relief.  *See Fed. Trade Comm'n v. Dluca*, No. 0:18-cv-60379-RKA, 2018 WL 1830800, at *2–3 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, No. 0:18-cv-60379-KMM, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018).  The three to six month delay that would be required to effect service via the Hague Convention would be too long to prevent the risk of harm threatened by StakeHound, which is imminent and irreparable.  Celsius should be allowed to serve its Complaint via email, so that it can seek appropriate provisional relief without further delay.

## CONCLUSION

18.    For the reasons set forth above and in its Motion, Celsius respectfully requests that the Court grant this Motion and enter an order permitting alternative service of the Complaint by email to StakeHound and StakeHound Counsel pursuant to Federal Rule of Civil Procedure (4)(f)(3), made applicable to this adversary proceeding under Federal Rule of Bankruptcy Procedure 7004.  In the alternative, Celsius respectfully requests that the Court grant its Motion in part and enter an order permitting alternative service of the Complaint by email to StakeHound's U.S. counsel pursuant to Federal Rule of Civil Procedure (4)(f)(3), made applicable to this adversary proceeding under Federal Rule of Bankruptcy Procedure 7004.

10

Dated: July 31, 2023
New York, New York

        AKIN GUMP STRAUSS HAUER & FELD LLP

        By: */s/ Mitchell P. Hurley*
            Mitchell P. Hurley
            Dean L. Chapman Jr.
            One Bryant Park
            New York, New York 10036
            Telephone: (212) 872-1000
            Facsimile: (212) 872-1002
            mhurley@akingump.com
            dchapman@akingump.com

            Elizabeth D. Scott (admitted *pro hac vice*)
            Nicholas R. Lombardi (admitted *pro hac vice*)
            2300 N. Field Street, Suite 1800
            Dallas, TX 75201
            Telephone: (214) 969-2800
            Facsimile: (214) 969-4343
            edscott@akingump.com
            nlombardi@akingump.com

            *Special Litigation Counsel for Debtors and Plaintiff Celsius Network Limited*