Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036

T    +1 212.872.1000
F    +1 212.872.1002
akingump.com



**Mitchell P. Hurley**
+1 212.872.1011/fax: +1 212.872.1002
mhurley@akingump.com

August 21, 2023

VIA EMAIL AND ECF

Honorable Martin Glenn
Chief United States Bankruptcy Judge
One Bowling Green
New York, New York 10004-1408
mg.chambers@nysb.uscourts.gov

Re:    *Celsius Network Limited v. StakeHound SA* (Adversary No. 23-01138 (MG))

Dear Chief Judge Glenn:

We represent Celsius Network Limited ("Celsius"). Pursuant to the Court's direction, we enclose herewith as Exhibit A, Celsius' proposed briefing and asset preservation stipulation, which Celsius submits should be adopted instead of the stipulation proposed by StakeHound in its Friday, August 18, 2023 letter to the Court (ECF No. 26).  In addition, pursuant to paragraph 44 of the Case Management Order and the individual practices of this Court, Celsius requests a telephonic conference to discuss scheduling a hearing on Celsius' request for a TRO in the event the parties cannot immediately agree on suitable asset preservation provisions during the proposed period for briefing their respective motions.  Notably, StakeHound advised in its August 18 letter that it will not honor the parties' existing asset preservation agreement after August 22, 2023.  *See* ECF No. 26.

Before discussing the parties' competing stipulations, we note that StakeHound did not engage in reasonable meet and confer efforts before filing its letter with the Court on Friday afternoon.  Remarkably, StakeHound sought the Court's intervention *just one minute and fifty-two seconds after providing Celsius with StakeHound's only substantive response to a scheduling and asset preservation proposal that Celsius made to StakeHound on Monday, August 14, 2003*.  This is not good faith conduct, nor is it consistent with this Court's rules.[1]

---

[1] A timeline and relevant correspondence establishing that StakeHound failed to engage in good faith negotiations concerning a proposed schedule and related discovery issues, and violated Rules 26 & 37 of the Federal Rules of Civil Procedure, is attached hereto as Exhibit H.



Honorable Martin Glenn
August 21, 2023
Page 2

        In any case, as discussed below, the stipulation Celsius proposes should be adopted rather than that proposed by StakeHound, and a near term date for hearing Celsius motion for a TRO should be scheduled.[2]

### 1. Consistent with prior proceedings, Celsius' stipulation requires StakeHound to advise the Swiss arbitrator that the arbitration should be suspended until further notice

        On August 18, 2023, the arbitrator acknowledged by email his receipt of a joint letter sent by the parties on August 11, 2023 requesting a cessation of activity in the arbitration until further notice. *See* Exs. D (August 11 letter) and E (August 18 email). The arbitrator "invite[d StakeHound] to confirm its agreement with the contents of [the August 11 joint letter] and invite[d] both Parties to clarify whether they request for the proceedings to be suspended and, if so, to specify until which date or which triggering event the requested suspension should be maintained."

        The arbitrator emailed the parties approximately one hour after StakeHound submitted its premature letter to the Court. Without prejudice to Celsius' right to seek further relief in connection with StakeHound's violation of the automatic stay, Celsius' proposed stipulation would require StakeHound to respond to the arbitrator as follows:

> Thank you for your inquiry. StakeHound agrees with the contents of the joint letter sent to you on August 11, 2023. The parties request for the proceedings to be suspended. The requested suspension should be maintained unless and until the parties provide the arbitrator with a further joint request that the arbitration, or some aspect of it, be resumed. The parties will keep the Swiss Arbitration Centre copied on all future correspondence, as requested.

*See* Ex. A ¶ 10 (Celsius' proposed stipulation).

### 2. The stipulation should provide for one motion by each party

        StakeHound's proposal, which provides multiple pre-answer motions for itself and no motion for Celsius, should be rejected. Rule 12(g)(2) provides expressly that "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Yet StakeHound

---

        [2] A TRO hearing would be unnecessary if the parties were promptly to agree to suitable asset preservation and other provisional measures before StakeHound's commitment to the parties' existing agreement lapses tomorrow.



Honorable Martin Glenn
August 21, 2023
Page 3

proposes to (i) split its motion to compel arbitration, and its motion to dismiss for lack of personal jurisdiction into two separate motions (80 pages of opening briefs alone), **and** (ii) reserve its rights after those Rule 12 motions are briefed and decided to assert still more motions to dismiss via Rule 12. *See* ECF No. 26-1 ("Def. Prop. Stip.") at ¶ 3. Such wasteful, seriatim pre-answer motion practice is forbidden by the rules, and should not be allowed here.[3]

Moreover, Celsius has the right to file a preliminary injunction motion, and made clear at prior hearings in this case that it plans to do so. *See e.g.*, Aug. 2 Hearing Tr. 19:10-20:8. *See* Exhibit B (attaching Aug. 2, 2023 hearing transcript excerpts) & Exhibit C (attaching Aug. 7, 2023 hearing transcript excerpts). Yet StakeHound did not build into its schedule any time for briefing Celsius' motion, which will seek stay relief related to the arbitration, as well as a freezing order. Celsius' briefing must proceed in parallel with StakeHound's, including because the relief sought will be required regardless of the outcome of StakeHound's argument concerning arbitrability. *See, e.g.*, *In re Try the World, Inc.*, 2021 WL 3502607, *16 (Aug. 9, 2021) (Garrity, J.) (finding certain claims arbitrable, but staying arbitration anyway because claims could "be rendered moot or abandoned by the Trustee" upon resolution by the bankruptcy court of related core claims); *see also* Article 29(5) of Swiss Rules Arbitration (by agreeing to arbitration, "parties do not waive any right that they may have . . . to submit a request for interim measures to a judicial authority" which "shall not be deemed incompatible with the Arbitration Agreement."); *Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*, No. 03 CIV. 4148 (WHP), 2003 WL 22909149, at *4 (S.D.N.Y. Dec. 10, 2003) (granting TRO and injunction preventing dilution of plaintiff's property during pendency of arbitration). In short, the relief sought by Celsius' motion will remain emergent no matter how Celsius' motion is decided, and it should be briefed and ready for decision on the same schedule.[4]

---

[3] StakeHound also apparently plans to contest this Court's personal jurisdiction, but only if the Court disagrees with StakeHound on its motion to compel. Celsius reserves its right to argue that StakeHound will forfeit any personal jurisdiction objection by affirmatively invoking the power of this Court before the issue of personal jurisdiction is joined and decided. *See, e.g.*, *Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 101 (2d Cir. 2016) ("'[W]hen a party seeks affirmative relief . . . it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter.'") (citation omitted). To the extent StakeHound wishes to file a pre-answer, pre-discovery motion, it should do as the Rules require, and assert (or waive) any defense on which it believes it can prevail on the pleadings in a single motion.

[4] Celsius proposes briefing the parties' motions on a contemporaneous schedule, with oppositions due 14 days after opening briefs, and replies due 7 days later, subject of course to further agreement of the parties or order of the Court.



Honorable Martin Glenn
August 21, 2023
Page 4

### 3. Assets provided by Celsius to StakeHound should be preserved during short briefing period, subject to notice and objection/consent process proposed by StakeHound

StakeHound is deeply insolvent.[5]  Celsius therefore seeks to ensure that the assets at issue in this litigation are not dissipated during the short period Celsius proposes for briefing and hearing StakeHound's pre-answer motion and Celsius' injunction motion.  As an initial matter, it is important to understand that virtually all of the assets in StakeHound's possession were provided to StakeHound by Celsius, *a fact that StakeHound does not dispute*.  For example, in the putative Swiss arbitration, StakeHound expressly alleges that Celsius "holds approx. [sic] 96% of the total supply of stETH," meaning that at least 96% of the native ETH currently held by StakeHound was supplied by Celsius.  *See* Ex. G (24 April 2023 Notice of Arbitration) at ¶ 21.  Upon information and belief 100% of the native MATIC and DOT currently held by StakeHound—worth around $40 million—was provided by Celsius.  StakeHound has never offered even a fanciful excuse for retaining the MATIC and DOT, despite Celsius' due demand for its return, and has tacitly conceded that Stakehound is simply holding that $40 million "hostage" to gain leverage in this litigation.  *See* Aug. 2 Hearing Tr. 30:3-24 (no attempt by StakeHound to justify withholding MATIC and DOT or rebut Celsius' on-the-record characterization of the withholding of MATIC and DOT as taking those assets "hostage").  While StakeHound has invented an excuse for retaining Celsius' ETH, its position cannot withstand even modest scrutiny.[6]

StakeHound nevertheless contends that an order preserving the MATIC, DOT and ETH at issue is unnecessary because, supposedly, there is no "evidence that any dissipation … is imminent."  ECF No. 26 at 2.  But in the very same letter, StakeHound indicates it plans to spend *as much as $1 million (at least) during the next "two to three weeks" alone – a rate of <u>at least</u> $400,000 per week*.  *Id.*  StakeHound claims these funds are necessary in part "to meet the ongoing operations of its business," but that is false.  *Id.*  Celsius noted on the record that StakeHound has no business or operations, without any attempt at contradiction by StakeHound.  *See* Aug. 2 Hearing Tr. 44:10-16; Aug. 7 Hearing Tr. 20:20-21:2.  Moreover, StakeHound expressly alleges

---

[5] As discussed below, the only assets StakeHound controls are those provided to it by Celsius—worth approximately $90 million—and StakeHound's debts to Celsius exceed at least $160 million.

[6] According to StakeHound, it need only return to Celsius native ETH with the same "value" as the stETH provided to Celsius.  *See* Ex. G at ¶ 29 (alleging that "if and when StakeHound has any obligation" to return Celsius' ETH, the exchange will "depend[] on the value of the relevant cryptocurrency, not the *number* of tokens") (emphasis in original).  The "value" of stTokens plunged to near zero after StakeHound (or its agent Fireblocks) lost the keys necessary to recover 35,000 native ETH supplied by Celsius, a catastrophe that StakeHound refers to as the "Key Management Event."  Hence, StakeHound argues that its loss of $70 million worth of Celsius' ETH should entitle it to keep another $50 million worth of Celsius ETH, resulting in a massive windfall for Albert Castellano, StakeHound's founder and Jason Stone crony.



Honorable Martin Glenn
August 21, 2023
Page 5

in the void arbitration that it shut down its operations in June 2021, so that it could focus exclusively on its litigation in Israel against Fireblocks:

> Due to the Key Management Incident, on 22 June 2021, StakeHound had to suspend the operation of the Platform in order to devote its full attention to the recovery of the loss.  In particular, in view of the severity of the Incident, StakeHound halted its liquid staking activities with immediate effect.

*See* Ex. G at ¶ 12.  A short freeze on dissipation of the assets at issue will not harm StakeHound's business, because StakeHound has no business.

Regarding legal fees, StakeHound's litigation against Fireblocks in Israel has been ongoing since October of 2021, yet StakeHound claims it has not used Celsius' principal coins to pay any associated fees during that nearly three-year period.  StakeHound's tacit assertion that it must spend $1 million worth of the tokens provided it by Celsius in the next two to three weeks is nonsensical.[7]  Celsius nevertheless is prepared to agree to the procedure proposed by StakeHound for authorizing urgent expenses to the extent they arise during the next few weeks, as described in paragraphs 5 and 6 of Celsius' proposed Stipulation, and paragraph 6 of StakeHound's proposal. This arrangement will both (i) ensure that the assets being wrongfully withheld by StakeHound— $40 million of which are not even disputed—will be available to satisfy a judgment, and (ii) provide an opportunity for notice, consent or a hearing regarding any expense StakeHound contends must urgently be satisfied during the short briefing period.[8]

---

[7] Among other things, lawyers are typically paid many weeks (and sometimes months) after services are rendered, as this Court is no doubt aware.

[8] Celsius will consider in good faith any request to release funds to pay legal fees, particularly (though not exclusively) in connection with the Israeli litigation, but does not concede that such a release is required.  *See Sec. & Exch. Comm'n v. Stone*, No. 22 CIV. 3553 (VM), 2022 WL 17326446, at *1 (S.D.N.Y. Oct. 7, 2022), *reconsideration denied*, No. 22 CIV. 3553 (VM), 2022 WL 17326394 (S.D.N.Y. Nov. 29, 2022) (to justify "unfreezing assets to pay for attorneys' fees . . . the defendant must establish that . . . there are sufficient funds to satisfy any disgorgement remedy that might be ordered . . . . Under this standard, defendants have been barred from utilizing frozen assets to pay legal fees associated with representation in a civil action when it is not clear whether the frozen assets exceed the SEC's request for damages or disgorgement.").



Honorable Martin Glenn
August 21, 2023
Page 6

**4. Celsius requests an urgent telephonic conference to discuss scheduling its TRO Motion**

If StakeHound will not agree to suitable terms concerning the void Swiss arbitration and asset preservation, a hearing on Celsius' TRO motion is urgently required.  StakeHound advised in its August 18, 2023 letter that it will not honor the existing anti-dissipation agreement beyond Tuesday, August 22, 2023, and StakeHound must promptly either agree, or be required, to (i) appropriately preserve the assets at issue and (ii) respond to the Swiss arbitrator's recent inquiry in a manner aimed at minimizing any further prejudice to Celsius based on StakeHound's violation of the automatic stay.  Celsius respectfully asks the Court to convene a telephonic conference promptly to schedule a hearing on Celsius' motion for a TRO as necessary.

Respectfully submitted,


*/s/ Mitchell P. Hurley*
Mitchell P. Hurley