# EXHIBIT B

Page 1

```
 1  UNITED STATES BANKRUPTCY COURT
 2  SOUTHERN DISTRICT OF NEW YORK
 3  Case No. 22-10964-mg
 4  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
 5  In the Matter of:
 6
 7  CELSIUS NETWORK LLC,
 8
 9          Debtor.
10  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
11  Adv. Case No. 23-01138-mg
12  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
13  CELSIUS NETWORK LIMITED,
14              Plaintiff,
15         v.
16  STAKEHOUND SA,
17
18              Defendant.
19  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
20              United States Bankruptcy Court
21              One Bowling Green
22              New York, NY  10004
23
24              August 2, 2023
25              11:03 AM
```

Page 2

1   B E F O R E :
2   HON MARTIN GLENN
3   U.S. BANKRUPTCY JUDGE
4
5   ECRO:   KS

Page 3

1  Adversary proceeding: 23-01138-mg Celsius Network Limited v.
2  StakeHound SA Hybrid
3  HEARING re Plaintiff Celsius Network Limiteds Motion for an
4  Order Authorizing Alternative Service on Defendant
5  StakeHound SA Pursuant to Federal Rule of Civil Procedure
6  4(f)(3). (Doc## 9, 10, 13, 15 to 19)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25  Transcribed by:  Sonya Ledanski Hyde

Page 4

```
 1  A P P E A R A N C E S :

 2

 3  LOCKE LORD LLP

 4        Attorneys for StakeHound SA

 5        Brookfield Place 200 Vesey Street, 20th Floor

 6        New York, NY 10281

 7

 8  BY:  MARY STEPHANIE WICKOUSKI

 9

10  AKIN GUMP STRAUSS HAUER FELD, LLP

11        Attorneys for the Debtor

12        One Bryant Park

13        New York, NY 10036

14

15  BY:  MITCHELL HURLEY

16

17

18

19

20

21

22

23

24

25
```

Page 19

1  of the automatic stay.  Some letters were exchanged on that
2  point.  The Swiss Arbitration Center said, we're going to
3  select an arbitrator, and that jurisdictional question will
4  be for that arbitrator to decide in the future.  That
5  arbitrator hasn't been selected yet.  We expect it could
6  happen any moment.  Once the arbitrator is --
7           THE COURT:  Tell me what their procedure for
8  selection of an arbitrator?  Does each side get to propose
9  an arbitrator?
10          MR. HURLEY:  So, under the agreement, we had an
11 opportunity for the parties to try to agree on arbitration -
12 - on an arbitrator within a set period of time.  That period
13 of time elapsed.  So it is now to the Swiss Arbitration
14 Center to select on their own an arbitrator.
15          Once that arbitrator is selected, Your Honor,
16 that's when Celsius is going to be faced with this Hobson's
17 choice of do we participate and risk waiving our rights with
18 respect to the automatic stay?  Or do we ignore it and risk
19 whatever might happen in Switzerland if we don't attend.
20 And that, in our view, is precisely why when a stay
21 violation has been identified, in almost all cases some kind
22 of injunctive relief follows to say, stop.
23          And again, Your Honor, here, all we're asking for
24 is the right to serve.  They'll have plenty of opportunities
25 to argue to Your Honor whatever they want about the stay,

1   whatever relief they might seek with respect to the stay.

2   Right now, all we want is the ability to serve the papers,

3   so in the event -- and we plan to come back to Your Honor

4   and seek provisional relief -- we can ask for it on a

5   schedule where by the time Your Honor it and makes a

6   decision, it won't be too late, because we had to make that

7   Hobson's choice with respect to whether you participate or

8   don't in the arbitration, for example.

9              THE COURT:  So does the Swiss Arbitration Center

10  rules specify a timing?  I mean, what are the steps?  So

11  there -- say now the , so there.  Say now the Arbitration

12  Center is to select a single arbitrator --

13             MR. HURLEY:  Correct.

14             THE COURT:  -- do the Swiss Arbitration Center

15  rules specify timing for, you know, a deadline for when the

16  arbitration is to be concluded, briefing, or whatever

17  submission of evidence?  What does the Swiss Arbitration

18  Center rules provide?

19             MR. HURLEY:  So it has detailed rules, of which I

20  have some familiarity but not encyclopedic, certainly.  My

21  understanding is that once the arbitrator is selected, the

22  next step would be the arbitrator would contact the parties

23  and seek to establish a schedule of the kind that you're

24  describing, seek to get information about --

25             THE COURT:  (indiscernible) submits proposed terms

1    irreparable harm for an injunction.  That's their position.

2    That's their legal position.  Yours is to the contrary.  l

3            MR. HURLEY:  One other fact.  After they filed

4    their demand for arbitration, we sent them a letter and

5    said, send us back our $40 million worth of MATIC and DOT.

6    There wasn't any loss of tokens.  There's never -- you know,

7    that they got this justification they claimed --

8            THE COURT:  Did they ever respond --

9            THE COURT:  -- that doesn't exist.  They never

10   responded.  I've talked to them on multiple occasions.

11   Nobody has ever offered me a single justification, other

12   than they're holding it hostage.  That's what we're dealing

13   with in this case is a situation where --

14           THE COURT:  The only thing that's holding you

15   hostage, I'd say, served by The Hague Convention.

16           MR. HURLEY:  My concern, Your Honor, is really --

17   it's for Celsius' customers.  I refer to it as Celsius

18   coins.  These are Celsius customers' coins.  Ninety --

19           THE COURT:  Well, you shouldn't have given them --

20   you shouldn't have transferred the stuff to them.  Look, the

21   fact --

22           MR. HURLEY:  Understood, Your Honor.

23           THE COURT:  -- that it's Celsius' customers' coins

24   doesn't mean that you get to bypass the rules.

25           MR. HURLEY:  It doesn't.  But we would like an

```
 1   fingertips before.
 2               I referenced a case where email service was
 3   allowed in Switzerland.  It's William-Sonoma v.
 4   Friendfinder.
 5               THE COURT:  I'm sorry.  Defendant's name?
 6               MR. HURLEY:  William-Sonoma v. Friendfinder, 2007
 7   WL 1140639.  And that's 2007, Judge Jeffrey White.  And you
 8   asked who the judge was in the Paushok case.
 9               THE COURT:  Yes.
10               MR. HURLEY:  That was Judge Rakoff.  One point I
11   wanted to make, you asked about StakeHound being allowed to
12   engage in assorted businesses.  StakeHound doesn't have any
13   business now.  They have suspended their platform.  They're
14   not doing anything other than they have this litigation
15   against Fireblocks in Israel.  That's all they're doing.
16   They don't have any operations.
17               So I just want to make sure I understand what --
18   where we've arrived here, Your Honor.  If I understand
19   correctly, you're suggesting that the parties should try by
20   Monday to reach agreement that involves its acceptance of
21   service.
22               THE COURT:  Acceptance of service, scheduling --
23               MR. HURLEY:  Freeze of the assets.
24               THE COURT:  -- and a motion to compel arbitration.
25               MR. HURLEY:  A briefing schedule and a freezing of
```