**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |
| CELSIUS NETWORK LIMITED, | |
| Plaintiff, | Adversary Proceeding No. 23-01138 (MG) |
| v. | **DECLARATION OF FELIX DASSER IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| STAKEHOUND SA, | |
| Defendant. | |

I, Felix Dasser, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a partner and the former head of the Litigation/Arbitration practice at Homburger, one of the largest Swiss law firms. Homburger advises companies and entrepreneurs on all aspects of commercial law. The firm's arbitration team has extensive experience representing clients in the field of internal commercial and investment arbitration.

2.      I obtained my LL.M. at Harvard Law School in 1990 and became an Adjunct Professor of Law ("*habil. Titularprofessor*") at the University of Zurich in 2005. I have practiced

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The Debtors' service address in these Chapter 11 Cases is 121 River Street, PH05, Hoboken, New Jersey (07030).

law for more than thirty years, and during that period, I have acted as counsel and arbitrator (including as sole arbitrator, co-arbitrator, and chairman) in more than 60 international commercial arbitration cases.  I am also the President of ASA, the Swiss Arbitration Association.  A true and correct copy of my Curriculum Vitae setting out of my professional qualifications and relevant experiences is attached to this declaration as Exhibit A.

3.      I have been asked by Akin Gump Strauss Hauer & Feld LLP ("Akin"), acting for Celsius Network Limited ("Celsius"), to provide an expert declaration on Swiss law in connection with Celsius' Motion for a Temporary Restraining Order and Preliminary Injunction.  Specifically, Akin has asked me to provide my expert opinion on: (i) how Swiss courts interpret contracts in connection with commercial disputes, and (ii) remedies for breach of contract under Swiss law.

A.   **Contract Interpretation under Swiss Law**

4.      Pursuant to Art. 18(1) of the Swiss Code of Obligations ("CO"), in order to determine the content of a contract, a Swiss court would first inquire about the existence of a real common intent of the parties ("meeting of the minds"), i.e. the question of what the parties actually wanted.[2]  This is a subjective test;  the parties' intent is determined based on their actual subjective intent.  If and to the extent that such an actual common intent of the parties can be proven and no specified form is required for the conclusion of a contract, such a subjective interpretation takes precedence over any oral statement or even any written instrument.

5.      Art. 18(1) CO on the interpretation of contracts reads as follows:[3]  "When assessing the form and terms of a contract, the true and common intention of the parties must be ascertained

---

[2]    Decisions of the Federal Tribunal [the Swiss Supreme Court] (**DFT**) 138 (2012) III 659, c. 4.2.1 p. 666; NICOLAS KUONEN, Swiss Law of Contracts, Geneva 2022, N 133; PETER GAUCH/WALTER R. SCHLUEP/JÖRG SCHMID/SUSAN EMMENEGGER, Schweizerisches Obligationenrecht Allgemeiner Teil, 11th edition, Zurich 2020, N 1200.

[3]    Unofficial translation by the Swiss Federal Office for Justice, available at <https://www.fedlex.admin.ch/eli/cc/27/317_321_377/en>.

without dwelling on any inexact expressions or designations they may have used either in error or by way of disguising the true nature of the agreement."

6.    In the event that no true and common intent of the parties can be established, a Swiss court would carry out an objective interpretation by applying the principle of trust (so-called *"principe de la confiance"* / *"Vertrauensprinzip"*).  Adopting the perspective of a fair and reasonable party, the court would consider how such a person could and had to understand the use of the words to be interpreted and the conduct of the parties in good faith.[4]

7.    Applying the principle of trust for an objective contract interpretation, a Swiss court would rely on different means of interpretation, in particular:[5]

- In general, the objective interpretation of a contract always starts with its wording. As a rule, a written declaration can be taken at face value. Furthermore, special technical terminology must be taken into account among specialists.

- As supplementary means of interpretation, particularly if the wording is not clear, the following factual circumstances may be taken into account:

  o the conduct of the parties prior to the conclusion of the contract.  In practice, the negotiation history is crucial: contract drafts, e-mails, conversations leading up to the execution of the contract, etc.;

  o the purpose of the contract and the interests of the parties;

  o place, time, and other circumstances surrounding the conclusion of the contract;

  o prior custom and usage between the parties.

8.    The objective interpretation of a contract in application of the principle of good

---

[4]  DFT 138 (2012) III 659, c. 4.2.1 p. 666; GAUCH/SCHLUEP/SCHMID/EMMENEGGER (fn. 1), N 1201; KUONEN (fn. 1), N 136.

[5]  GAUCH/SCHLUEP/SCHMID/EMMENEGGER (fn. 1), N 1205 ff.; KUONEN (fn. 1), N 134 f. and 137; DFT 133 (2007) III 61, consid. 2.2.1; DFT 131 (2005) III 606, c. 4.2; DFT 128 (2002) III 265, consid. 3a p. 267; cf. also DFT 132 (2006) III 460, consid. 4.3.

faith is carried out in accordance with certain rules by Swiss courts, in particular:[6]

- Interpretation must be made "ex tunc", i.e. the time at which the contract was entered into by the parties is decisive; later behavior of the parties is not relevant (it may, however, be relevant for determining a common intent of the parties under the subjective test);

- As a starting point for the interpretation, the wording of the contract is of central importance, but a purely grammatical interpretation is not permitted;

- Interpretation must consider the contract as a whole, i.e. a systematic and teleological interpretation must also be taken into account;

- Interpretation in accordance with the (default) legal rules must be preferred: if doubts arise, preference should be given to the meaning which corresponds to the (default) legal rules rather than to the meaning which departs from them;

- The principle of interpretation "*in favorem negotii*": the legal principle that a court should not interfere with the internal affairs of a business unless there is a compelling reason to do so);

- In some circumstances, in particular for general terms and conditions, the principle of interpretation "*in dubio contra stipulatorem*": the legal principle that where there is doubt or ambiguity about the meaning of the contract, the words of the contract will be construed against the drafter of the contract.

9.      By way of additional authority, a true and correct copy of an excerpt from a respected primer on Swiss Contract law by Nicolas Kuonen is attached hereto as Exhibit A.

**B.  Remedies for Breach of Contract under Swiss Law**

10.      According to the general rule of Art. 102(1) CO, where an obligation is due, the debtor is in default as soon as he receives a formal reminder from the creditor. For bilateral contracts and subject to contrary agreement by the parties, Art. 107(1) CO provides that where the debtor is in default, the creditor is entitled to set an appropriate time limit for subsequent performance or to ask the court to set such time limit. Pursuant to Art. 107(2) CO, if performance

---

[6]   GAUCH/SCHLUEP/SCHMID/EMMENEGGER (fn. 1), N 1222 ff.; KUONEN (fn. 1), N 138 ff.; DFT 131 (2005) III 606, c. 4.2; DFT 127 (2001) III 444, consid. 1b; Judgment of the Federal Tribunal 4A_627/2012, 4A_629/2012 of 9 April 2013, consid. 8.5.

has not been rendered by the end of that time limit, the creditor has the following three options: (1) he may compel performance of the primary obligation in addition to suing for damages in connection with the delay or, provided he makes an immediate declaration to this effect, (2) he may instead forego subsequent performance, thereby waive the right to the primary obligation and claim secondary obligations by either (i) claiming damages for non-performance (lost profits under the agreement, so-called "positive interest") or (ii) withdrawing from the contract altogether. Art. 107 CO reads as follows:

> [1] Where the obligor under a bilateral contract is in default, the obligee is entitled to set an appropriate time limit for subsequent performance or to ask the court to set such time limit.

> [2] If performance has not been rendered by the end of that time limit, the obligee may compel performance in addition to suing for damages in connection with the delay or, provided he makes an immediate declaration to this effect, he may instead forego subsequent performance and either claim damages for non-performance or withdraw from the contract altogether.[7]

11.    Thus, the primary remedy in case of breach of contract is specific performance, but the creditor has the option to choose damages as secondary obligations of the debtor.

I hereby solemnly declare that the foregoing is true and correct.

Executed on August 23, 2023

_____
FELIX DASSER

Official certification see reverse side

---

[7]    Unofficial    translation    by    the    Swiss    Federal    Office    for    Justice,    available    at <https://www.fedlex.admin.ch/eli/cc/27/317_321_377/en>.

## Official Certification

Seen for authentication of the reverse side signature of

Mr. **Prof. Dr. iur. Felix DASSER**, born 3rd May 1958, Swiss citizen of Thalwil und Herrliberg, according to his information residing at Rietliweg 80, 8704 Herrliberg, personally known to us.

The signature was acknowledged before us by an authorized third party.

This legalization refers only to the authentication of the signature and not to the contents or validity of the document.

Zürich, 23rd August 2023
BK no. 2806
Fee CHF 20.00

**NOTARIAT UNTERSTRASS-ZÜRICH**

Fiorenza Graf, certifying officer

---

**APOSTILLE**
(Convention de la Haye du 5 octobre 1961)

1. Land: Schweizerische Eidgenossenschaft, Kanton Zürich
   Country: Swiss Confederation, Canton of Zurich
   Diese öffentliche Urkunde / This public document

2. ist unterschrieben von
   has been signed by        Fiorenza Graf

3. in seiner Eigenschaft als
   acting in the capacity of  certifying officer

4. sie ist versehen mit dem Stempel/Siegel des (der) - bears the stamp/seal of
   Notariat Unterstrass-Zürich Kt. Zürich

5. In / at 8090 Zürich / Zurich          Bestätigt / Certified
6. am / the    23.08.2023

7. durch die Staatskanzlei des Kantons Zürich
   by the Chancellery of State of the Canton of Zurich

8. unter Nr. / under N°    1296440/2023

9. Stempel/Siegel Stamp/seal   10. Unterschrift / Signature

B. Capulong