**LOCKE LORD LLP**
Stephanie Wickouski
Jeffrey Kramer
Sean A. Feener
200 Vesey Street, 20th Floor
New York, New York 10281
Tel: (212) 415-8600
Fax: (212) 303-2754
swickouski@lockelord.com
jkramer@lockelord.com
sean.feener@lockelord.com

Jonathan W. Young (admitted *pro hac vice*)
111 Huntington Avenue, 9th Floor
Boston, MA 02199-7613
Tel: (617) 239-0367
Fax: (617) 227-4420
jonathan.young@lockelord.com

*Attorneys for StakeHound S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,[1]<br><br>          Debtors. | Chapter 11<br>Case No. 22-10964 (MG)<br>Jointly Administered |
| CELSIUS NETWORK LIMITED,<br><br>          Plaintiff,<br><br>v.<br><br>STAKEHOUND SA,<br><br>          Defendant. | Adversary Proceeding<br>No. 23-01138 (MG) |

## NOTICE OF MOTION TO DISMISS

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The Debtors' service address in these Chapter 11 Cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Bankruptcy Procedure ("*FRBP*") 7012 and Federal Rule of Civil Procedure ("*FRCP*") 12(b)(2), Defendant StakeHound SA ("*StakeHound*") respectfully submits this Notice of Motion to Dismiss (the "*Notice*" of the "*Motion*") the First Amended Adversary Complaint [ECF No. 31] filed by Plaintiff. In support of the Motion, StakeHound submits the (i) Memorandum in Support of the Motion (the "*Memorandum*"); and (ii) *Declaration of Albert Castellana Lluís* [ECF No. 43] in support of the Motion, including attached exhibits.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the relief requested in the Motion will be held before the Honorable Martin Glenn on **September 27, 2023, at 9:00 a.m., Eastern Time**.

**PLEASE TAKE FURTHER NOTICE** that at the direction of the Court, this Hearing will take place in a hybrid fashion both in person and via Zoom for Government. Those wishing to participate in the Hearing in person may appear before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York, in Courtroom No. 523, located at One Bowling Green, New York, New York 10004-1408. For those wishing to participate remotely, in accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. eCourtAppearances need to be made by 4:00 p.m. (prevailing Eastern Time), the business day before the Hearing (i.e., on September 26, 2023).

134432887v.1

**PLEASE TAKE FURTHER NOTICE** that at the direction of the Court, only parties-in-interest, witnesses or their attorneys of record may attend the hearing on Zoom. All parties-in-interest, witnesses or attorneys of record must register in advance to attend the hearing on Zoom and will be required to certify under oath that they are appearing in those capacities. The public, including members of the media, may only attend the hearing in the courthouse.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius. You may also obtain copies of the Motion filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:  August 25, 2023                    Respectfully,

*/s/ Stephanie Wickouski*
**LOCKE LORD LLP**
Stephanie Wickouski
Jeffrey Kramer
Sean A. Feener
200 Vesey Street, 20th Floor
New York, New York 10281
Tel: (212) 415-8600
Fax: (212) 303-2754
swickouski@lockelord.com
jkramer@lockelord.com
sean.feener@lockelord.com

Jonathan W. Young (admitted *pro hac vice*)
111 Huntington Avenue, 9th Floor
Boston, MA 02199-7613
Tel: (617) 239-0367
Fax: (617) 227-4420
jonathan.young@lockelord.com

*Attorneys for StakeHound SA*

134432887v.1

**LOCKE LORD LLP**
Stephanie Wickouski
Jeffrey Kramer
Sean A. Feener
200 Vesey Street, 20th Floor
New York, New York 10281
Tel: (212) 415-8600
Fax: (212) 303-2754
swickouski@lockelord.com
jkramer@lockelord.com
sean.feener@lockelord.com

Jonathan W. Young (admitted *pro hac vice*)
111 Huntington Avenue, 9th Floor
Boston, MA 02199-7613
Tel: (617) 239-0367
Fax: (617) 227-4420
jonathan.young@lockelord.com

*Attorneys for StakeHound S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |
| CELSIUS NETWORK LIMITED, | Adversary Proceeding No. 23-01138 (MG) |
| Plaintiff | |
| v. | **DEFENDANT'S** |
| STAKEHOUND SA, | **MEMORANDUM OF LAW IN** |
| | **SUPPORT OF MOTION TO** |
| Defendant | **DISMISS FIRST AMENDED** |
| | **ADVERSARY COMPLAINT** |

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The Debtors' service address in these Chapter 11 Cases is 121 River Street, PH05, Hoboken, New Jersey (07030)

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

SUMMARY ...........................................................................................................................1

STATEMENT OF FACTS ........................................................................................................2

    StakeHound .....................................................................................................................2

    StakeHound's Relationship with Celsius Network Limited ......................................4

ARGUMENT .........................................................................................................................5

    I.     THERE IS NO PERSONAL JURISDICTION OVER STAKEHOUND ...................5

    A.    Plaintiffs Have The Burden of Proving Personal Jurisdiction Exists .........................5

    B.    There is No General Jurisdiction Over StakeHound .....................................................6

    C.    There is No Specific Jurisdiction Over StakeHound .....................................................8

CONCLUSION .......................................................................................................................17

## INTRODUCTION

Defendant StakeHound S.A. ("*StakeHound*") respectfully submits this Memorandum of Law in support of its motion to dismiss Plaintiff's claims against StakeHound pursuant to Fed. R. Civ. P. 12(b)(2) (the "*Motion to Dismiss*"), made applicable to these proceedings by Fed. R. Bankr. P. 7012(b).[2]  In support of this Motion to Dismiss, StakeHound also submits the *Declaration of Albert Castellana Lluís* [ECF No. 43].

## SUMMARY

1.      This Court lacks personal jurisdiction over StakeHound.   StakeHound is incorporated under the laws of Switzerland and headquartered in Geneva.  *Castellana Decl.* at ¶ 5. StakeHound does not regularly conduct its business in New York, or anywhere else in the United States.  *See id.*  In fact, not only is StakeHound not licensed to do business in the United States, but the terms of its usage agreements expressly prohibit persons in the United States from using its staking platform.  *See id.* at ¶¶ 5, 12.

2.      StakeHound is not subject to general jurisdiction in the United States.  Under recent United States Supreme Court precedent, a court may exercise general jurisdiction over a foreign corporation only where that corporation's contacts and affiliations are "so continuous and systematic as to render [it] essentially *at home* in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (emphasis added) (internal citations and quotations omitted).  As explained herein, Plaintiff's allegations of StakeHound's sporadic, immaterial contacts with the United States fall well short of meeting the high bar established in *Daimler*.  Rather, StakeHound's platform

---

[2] StakeHound does not consent to the entry of final orders or judgment by the bankruptcy court. *See Wellness Int'l Network, Ltd. v. Sharif*, 575, U.S. 665 (2015) (parties may consent to a bankruptcy court's constitutional jurisdiction, only if consent is knowing and voluntary).

1

operates exclusively outside the United States.  Accordingly, Plaintiff has not, and cannot, plead facts sufficient to support the exercise of general jurisdiction over StakeHound.

3.        The Court also lacks specific jurisdiction over StakeHound.  A court may exercise specific jurisdiction over a foreign corporation only where (1) the corporation purposefully directed its activities at residents of the forum, (2) the cause of action arose out of those activities, and (3) the corporation reasonably should anticipate being hauled into court in the forum state. *See Walden v. Fiore*, 571 U.S. 277 (2014); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, (1985).  As explained herein, Plaintiff's allegations fail to establish any of those elements.  Rather, all of Plaintiff's allegations involve actions taken by StakeHound in Switzerland.  Moreover, the User Agreements (as defined below), which are governed by Swiss law, require that any disputes thereunder be determined by binding arbitration in the Arbitration Centre in Switzerland, and *specifically preclude* any U.S. persons or entities from using StakeHound's platform.  Accordingly, Plaintiff's specific jurisdiction allegations fail as a matter of law.

## STATEMENT OF FACTS

### StakeHound

4.        StakeHound is a private *société anonyme* incorporated under the laws of Switzerland with registered offices at Place de Longemalle 1, c/o MN & Associés SA, 1204 in Geneva, Switzerland.  StakeHound has always operated out of Geneva, Switzerland.  StakeHound has never been incorporated, headquartered, held offices, or maintained a mailing address in the United States.  StakeHound does not conduct business in any state in the United States, nor is StakeHound licensed to do business in the United States.  Other than legal counsel retained for purposes of representing StakeHound in these proceedings, StakeHound has never had any

officers, agents, employees, or other representatives of its business domiciled in the United States. *See Castellana Decl., ¶* 5.

5.       StakeHound operates the currently suspended online platform "onboarding. stakehound.com" (the "***Platform***"), which was launched in October 2020.  The Platform facilitates liquid staking, whereby cryptocurrency holders volunteer to lock their crypto assets ("***Native Tokens***") to support the operation of a Proof of Stake blockchain.  Once staked, StakeHound issues a tokenized representation of the Native Token, or a wrapped token ("***stToken***") in exchange for that same cryptocurrency.  Holders of stTokens can use and trade these stTokens in peer-to-peer financial networks, the so-called decentralized finance ecosystem, thereby minimizing the disadvantages of traditional staking.  StakeHound maintained no control over where and how users deployed their stTokens. *See Castellana Decl., ¶¶* 6-8.

6.       As part of its business model and consistent with its efforts to assure regulatory compliance, StakeHound does not conduct business with any U.S. persons.   Moreover, StakeHound itself does not have any meaningful connection to the United States whatsoever. While the stakehound.com domain name is registered with Namecheap, Inc. located in Phoenix, AZ, and the landing page is hosted on WPEngine, Inc. located in Austin, Texas, the landing page makes clear that StakeHound is a société anonyme, and the Platform is hosted by Altcoinomy SA, a Swiss-based "know your customer"/anti-money laundering ("***KYC/AML***") compliance provider. StakeHound's platform located at https://onboarding.stakehound.com/#/, through which users have to register for KYC/AML, the welcome page states that StakeHound is governed by Swiss laws.   All of StakeHound's social media, including LinkedIn, Facebook, and Twitter clearly indicates that StakeHound is a Swiss corporation.  To StakeHound's knowledge, its main provider of validator nodes, Allnodes, does not host any of StakeHound's nodes in the U.S.  As regards

StakeHound's assets, these are exclusively crypto assets (tokens) that are located on their respective blockchains. As such, they cannot be said to be in any specific physical location. *See Castellana Decl.,* ¶ 12.

### StakeHound's Relationship with Celsius Network Limited

7.      StakeHound formed a business relationship with CNL, a U.K. Limited Company, beginning in September 2020 following an introduction between Mr. Castellana and Mr. Jason Stone through a mutual friend. Introductions did not come through any marketing efforts on behalf of StakeHound.

8.      The relationship between StakeHound and CNL is governed by three agreements:

   a.      the Staking Services Agreement dated 20 January 2021 ("***SSA***"), attached to the Castellana Declaration as **Exhibit A**;

   b.      the StakeHound Services Terms and Conditions ("***SSTC***"), which is attached to the SSA; and

   c.      the Revenue Sharing Agreement dated 21 April 2021 ("***RSA***", and together with the SSA and SSTC, the "***User Agreements***"), attached to the Castellana Declaration as **Exhibit B**.

9.      Under the explicit terms of the SSTC, the United States and any U.S. persons are prohibited from using or attempting to use StakeHound's staking platform. Specifically, the United States is listed as a "Restricted Country," with the following disclaimer:

> These Terms and Conditions are not for release, publication, circulation and distribution, and *do not* constitute or form a part of *any offer or solicitation* to use the Services, *directly or indirectly*, in or into the United States (including its territories and dependencies, any state of the United States and the District of Columbia….In particular, these Terms and Conditions *do not* constitute or form a part of *any offer or solicitation* to use the Services of the Platform in the Restricted Countries.

SSTC, Ex. A., "General Restrictions" (emphasis added).

10.     The SSTC further explicitly prohibits the United States from using the platform's services by defining U.S. persons as "Restricted Persons," providing that

Residents, citizens and/or green card holders for *the USA*, or a person located or domiciled, including without limitation, any corporation or partnership created or organized in or under the relevant applicable laws, of the *Restricted Countries shall not use* or *attempt to use* the Services. Restricted Persons that use the Services of the Platform by providing false or inaccurate information about their citizenship, residency and/or nationality shall be in breach of these Terms and Conditions and shall indemnify the Company in respect of any damages and/or loses suffered due to this breach in accordance with the indemnification provisions set out in these Terms and Conditions.

*Id.* (emphasis added). The SSTC even specifically excepts the United States from the definition of

"Eligible User," with the following disclaimers:

[A]ll Users are "Eligible User" except…

- a User, or a User that is an entity acting as trustee, agent, representative or nominee for a person, who is a citizen of or resident or domiciled in the *USA*…
- a User, or User that is an entity acting as trustee, agent, representative or nominee for, a "*U.S. Person*" (within the meaning of "Regulation S" of the Securities Act 1933 under U.S. law); and
- a User is a *Restricted Person*.

SSTC, Ex. C, "Eligible Users" (emphasis added).

11.     The SSTC has a binding and all-encompassing arbitration provision, which

provides:

Any dispute, controversy or claim arising out of or in connection with these Terms and Conditions, including the validity, invalidity, breach or termination thereof, shall be decided by arbitration pursuant to the International Arbitration Rules of the Swiss Chamber of Commerce ("Rules ") in force at the date at which the notification of arbitration is formally deposited in accordance with the Rules…

STTC § 3.a.

### ARGUMENT

## I.      THERE IS NO PERSONAL JURISDICTION OVER STAKEHOUND

### A.      Plaintiffs Have The Burden of Proving Personal Jurisdiction Exists

12.     A bankruptcy court's valid exercise of jurisdiction over a foreign defendant

depends on a two-prong inquiry.  First, to survive a motion to dismiss for lack of personal

jurisdiction, the burden is on the plaintiff to demonstrate that a prima facie case for personal jurisdiction exists over the foreign defendant. *In re Fairfield Sentry Ltd.,* 627 B.R. 546, 564 (Bankr. S.D.N.Y. 2021) (*citing Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.* 722 F.3d 81, 86 (2nd Cir. 2013)); *Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) ("A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit"); *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006); *In Re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 206 (2d Cir. 2003) ("plaintiff bears the burden of establishing that the court has [personal] jurisdiction over the defendant").

13.    The Plaintiff meets this burden only if it demonstrates that "the foreign defendant has the requisite minimum contacts with the United States at large' to satisfy Fifth Amendment Due Process." *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. at 565 (internal citations and quotations omitted); *Picard v. Chais (In re Bernard Madoff Investment Securities, LLC)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010). If the Court finds such contacts exist, it then conducts a "reasonableness" inquiry to determine whether its exercise of jurisdiction will offend "traditional notions of fair play and substantial justice." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 460 B.R. 106, 117 (Bankr. S.D.N.Y 2011). As described below, Plaintiff's conclusory allegations do not meet their burden of demonstrating that this Court has either general or specific jurisdiction over StakeHound.

**B.    There is No General Jurisdiction Over StakeHound**

14.    A court may exercise general jurisdiction over a foreign corporation only where that corporation's "affiliations with the State are so continuous and systematic as to render [it] essentially *at home* in the forum state." *Daimler*, 571 U.S. at 127 (emphasis added) (*quoting Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 922 (2011); *see also Sonera*

*Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014), *cert. denied*, 134 S. Ct. 2888, 189 L. Ed.2d 837 (2014) ("although *Daimler* and *Goodyear* do not hold that a corporation may be subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business, . . . those cases make clear that even a company's "engage[ment] in a substantial, continuous, and systematic course of business" is alone insufficient to render it at home in a forum") (*citing Daimler*, 571 U.S. at 136–37). Per *Daimler*, only in an "*exceptional case*" is it appropriate to subject a foreign corporation to the general jurisdiction of a court in a forum outside of its place of incorporation or principal place of business. *Id.* at 139, n. 19 (emphasis added).

15.    According to the Supreme Court, a foreign corporation does not have sufficient minimum contacts with the United States[3] to support the exercise of general jurisdiction—even if it advertises or markets in the United States—where, as here, it is domiciled and incorporated outside the United States. *See, e.g.*, *Daimler*, 571 U.S. at 139; *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016) ("when a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case'"); *Sonera Holding*, 750 F.3d at 226 (Turkish company did not have sufficient minimum contacts under *Daimler* where it negotiated contracts outside the forum, with a New York-based private equity fund in the forum, contracted with a U.S.-based company to provide television content and touted its connections with the U.S. on its website); *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 104 (S.D.N.Y. 2015) (even though the defendants entered into numerous business contracts with New

---

[3] In bankruptcy proceedings, courts consider a foreign defendant's contacts with the United States as a whole, rather than any one state, for purposes of general jurisdiction. *See, e.g., In re Hellas Telecommunications (Luxembourg) II SCA*, 524 B.R. 488, 506 (Bankr. S.D.N.Y. 2015) (Glenn, J.), *adhered to*, 526 B.R. 499 (Bankr. S.D.N.Y. 2015) ("[I]n federal question cases . . . only a federal 'minimum contacts' test is required, whereby the Fifth Amendment's Due Process Clause limits a bankruptcy court's exercise of personal jurisdiction over a defendant") (quoting *Enron Corp. v. Arora (In re Enron Corp.)*, 316 B.R. 434, 444 (Bankr. S.D.N.Y. 2004)).

York companies, lack of minimum contacts for exercise of general jurisdiction under *Daimler* where none of the defendants were incorporated in New York, had their principal places of business in New York, nor had offices, employees bank accounts or property in the forum).

16.     Plaintiff does not allege that StakeHound is "at home" in the United States. Nor does Plaintiff allege that StakeHound operates out of or has a place of business or mailing address in the United States. To the contrary, StakeHound's platform has always operated exclusively out of Geneva, Switzerland. *Castellana Decl.* ¶ 5. Plaintiff has not, and cannot, plead facts showing that StakeHound engaged in a "substantial, continuous, and systematic course of business" with the United States sufficient to render it at home here. As a result, Plaintiff has not demonstrated that StakeHound has sufficient minimum contacts to support the exercise of general jurisdiction.

## C.     There is No Specific Jurisdiction Over StakeHound

17.     Specific jurisdiction is present only if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co.*, 582 U.S. at 262; *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2nd Cir. 2018) ([M]inimum contacts… exist where the defendant purposefully availed itself of the privilege of doing business there and could foresee being hauled into court there."). Within this inquiry, the Court must determine whether the foreign defendant's minimum contacts with the United States are such that it "should reasonably anticipate being hauled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Courts look to whether the foreign defendant *purposely* "directed its activities at residents of the forum" or "availed itself of the privilege of conducting activities within the forum state." *Burger King*, 471 U.S. at 472–73 (emphasis added).

18.     The defendant's contacts with the forum must "proximately result from actions by the defendant *himself* that create a *substantial connection* with the forum state." *Burger King*, 471

U.S. at 475 (emphasis added); *see Walden*, 571 U.S. at 284. ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State"). The purposeful direction requirement ensures that the defendant will not be subject to jurisdiction due to "random, fortuitous, attenuated contacts, or on the unilateral activity of a plaintiff with the forum." *Burger King*, 471 U.S. at 475; *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2nd Cir. 2019) (*citing Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 337 (2nd Cir. 2016)).

### 1. StakeHound Does Not Purposely Direct Activities Within the United States

*i.    StakeHound's Website*

19.     Plaintiff alleges that StakeHound is subject to personal jurisdiction because it purportedly sought to solicit interest in its staking platform in the United States through its website. Specifically, Plaintiff identifies a series of trivial functions regarding the accessibility of stakehound.com, none of which are unique to the United States, and (unconvincingly) portrays those functions as StakeHound purposefully availing itself of the privilege of conducting activities here.  This approach fails.

20.     First, Plaintiff alleges that stakehound.com was at "all relevant times highly interactive allowing customers to access and download StakeHound's terms and conditions, interact and contact sales representatives, and register cryptocurrency wallets and ETH." ECF No. 1, ¶ 15.  Where personal jurisdiction over a foreign defendant "is premised on the use of a website by residents of a forum state, courts review the website on a "spectrum of interactivity." *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009*); Capitol Recs., LLC v. VideoEgg, Inc.,* 611 F. Supp. 2d 349, 358 (S.D.N.Y. 2009)(noting that the "spectrum of interactivity" may be useful for analyzing personal jurisdiction under New York's long arm statute, but it does not amount to a separate framework for analyzing internet jurisdiction).

21.     A foreign defendant's "highly interactive" website being accessible by forum residents without more is "insufficient to support the further, necessary finding that the defendants purposefully and knowingly entered into [] transactions" with the forum residents or otherwise targeted the forum for business. *Royalty Network Inc.* 638 F. Supp. at 418 (S.D.N.Y. 2009); *ISI Brands, Inc. v. KCC Int'l Inc.*, 458 F. Supp. 2d 81, 87–88 (E.D.N.Y 2006)("Even the existence of an interactive 'patently commercial' website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York."); *see also Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18-CV-2897 (JPO), 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018) (plaintiff could not base jurisdiction on Dubai- and Belarus-based cryptocurrency companies' websites because plaintiff failed to establish a reasonable probability that defendants' websites had "been actually used to effect commercial transactions within customers in New York").

22.     However, where stakehound.com falls on the "spectrum of activity" is irrelevant here because Plaintiff (fatally) failed to allege that any resident of New York or the United States actually engaged in a transaction with stakehound.com. Notably, Plaintiff merely alleges that stakehound.com allows users to download StakeHound's terms and conditions, interact and contact sales representatives, and register cryptocurrency wallets and ETH. Plaintiff does not offer a single allegation that a U.S. resident registered on stakehound.com or that StakeHound knowingly and purposefully transacted with a U.S. resident.   And it is just wrong that stakehound.com allowed users to register cryptocurrency wallets or ETH.  *See Castellana Decl.,* ¶ 12. Moreover, Plaintiff's reliance on the downloadability of the SSTC is ironic (and misplaced) because anyone who downloaded and read the SSTC terms would learn that StakeHound unequivocally forbids U.S. residents from trading on the Platform.

23.    Next, Plaintiff unconvincingly asserts that StakeHound purposefully targeted U.S. residents by maintaining its website in English. By that reasoning, this Court could have worldwide personal jurisdiction over every foreign business that operates or offers translation of its website into English.

24.    The contention that StakeHound purposefully directed its business at the United States because stakehound.com was in English and StakeHound did not block U.S. IP addresses originate from an opinion out of the First Circuit. *See Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1 (1st Cir. 2018).    The *Plixer* decision is not binding on this Court[4] and is easily distinguishable. In *Plixer*, the First Circuit affirmed the lower court's ruling that personal jurisdiction existed over Scrutinizer where it had "not merely made its website available in the United States; it had used that website to engage in sizeable and continuing commerce with U.S. customers." *Id.* at *8. The Court suggested that Scrutinizer could have "taken the low-tech step of posting a disclaimer that its service is not intended for U.S. users," but instead gave no indication that it was not meant for U.S. consumption nor that Scrutinizer was a German company. *Id.*

25.    StakeHound's circumstances are obviously distinguishable. In *Plixer*, the foreign company's failure to include disclaimers or implement website restrictions, *coupled* with *its substantial* revenue from its business with U.S. residents, demonstrated intent to serve the U.S. market.  Here, Plaintiff does not allege that any U.S. resident used StakeHound's website to access its services.

26.    Moreover, unlike the foreign corporation in *Plixer*, StakeHound indisputably undertook multiple measures to prohibit U.S. users.  In addition to the SSTC's express restrictions

---

[4] The *Plixer* court expressly limited its ruling to the facts of the case. *See Plixer Int'l, Inc.*, 905 F.3d at *8 ("In the absence of Supreme Court guidance, we are extremely reluctant to fashion any general guidelines beyond those that exist in law, so we emphasize that our ruling is specific to the facts of this case.")

against U.S. users, the platform had restrictions for blocking U.S.-domiciled users. StakeHound's platform, located at https://onboarding.stakehound.com/#/, through which users would have to register for KYC/AML, states on the welcome page that StakeHound is governed by Swiss laws. *Castellana Decl.* ¶ 12. All users had to complete stringent KYC/AML checks to confirm the user was accurately representing its qualification as an eligible user and was not accessing the platform from a forbidden territory, including the U.S. *Castellana Decl.* ¶ 11, 12. StakeHound's preventive measures *coupled* with the fact it collected *no* revenue from U.S. users evidences its intent *not* to target the U.S. market.

ii.   *StakeHound's Social Media Platforms*

27.   Plaintiff alleges StakeHound purposefully directed its business to U.S. residents by marketing and advertising on Twitter and YouTube (U.S.-based companies), and that its Twitter usage operated as a "de facto marketing arm." Plaintiff's "de facto marketing arm" theory comes from an unpublished opinion in the Northern District of California. *See In re Tezos Securities Litigation*, No. 17-CV-06779-RS (N.D. Cal. Aug. 7, 2018). That case is inapt.

28.   There, a husband-and-wife team, the Breitmans, in operational roles at Tezos and who at all relevant times resided in Northern California, solicited fundraising for Tezos' digital currency operations, including by creating and advertising the Tezos Foundation. *Id.*, at *1–2. The Breitmans targeted Tezos' Initial Coin Offering at the U.S. through its website, tezos.com, and cryptocurrency chat room appearances. The Court agreed with the Foundation's arguments that "tezos.com being (1) hosted on an Arizona server, (2) freely accessible by U.S. citizens, and (3) highly interactive, is not, *without more*, enough to make it subject to the Court's personal jurisdiction." *Id.*, at *6 (emphasis added). However, the Court found that the "something more" was in fact alleged because the Foundation kept "at least one employee or agent in the United

States"—the California-based Breitmans. The Court accepted as sufficient the allegations that the Foundation had purposefully directed its activity at the United States because "(a) the California-based Breitmans were the de facto marketing arm of the Foundation; (b) the Foundation engaged in little to no marketing of the ICO anywhere other than the United States; and (c) an accordingly significant portion of some 30,000 Tezos ICO contributors were in fact U.S. citizens." *Id.*

29.    The facts here are readily distinguishable.  Significantly, StakeHound has no employees or operations in the U.S.  *See Castellana Decl.,* ¶ 5. All of StakeHound's social media, including LinkedIn, Facebook, and Twitter clearly indicates that StakeHound is a Swiss corporation. *Castellana Decl.* ¶ 12. That the highest percentage of Twitter's users generally are in the U.S. does not support the conclusion that StakeHound used Twitter as its "de facto marketing arm." In fact, Plaintiff fails to allege that any of the substance of StakeHound's tweets was directed at the U.S. market, or even that StakeHound had any *actual* followers in the U.S. *See e.g. Harris v. Sportbike Track Gear*, No. 13-6527, 2015 WL 5648710 (D.N.J. Sept. 24, 2015)(finding that although defendant's social media accounts such as Facebook, Twitter and Youtube were commercial and active, there was no evidence defendant actually targeted the forum); *McNeil v. Biaggi Productions, LLC*, No. 15-751, 2017 WL 2625069 (E.D.  Va. June 16, 2017)(declining exercise personal jurisdiction based upon defendant's posts on Twitter and Facebook because the online posts "were not expressly directed at Virginia, but to an undefined audience of Internet users around the world."); *McCollum v. Opulous*, No. CV2200587MWFMARX, 2022 WL 17218072 (C.D. Cal. Aug. 3, 2022).

iii.    <u>*Unilateral Actions of CNL and Other Third Parties Cannot Support the Exercise of Personal Jurisdiction over StakeHound*</u>.

30.    Plaintiff's unilateral activities in the forum are not considered StakeHound's contacts with the United States. *See Walden,* 571 U.S. at 284; *Burger King*, 471 U.S. 475

13

("[U]nilateral acts of third parties are not the kind of purposeful contacts that may properly form the basis of personal jurisdiction."). StakeHound could not control the physical location of CNL's personnel during their engagement.

31.    Similarly, StakeHound's use of the Staked.us platform resulted from Plaintiff's unilateral activity. Prior to November 2020, when Mr. Stone initiated the first transfer of Locked ETH to StakeHound, StakeHound did not have an account with Staked.us. *See Castellana Decl.*, ¶ 25. Because CNL unilaterally had determined to stake the Locked ETH with Staked.us prior to contracting with StakeHound, and in order to receive the transfer of the applicable nodes, StakeHound was required to open an account with Staked.us. *See id.*

32.    Finally, the unilateral actions of StakeHound customers in using their stTokens cannot support the exercise of personal jurisdiction over StakeHound. The stTokens minted by StakeHound could be used anywhere in the decentralized finance ecosystem, and StakeHound could not control where and how users deployed their stTokenstokens. *See Castellana Decl.*, ¶ 8. Plaintiff has not alleged that any stTokens actually were deployed using U.S.-based services, and because any such deployments would necessarily have no connection to the CNL transaction, they cannot support a finding that personal jurisdiction exists over StakeHound.

  iv.    *StakeHound did not Form Relationships with Bison Trails and Totle, Inc., and its Relationship with Horizen Labs Was Unrelated to the CNL Claims*

33.    StakeHound's relationship with these third-party entities, standing alone, is an insufficient basis for specific jurisdiction. Plaintiff alleges merely that StakeHound "engaged in negotiations," but that is a weak demonstration of StakeHounds's *relationship* with third parties who happened to be U.S. entities. *Walden*, 571 U.S. at 286. StakeHound never formed contractual relationships with Bison Trails and Totle, Inc. *See Castellana Decl.*, ¶ 21. StakeHound's

relationship with Horizen Labs was a wholly separate transaction and not related to the claims underlying the Complaint. *See id.*

### 2. Exercising Jurisdiction over StakeHound in New York Offends Traditional Notions of Fair Play and Substantial Justice

34.     If a bankruptcy court determines that the requisite minimum contacts exist, it then conducts a "reasonableness inquiry" to determine whether its exercise of jurisdiction will offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Super. Ct. Cal. Solano Cnty.*, 480 U.S. 102, 105 (1987); *Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2nd Cir. 1996). Whether jurisdiction over a foreign defendant would be unreasonable "entails an examination of the following due process factors: (1) burden that jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) interstate judicial system's interest in obtaining the most efficient resolution of the policies; and (5) the shared interest of the states in furthering social substantive policies." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec.*, LLC, 460 B.R. 106, 117 (Bankr. S.D.N.Y 2011) (*citing Asahi*, 480 U.S. at 113).

35.     Should the Court conclude that sufficient minimum contacts exist to exercise personal jurisdiction over StakeHound, StakeHound respectfully submits that exercise of such jurisdiction would be unreasonable. Plaintiff knowingly entered into the User Agreements with StakeHound, which mandate arbitration according to Article 3 of the Swiss Rules of International Arbitration of the Swiss Arbitration Centre. StakeHound, relying on that bargained-for provision, is contemporaneously seeking to compel arbitration of the Plaintiff's claims in the agreed-upon Swiss forum.  Federal policy favors arbitration agreements and mandates the enforcement of arbitration provisions. *See In re Residential Cap., LLC*, 563 B.R. 756, 766 (Bankr. S.D.N.Y. 2016) (*citing MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104 (2nd Cir. 2006); *Brownstone Inv. Grp. LLC*,

514 F. Supp 2d 536, 549 ("[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration…").  Plaintiff seeks relief from this Court under the terms of User Agreements while at the same time willfully ignoring the broad, mandatory arbitration provision in those agreements.

36.    Exercising jurisdiction over StakeHound also would unreasonably conflict with the sovereign laws of Switzerland. It would offend principles of international comity to exercise jurisdiction over a defendant in a dispute as remote to the United States as this one between a U.K. entity and a Swiss entity concerning the terms of Swiss contracts that have no connection to the United States. StakeHound's contacts with the United States are attenuated and insignificant. The bankruptcy court does not have a strong interest in adjudicating the claims in this adversary proceeding because there were no U.S.-domiciled users to the alleged transfers and the assets in question are not estate property.

## **CONCLUSION**

For these reasons, Defendant StakeHound respectfully requests that the Court grant this motion and dismiss all of the claims asserted by Plaintiffs against StakeHound for lack of personal jurisdiction.  StakeHound also prays for any additional relief to which it may be entitled.

Dated:  August 25, 2023                             Respectfully,

*/s/ Stephanie Wickouski*
**LOCKE LORD LLP**
Stephanie Wickouski
Jeffrey Kramer
Sean A. Feener
200 Vesey Street, 20th Floor
New York, New York 10281
Tel: (212) 415-8600
Fax: (212) 303-2754
swickouski@lockelord.com
jkramer@lockelord.com
sean.feener@lockelord.com

Jonathan W. Young (admitted *pro hac vice*)
111 Huntington Avenue, 9th Floor
Boston, MA 02199-7613
Tel: (617) 239-0367
Fax: (617) 227-4420
jonathan.young@lockelord.com

*Attorneys for StakeHound S.A.*