**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> CELSIUS NETWORK LLC, *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 22-10964 (MG) <br><br> Jointly Administered |
| CELSIUS NETWORK LIMITED, <br><br> Plaintiff, <br> v. <br><br> STAKEHOUND SA, <br><br> Defendant. | Adversary Proceeding <br> No. 23-01138 (MG) |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR TRO**

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The Debtors' service address in these Chapter 11 Cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

    *1.    Evidence That StakeHound Intends to Dissipate the Subject Property Absent a TRO Is Sufficient, and Does Not Implicate Federal Rule of Evidence 408*

StakeHound's[2] own public filings are the primary evidence that Celsius relies on to establish that StakeHound plans to dissipate material Subject Property absent a TRO. For example, in a letter StakeHound filed on the public docket on August 18, 2023, StakeHound proposed spending, on a no-notice basis, nearly $1 million over the next 3 to 4 weeks. ECF No. 26 Ex. A ¶ 6. During an August 22, 2023 conference, StakeHound's counsel suggested that its $1 million no-notice estimate was actually intended to cover a more extended period of time than just the few weeks referenced in its letter.[3] However, in its August 25, 2023 objection (also publicly filed), StakeHound increases its no-notice demand to $2 million through September 27, 2023, ***more than double the amount counsel said could carry StakeHound through a longer period just three days before***. *See* Defendant's Objection to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 42] (the "TRO Objection"). According to StakeHound itself, in other words, unless this Court orders otherwise, it plans to spend ***at least $90,000 worth of subject assets per business day*** before the preliminary motions even get decided. In addition, StakeHound seeks the right to pay all "court costs in the Fireblocks litigation if and as assessed without restriction." *Id.* ¶ 26.[4]

In "meet and confer" conversations in late July and early August, StakeHound indicated, without explanation, that StakeHound might need to pay as much as $2 million or more to the Fireblocks court in Israel as some kind of unidentified administrative fee, and sought a 90 day no-notice fund of $5 million

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in Celsius' *Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunction* [ECF No. 39].

[3] That claim was inconsistent with StakeHound's actual letter. *See* ECF No. 39 at 20 n.43.

[4] StakeHound's founder, Mr. Castellana, also claims that he needs $80,000 per month for StakeHound business expenses, despite having ceased operations more than two years ago. This sum supposedly includes amounts needed to pay the "contract rate" for staking nodes "before discounts and rebates" (he does not specify this amount, or by how much it would be reduced *after* applying discounts and rebates), paying "salaries" (he does not say how much, for who, or for what), "fees for custody, compliance and accounting" (he gives no other detail) and "other ordinary course business operations" (he does not identify what these could possibly be, considering StakeHound specifically alleges it shut down its operations more than two years ago). While not adequately identified, these are exactly the kinds of expenses for which the notice and objection process proposed in Celsius TRO are designed for, and do not require any form of advance "carve out."

1

(around $80,000 per business day). *See* Hurley Declaration [ECF No. 35] ¶ 18. StakeHound argues incorrectly that Celsius was forbidden from providing this information to the Court, citing Rule 408. But Rule 408 applies solely to offers to compromise "claims," and only forbids evidence of such offers where made to "prove or disprove" the merits of the claim. *See* Fed. R. Evid. 408(a). And even true "settlement discussions" are admissible for any purpose *other* than seeking to prove or disprove the merits of an adversary's claim. *See* Fed. R. Evid. 408(b).[5] Here, the conversations at issue had nothing to do with the merits of Celsius' claims or StakeHound's defenses, and instead focused solely on the amount of Subject Property StakeHound plans to spend in the near term.

Meet and confer conversations of this kind are "on the record," unless the parties agree otherwise. Indeed, StakeHound's counsel recognized this exact point concerning the parties' discussions of StakeHound's planned spending. At an August 7, 2023 hearing, StakeHound's counsel mused that she would like "an NDA or some assurance of confidentiality from the Debtor" for "these talks [with Celsius to] proceed." *See* Ex. A at 21:22-23 (Aug. 7, 2023 Hr'g. Tr. excerpts). She worried that if Celsius were to disclose publicly StakeHound's "breakdown in legal fees," it could get back to Fireblocks, and Fireblocks might be able to "reverse engineer[]" StakeHound's "litigation strategy." *Id.* at 21:16-21. ***Significantly, counsel admitted she had not raised the confidentiality issue with Celsius' counsel previously***. *Id.* at 22:4-5. Celsius counsel responded on the record that "we haven't heard a proposal ... [and] I'm not sure I completely follow the logic of what was being suggested but we'll listen to anything in good faith." *Id.* at 24:4-7. Later the same evening (August 7), in an effort to be responsive to the concern expressed by StakeHound, Celsius sent a standard protective order to StakeHound. *See* Ex. B (email, without attachment). The standard order requires parties to file allegedly confidential information under seal, but of course permits them to present that information to the Court. StakeHound never responded, and never proposed any "NDA or assurance of confidentiality of its own." Notably, StakeHound submits no

---

[5] Unfortunately, Despite Celsius' best efforts, StakeHound never has engaged with Celsius in any settlement discussions concerning the parties' claims, and Celsius therefore literally could not have offered any evidence barred by Rule 408 even if it were it inclined to do so.

2

declaration from its counsel (or other evidence) to support StakeHound's claim that Celsius agreed to withhold from this Court StakeHound's spending plans.

    *2.    Stakehound Criticizes Celsius' Evidence, but Ignores the Evidentiary Standard Applicable to Motions for Temporary Restraining Orders and, in Any Case, Makes No Effort to Refute Any of Celsius' Material Factual Contentions*

Celsius' Head of Staking, Richard Man avers that "100% of the MATIC and DOT ever provided to StakeHound was provided by Celsius." Man Decl. ¶ 18. Man's statement, which is based on his review of "transactions visible on the block chain," as well as documents and information available to him in his role as Head of Staking, is plainly is admissible under the Federal Rules of Evidence, *see, e.g.*, Fed. R. Evid. 701 (allowing testimony "rationally based on the witnesses' perception"), though it need not be, *see, e.g., New Hope Family Servs. Inc. v. Poole,* 493 F.Supp.3d 44, 55 (N.D.N.Y. Oct. 5, 2020) (citing Supreme Court and Second Circuit cases for proposition that court may consider hearsay and other inadmissible evidence on motions for provisional relief, and that "strict standards … that an affidavit be made on personal knowledge" are not "expressly applicable" on such motions). Significantly, moreover, Mr. Castellana does not deny Man's assertion. Certainly, if StakeHound believed that Celsius provided ***less*** than "100% of the MATIC and DOT" in StakeHound's possession, Castellana would have said so. His silence is deafening.

Likewise, StakeHound complains (wrongly) that evidence of StakeHound's insolvency is inadequate, but StakeHound does not seriously contest the claim.[6] Presumably, that is because StakeHound already has admitted insolvency in its void arbitration. According to StakeHound, Celsius was its "largest user," and provided "approx. 96%" of StakeHound's total supply of ETH. *See* Hurley Declaration [ECF No. 35–1] Ex. A, Notice of Arbitration ¶ 21. StakeHound goes on to allege that it shut down its business more than two years ago specifically because "60%" of all native ETH in its possession was lost, and thus

---

[6] Celsius offered unrebutted proof that Celsius provided more than $160 million worth (at recent prices) of ETH, MATIC and DOT to StakeHound, and proof that StakeHound lacks the assets necessary to satisfy its obligations to Celsius because StakeHound (or its agent) lost ETH provided by Celsius that is worth approximately $70 million. *See* Declaration of Richard Man in Support of Temporary Restraining Order and Motion for Preliminary Injunction [ECF No. 40] ¶ 40. In other words, Celsius' evidence indicates that StakeHound's liabilities exceed its assets by at least $70 million, a contention which, again, StakeHound does not deny. Even if StakeHound's claim that the assets generate some limited monthly income is true, StakeHound still would be woefully insolvent.

3

StakeHound lacks sufficient "ETHs" to satisfy customer claims. *Id.* ¶ 23. This is the essence of insolvency, and more than sufficient to support Celsius motion for a TRO. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("Given [its] limited purpose, and given the haste that is often necessary … a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."); *see also Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010) ("To hold otherwise would be at odds with the summary nature of the remedy and would undermine the ability of courts to provide timely provisional relief.").

    3.    ***The Native Tokens in Stakehound's Possession Are Subject to Turnover to Celsius Regardless of Stakehound's Claim That It Currently Has Title to Those Tokens***

StakeHound tries to defend its refusal to turnover ETH, MATIC and DOT tokens to Celsius by claiming that "rights of ownership" in the native tokens transferred to StakeHound. Even if that were true, StakeHound would still be obliged to transfer the tokens back to Celsius on demand, on a one-to-one basis for stTokens, just as the parties agreed. And Stakehound *still* offers no justification for its retention of the MATIC and DOT, all of which are available for transfer to Celsius immediately.

The same is true for the November 2020 Staked ETH. Under Section 1.5 of the SSA, after the April 12, 2023 Upgrade, StakeHound was required to transfer the 25,000 ETH (plus rewards) to a new wallet. StakeHound claims it did so. *See* Hurley Declaration [ECF No. 35–5] Ex. E at 3–4. Under Section 1.8, "following the successful transfer" of the November 2020 Staked ETH to "the StakeHound's Wallet [sic], Celsius shall be entitled to exchange, upon availability, its stETH against ETH." Every single one of the November 2020 Staked ETH is currently "available" and could be transferred to Celsius any time, StakeHound just has refused to do so. StakeHound claims the SSCT gives it the right to "suspend" the platform, but the SSA provides no such right, and in the event of any conflict, the terms of the SSA "shall prevail." SSA ¶ 1.1. And even under the SSCT, StakeHound only can suspend transfers "temporarily*,*" *see* SSCT § 2, and any suspension of the platform must be carried out in good faith. *See Declaration of Felix Dasser in Support of Motion for Temporary Restraining Order and Preliminary Injunction* [ECF No.

4

37] ¶¶ 6, 8; *see also Second Declaration of Felix Dasser in Support of Motion for Temporary Restraining Order and Preliminary Injunction* 4–9.

The duty of good faith is a cornerstone of Swiss contract law and, among other things, forbids a party from exercising an alleged contractual right in an abusive or bad faith manner. According to StakeHound, it suspended its platform because of the loss of ETH by StakeHound or its agent Fireblocks.[7] Interpreting the contracts to allow StakeHound to suspend the platform, and then point to that suspension as an excuse for keeping for itself the native tokens provided to it by customers (mainly Celsius), rather than exchange those tokens for st tokens would be inconsistent with the obligation under Swiss law to interpret the contracts in light of the duty of good faith, and inconsistent with StakeHound's duty to discharge the contract in good faith. StakeHound's bid to turn its own catastrophic error into a $50 million windfall cannot succeed.

| | | |
|---|---|---|
| Dated: | August 28, 2023 | |
| | New York, New York | AKIN GUMP STRAUSS HAUER & FELD LLP |

By: */s/ Mitchell P. Hurley*
Mitchell P. Hurley
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
mhurley@akingump.com
dchapman@akingump.com

Elizabeth D. Scott (admitted *pro hac vice*)
Nicholas R. Lombardi (admitted *pro hac vice*)
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
edscott@akingump.com

*Special Litigation Counsel for Debtors and Plaintiff Celsius Network Limited*

---

[7] Mr. Castellana repeatedly claims that Celsius "wanted" StakeHound to hire Fireblocks as a security provider. But StakeHound nowhere contends that Celsius had **the right** to select StakeHound's security provider, and StakeHound goes out of its way to cite examples where requests made by Celsius supposedly were rejected by StakeHound. It is undisputed, in other words, that StakeHound had the discretion to choose its own agent for coin security, and that StakeHound exercised that discretion by hiring Fireblocks.