Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 22-10964-mg

4    Adv. Case No. 23-01138-mg

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    CELSIUS NETWORK LLC,

9

10          Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   CELSIUS NETWORK LIMITED,

13               Plaintiff,

14          v.

15   STAKEHOUND SA,

16               Defendant.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19               United States Bankruptcy Court

20               One Bowling Green

21               New York, NY   10004

22

23               August 29, 2023

24               10:58 AM

25

1   B E F O R E :

2   HON MARTIN GLENN

3   U.S. BANKRUPTCY JUDGE

4

5   ECRO:  KS

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1   HEARING re Adversary proceeding: 23-01138-mg Celsius Network

2   Limited v. StakeHound SA Hearing Using Zoom for Government

3   RE:   TRO (Doc # 29, 31, 33 to 42, 49, 50, 51).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 4

1    A P P E A R A N C E S :

2

3    AKIN GUMP STRAUSS HAUER FELD, LLP

4         Special Counsel for the Plaintiff,

5         Celsius Network Limited

6         One Bryant Park

7         New York, NY 10036

8

9    BY:  MITCHELL HURLEY

10        ELIZABETH SCOTT

11

12   LOCKE LORD LLP

13        Attorneys for the Defendant, StakeHound

14        Brookfield Place, 200 Vesey Street

15        20th Floor

16        New York, NY 10281

17

18   BY:  MARY STEPHANIE WICKOUSKI

19        SEAN ANDREW FEENER

20        JEFFREY KRAMER

21

22

23

24

25

Page 5

```
1    WHITE & CASE LLP

2        Attorneys for Official Committee of Unsecured Creditors

3        1221 Avenue of the Americas

4        New York, NY 10036

5

6    BY:  KEITH WOFFORD

7

8    ALSO PRESENT TELEPHONICALLY:

9    ALBERT CASTELLANA

10   NELLY ALMEIDA

11   CHRIS BECIN

12   EDWARD G. BIRCH

13   SHARA CLAIRE CORNELL

14   CARL J. COTE

15   TRISTAN DIAZ

16   DENNIS F. DUNNE

17   DAVID AVERY FAHEY

18   FLORENCE FLANNIGAN

19   DANIEL A. FRISHBERG

20   SANDALI HANDAGAMA

21   CHRISTOPHER LACKEY

22   ANDREW M. LEBLANC

23   MICHAEL D. MORRIS

24   ABIGAIL RYAN

25   NOAH M. SCHOTTENSTEIN
```

Page 6

1   COURTNEY BURKS STEADMAN

2   LUCY L. THOMSON

3   TONY VEJSELI

4   MELANIE WESTOVER YANEZ

5   DAVID BARSE

6   DEBORAH FRANKEL

7   DEAN CHAPMAN

8   AARON COLODNY

9   CAROLYN GURLAND

10   SAMUEL P. HERSHEY

11   MICHAEL JAOUDE

12   NICHOLAS LOMBARDI

13   GREGORY F. PESCE

14   DAVID TURETSKY

15   JOSHUA WEEDMAN

16   RICKIE CHANG

17   DAVID J. DALHART

18   SIMON ELIMELECH

19   BRADLEY GIARDIELLO

20   TAMMY L. GROVER

21   JON HATCHER

22   ALAINA HEINE

23   KRAIG JAKOBSEN

24   JEAN-PHILIPPE LATREILLE

25   KEVIN M. MANUS

Page 7

1   MATTHEW W. MARCUS

2   DONALD L. POYNTER

3   JEFF PATTON

4   JONATHAN RODRIGUEZ

5   DAVID RYAN

6   PRIYA SAIHGAL

7   JACK SCHICKLER

8   DAVID SENES

9   ALLISON SPARKS

10   PETER J. SPROFERA

11   CHRISTOPHER D. WALTON

12   ROBERT M. KAUFMANN

13   RAKESH PATEL

14   JASMINE ARMAND

15   CHRISTOPHER COCO

16   THOMAS DIFIORE

17   MIRA HAQQANI

18   TAYLOR HARRISON

19   KEITH NOYES

20   MASON PALISSERY

21   MARK ROBINSON

22   MICHAEL STANLEY

23   VICTOR L. UBIERNA DE LAS HERAS

24   ANDREW YOON

25   KAILA ZAHARIS

Page 8

1                    P R O C E E D I N G S

2            CLERK:  All right.  Starting the record for August

3    29th, 2023 the 11 a.m. hearing.  Calling Celsius Network

4    LLC, Case No. 22-10964 and the following case, Case No. 23-

5    1138 Celsius Network Limited versus StakeHound SA.  If we

6    could have counsel unmute meet their line and state their

7    appearances, please.

8            I think we have -- is anyone in the conference

9    room going to be speaking?  I see Stephanie.  I can't

10   recognize anyone else.  All right, you can pause it for now.

11           MAN:  -- muted.  Oh, there we go.

12           MS. WICKOUSKI:  Sorry, this is -- can you hear me

13   now?

14           CLERK:  Yes, I can.

15           MS. WICKOUSKI:  So this is Stephanie Wickouski

16   from Locke Lord on behalf of the defendant StakeHound SA,

17   and here with me in the Locke Lord conference room is my

18   colleagues Jeff Kramer and Sean Feener.

19           CLERK:  All right, thank you.

20           MS. WICKOUSKI:  And both myself and Mr. Kramer

21   will be addressing the Court this morning.

22           CLERK:  All right.  Thank you so much  You can

23   pause the recording.

24           (Pause)

25           CLERK:  For the parties that have joined, if

1    anyone is speaking on the record this morning, please unmute

2    your line and state your name.

3              Yeah, Ms. Scott, are you going to be speaking?

4              MS. SCOTT:  Good morning.  I'm not certain, but

5    I'll go ahead and enter my appearance if that's okay.

6              CLERK:  Sure.

7              MS. SCOTT:  Elizabeth Scott from Akin Gump,

8    special litigation counsel to the Debtors.

9              CLERK:  All right.  Thank you.  We have --

10             MS. SCOTT:  Ms. Anderson, we have with us on the

11   screen, Albert Castellana who's representative of our client

12   StakeHound who is a witness, having submitted a declaration.

13   So he's also available.

14             CLERK:  Thank you.  All right, you can pause the

15   recording.

16             (Pause)

17             Oh, all right, for the parties that have joined,

18   if you could unmute your line one at a time and state your

19   appearance for the record.

20             Mr. Hurley, maybe we could start with you.

21             MR. HURLEY:  Good morning.  Mitch Hurley with Akin

22   Gump, special litigation counsel for Celsius.

23             CLERK:  All right.  Thank you.  Is there any other

24   party on the line that is speaking this morning?  If so, I

25   unmute your line and state your appearance.

1          MS. WICKOUSKI:  Good morning.  This is Stephanie

2    Wickouski from Locke Lord on behalf of StakeHound SA and I'm

3    here with my colleagues Jeffrey Kramer and Sean Feener and

4    Mr. Kramer and I will be addressing the Court.

5          CLERK:  All right.  Thank you.  Mr. Wofford, are

6    you going to be speaking this morning?

7          MR. WOFFORD:  I don't anticipate as such, but I

8    will enter an appearance.  Keith Wofford on behalf of the

9    Official Committee of Unsecured Creditors from the firm

10   White & Case LLP.  Good morning.

11         CLERK:  Good morning.  Thank you.  All right. Any

12   additional parties that have joined that are speaking on the

13   record this morning?  If so, please unmute your line and

14   state your appearance.

15         MS. WICKOUSKI:  Ms. Anderson, this is Stephanie

16   Wickouski for the record.  I just wanted to note that what

17   our declarant Albert Castellans is also on the call to be

18   available for cross examination.

19         CLERK:  All right, thank you.

20         MR. HURLEY:  May I just interject there please,

21   Deanna?  I -- my understanding from the judge is that he had

22   said specifically this was not going to be an evidentiary

23   hearing.

24         CLERK:  Well, to my knowledge, I'm not sure Mr.

25   Hurley how this affects things, but you could definitely

Page 11

1    bring it up to him and he'll make the determination.

2              MR. HURLEY:  Okay.

3              CLERK:  Yeah.

4              MS. WICKOUSKI:  And Ms. Anderson, for the

5    avoidance of doubt, I wasn't suggesting as to how the Court

6    would be conducting this hearing, but because we had

7    submitted Mr. Castellana's declaration as a matter of form,

8    we were required to produce him in person on the Zoom for

9    cross examination if the parties wished.

10             CLERK: All right.  Thank you.

11             MR. HURLEY:  Just to be clear, the only -- I don't

12   have any objection to Mr. Castellana being here.  It's only

13   that we, based on that understanding, our declarants are not

14   here, which, you know, obviously we'll address that with the

15   judge if he has an issue with it.

16             CLERK:  Perfect.  Thank you.  All right, please

17   pause the recording for now.

18             (Pause)

19             THE COURT:  Yes, please.

20             CLERK:  Sorry about that.

21             THE COURT:  Sorry about that.  Again, I apologize.

22   I was connected for an earlier hearing without any

23   difficulty on my computer.  I can't reconnect on it.  And

24   so you see me without my courtroom virtual background.  I'm

25   doing this on my iPad.  I can see all of you, though.  Mr.

Page 12

1    Hurley, are you going to begin?

2              MR. HURLEY:  Yes, Your Honor.  Again for the

3    record, Your Honor, it's Mitch Hurley with Akin Gump,

4    special litigation counsel for Celsius.  We're here on

5    Celsius' motion for a temporary restraining order.

6              I want to start, Your Honor, by making crystal

7    clear what it is that Celsius is seeking on this motion and

8    what it's not seeking.  The relief that Celsius seeks today

9    is quite limited.  It is a order preserving the status quo

10   for a short period of time.  The period of time specifically

11   is from today through the day on which Your Honor -- or

12   through the time at which Your Honor is able to hear and

13   determine the motion for a preliminary injunction.  That

14   motion is scheduled to be heard on September 27th.  So we're

15   talking about a period of about four weeks.

16              In terms of the restraint, what we're seeking is

17   an order preserving the status quo with respect to the

18   subject assets for that four-week period of time, but

19   subject to the provision in the proposed TRO that provides a

20   safety valve so that in the event that during that, even

21   that brief period of time there is some truly urgent

22   expense, it can be brought to the attention first of Celsius

23   and if parties can't reach agreement, then to Your Honor.

24              Preserving the status quo is of critical

25   importance to Celsius in this case.  That is because Celsius

Page 13

1    has claims against StakeHound upwards of $160 million and

2    understands that StakeHound's assets are limited to about

3    $90 million, virtually all of which are assets that were

4    provided to it by Celsius in the first instance so that any

5    dollar that's spent between now and the 27th is a dollar

6    that cannot be recovered by Celsius if and when it prevails

7    on its claims with respect to the assets that it provided.

8           So before I get into the specifics of my argument,

9    Your Honor, I thought it would make sense just to provide a

10   refresher on some of the -- some of the main facts in the

11   case and I'll do this quickly and limit myself to what I

12   understand to be undisputed facts.

13          So StakeHound launched its business at the end of

14   2020.  The business was providing liquidity to holders of

15   staked tokens, primarily ETH.  At that time, ETH tokens when

16   they were staked were not available to be retrieved by the

17   staker and wouldn't become available until an event

18   anticipated in the future referred to as the upgrade

19   sometimes called the Shanghai upgrade, after which ETH would

20   become available to be retrieved.

21          At the time, the anticipation was that it would

22   take two years or more before that event happened and in the

23   event, it actually did take longer than two years, the

24   Shanghai upgrade wound up taking place on April 12th, 2023.

25   StakeHound's business was providing one stETH in exchange

1    for one native ETH that was staked.  StakeHound would run

2    the notes.  The parties would split the rewards from the

3    staked ETH and the customer would be able to use the stETH

4    on defi applications and then when ETH became available

5    exchange it on a 1-to-1 basis for the ETH.

6              It's undisputed that Celsius was not only

7    StakeHound's first customer, it effectively was its only

8    customer from the perspective, at least, of assets

9    contributed.  StakeHound itself alleges that of all the ETH

10   that StakeHound ever got, 96 percent of it was provided by

11   StakeHound -- by Celsius.  And let me describe that very

12   briefly.

13             In November of 2020, Celsius had staked about

14   25,000 ETH and in January of 2021, it determined to transfer

15   the notes for that 25,000 November ETH to Celsius in

16   exchange for the same number of stETH.  It did that pursuant

17   to an agreement called the Stake and Services Agreement or

18   the SSA and StakeHound got back exactly the same number of

19   stETH as associated with the notes in November.

20             In February, Celsius determined to stake another

21   35,000 ETH with StakeHound.  It did that pursuant to

22   StakeHound's ordinary terms and conditions and it got back

23   exactly the same number of stETH for the 35,000.  In April,

24   the parties entered into an agreement called the Revenue

25   Sharing Agreement and pursuant to that agreement, Celsius

Page 15

1   provided about 40 million native MATIC tokens and hundreds

2   of thousands of native DOT tokens to StakeHound and got back

3   exactly the same number of stMATIC and stDOT, again with the

4   expectation of a 1-to-1 exchange being available.

5           It's undisputed that in May, the next month, some

6   combination of StakeHound and Fireblocks, the entity that

7   StakeHound hired to provide security for its tokens, made a

8   catastrophic mistake and some combination of those two

9   parties -- they point the finger at one another -- lost the

10  pass keys for the February 35,000 ETH and StakeHound has

11  alleged that it is now irretrievable.  And so -- but assured

12  Celsius at the time that the November ETH remained secure,

13  and we understand that November ETH in fact does remain

14  secure.

15          So fast forward now to April 2023, and let me just

16  back up.  In June of 2021 StakeHound alleges that it

17  shuttered its operations, its liquidity staking operations,

18  et cetera, and the understanding now is that effectively

19  what it's doing since then is collecting rewards, basically

20  collecting interest on the coins that are staked and these

21  are coins that were provided by Celsius.

22          Now fast forward to April 2023.  Celsius learns

23  that the Shanghai upgrade is likely imminent.  On April

24  10th, we send a letter to StakeHound demanding that they

25  confirm that once the upgrade occurs and the assets become

1    available, that they will do what they're required to do

2    under the SSA which is transfer those assets to a separate

3    wallet and then allow us to exchange our stETH for the

4    November ETH which is the only ETH that was subject to the

5    SSA and which is the ETH that remains secure.

6          On April 12th, two things happened.  First, the

7    Shanghai upgrade occurred.  And second, we got a letter from

8    StakeHound saying that they were refusing.

9          THE COURT:  Mr. Hurley, can --

10          MR. HURLEY:  Yes.

11          THE COURT:  -- just hold on a minute?  I -- while

12    I've been listening carefully to you, but I've also rebooted

13    my computer and it seems to want to allow me in.  So let me

14    see if we can do this smoothly, okay?

15          MR. HURLEY:  Yeah, yeah.

16          THE COURT:  What I'm going to do is mute my sound

17    so I don't get feedback.

18          CLERK:  -- you, Judge.

19          THE COURT:  All right, I'm closing my -- just give

20    me -- all right, can you hear me?

21          MR. HURLEY:  Yes.

22          THE COURT:  Hold on.  I still haven't managed to

23    close my iPad.

24          MR. HURLEY:  Okay.  I had a similar issue on our

25    last hearing, so I have sympathy.

1            THE COURT:  All right.  Can you hear me now?

2            MR. HURLEY:  Yes.

3            THE COURT:  Good.  Okay.  I did hear everything

4    you had to say, so just pick up from where you were.

5            MR. HURLEY:  Okay, will do.

6            So undisputed that Celsius made a demand for

7    exchange of its ST tokens for native tokens and that demand

8    was refused.  That was April 12th.  On April 17th, Celsius

9    wrote back and said among other things that any failure to

10   turn the tokens over could result in significant liability

11   under the Bankruptcy Code, referencing this bankruptcy

12   proceeding, but offered in that letter to enter into a

13   standstill to see if the parties could negotiate.

14           Rather than respond to that letter, StakeHound

15   filed an arbitration in Switzerland in late April, in

16   violation, we contend, of the automatic stay.  On May 1st,

17   Celsius wrote and demanded withdrawal of the arbitration,

18   but again, offered to sit down and have a discussion.  We

19   did not receive a response to that communication.

20           On May 25th, Celsius sent a letter to StakeHound

21   saying, please, we tendered our stMATIC and our stDOT and

22   demanded returned of the native MATIC, the native DOT.  That

23   letter was never responded to and the native MATIC and

24   native DOT was never returned and no excuse for the failure

25   to return the native MATIC and native DOT has ever been

1    offered by StakeHound.

2           We made some other efforts to see if there could

3    be a resolution.  We weren't able to get there.  We filed in

4    July, the original complaint in this case, seeking our

5    certain claims based on the violation of the automatic stay

6    and based on Celsius' refusal to exchange ST tokens for

7    native tokens.  This motion, as I mentioned before, seeks

8    just for the next four weeks to ensure that the property

9    that's at issue, those native tokens -- virtually all of

10   which were provided to StakeHound on by Celsius -- will

11   remain there for Your Honor to decide what to do with them

12   in four weeks.

13          We think that the standards for getting a

14   temporary restraining order are readily met on the facts of

15   this case and I'm just going to turn now to our argument,

16   Your Honor, and I'll start with the standard for entry of

17   the temporary restraining order.  The elements are familiar.

18          You have to show irreparable harm, likelihood of

19   success on the merits, and balance of the harms weigh in

20   favor of the movant, or sufficiently serious questions going

21   to the merits of the movant's claims to make them a fair

22   ground for litigation, and that the balance of harms tips

23   decidedly in the movant's favor.  We think that we readily

24   meet both standards here, Your Honor and I want to start --

25          THE COURT:  Let me interrupt you.

1              MR. HURLEY:  Sure.

2              THE COURT:  And my questions, and I do have

3    multiple questions, but I'll ask one now, is the effect of

4    the Supreme Court's decision in Grupo Mexicano v. Alliance

5    Bond Fund, 527 U.S. 308 (1999), you didn't address it at all

6    in your brief.  Ms. Wickouski has a footnote in her brief

7    that at least cites Grupo Mexicano, and I guess my question

8    is specific.  And I've reviewed both the original complaint

9    and the amended complaint.

10             And tell me which of the claims in the amended

11   complaint you believe permits the Court to enter a TRO with

12   respect to the asset freeze.  Let's put aside the issue of

13   alleged violation of the automatic stay in commencing the

14   arbitration.  I'm focusing on the asset freeze issue.  So

15   tell me specifically which claims in the amended complaint

16   you believe would permit the Court to enter the TRO with an

17   asset freeze.

18             MR. HURLEY:  Certainly.  May I first just respond

19   to the, the point about whether Grupo Mexicano changed the

20   role in the Second Circuit?  Because I have the specific

21   cite for Your Honor if that would be helpful.

22             THE COURT:  Sure.  Go ahead.

23             MR. HURLEY:  Okay.  So the Second Circuit

24   addressed this exact question in Citigroup v. VCG.  That's

25   598 F.3d 30 (2d Cir. 2010).  And this is what the Second

Page 20

1   Circuit had to say when it made clear that notwithstanding

2   Grupo Mexicano, the standard that the Circuit had

3   traditionally applied remains in place.  And this is a

4   quote.

5             "The value of this Circuit's approach to assessing

6   the merits of a claim at the preliminary injunction stage

7   lies in its flexibility in the face of varying factual

8   scenarios and the greater uncertainties inherent at the

9   outset of particular complex litigation.  Preliminary

10  injunction should not be mechanically confined to cases that

11  are simple or easy, requiring in every case a showing that

12  ultimate success on the merits is more likely than not is

13  unacceptable as a general rule.

14            "The very purpose of an injunction is to give

15  temporary relief based on a preliminary estimate of the

16  strength of the plaintiff's suit prior to the resolution at

17  trial of the factual disputes and difficulties presented by

18  the case.  Limiting the preliminary injunction to cases that

19  do not present significant difficulties would deprive the

20  remedy of much of its utility."  That's the Second Circuit

21  on that point, Your Honor.

22            THE COURT:  What's the year of that, of the

23  Citigroup decision?

24            MR. HURLEY:  That's 2010, more than ten years

25  after a Grupo Mexicano, in other words.

1          THE COURT:  And does it address Grupo Mexicano

2    over there?

3          MR. HURLEY:  Yes.

4          THE COURT:  And how -- I've read a lot of cases in

5    the last two days and I don't think that's one of them.  How

6    does it distinguish Grupo Mexicano?

7          MR. HURLEY:  Sorry, the -- I think what it finds

8    is that there's nothing in Grupo Mexicano that requires a

9    change in the Second Circuit's standard and the Second

10   Circuit, based on that conclusion in Citigroup explained why

11   it continues to maintain the same standard, which is that

12   you have two ways of getting to likelihood of success on the

13   merits.

14         THE COURT:  And would -- and I do need to read it.

15   I'm not going to rule from this hearing, you know, from the

16   bench today.  Does the Citigroup decision permit a TRO if

17   the only claim asserted is a breach of contract claim?

18         MR. HURLEY:  I confess, I don't know the specific

19   answer to that question, Your Honor, but coming back to the

20   other question that you had about what claims we believe

21   support the relief that we're seeking --

22         THE COURT:  Right.

23         MR. HURLEY:  -- it's not only the breach of

24   contract claim.  It's also --

25         THE COURT:  I don't think -- personally, I don't

Page 22

1    think the breach of contract claim does support it.  I will

2    read Citigroup with great interest, but you know I read

3    Grupo Mexicano as precluding an asset freeze in a breach of

4    contract case.  It's -- that -- well, but go -- I want to

5    read Citigroup.  I've read a lot of cases over the last

6    couple of days because you didn't brief any of this.  So you

7    don't know whether Citigroup -- what were the claims

8    asserted in the Citigroup case?

9             MR. HURLEY:  Your Honor, I -- my familiarity with

10   the specific facts of Citigroup isn't that great.  It's

11   really -- I really just cited for the proposition that the

12   notion that that Grupo Mexicano changed the standard and the

13   Second Circuit has been directly contradicted by the Second

14   Circuit.

15            THE COURT:  Let me ask you.  Did it address, did

16   that decision address Grupo Mexicano?

17            MR. HURLEY:  Yes, Your Honor.  It did.  What I

18   read was specifically in response to a contention that the

19   standard has been changed as a result of a Grupo Mexicano.

20            THE COURT:  All right.  Let's hold on.  I'm going

21   to open the decision on another -- on the iPad which I'm not

22   using now for the Zoom.  Just bear with me.

23            MR. HURLEY: And Grupo Mexicano, Your Honor, is

24   really, I think is a question about what constitutes

25   irreparable injury.  And in our case, we're obviously

1    relying on the contention --

2              THE COURT:  I don't read Grupo Mexicano that way.

3    Okay?

4              MR. HURLEY:  Okay.

5              THE COURT:  I read it as not permitting an asset

6    freeze.  It's a collection mechanism in a breach of contract

7    dispute before there's a judgment and a judgment lien

8    attaching.  And bear with me.  Just give me a moment here,

9    okay?  Because I do think this is important.  If I've

10   misread Second Circuit law on it, well, then I'll stand

11   corrected.

12             MR. HURLEY:  But again, I -- well.  So the

13   Citigroup case is from 2010 and just to be really clear, the

14   only thing that we're citing that Citigroup case for, Your

15   Honor, is the proposition that the standard in the Second

16   Circuit, notwithstanding some Supreme Court case law that

17   people had argued might have changed the standard in the

18   Second Circuit, the standard in the Second Circuit remains

19   that there was more than one way to satisfy the likelihood

20   of irreparable harm prong of seeking a preliminary

21   injunction.

22             And that it includes situations where if the

23   balance of the equity is weigh strongly in favor of the

24   movant, that the standard for demonstrating likelihood of

25   success is lower.  And I and I do apologize, Your Honor,

1   that this hasn't been the focus of my preparation.

2   Certainly to the extent Your Honor is not going to rule

3   today and you'd like some additional very brief submissions,

4   we could do that, but our citation again of this Citigroup

5   is for that limited purpose.

6           THE COURT:  All right, I have the case.  You don't

7   have the case in front of you, do you?

8           MR. HURLEY:  I do not, Your Honor.

9           Your Honor?

10          THE COURT:  Yes.

11          MR. HURLEY:  Let me direct your attention.  I

12   actually now have the case in front of me, and --

13          THE COURT:  Which page?

14          MR. HURLEY:  Yeah, so it is page -- sorry, looking

15   for the cite.  It would be *34 discussion, and my

16   recollection of the Supreme Court cases that were being

17   discussed was incorrect.  The Supreme Court cases that were

18   being discussed there were Munaf, Winter, and Nken, and --

19          THE COURT:  What were the underlying claims in

20   Citigroup?

21          MR. HURLEY:  Well, Your Honor, I'm afraid I have

22   to give the same answer because I've just opened it up, but

23   if you see under Section 1, the continued viability of the

24   serious questions standard.

25          THE COURT:  Well, I don't doubt that the serious

1   question standard applies, but query whether it applies if

2   it's being used as a collection tool, okay.  So you added a

3   constructive trust claim and there's caselaw that would

4   permit a TRO or preliminary injunction with an asset freeze

5   in support of a viable constructive fraud, you know,

6   constructive trust claim.

7           And I assumed that one of your minions decided we

8   better add that claim to the complaint because otherwise we

9   may be in trouble with respect to the Grupo Mexicano

10  standard.  Perhaps I read too much into the addition of that

11  claim, but I'm not sure, you know, simply alleging -- if I'm

12  wrong -- put it this way.  If I'm wrong, if the Second

13  Circuit overruled the Supreme Court's Grupo Mexicano ruling

14  which says it just simply doesn't apply in the Second

15  Circuit -- it would be pretty neat trick if it did --

16          MR. HURLEY:  That's certainly not what I'm

17  suggesting, Your Honor, and I apologize for the

18  miscommunication over Citigroup.  With respect to Grupo

19  Mexicano, you are correct that we cite a number of -- or

20  sorry, that we allege a number of claims that we think are

21  not subject to the holding of Grupo Mexicano.

22          THE COURT:  Tell me which claims.  That was -- to

23  go back, that's what my question was.  Tell me which claims

24  you believe would permit the Court, assuming that the normal

25  standard for injunctive relief is -- has been satisfied,

1   that would permit the Court to enter a TRO or preliminary

2   injunction.

3           MR. HURLEY:  Certainly the claim for the -- for an

4   accounting, unjust enrichment, the claim for constructive

5   trust, the claim for conversion.

6           THE COURT:  Conversion, I -- well, go ahead.  Give

7   me the list, okay.

8           MR. HURLEY:  Those are the claims that we think

9   would justify the injunction.

10          THE COURT:  I thought conversion is a legal claim,

11  not an equitable claim.  What I read Grupo Mexicano is

12  saying that Rule 65 of the Federal Rules of Civil Procedure

13  does not provide for an equitable remedy for legal claims.

14  And so, you know, unjust enrichment, that claim won't even

15  stand if the underlying circumstances are governed by

16  contract.  There is a contract between the two of you.

17  Conversion, I understood be a legal claim.  Constructive

18  trust is an equitable -- can be an equitable claim.

19  Accounting, I'm not sure about.  Do you have -- is an asset

20  freeze permissible for an accounting claim?  You have

21  authority?  Look, I'm -- let's make no secret about it.  I'm

22  going to require a supplemental brief from you.  You didn't

23  address this at all.  Ms. Wickouski only sort of

24  backhandedly has one, Footnote 5, I think, that along with a

25  number of other sites refers to the Grupo Mexico -- Mexicano

Page 27

1    decision.  But I think this is a serious issue.

2              MR. HURLEY:  Certainly, Your Honor.  We're happy

3    to.

4              With respect to your conversion, there are

5    equitable remedies associated with conversion, including

6    disgorgement.  And to be clear, a reason that we amended the

7    complaint to add those extra contractual claims is because

8    StakeHound actually in an April 12th letter had said that

9    they view the contract as having been terminated.

10             THE COURT:  Well, that's fine, but that doesn't

11   mean -- it maybe breached, but, you know, you assert breach

12   of contract claim, among other things.

13             MR. HURLEY:  Correct.  We're asserting these

14   claims in the alternative, Your Honor.  If it were to be

15   concluded later in the case that there isn't a contract

16   governing those claims.

17             THE COURT:  Look, I've looked at lots of cases

18   that deal with availability of a TRO in light of Groupo

19   Mexicano.  I mean, one of the citations I give you is one of

20   Judge Gerber's opinions in Adelphia, 323 B.R. 345.  He's got

21   a long footnote at Page 360, Note 18.  It's a 2005

22   Bankruptcy Court decision.  It's a very lengthy and

23   scholarly discussion of this issue.

24             There are -- actually, I did not -- and I'll read

25   the Citigroup -- I didn't find a post Groupo Mexicano Second

Page 28

1    Circuit decision that clearly addresses this issue.  There

2    are cases in other circuits, the -- bear with me.  The Third

3    Circuit's Owens Corning decision, 419 F.3d 195, 209 (3d Cir.

4    2005), but it's in the context of a substantive

5    consolidation.  But it's a very lengthy discussion about

6    Groupo Mexicano.

7            There are -- there are a number of Bankruptcy

8    Court decisions that say that Group Mexicano doesn't apply

9    to fraudulent conveyance claims, for example.  But I haven't

10   found any in the search I made that really get close to what

11   this dispute is about.  And I don't -- you know, I will read

12   the Citigroup decision carefully.  But what you've described

13   so far doesn't sound to me that it somehow found its way

14   around the Groupo Mexicano decision.  There's no question in

15   my mind that if a complaint contains both legal claims and

16   equitable claims, Rule 65 permits injunctive relief with

17   respect to the equitable claims, but not the legal claims.

18           And when you file a supplemental brief, if you say

19   you're relying on four causes of action -- accounting,

20   unjust enrichment, conversion, and constructive trust as

21   supporting the equitable -- the asset freeze that you're

22   seeking, you'll address that in a brief.

23           I would say this, Mr. Hurley, that simply

24   including one of those claims, you know, denominating it as

25   such, is not going -- I have to be satisfied at a minimum

1    that the elements -- the elements of the claim have been

2    adequately pleaded before, you know, just labeling something

3    as constructive trust is not going to get you over the

4    hurdle.  Okay?

5              MR. HURLEY:  And let me just clarify two things,

6    Your Honor.  I want to apologize.  With respect to

7    Citigroup, I misspoke.  I'm not suggesting that Citigroup

8    gets around Groupo Mexicano.  It was actually dealing with

9    other Supreme Court cases.  And I apologize for that.  Would

10   welcome the opportunity, Your Honor, to explain why we think

11   under the circumstances here Groupo Mexicano is not a bar

12   with respect to the relief that we're seeking.

13             Certainly with respect to the Groupo Mexicano

14   issue, that issue is not applicable in our view to the non-

15   contract claims.  We think that we're going to be able to

16   provide caselaw to Your Honor to satisfy you, we hope, that

17   the relief is justified with respect to other claims as well

18   in the circumstances presented here.

19             THE COURT:  Let me make it clear that I am not

20   suggesting that you haven't appropriately stated equitable

21   claims that would entitle you to injunctive relief.  It

22   hasn't been addressed.

23             MR. HURLEY:  I understand, Your Honor.  And I'm

24   only trying to clarify --

25             THE COURT:  I have a very open mind about it.  I'm

Page 30

1    just telling -- to make it clear, I'm not pushing back

2    because I don't think you're entitled to a TRO.  I don't

3    think you've satisfied me based on the briefing in light of

4    Groupo Mexicano -- you know, the Mareva Injunction issue,

5    you know, has been a worldwide issue.  You know, it could

6    well be, Mr. Hurley, that an arbitrator in Switzerland could

7    grant you the relief you're seeking.  It even may be that a

8    state court -- this can't be in state court, but that a

9    state court in an appropriate can't grant it.  It's just

10   that the federal courts can't.

11             MR. HURLEY:  Understood, Your Honor.  And I just

12   want to be crystal clear.  We welcome the opportunity to

13   brief the question.  We think that the equitable claims

14   solve the Groupo Mexicano issue.  We may have authority to

15   cite to Your Honor -- I think we will -- that there is a

16   broader resolution and that this kind of TRO and injunction

17   can be granted, including with respect to other claims.  We

18   appreciate the opportunity to do some additional briefing

19   and really welcome it.  I apologize that haven't done it

20   already.

21             THE COURT:  That's fine.  That's fine.  And I

22   assume you'll want to do it quickly.

23             MR. HURLEY:  Absolutely.

24             THE COURT:  And I'm going to give Ms. Wickouski a

25   chance to respond.  I mean, she has this one note Footnote

1      5.  And I'm not sure I agree with the text that she has

2      about it.  She may have been able to make a stronger

3      argument than she did in her brief.  Okay.  Okay.  Go ahead.

4             MR. HURLEY:  Okay.  So let me proceed to the

5      question of irreparable harm.

6             So in the Second Circuit, Your Honor, irreparable

7      harm exists where the defendant is insolvent, on the brink

8      of insolvency, or in a perilous financial state.  Celsius

9      has offered evidence that in this case, StakeHound is not

10     just in perilous financial state, but is deeply, deeply

11     insolvent.  The evidence that StakeHound -- that Celsius

12     offers includes that it provided 96 percent of the assets

13     that StakeHound ever had to StakeHound.  StakeHound

14     specifically admits that it lost 60 percent of those assets,

15     which leaves a $70 million hole in StakeHound's balance

16     sheet.

17             THE COURT:  Look, I must say, when I read your

18     original complaint, I had understood you to be alleging that

19     native ETH was an asset of the Debtor, property of the

20     estate.  And I understand cases like Grupo Mexico and many

21     others.  If this was property of the estate and you

22     demonstrated a high risk of insolvency that it would support

23     a TRO and preliminary injunction.  Okay?

24             But what I read Grupo Mexicano and its progeny as

25     saying the risk of insolvency -- and this was the whole

Page 32

1    point of Grupo Mexicano -- it was almost clearly insolvent

2    and that was the basis for the district court granting

3    injunctive relief.  And what I read the Supreme Court as

4    saying, that is not a basis for injunctive, equitable

5    relief.  Okay.  So I'm not doubting that a high risk of

6    insolvency.  I don't know what -- I'm putting high in front

7    of it, but I don't think you could just simply assert, you

8    know, well, we think they're insolvent.  You know, Ms.

9    Wickouski says you haven't demonstrated.

10          I think that her own comments at prior hearings

11   where she said we need to be able to use this to pay

12   attorney's fees for this action, for the arbitration,

13   whatever the -- I don't know what the Israeli action,

14   whether it was arbitration or a court case.  Okay.

15          And what you've suggested about the disparity, you

16   say you have a $160 million claim and StakeHound may have

17   $90 million in assets.  Let's assume you satisfy that

18   requirement for irreparable harm.  Okay.  Ms. Wickouski can

19   argue contrary, but I'm not deciding.  But it does seem to

20   me that you probably have established that element.  But the

21   question for me then is, okay, but what about Grupo

22   Mexicano?  Have you pled the elements of equitable claims

23   that would entitle you to injunctive relief?

24          When I -- I'm not giving you all the cites.  I've

25   given you Judge Gerber's decision, the Owens Corning

Page 33

```
 1    decision from the Third Circuit, 419 F.3d 195.  There's a

 2    decision by Chris Sontchi, Judge Sontchi, EHT US1.  It's

 3    2021 WL 3858556 from August 2021.  You know, there are

 4    others.

 5            I think here's a Fifth Circuit case, and I can't

 6    find my reference to it now, that -- on -- hang on.  Let me

 7    see whether I have it here.

 8            I don't seem to have it.  I thought I saw a Fifth

 9    Circuit case that found in a fraudulent -- in bankruptcy, in

10    a fraudulent conveyance claim equitable relief may be

11    possible as well.  But I think you got the drift of what I'm

12    concerned about.

13            MR. HURLEY:  I do, Your Honor.  And again, I

14    suppose at the conclusion of hearing you can tell us exactly

15    when you would like to have this briefing.  But we'll be

16    prepared to give it to you whenever you need it.

17            THE COURT:  Well, you're -- I don't mean this to

18    be flippant.  You and your client are the ones that are at

19    risk until I decide the matter.  So I'm sure Ms. Wickouski

20    and her colleagues can start doing their work on something

21    more than just Footnote 5 in the brief that they filed.  I'm

22    going to give her certainly a couple of days after you file

23    your brief for her to file a response.  I'm not -- I don't

24    want to reply to that.  Take your best shot and she can take

25    her best shot.
```

1              MR. HURLEY:  Certainly, Your Honor.  And my

2    understanding from the last hearing was that Ms. Wickouski

3    had committed that StakeHound was not going to move assets

4    until a further order of the Court.

5              THE COURT:  Go ahead with your argument.

6              MR. HURLEY:  But obviously she can address that.

7    Okay.

8              So in terms of -- and if Your Honor is satisfied

9    on insolvency, I can move on, or I can address the questions

10   about the evidence that we presented in respect of

11   insolvency.

12             THE COURT:  Go ahead.

13             MR. HURLEY:  Okay.  So as I started to say, we

14   presented evidence that 96 percent of the assets they ever

15   had were provided by Celsius, that six percent of those

16   assets were lost, which leaves this $70 million hole in the

17   balance sheet.

18             StakeHound itself has said in its arbitration,

19   Your Honor, that it had to shut the platform down

20   specifically because it does not have assets sufficient to

21   satisfy customer claims.  And that is the essence of their

22   arbitration, is that we don't have enough assets to pay

23   people anymore, so we had to suspend the platform.  That's

24   their argument.

25             StakeHound, in the Ziotech case which we cite,

1      evidence of insolvency was similar in that it was relied

2      mostly on statements that had been made -- I shouldn't say

3      mostly, because we offered other evidence.  But it relied in

4      part on evidence of statements that were made by the

5      Defendant concerning the risk of bankruptcy the Defendant

6      was facing.  And here, we have a similar situation where

7      StakeHound has made statements of its own that it's

8      effectively insolvent, including by indicating that if

9      Celsius didn't give up its claim to the lost ETH, that

10     StakeHound may have to into liquidation.

11          The cases that StakeHound cites in opposition we

12     don't think change anything.  So the Scheinman case, which

13     doesn't involve allegations of insolvency at all.  And they

14     cite the Bay HK case, which is a case in which the movant

15     actually admitted that its claims could be remedied through

16     a payment of money damages. And the only evidence that --

17     sorry, the only suggestion that was made was that it was

18     "unknown" whether the defendant could pay a judgement once

19     its entered.  We've obviously offered evidence in addition

20     to that.

21          We think it's absolutely satisfactory,

22     particularly on a motion for a preliminary injunction that

23     involves less formal procedures and evidence than a trial.

24     We cite Your Honor to the Supreme Court Camenisch case from

25     1981.  And I'm quoting, "Given its limited purpose and given

Page 36

1    the haste that is often necessary, preliminary injunction is

2    customarily granted on the basis of procedures that are less

3    formal and evidence that is less complete than a trial on

4    the merits." And under that standard in particular, we

5    think that the evidence of insolvency is more than

6    sufficient to meet that prong provided we can persuade Your

7    Honor that an injunction is appropriate under those

8    circumstances.

9            So with that, I would like to move on to likely

10   success on the merits. And we talked at some length about

11   the Citigroup case and its reaffirmation of the standard in

12   the Second Circuit that you either have to demonstrate the

13   likelihood of success on the merits or sufficiently serious

14   questions going to the merits to make them a fair ground for

15   litigation plus a balance of hardships that sits decidedly

16   in favor of the moving party. We think we can make that

17   showing on the merits under both standards here, Your Honor.

18           Let me begin with the claim for violation of the

19   automatic stay. And I won't dwell on it because it mostly

20   relates to the possibility that potential sanctions could

21   render StakeHound even more insolvent.

22           THE COURT: Let me just say with respect to the

23   violation of the automatic stay, I believe I have the

24   authority -- whether it should be exercised is a different

25   issue -- but I believe I have the authority to a range of

Page 37

1    possibilities.  I mean, this -- you know, I much earlier in

2    this case pointed you all to the history in the MF Global

3    case.  You know, I think Ms. Wickouski can argue to the

4    contrary.  I believe the automatic stay was violated.  And

5    it opens up the range or sanctions that I could impose for

6    violation of the automatic stay.

7              She has made a motion to dismiss for lack of

8    personal jurisdiction.  In order to impose contempt

9    sanctions, I have to -- the Court must have personal

10   jurisdiction to be able to do that.  She has made a motion.

11   It will be heard I think the same day that the preliminary

12   injunction, the motion to dismiss, the motion to compel

13   arbitration, they'll all be heard together.  The Second

14   Circuit and other circuits have substantial caselaw about

15   the alternate ways that a trial court can deal with motions

16   to dismiss for lack of personal jurisdiction.  You know,

17   when we get to the -- that -- I mean, I'll decide now what

18   relief if any I should impose for violating the automatic

19   stay.  Okay.  So I think that part of it -- I'm sure it's of

20   great concern to Ms. Wickouski and her client, but I have

21   less problem.  I've made multiple comments during the course

22   of this case about that.  I think I view her motion to

23   dismiss for lack of personal jurisdiction as her effort at a

24   defense to the violation of the automatic stay.

25              Go on with your argument if you need to.  But go

Page 38

1    ahead.

2              MR. HURLEY:  Thank you, Your Honor.  I will move

3    now to the claims with respect to the coins.

4              So with respect to the MATIC and the DOT to begin.

5    So let me back up.  There's MATIC and the DOT and there's

6    the 25,000 November staked ETH.  All of those tokens are

7    available for transfer right now.

8              THE COURT:  You say that I'm holding you hostage,

9    holding your client hostage by not returning.

10             MR. HURLEY:  We made that comment in particular

11   with the MATIC and the DOT, Your Honor.  And we did because

12   MATIC and the DOT, unlike with the ETH where there was an

13   excuse, one that we think borders on the frivolous, but an

14   excuse provided for why they are withholding the ETH,

15   they've never even tried to provide an excuse for

16   withholding the MATIC and the DOT, which is worth

17   approximately $40 million.

18             So the MATIC and the DOT, on May 25th, we demanded

19   its return.  And the agreements very clearly require

20   StakeHound to return MATIC and DOT in exchange for MATIC and

21   ST-DOT.  We tendered our ST-MATIC and ST-DOT.  They didn't

22   do it.

23             Like I said, they don't really offer any kind of

24   excuse.  I mean, I guess conceivably they're going to say,

25   well, the platform is suspended.  They suspended the

Page 39

1    platform I guess actually more than two years ago.

2            First of all, they've never suggested that there's

3    any reason the platform needs to stay suspended with respect

4    to the MATIC and the DOT.  They don't claim that they don't

5    have adequate MATIC and DOT to satisfy our claim.  For

6    example --

7            THE COURT:  Have they asserted that any other

8    parties have a claim to those same MATIC and DOT?

9            MR. HURLEY:  No.  They have made really -- they've

10   provided no contention of any kind to justify what they're

11   doing.  They're just holding it.

12           With respect to the platform being suspended,

13   there is -- even if they said they had a right to do it in

14   the first place, it's not -- it's a -- the suspension has to

15   be temporary and it has to be consistent with the duty of

16   good faith and fair dealing under whether it's U.S. law or

17   Swiss law that applies.  And just simply holding on to our

18   MATIC and DOT with no excuse is we submit a very clear

19   violation of those principles and that we have an

20   overwhelming likelihood of success or prevailing on the

21   claims with respect to the MATIC and the DOT.

22           THE COURT:  So let me just -- I'll actually read

23   you from -- I've already cited Judge Gerber's Footnote 18 in

24   his Adelphia opinion, 323 B.R. 345 at 360, Note 18.  It's a

25   very lengthy footnote.  Okay.

1            And he says, "Grupo Mexicano was a case in which

2     equitable claims had not been presented and an asset-

3     freezing injunction was sought solely to protect a future

4     money judgement."  Here, Adelphia made substantiated claims

5     of ownership of much of the Rigas' property and sought the

6     equitable relief of imposition of a constructive trust and

7     recovery of fraudulent conveyances.

8            "Since Grupo Mexicano was decided, lower courts

9     have considered whether Grupo Mexicano bars asset-freezing

10    injunctions under Federal Rule of Civil Procedure 64 or 65

11    where equitable claims have been presented.  Those course

12    have repeatedly and uniformly to date held that Grupo

13    Mexicano is inapplicable to request for asset-freezing

14    injunctions where plaintiffs seeking that relief have also

15    made equitable claims."

16            He actually -- he cites a Second Circuit case, CSC

17    Holdings Inc. v. Redisi, 309 F.3d 988, 996 (7th Cir. 2002).

18    And he has a parenthetical that says -- this is a

19    parenthetical from the CSC Holdings case.  It says, Grupo

20    Mexicano "Held that a district court may not issue an

21    injunction freezing assets in an action for money damages

22    where no equitable interest is claimed."

23            And then it goes on in the footnote where in the

24    parenthetical where equitable relief for an accounting and

25    resulting profit was sought in the alternative to claims for

1    money damages, Grupo Mexicano was inapplicable and asset-

2    freezing injunctions were proper.  So that's a cite to that

3    case.

4              And then he cites a Fourth Circuit case, the

5    Rahmen case, 198 F.3d 489, 496-497 (4th Cir. 1999).  And the

6    gist of it, he says when the plaintiff-creditor asserts a

7    cognizable claim to specific assets of the defendant or

8    seeks a remedy involving those assets, the Court may in the

9    interim invoke equity to preserve the status quo pending

10   judgement.  And it goes on.  You'll read these cases.  Judge

11   Gerber, as was his wont, the footnote goes on very lengthy.

12   It's very scholarly.

13             So I understand your argument as to the MATIC and

14   DOT.  You say the Debtor has got an interest in it, and you

15   want relief.

16             MR. HURLEY:  Your Honor, thank you for those

17   cites.  We have a cite from the Dong case out of the

18   Southern District that I think addressed this question as

19   well.  And I will provide that specific cite to you.  Hold

20   on a second.

21             THE COURT:  Don't give it to me now.  Put it in a

22   brief.  Okay?

23             MR. HURLEY:  Okay.  But basically holds that Grupo

24   Mexicano did not overrule the long-standing rule here that -

25   - where non-movants assets may be dissipated before final

Page 42

1    relief can be granted and where the non-movant -- right.

2              THE COURT:  If the Plaintiff claims an interest in

3    those assets, yes, equitable relief is possible.

4              MR. HURLEY:  So like I said, we submit -- we

5    welcome the opportunity to submit further briefing and

6    demonstrate we think the rule applies -- or sorry, that

7    Grupo Mexicano does part of the relief here.  But we

8    understand you'll look for that in a further submission.

9              Regarding the question of success on the merits

10   with respect to the stake services agreement and the

11   November -- the 25,000 November ETH.  So again, I want to

12   reiterate that there is a contention by the other side in

13   this case that the contract is at an end as of April 12th.

14   Now, not suggesting that we necessarily agree with that or

15   what the precise ramifications for that would be.  But that

16   is one of the reasons that we added the claims for equitable

17   relief, because there is a contention in the case that the

18   staking services agreement no longer applies.

19             With respect to that ETH, so there's no doubt that

20   in their dispute that StakeHound provided the ETH and has

21   demanded its return.  The staking services agreement is

22   attached to the Mann Declaration.  It's Exhibit B to the

23   Mann Declaration.  And Section 1.4 of the agreement provides

24   specifically that while the ETH won't be available until the

25   upgrade happens, that -- which is defined in the agreement

1    as the termination date, Section 1.5 goes on to require

2    StakeHound to transfer the November ETH, the 25,000 of stuff

3    that they didn't lose, to a separate wallet and do it on the

4    termination date.

5            And Section 1.8 -- and I should back up and say in

6    the April 12th letter that we got from StakeHound, they

7    claim that they in fact had undertaken that transfer.

8            Section 1.8 provides that following the successful

9    transfer of the November ETH, Celsius shall be entitled to

10   exchange upon availability its ST-ETH against ETH through

11   StakeHound's platform.

12           StakeHound agreed that it would provide StakeHound

13   native ETH on a one-to-one basis with ST-ETH.  We tendered

14   our ST-ETH.  They didn't do it.

15           THE COURT:  So are you asserting -- let me -- are

16   you asserting that those writings from StakeHound give

17   Celsius a claim to the specific assets for which you're

18   seeking equitable relief?

19           MR. HURLEY:  We do.

20           THE COURT:  Okay.  You'll make that point clearly

21   in your brief.

22           MR. HURLEY:  We will.

23           THE COURT:  Okay.  So with respect to the assets -

24   - sorry, with respect to the claim, the response that has

25   been provided by StakeHound we submit is not sustainable and

Page 44

1    really borders on the frivolous.  They give two responses.

2    One is they say, well, you can only get your ETH back if you

3    do it through the platform.  But since we suspended the

4    platform, you cannot get your ETH back.  We submit that's

5    inconsistent with the contract itself, which provides that

6    you can only suspend the platform temporarily even if you do

7    it.  And under Swiss law as well as U.S. law, a right of

8    that kind has to be exercised in good faith and it would be

9    absolutely inconsistent with the duty of good faith to allow

10   them to say we lost your eth, therefore we had to suspend

11   the platform.  And because this platform is suspended, you

12   can't get back the ETH that we didn't lose.

13           THE COURT:  I think -- and Ms. Wickouski can

14   address this as well.  If you believe that the contract or

15   the subsequent writings from StakeHound establishes Celsius'

16   right in property, then I'm sure when you look through these

17   cases, you'll find many cases that say where the plaintiff

18   is seeking to recover property in which it has an interest,

19   that that can provide a basis for injunctive relief,

20   equitable relief, even if they also have legal claims.

21           But I want to see that -- I mean, I'm not

22   criticizing either party for the briefs they filed, but I

23   have lots of questions, and you're going to answer them.

24           MR. HURLEY:  Understood, Your Honor.  And we look

25   forward to the opportunity to do that.  And we believe that

Page 45

1    kind of property interest exists here and look forward to

2    demonstrating that.

3           The other response that StakeHound makes in terms

4    of explaining why they haven't returned the ETH that they

5    didn't lose is they claim now, in a manner that is

6    inconsistent with the words of the contract and the words of

7    the parties over time that rather than being required to

8    return ETH over on a one-to-one basis, one ETH for one ST-

9    ETH, they now claim, again, for the first time in their

10   arbitration -- that's the first time we saw this in their

11   arbitration -- they said that in fact they are only required

12   to provide as much native ETH as is necessary to equal the

13   Fiat value of ST-ETH --

14          THE COURT:  Yeah, I --

15          MR. HURLEY:  -- (indiscernible) the $50 million.

16   That is their position in the arbitration.  We don't think

17   either one of those defenses is remotely plausible and that

18   Celsius has an overwhelming probability of succeeding on the

19   merits of the case if this case proceeds.

20          THE COURT:  You know, I think I made a comment at

21   the last hearing, and you may or may not agree with it.  But

22   I think I put this in one of the orders I entered.  If Ms.

23   Wickouski prevails on the motion to compel arbitration, it

24   may well be -- I'm not saying for sure, but it may well be

25   that the equitable relief that I would order would remain in

Page 46

1    place until an arbitrator can decide whether as

2    precautionary measures it could impose whatever relief it

3    believes is appropriate if the matter is arbitrable.

4           I can't remember now -- I've had this issue come

5    up years ago.  And, you know, that may be an issue for

6    another day, but we'll see.

7           MR. HURLEY:  Okay.  Understood, Your Honor.

8           THE COURT:  And your arbitrator probably isn't

9    going to be bound -- won't be bound by Grupo Mexicano.

10          MR. HURLEY:  Thank you, Your Honor.  We obviously

11   agree that Your Honor has that authority.

12          So based on what we just described, we think that

13   Celsius' likelihood of success is overwhelming.  We also

14   note under Citigroup that if we can also show that the

15   balance of harms weighs very strongly in favor of Celsius

16   that we don't even have to show likelihood of success.  We

17   can rest on significant questions --

18          THE COURT:  You know, look.  I've applied that

19   injunction standard multiple times before.  It's an

20   alternative standard.  Okay?  And I agree that's the

21   standard.  That's not what was hanging me up.

22          MR. HURLEY:  I understand.  So let me turn to the

23   balance of harms.  Because we do believe that the balance of

24   harms weigh overwhelmingly in Celsius' favor in this case.

25          Let me first talk about the harm to Celsius.  And

Page 47

1     again, today we are only asking for relief that would endure

2     for about four weeks.  Your Honor will have a chance to

3     revisit with any questions related to what's going to happen

4     going forward on September 27th.

5              So with respect to Celsius, any harm that it would

6     suffer by assets that are the subject assets being spent in

7     the next four weeks is permanent.  Celsius has offered

8     evidence that StakeHound has only $90 million of assets and

9     a $160 million claim.  It's already not going to get full

10    satisfaction of any judgement it gets in the case.  And

11    every dollar that gets spent between now and September 27th

12    is another dollar that can't be recovered by Celsius for the

13    benefit of its creditors.  Again, that's likely permanent

14    harm.

15             Turning to the harm that would be to StakeHound in

16    the event the TRO was granted.  So first, StakeHound says

17    that it has some operational needs.  The Castellana

18    Declaration includes a paragraph where he says that he needs

19    $80,000 a month.  He doesn't detail why he needs $80,000 a

20    month.  He includes some categories, but he doesn't break it

21    down amongst them.  So, for example, one of the things he

22    says he needs money for is to pay the contract rate to

23    operate the notes without applying discounts or rebates to

24    that rate.  He doesn't identify what the contract rate is.

25    He doesn't identify what it would be after the discounts and

Page 48

1    rebates are applied.  Our information is that order of

2    magnitude-wise supporting those notes is more on the order

3    of $10,000 per year.

4           He also says there are some salaries that need to

5    be paid.  He doesn't say who, he doesn't say why, he doesn't

6    say what.  And he says that their ordinary business expenses

7    need to be paid.  We're not sure what those would be

8    considering that StakeHound appears to basically be

9    collecting rewards and doing nothing more than that.

10          But notwithstanding that, this is exactly the kind

11   of expense concern that is addressed by the release valve in

12   our TRO.  So if there is a payment that needs to be made in

13   the near term, they can come to us and say, hey, to preserve

14   the assets, really need to pay it in a week.

15          THE COURT:  Mr. Hurley, I don't want to have one

16   or more hearings a week before a preliminary injunction

17   hearing to deal with, yeah, StakeHound needs another X

18   dollars to do this.  If I was going to have a carveout

19   pending the preliminary inunction hearing, it would be a

20   dollar amount.  I just am not going to put myself in the

21   position where I'm micromanaging every dollar of expense

22   that StakeHound has between now and the end of September.

23          MR. HURLEY:  Understood, Your Honor.  With respect

24   to actual operating expenses, it appears that even by their

25   own sort of -- what they're saying they need, it's a

Page 49

1    comparatively small amount.

2         Now, with respect to legal fees.  They have

3    indicated that they want to spend very substantial sums on

4    legal fees in the next four weeks.  Again, if StakeHound is

5    permitted to spend funds on legal fees in the next four

6    weeks, those are funds that can never come back and are lost

7    dollar-for-dollar from any judgement.

8         The harm to StakeHound on the other hand is not

9    permanent.  It may be that on September 27th Your Honor

10   decides that there should be a carveout and that there

11   should be a carveout that encompasses legal fees.  If that

12   happens, Your Honor determines that, then all you will have

13   had is a delay of a few week.  A delay of a few weeks for

14   payment of services since the time that they are rendered

15   for lawyers and law firms is extremely common.  In fact, it

16   can be much, much longer than a few weeks in ordinary

17   practice.

18        Now, if Your Honor on September 27th concludes

19   that a carveout is not appropriate, then the fact that they

20   didn't get one now is not an injustice because they weren't

21   entitled to one in the first place.

22        StakeHound suggests that if they don't have this

23   carveout to be able to pay their fees in the next four

24   weeks, that it's going to impede their ability to hire

25   counsel.  But the evidence shows just the opposite.

1    StakeHound has been laboring from the very beginning of this

2    case under the possibility that a freezing order would be

3    entered, that a freezing order would prevent them from using

4    the subject assets to pay legal fees.  It has not prevented

5    them from mounting a vigorous defense to virtually every

6    step that Celsius has taken in this case.  There is no

7    suggestion that if the TRO was entered, that StakeHound's

8    counsel is going to resign in the next four weeks, or that

9    it even could, frankly.

10          This is like the MarketXT case where in MarketXT,

11   the defendant had come forward and said I want relief to be

12   able to pay outstanding fees for my lawyers and it's going

13   to impede my defense if I don't.  And the court noted, well,

14   your lawyers have been frozen for months, and yet they have

15   continued to litigate.  It has not impeded your ability to

16   mount a defense.  Same thing is true here, Your Honor.  It

17   clearly has not impeded their ability to mount a defense.

18          I just want to say finally I guess Your Honor here

19   in terms of that question in particular, what Celsius would

20   like to do and has been focused on from the beginning really

21   here is, is there a way to bring the parties together and

22   make some kind of a deal.  And we would submit that if

23   StakeHound is provided with effectively a war chest for the

24   next four weeks, that war chest is going to get used.

25   Because it's money that comes from a $90 million group of

1   assets that's subject to claims of $160 million from

2   Celsius.  It just stands to reason there's not going to be

3   much incentive for them to do anything other than continue

4   to litigate with extreme vigor.  I'm not saying they won't

5   do it anyway.  Obviously, as I just said, (indiscernible)

6   vigorously already.

7            But for there to be a chance for parties to make

8   some kind of an agreement, everybody's got to have an

9   incentive.  And under the circumstances here, if there is a

10  possibility that StakeHound could continue to use these

11  assets, that we at least contend are assets that are going

12  to be subject to a very substantial claim, that incentive

13  isn't going to be there.  And that's really the way we would

14  like to see things move forward.

15           And then just a final point, Your Honor.  It

16  relates to the arbitration.

17           THE COURT:  What do you understand the value of

18  the MATIC and DOT to be?

19           MR. HURLEY:  It changes every day, Your Honor.

20  But recent prices, it was around $40 million.

21           THE COURT:  Okay.  Go ahead.

22           MR. HURLEY:  Okay.  So with respect to the

23  arbitration, there's just one final point.  I think it's

24  almost in the nature of housekeeping.  As we provided in our

25  August 21st letter to Your Honor, an email that we received

Page 52

1    from the arbitrator on August 18th.  And that hasn't been

2    responded to yet.  The arbitrator asked -- so after the

3    hearings in front of Your Honor, we sent a joint letter to

4    the arbitrator on August 11th.  And it was on my letterhead

5    and I copied counsel for StakeHound.  And in the August 18th

6    letter, the arbitrator wrote back and said first of all,

7    StakeHound, please just confirm that you agree with Mr.

8    Hurley's letter, that it's effectively legitimate.  And then

9    a question about whether or not this is -- what's going on

10   is a suspension.  And there hasn't been a response yet to

11   that letter.

12          And the TRO that we're asking Your Honor to enter,

13   it would require a response that we think is appropriate

14   under the circumstances, basically everybody saying yes, we

15   understand the letter from Mr. Hurley, we agree with, and

16   we're looking for a suspension until further notice.

17          THE COURT:  Would you agree that an order entered

18   by the court that orders the parties to suspend all activity

19   in connection with the arbitration pending further order of

20   the court, would that solve your problem on this?

21          MR. HURLEY:  I believe it would, Your Honor.  And

22   yeah, I believe it would.  My hope would be that in addition

23   to that, StakeHound would also respond and just say, you

24   know, we authorize the letter.  But yes --

25          THE COURT:  They don't need to authorize my order

```
 1    if I enter an order.

 2              MR. HURLEY:  Correct.

 3              THE COURT:  They can violate an order at their own

 4    risk.

 5              MR. HURLEY:  Entry of an order would certainly

 6    satisfy our concerns.

 7              So, Your Honor, that's all I have for now.

 8    Obviously you've asked for some additional briefing and we

 9    will get right on it.  But other than that, unless Your

10    Honor has other questions, I will yield the podium.

11              THE COURT:  How much time do you want for a brief?

12    Your minions are not going to be happy with your answer.  I

13    don't mean to disparage them.  It's a great team you have.

14              MR. HURLEY:  Thank you.  I agree.  Can I speak

15    with them offline?

16              THE COURT:  Yes, you can.

17              MR. HURLEY:  I think it's a matter of a day or

18    two.

19              THE COURT:  Okay.  Speak to them.  I've given you

20    a bunch of lead-ins of citations.

21              MR. HURLEY:  Very much so, Your Honor.  We

22    appreciate that.  And we'll address those.

23              THE COURT:  Ms. Wickouski, go ahead.

24              MS. WICKOUSKI:  Thank you, Your Honor.  For the

25    record, Stephanie Wickouski, Locke Lord, on behalf of
```

Page 54

1    StakeHound.

2            Your Honor, I think Mr. Hurley has been speaking

3    for about an hour here, and there's a lot to unpack.  So if

4    Your Honor would bear with me.

5            THE COURT:  I will.

6            MS. WICKOUSKI:  I would like to address points

7    maybe not in any particular order.  And I would like to

8    start out, and I want to come back to this.  But with the

9    last point that Mr. Hurley made.  And Celsius wants the

10   Court to prevent my client from spending a dime to preserve

11   its own assets or pay its legal fees.

12           THE COURT:  Actually, the last point he made was

13   about a letter to the arbitrator.  And that was the last

14   point he made.

15           MS. WICKOUSKI:  You're correct, Your Honor.  And

16   forgive me if I glossed over that as perhaps being non-

17   substantive.  Our client's Swiss counsel has been ready to

18   reply to the letter to confirm our agreement to it and

19   actually had held off pending the outcome of this hearing

20   because Celsius has asked for specific language.  It would

21   be our preference that we respond and confirm that the Swiss

22   counsel confirmed --

23           THE COURT:  This is you I'm going to deal with

24   right now.

25           Mr. Hurley, draft a proposed order.  Share it with

Page 55

1    Ms. Wickouski.  If you can't get an agreed form of order by

2    tomorrow, each of you can submit to me separate ones.  I

3    thought this issue, Ms. Wickouski, was going to be put to

4    bed long before today.  It hasn't.  So I'm not going to get

5    into whether your Swiss counsel thinks that one form of

6    language is better than another.  I am going to enter an

7    order directing that the parties cease all activity pending

8    further -- in the arbitration pending further order of the

9    court.  If you violate it, Mr. Hurley will be back for

10   contempt.  Okay?

11           MS. WICKOUSKI:  I understand, Your Honor.  We --

12           THE COURT:  No, stop.  Stop.  I don't want to hear

13   that Swiss counsel was waiting to hear what happened today.

14   This should have been resolved.  It's resolved now.  I will

15   get either an agreed form of order or separate forms of

16   order tomorrow.  And by tomorrow at noon an order will be

17   entered on that.  And, Mr. Hurley, you can forward a copy to

18   the arbitrator or not.  But that's not a complicated issue.

19           MS. WICKOUSKI:  Thank you, Your Honor.  And just

20   to be clear, the reason we were waiting was because if Your

21   Honor agreed with the form of letter that Mr. Hurley had

22   proposed --

23           THE COURT:  Ms. Wickouski, we are beyond that.

24   Either I'll get an agreed form of order or I'll get your two

25   orders.  One will be entered by the end of the day tomorrow.

1    So I want either an agreed form of order by noon tomorrow or

2    separate forms of order.  And by the end of the day, there

3    will be an order entered.  We're not going to -- there isn't

4    going to be any further negotiation.  Swiss counsel is not

5    going to be involved.  This is a violation of the automatic

6    stay.

7              And at the end of the day I'll tell both of you I

8    still think that, you know, you probably are both going to

9    be better off having this arbitrated.  It's Swiss law that

10   governs.  But that's not for today's issue.  Okay?  But for

11   today's issue, I'm just telling you the Court is going to

12   enter an order.  You can either have an agreed form or

13   submit your separate forms and one will be entered by the

14   end of the day tomorrow.

15             Go on with your argument.

16             MS. WICKOUSKI:  Thank you, Your Honor.  Let me

17   talk about the elephant in the room, which is that this is a

18   TRO hearing.  And I realize that the standard is loser and

19   not as high as a preliminary injunction or an actual trial.

20   But the elephant in the room is that we have, even though

21   our client did not have the burden, we have submitted

22   evidence, we have submitted a declaration, and we have a

23   witness available for cross-examination.  None of that is

24   true with respect to the Plaintiff.

25             THE COURT:  Let me be clear that I understand the

Page 57

1    law on TROs.  I do not have to hear witnesses testify.  I

2    can do it solely on the papers.

3                MS. WICKOUSKI:  I understand.

4                THE COURT:  So we're not hearing witnesses today.

5                MS. WICKOUSKI:  And, Your Honor, with respect to

6    the declarations the Plaintiff has submitted, we have

7    objections to them.  And we would like to be able to present

8    those objections.

9                But getting right to the point, even under -- and

10   Mr. Hurley has made a lot of arguments that this fact hasn't

11   been contested or this statement is admitted

12   (indiscernible).  Perhaps he hasn't read our papers.  We

13   have submitted both the agreements applicable and the

14   statement of Mr. Castellana concerning the negotiation of

15   those agreements as well as, fast-forward to the present,

16   the present need to pay operating expenses and to pay legal

17   counsel and the uses of that.  And he would certainly be

18   able to provide more detail to respond to a number of things

19   that Mr. Hurley said, which are not in evidence.

20               And before I leave this point, while I understand

21   the appeal of cutting off the other side's right to pay

22   their counsel or ability to pay their counsel, this is not

23   an appropriate tactic for a plaintiff to engage the court

24   in.  And particularly here where the evidence of record, and

25   really the only evidence of record, indicates that the

1   assets that are at issue are not property of the estate.  I

2   think even --

3              THE COURT:  Is that true as to the MATIC and the

4   DOT?  Because I will -- because it certainly sounds to me

5   that the Debtor has a property interest in the MATIC and the

6   DOT.  Put aside the staked ETH.  But as to MATIC and DOT,

7   Mr. Hurley, I will look at the supplemental brief, but it

8   certainly sounds that as to the MATIC and DOT, they do have

9   a property interest.

10             MS. WICKOUSKI:  Well, Your Honor, we disagree with

11  that.  We think this is covered by the terms and conditions

12  and the revenue sharing agreement.

13             But I think that it's probably not an issue that

14  the Court necessarily needs to address at the TRO because we

15  have proposed that we would abide by a freezing arrangement

16  subject to an appropriate carveout.  And so I think even Mr.

17  Hurley said that the MATIC and DOT in their estimation is

18  $40 million, but he says that the assets of our client is

19  $90 million.  I am not conceding those figures.  But I think

20  that the expenses that have been proposed that are necessary

21  in Mr. Castellana's affidavit are far, far less from even

22  touching the level of $40 million.  I think we're talking

23  about $2 million and the need for that.

24             I think particularly -- I mean, I'm not conceding

25  that there's been a showing for a TRO here because the

Page 59

1    evidence that's been presented such as it is by the

2    Plaintiff are four declarations.  Three are declarations of

3    counsel and one is a witness who does not have personal

4    knowledge.  What we have submitted is a witness with direct

5    personal knowledge as well as the agreements that clearly

6    state that these assets are not property of Celsius.  And I

7    think --

8            THE COURT:  As to the MATIC and DOT?

9            MS. WICKOUSKI:  Mr. Castellana is here, but our

10   view is that those assets were transferred as well.  I

11   realize that there has been an issue raised there, and we're

12   not proposing today that -- you know, I think what we would

13   be willing to agree to as an interim continuation of the

14   freeze order wouldn't affect the MATIC or DOT.

15           THE COURT:  Go ahead with your argument.

16           MS. WICKOUSKI:  I point to one thing that -- and

17   there have certainly been a lot of statements that have been

18   made this morning, but there's one comment that was made by

19   Mr. Hurley where he points to correspondence indicating --

20   and I think this was an email attached to the declaration

21   that we want to object to -- about a one-to-one exchange.

22   And if you read lines back to his comments, when I heard

23   that, it sounded like a contract dispute, a breach of

24   contract dispute.  An exchange suggests that what is being

25   exchanged from one party to the other is not the property of

Page 60

1    solely one party.  Because why would there be an exchange if

2    what Plaintiff was trying to exchange for was their property

3    in the first instance?  It also suggests that they have to

4    provide something in order to exchange.  And that really

5    belies their theory that this is their property.

6              So, I mean, I could go back to -- again, we've

7    been listening to this for an hour.  There are a number of

8    statements --

9              THE COURT:  I haven't been listening quite an hour

10   because of technical problems I had.  But close to it.

11             MS. WICKOUSKI:  Yes.  Thank you.  Thank you, Your

12   Honor.

13             So I think on the -- this is a TRO.  And putting

14   aside whether a freezing order is even appropriate where

15   it's primarily or entirely a breach of contract claim, I

16   know that the Plaintiff's position is that these are

17   actually equitable claims.  But their equitable claims in

18   their amended complaint all emanate from the position and

19   the view that these are their assets.  And we have this in

20   the face of a contract that says clearly the contrary.

21             So I think it's not a question of do they have to

22   show likelihood of success --

23             THE COURT:  May I ask --

24             MS. WICKOUSKI:  Yes.

25             THE COURT:  You argue that they have failed -- in

Page 61

1    the amended complaint that they have failed to properly

2    allege equitable claims?  Because, look, Ms. Wickouski, if

3    you disagree, you'll get a chance to put this in a brief.

4    But the way I read the law is that if a Plaintiff can

5    properly assert both legal and equitable claims, equitable

6    relief with respect to the equitable claims is available.

7    They have to satisfy the -- I'm not saying it's automatic at

8    all.  They have to satisfy the high burden.  But it's not

9    uncommon for courts to get complaints that allege both legal

10   and equitable claims.  So certainly if you -- when you file

11   -- if you were going to file another brief, if you want to

12   address why you don't believe the amended complaint properly

13   asserts equitable claims, you can do that.

14           I'm not -- making it crystal clear.  I'm a long

15   way from deciding that they've properly alleged equitable

16   claims that would support a TRO and preliminary injunction.

17   I'm not.

18           MS. WICKOUSKI:  Well, that is -- and maybe I said

19   it unartfully.  But precisely what I'm saying is that they

20   haven't properly pled equitable claims or actually they

21   haven't provided any evidence in support of even a colorable

22   claim that would be sufficient for the basis to enter a TRO.

23           And I realize that maybe they're not required to

24   under the timeframe to bring in witnesses, but they're

25   required to make some sort of showing.

1           And I get back to the fact that there's four --

2    that we have a witness with actual knowledge, and we

3    submitted contracts.  They have submitted four declarations.

4    Three of them are from counsel.  Two of them are from Swiss

5    counsel.  And I find that really ironic given that one of

6    the things we're fighting about, and we're even righting

7    about whether we should be fighting about it, is whether the

8    Plaintiff should be compelled to go to Switzerland, but yet

9    two declarations from Swiss counsel.

10           And then declaration with respect from the U.S.

11   counsel --

12           THE COURT:  The contract is governed by Swiss law.

13   So I don't know why you think it's so unusual that we have a

14   declaration from Swiss counsel.

15           MS. WICKOUSKI:  And it is indeed governed by Swiss

16   law, which precisely gets to our issue of arbitrability.

17           But with respect to the one declaration that is

18   not from counsel, it is from a witness that does not have

19   personal knowledge and was not even at Celsius at the time

20   that these transactions were negotiated.  And there's a lot

21   of commentary I think in the first declaration of Mr. Desser

22   about how the intent of the parties is relevant under Swiss

23   law.

24           And so I think that this all goes to has the

25   Plaintiff made a sufficient showing of an issue -- I'm not

Page 63

```
 1    even going to say likelihood of success on the merits.

 2    That's what I believe.  But I know that parties can disagree

 3    as to how high that standard is and whether it's applicable

 4    or whether there's a lower standard of an issue that gives

 5    rise to an issue under the merits.  I don't think even the

 6    lowest standard has been met with respect to the merits.

 7    And I would say, again, elephant in the room is what is the

 8    competent evidence that's before the court.  At the last

 9    hearing, Your Honor, I think you exhorted Mr. Hurley to come

10    in last week at a TRO hearing with competent evidence.  We

11    would submit that that has not been met, and I realize this

12    is TRO, but most of what we've heard today is the statements

13    of counsel.

14            And not to sound like a broken record, Your Honor,

15    but Mr. Hurley doesn't get to testify.  And it's ironic that

16    I've said that now, I think, at every hearing and what did

17    we see, a declaration from Mr. Hurley.  There needs to be

18    competent testimony submitted by a witness with actual

19    knowledge and direct knowledge, particularly when what is at

20    issue is whose property is this and we have agreements that

21    govern specifically that question.

22            And, Your Honor, I would only ask that if the

23    court is going to consider the admission of the declaration

24    submitted by plaintiff, that we have the opportunity to

25    object and cross-examine those witnesses.  I don't think --
```

1            THE COURT:  There isn't going to be any cross-

2     examination for a TRO.  I've made clear that if we get to

3     the preliminary injunction hearing, all witnesses are

4     subject to cross-examination, and the two of you need to

5     confer about whether they appear by Zoom or in person.

6     You'll work that out.  That's crystal clear.  If we get to a

7     preliminary injunction hearing, there will be live testimony

8     subject to cross-examination.

9            MS. WICKOUSKI:  Yes, Your Honor.  So I would ask

10    that we offer into evidence Mr. Castellana's declaration and

11    exhibits.

12            THE COURT:  Mr. Hurley?

13            MR. HURLEY:  We don't object to Your Honor

14    considering the declaration.  I mean, our understanding from

15    the prior hearing was that this is a non-evidentiary

16    hearing.

17            THE COURT:  Well, it's an evidentiary hearing in

18    the sense that -- I'm not having cross-examination, clear.

19    But a TRO has to be supported by competent evidence, and the

20    opposition has to be supported by competent evidence.  It

21    may be subject to cross-examination at a preliminary

22    injunction.  But so I take you to be saying you're not

23    objecting for purposes of the TRO hearing to the court

24    admitting in evidence the Castellana declaration and

25    exhibits.  Is that correct?

1           MR. HURLEY:  Let me back up, Your Honor, I guess,

2    because my understanding was that both sides' declarations

3    were going to be admitted for what they're worth, and Your

4    Honor will make a decision about their value.  And to the

5    extent that's the case that we certainly think that all of

6    the declarations should be considered by Your Honor on

7    exactly --

8           THE COURT:  But right now, I'm asking about

9    Castellana declaration and exhibits.  If you want to -- if

10   you believe you have a proper objection, go ahead and assert

11   it, and I'll rule on it.  On a TRO on notice, which this one

12   was, the defendant certainly can oppose the TRO, offer

13   evidence which it believes should be considered by the court

14   and Ms. Wickouski has done that.

15          MR. HURLEY:  So Your Honor --

16          THE COURT:  We're not going to trade off, Mr.

17   Hurley.  You're either -- do you object to the court

18   admitting into evidence for purposes of a TRO hearing

19   without cross-examination today the Castellana declaration

20   and exhibits?  It's a yes or a no.

21          MR. HURLEY:  The Castellana declaration includes

22   substantial statements that would not be admissible at a

23   trial.  If that's the standard, then we object.

24          THE COURT:  Okay.  All right.  I note your

25   objection.  I'm not ruling on it now.  Go ahead.  Go ahead,

1    Ms. Wickouski.

2           MS. WICKOUSKI:  Thank you, Your Honor.  There's

3    just one more point that was made in the papers that I do

4    want to address, which is the risk of dissipation and the

5    balance of the harms.  Counsel stated that on the balance of

6    the harms, the damage to Celsius is permanent, but not clear

7    what that damage is.  The damage to StakeHound, on the other

8    hand, is permanent or at least more permanent because the

9    impact of freezing all of their access to funds and

10   precluding them from paying operating expenses which are

11   needed to maintain the equipment, to maintain the tokens, as

12   well as not being able to pay their lawyers to pursue a very

13   valuable claim as well as not be able to pay its lawyers to

14   defend claims that their assets are their assets, it seems

15   that the balance of the harms obviously favors our client.

16          And not to beat the drum about this, but while I

17   understand the appeal of not wanting your opponent to be

18   able to pay their counsel, that is not a proper tactic to

19   involve the court in.  And besides, the amounts here that

20   Mr. Castellana in his affidavit have stated that are

21   necessary over this time period, given the extent of the

22   litigation, and this is not just the U.S. litigation, but

23   Israel, which is an affirmative case, really pale in

24   comparison to the resources that are being expended on the

25   other side.

Page 67

1                So I find the idea that we come back to the court

2       every time we want to pay a bill to be a waste of the

3       court's resources, but also really disproportionate under

4       the circumstances.

5                THE COURT:  May I ask you this question?  Mr.

6       Hurley said that his statement of belief that StakeHound has

7       assets of approximately $90 million.  Do you agree with

8       that?

9                MS. WICKOUSKI:  May I have a moment?

10               THE COURT:  Yes, go ahead.

11               MS. WICKOUSKI:  Your Honor, unfortunately I don't

12      know the answer to that question.  I don't have a detail on

13      that.  I do have the principal of our client here that we

14      could ask or certainly allow -- make him available for the

15      court's question in that regard.

16               THE COURT:  I don't intend to take testimony

17      today.  I was asking you whether you agree.  If you're not

18      in a position to respond to it, that's fine too.  It was a

19      statement, not evidence, that Mr. Hurley made that

20      StakeHound has approximately $90 million in assets, and I

21      just wanted to see if you had a response to that.

22               MS. WICKOUSKI:  Yes, and unfortunately, Your

23      Honor, I don't.  I want to give the correct answer, and I

24      don't.

25               THE COURT:  Okay.  Go ahead with your argument.

1              MS. WICKOUSKI:  So lastly I do feel that the

2     debtor has, throughout this proceeding, suggested that it's

3     really -- the court should only look at the fact that the

4     creditors' interest are impacted by this case, and those are

5     the ones being protected at this stage.  I understand that

6     this is a claim that may, at some point, go to a litigation

7     trustee.  However, it can't be forgotten that what the

8     debtor comes in with in terms of their claim is based on

9     transactions that occurred long before this point.

10             And a litigation trustee, if he ultimately gets

11    this case, is not going to have any better, greater rights

12    or better, greater equities than what has already transpired

13    between the parties and the transactions at issue.  So I

14    don't think that that in itself should have any bearing on

15    whether there's a freezing order, whether the TRO standards

16    have been met.  This is basically two parties in what I

17    would say is a contract dispute.  And that's really all

18    that's at issue.

19             THE COURT:  For now, I'm struggling to see whether

20    we get to the June 27th hearing.  Okay.

21             MS. WICKOUSKI:  And, Your Honor, I lastly want to

22    talk about an issue that I think was raised in Mr. Hurley's

23    reply, which is whether the fact that in our discussions

24    that we, in the negotiations, we requested a carveout and

25    now have requested a larger carveout, that that is somehow

Page 69

1    evidence that the plaintiff is at risk of us dissipating

2    assets.  And that doesn't make any sense --

3            THE COURT:  Let  me -- I'm going to stop you

4    there, because I probably raised the carveout issue before

5    Mr. Hurley did.  And I don't fault either side for being

6    unable to come to an agreement.  I wish you had.  There

7    obviously was a short-term agreement, but that's -- so I'm

8    not holding that against you.  I'm not drawing any inference

9    from the inability to come to an agreement.  You and your

10   client maybe are perfectly within your rights to say, no, we

11   don't think there should be any freezing order, period.  So

12   that part I really am not holding this against you.  Okay.

13           MS. WICKOUSKI:  Thank you, Your Honor.  And we

14   have consistently -- our client has abided by a total

15   freezing order for more than two weeks now.  And if they

16   were going to dissipate assets, I mean, technically they

17   might not have been required to do that when we got past

18   last Thursday, which was the original TRO hearing date.  But

19   they have.  They have abided by that to this moment.

20           And we were hopeful, at least, of a disposition

21   that would allow them clarity as to what they were able to

22   pay and be able to pay some bills.  Again, we recognize that

23   the estate has an interest in protecting its position, if

24   you will.  We're not trying to be difficult in terms of an

25   agreement, but we are simply not able to agree that our

Page 70

1   client can't spend any money, can't pay its bills, can't pay

2   its lawyers and essentially is put out of business tomorrow

3   --

4           THE COURT:  Look, again, I'm not -- I really am

5   not -- I wish you all came to an agreement.  You've not been

6   able to come to an agreement.  At the last hearing, I raised

7   questions about of the assets that StakeHound appears to

8   have, how much of that is attributable to Celsius, how much

9   is not attributable.  Is it possible to agree that -- and I

10  understand that Celsius believes that it has a claim for

11  $160 million.  But for that portion of the assets that are

12  not attributable to Celsius, can an agreement be reached?

13  You haven't been able to, so I've got to decide what I've

14  got to decide.

15          MS. WICKOUSKI:  I understand, and --

16          THE COURT:  It's not too late to agree.  I mean, I

17  just --

18          MS. WICKOUSKI:  Well, I think everybody always

19  prefers to have an agreement, Your Honor.

20          THE COURT:  Go ahead.

21          MS. WICKOUSKI:  Your Honor, may we be heard on our

22  objections to the plaintiff's declarations?  I understand,

23  Your Honor, that you're going to admit them.

24          THE COURT:  Yes, go ahead.  Go ahead.

25          MS. WICKOUSKI:  May I turn this over to my

Page 71

1    colleague, Mr. Kramer, to present those objections?

2              THE COURT:  Sure.

3              MR. KRAMER:  Thank you, Your Honor.

4              THE COURT:  Good afternoon.  You're muted.  I'm

5    not hearing you.

6              MR. KRAMER:  Sorry about that.

7              THE COURT:  Go ahead.

8              MR. KRAMER:  With respect to Mr. Man's

9    declaration, we object on the grounds that he has no

10   personal knowledge of the negotiations and the execution of

11   the relevant contracts that he attached to his declaration.

12   He admits in his declaration that he only joined Celsius in

13   February of 2022, which is over a year after those contracts

14   were negotiated and executed.

15             THE COURT:  You're not disputing that the

16   contracts, that those are in fact the contracts?

17             MR. KRAMER:  We're not disputing that, right.

18   Those are, in fact, the contracts.  They were negotiated and

19   executed over a year before Mr. Man actually joined Celsius.

20   He had no involvement in the negotiations of those

21   contracts, and he started his employment after they were

22   executed.  With respect to Dr. Dasser's declarations, we

23   object to those to the extent that they are expert legal

24   conclusions about Celsius's likelihood to succeed on the

25   merits of claims under Swiss law.  We contest that those are

1    determinations for the court to make and not a lawyer.

2    Ultimately those are items --

3              THE COURT:  With respect to foreign law, foreign

4    law is provable, including by declarations.  For a

5    preliminary injunction hearing, if you want to call or

6    submit direct testimony of a Swiss law expert, you can do

7    that.  But that is a proper way to present evidence of

8    foreign law.  I'm not an expert on Swiss law, and it would

9    be -- so for that part, your objections is overruled.

10             MR. KRAMER:  I think we at least want to draw a

11   distinction between Dr. Dasser's first and second

12   declarations because we did see the cases that say that

13   foreign law is provable by an expert.  That's certainly

14   routine.

15             THE COURT:  Rule 44.1, I think it is --

16             MR. KRAMER:  Right.

17             THE COURT:  -- in the Federal Rules of Civil

18   Procedure.

19             MR. KRAMER:  And with respect to his first

20   declaration, to the extent that he is simply stating Swiss

21   law, what Swiss contract interpretation is like or what

22   remedies are available, which is what his first declaration

23   is doing, that is fine.  The reply declaration is just

24   argument, legal argument in a vacuum.  We have no idea what

25   documents and information he considered in making a

1    determination that the arguments made in StakeHound's

2    opposition would violate Swiss law or be a violation of the

3    duty of good faith under Swiss law.  All he said is that he

4    read our opposition and he read the declaration.  So to the

5    extent that he is drawing a legal conclusion and making an

6    argument in that declaration and not just facts about what

7    the state of Swiss law is, we do object to that declaration.

8              THE COURT:  So for the purposes of the TRO

9    hearing, your objections overruled.

10             MR. KRAMER:  And then finally, with respect to Mr.

11   Hurley's declaration, as we said in our papers, we object

12   that this discloses confidential settlement negotiations.

13   We also object on the grounds that statements of counsel are

14   not admissible evidence.  And finally, on relevance grounds,

15   as I think Ms. Wickouski was just stating, that the

16   negotiations of a carveout are irrelevant to the ultimate

17   issues, certainly on this hearing.

18             THE COURT:  I agree.  I agree.

19             MR. KRAMER:  Thank you, Your Honor.

20             THE COURT:  Put it this way.  I said this already.

21   I had hoped you would all be able to agree on it.  You

22   didn't.  Full stop.  Okay.  I'm putting no weight in the

23   fact that you were not able to agree on a carveout.

24             MR. KRAMER:  Thank you, Your Honor.  Those are our

25   objections to the declarations.

1              THE COURT:  Okay.

2              MR. HURLEY:  May I respond, Your Honor?

3              THE COURT:  Let me see if Ms. Wickouski has more

4      she wants to say.

5              MS. WICKOUSKI:  Your Honor, thank you.  We have

6      nothing further.  We would ask the court to give us some

7      clarity in terms of the TRO request because, frankly, at

8      this moment, leaving the hearing, we're in a bit of a state

9      of limbo.

10             THE COURT:  Well, what I want to ask you -- so

11     I've told Mr. Hurley that I expect a further brief from him,

12     and I'm going to give you an opportunity to respond.  I

13     think it was Footnote 5 and some text around that that very

14     briefly addressed some of the Grupo Mexicano issue.  I'm not

15     sure I agreed entirely with the statements in there.  If I

16     were writing the brief, it probably would have been a

17     stronger statement.

18             So I'm going to give you a chance.  I don't want

19     to let any of this linger.  Okay.  So when we finish, I'm

20     going to come back and ask Mr. Hurley how much time does he

21     want to do this.  I'm going to give you a chance to respond.

22     If he's going to take a couple of days to do a further

23     supplemental brief, I'll give you a few more days to file a

24     response to it.  Okay.

25             MS. WICKOUSKI:  Thank you, Your Honor.

1          THE COURT:  Okay.  All right.  Is there anything

2     else that you want to add at this point, Ms. Wickouski?

3     I'll come back to you on the briefing.  Hopefully you

4     understand what it is I'm asking about.  I tried to give

5     everybody --

6          MS. WICKOUSKI:  Yes.

7          THE COURT:  -- guidance about what I've -- well,

8     I've been busy.  My law clerks have been busy researching on

9     this.  Okay.

10          MS. WICKOUSKI:  Yes, Your Honor.  Thank you.  It's

11     very clear.

12          THE COURT:  Mr. Hurley, go ahead.

13          MR. HURLEY:  Thank you, Your Honor.  So just

14     responding to the objections to the -- I guess I should back

15     up.  And if we're offering declarations into evidence, I'd

16     like to offer the declaration and I'll respond to the

17     objections that were made to the declarations, I should say.

18     So with respect to the objection that I just heard Mr.

19     Kramer articulate regarding Mr. Man's declaration --

20          THE COURT:  Yes.

21          MR. HURLEY:  -- he complained that Mr. Man was not

22     at the company for the execution negotiation of the

23     contracts.  What Mr. Man is doing is attaching documents

24     that are available to him as an officer of StakeHound,

25     including emails, including contracts.  I don't think we

Page 76

1    ever contended that he was there personally present for the

2    negotiations or that we specifically focused in this brief

3    on the content of those negotiations.  What he did was take

4    business records that are available to him as head of

5    staking at Celsius currently, and attach them to his

6    declaration and authenticate them.  And we think that is --

7              THE COURT:  There was no objection to the

8    documents.  I understand.  So the objection to the Man

9    declaration is overruled.

10             MR. HURLEY:  Okay.

11             THE COURT:  I'll give it such weight as it's

12   entitled to receive.

13             MR. HURLEY:  And I understand that the objection

14   to the Dasser declarations have also been overruled, unless

15   I'm mistaken.  Okay.  With respect to the Hurley

16   declaration, I don't think there's an objection to anything

17   other than the discussion of the spend.  And Your Honor has

18   already addressed that.  Unless Your Honor has questions for

19   me, I --

20             THE COURT:  I don't need to hear more of that.

21   Look, I wish you all could reach an agreement, and you

22   either will or you won't.  What can I say?

23             MR. HURLEY:  Okay, and that's all I have, Your

24   Honor.

25             THE COURT:  How much time do you want for a brief?

Page 77

1                MR. HURLEY:  So, you know, we can do it tomorrow.

2                THE COURT:  You tell me.  It's easy for you to

3      say, but I suspect that you have some colleagues who are

4      going to be, at least in the first instance, doing that

5      work.  So tell me.

6                MR. HURLEY:  I guess we would propose submitting

7      it tomorrow by, say, 3:00 p.m.

8                THE COURT:  How about 5:00 p.m.?

9                MR. HURLEY:  5:00 p.m., it is, Your Honor.

10               THE COURT:  You know, I can remember, when I was

11     practicing law, my associates would cringe when a judge

12     would ask when are you going to submit the brief, and it's

13     their lives who are going to be affected by it.  All right.

14               MR. HURLEY:  They will appreciate the extra time.

15               THE COURT:  Supplemental brief by 5:00 p.m.

16     tomorrow.  All right.  Ms. Wickouski, how much time do you

17     want to respond?

18               MS. WICKOUSKI:  Your Honor, we would appreciate at

19     least having a day, and maybe --

20               THE COURT:  How about Friday at 5:00?

21               MS. WICKOUSKI:  That's perfect, Your Honor.  Thank

22     you.

23               THE COURT:  Okay.  After I review the briefs, I'll

24     decide whether I need -- hopefully, I don't think I'll need

25     a further hearing, but I'll have those briefs in hand.

1    Okay.

2              MR. HURLEY:  Okay.

3              THE COURT:  All right.  Anything else for today?

4              MR. HURLEY:  Not from Celsius.

5              THE COURT:  All right.

6              MS. WICKOUSKI:  No, Your Honor.  Thank you.

7              THE COURT:  Thanks very much.  And I apologize for

8    the technical problems I had.  Tough issues for me.  All

9    right.  Thank you.  We are adjourned.

10             (Whereupon these proceedings were concluded at

11   12:47 PM)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 79

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7    _Sonya M. Ledanski Hyde_

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  August 30, 2023

| & | 1st 17:16 | 3 | 527 19:5 |
|---|---|---|---|

**&**

**&** 5:1 10:10

**1**

**1** 14:5,5 15:4,4
  24:23
**1.4** 42:23
**1.5** 43:1
**1.8** 43:5,8
**10,000** 48:3
**10004** 1:21
**10036** 4:7 5:4
**10281** 4:16
**10:58** 1:24
**10th** 15:24
**11** 8:3
**1138** 8:5
**11501** 79:23
**11th** 52:4
**12151** 79:7
**1221** 5:3
**12:47** 78:11
**12th** 13:24
  16:6 17:8 27:8
  42:13 43:6
**160** 13:1 32:16
  47:9 51:1
  70:11
**17th** 17:8
**18** 27:21 39:23
  39:24
**18th** 52:1,5
**195** 28:3 33:1
**198** 41:5
**1981** 35:25
**1999** 19:5 41:5

**2**

**2** 58:23
**200** 4:14
**2002** 40:17
**2005** 27:21
  28:4
**2010** 19:25
  20:24 23:13
**2020** 13:14
  14:13
**2021** 14:14
  15:16 33:3,3
**2022** 71:13
**2023** 1:23 8:3
  13:24 15:15,22
  79:25
**209** 28:3
**20th** 4:15
**21st** 51:25
**22-10964** 1:3
  8:4
**23** 8:4
**23-01138** 1:4
  3:1
**25,000** 14:14
  14:15 38:6
  42:11 43:2
**25th** 17:20
  38:18
**27th** 12:14
  13:5 47:4,11
  49:9,18 68:20
**29** 1:23 3:3
**29th** 8:3
**2d** 19:25

**30** 19:25 79:25
**300** 79:22
**308** 19:5
**309** 40:17
**31** 3:3
**323** 27:20
  39:24
**33** 3:3
**330** 79:21
**34** 24:15
**345** 27:20
  39:24
**35,000** 14:21
  14:23 15:10
**360** 27:21
  39:24
**3858556** 33:3
**3:00** 77:7
**3d** 28:3

**4**

**40** 15:1 38:17
  51:20 58:18,22
**419** 28:3 33:1
**42** 3:3
**44.1** 72:15
**489** 41:5
**49** 3:3
**496-497** 41:5
**4th** 41:5

**5**

**5** 26:24 31:1
  33:21 74:13
**50** 3:3 45:15
**51** 3:3

**527** 19:5
**598** 19:25
**5:00** 77:8,9,15
  77:20

**6**

**60** 31:14
**64** 40:10
**65** 26:12 28:16
  40:10

**7**

**70** 31:15 34:16
**7th** 40:17

**8**

**80,000** 47:19
  47:19

**9**

**90** 13:3 32:17
  47:8 50:25
  58:19 67:7,20
**96** 14:10 31:12
  34:14
**988** 40:17
**996** 40:17

**a**

**a.m.** 8:3
**aaron** 6:8
**abide** 58:15
**abided** 69:14
  69:19
**abigail** 5:24
**ability** 49:24
  50:15,17 57:22
**able** 12:12 14:3
  18:3 29:15
  31:2 32:11

| | | | |
|---|---|---|---|
| 37:10 49:23 | **address** 11:14 | **affects** 10:25 | 70:24,24 71:7 |
| 50:12 57:7,18 | 19:5 21:1 | **affidavit** 58:21 | 75:12 |
| 66:12,13,18 | 22:15,16 26:23 | 66:20 | **akin** 4:3 9:7,21 |
| 69:21,22,25 | 28:22 34:6,9 | **affirmative** | 12:3 |
| 70:6,13 73:21 | 44:14 53:22 | 66:23 | **alaina** 6:22 |
| 73:23 | 54:6 58:14 | **afraid** 24:21 | **albert** 5:9 9:11 |
| **absolutely** | 61:12 66:4 | **afternoon** 71:4 | 10:17 |
| 30:23 35:21 | **addressed** | **ago** 39:1 46:5 | **allegations** |
| 44:9 | 19:24 29:22 | **agree** 31:1 | 35:13 |
| **access** 66:9 | 41:18 48:11 | 42:14 45:21 | **allege** 25:20 |
| **accounting** | 74:14 76:18 | 46:11,20 52:7 | 61:2,9 |
| 26:4,19,20 | **addresses** 28:1 | 52:15,17 53:14 | **alleged** 15:11 |
| 28:19 40:24 | **addressing** | 59:13 67:7,17 | 19:13 61:15 |
| **accurate** 79:4 | 8:21 10:4 | 69:25 70:9,16 | **alleges** 14:17 |
| **action** 28:19 | **adelphia** 27:20 | 73:18,18,21,23 | 15:16 |
| 32:12,13 40:21 | 39:24 40:4 | **agreed** 43:12 | **alleging** 25:11 |
| **activity** 52:18 | **adequate** 39:5 | 55:1,15,21,24 | 31:18 |
| 55:7 | **adequately** | 56:1,12 74:15 | **alliance** 19:4 |
| **actual** 48:24 | 29:2 | **agreement** | **allison** 7:9 |
| 56:19 62:2 | **adjourned** | 12:23 14:17,17 | **allow** 16:3,13 |
| 63:18 | 78:9 | 14:24,25,25 | 44:9 67:14 |
| **actually** 13:23 | **admissible** | 42:10,18,21,23 | 69:21 |
| 24:12 27:8,24 | 65:22 73:14 | 42:25 51:8 | **almeida** 5:10 |
| 29:8 35:15 | **admission** | 54:18 58:12 | **alternate** 37:15 |
| 39:1,22 40:16 | 63:23 | 69:6,7,9,25 | **alternative** |
| 54:12,19 60:17 | **admit** 70:23 | 70:5,6,12,19 | 27:14 40:25 |
| 61:20 71:19 | **admits** 31:14 | 76:21 | 46:20 |
| **add** 25:8 27:7 | 71:12 | **agreements** | **amended** 19:9 |
| 75:2 | **admitted** 35:15 | 38:19 57:13,15 | 19:10,15 27:6 |
| **added** 25:2 | 57:11 65:3 | 59:5 63:20 | 60:18 61:1,12 |
| 42:16 | **admitting** | **ahead** 9:5 | **americas** 5:3 |
| **addition** 25:10 | 64:24 65:18 | 19:22 26:6 | **amount** 48:20 |
| 35:19 52:22 | **adv** 1:4 | 31:3 34:5,12 | 49:1 |
| **additional** | **adversary** 3:1 | 38:1 51:21 | **amounts** 66:19 |
| 10:12 24:3 | **affect** 59:14 | 53:23 59:15 | **anderson** 9:10 |
| 30:18 53:8 | **affected** 77:13 | 65:10,25,25 | 10:15 11:4 |
| | | 67:10,25 70:20 | |

| | | | |
|---|---|---|---|
| **andrew** 4:19 | **applying** 47:23 | **argued** 23:17 | **assets** 12:18 |
| 5:22 7:24 | **appreciate** | **argument** 13:8 | 13:2,3,7 14:8 |
| **answer** 21:19 | 30:18 53:22 | 18:15 31:3 | 15:25 16:2 |
| 24:22 44:23 | 77:14,18 | 34:5,24 37:25 | 31:12,14 32:17 |
| 53:12 67:12,23 | **approach** 20:5 | 41:13 56:15 | 34:3,14,16,20 |
| **anticipate** 10:7 | **appropriate** | 59:15 67:25 | 34:22 40:21 |
| **anticipated** | 30:9 36:7 46:3 | 72:24,24 73:6 | 41:7,8,25 42:3 |
| 13:18 | 49:19 52:13 | **arguments** | 43:17,23 47:6 |
| **anticipation** | 57:23 58:16 | 57:10 73:1 | 47:6,8 48:14 |
| 13:21 | 60:14 | **armand** 7:14 | 50:4 51:1,11 |
| **anymore** 34:23 | **appropriately** | **arrangement** | 51:11 54:11 |
| **anyway** 51:5 | 29:20 | 58:15 | 58:1,18 59:6 |
| **apologize** | **approximately** | **articulate** | 59:10 60:19 |
| 11:21 23:25 | 38:17 67:7,20 | 75:19 | 66:14,14 67:7 |
| 25:17 29:6,9 | **april** 13:24 | **aside** 19:12 | 67:20 69:2,16 |
| 30:19 78:7 | 14:23 15:15,22 | 58:6 60:14 | 70:7,11 |
| **appeal** 57:21 | 15:23 16:6 | **asked** 52:2 | **associated** |
| 66:17 | 17:8,8,15 27:8 | 53:8 54:20 | 14:19 27:5 |
| **appear** 64:5 | 42:13 43:6 | **asking** 47:1 | **associates** |
| **appearance** | **arbitrability** | 52:12 65:8 | 77:11 |
| 9:5,19,25 10:8 | 62:16 | 67:17 75:4 | **assume** 30:22 |
| 10:14 | **arbitrable** 46:3 | **assert** 27:11 | 32:17 |
| **appearances** | **arbitrated** | 32:7 61:5 | **assumed** 25:7 |
| 8:7 | 56:9 | 65:10 | **assuming** |
| **appears** 48:8 | **arbitration** | **asserted** 21:17 | 25:24 |
| 48:24 70:7 | 17:15,17 19:14 | 22:8 39:7 | **assured** 15:11 |
| **applicable** | 32:12,14 34:18 | **asserting** 27:13 | **attach** 76:5 |
| 29:14 57:13 | 34:22 37:13 | 43:15,16 | **attached** 42:22 |
| 63:3 | 45:10,11,16,23 | **asserts** 41:6 | 59:20 71:11 |
| **applications** | 51:16,23 52:19 | 61:13 | **attaching** 23:8 |
| 14:4 | 55:8 | **assessing** 20:5 | 75:23 |
| **applied** 20:3 | **arbitrator** 30:6 | **asset** 19:12,14 | **attention** 12:22 |
| 46:18 48:1 | 46:1,8 52:1,2,4 | 19:17 22:3 | 24:11 |
| **applies** 25:1,1 | 52:6 54:13 | 23:5 25:4 | **attorneys** 4:13 |
| 39:17 42:6,18 | 55:18 | 26:19 28:21 | 5:2 |
| **apply** 25:14 | **argue** 32:19 | 31:19 40:2,9 | **attorney's** |
| 28:8 | 37:3 60:25 | 40:13 41:1 | 32:12 |

**attributable**
70:8,9,12
**august**  1:23 8:2
33:3 51:25
52:1,4,5 79:25
**authenticate**
76:6
**authority**
26:21 30:14
36:24,25 46:11
**authorize**
52:24,25
**automatic**
17:16 18:5
19:13 36:19,23
37:4,6,18,24
56:5 61:7
**availability**
27:18 43:10
**available**  9:13
10:18 13:16,17
13:20 14:4
15:4 16:1 38:7
42:24 56:23
61:6 67:14
72:22 75:24
76:4
**avenue**  5:3
**avery**  5:17
**avoidance**  11:5

**b**

**b**  2:1 42:22
**b.r.**  27:20
39:24
**back**  14:18,22
15:2,16 17:9
21:19 25:23

30:1 38:5 43:5
44:2,4,12 49:6
52:6 54:8 55:9
59:22 60:6
62:1 65:1 67:1
74:20 75:3,14
**background**
11:24
**backhandedly**
26:24
**balance**  18:19
18:22 23:23
31:15 34:17
36:15 46:15,23
46:23 66:5,5
66:15
**bankruptcy**
1:1,19 2:3
17:11,11 27:22
28:7 33:9 35:5
**bar**  29:11
**bars**  40:9
**barse**  6:5
**based**  11:13
18:5,6 20:15
21:10 30:3
46:12 68:8
**basically**  15:19
41:23 48:8
52:14 68:16
**basis**  14:5 32:2
32:4 36:2
43:13 44:19
45:8 61:22
**bay**  35:14
**bear**  22:22
23:8 28:2 54:4

**bearing**  68:14
**beat**  66:16
**becin**  5:11
**bed**  55:4
**beginning**  50:1
50:20
**behalf**  8:16
10:2,8 53:25
**belief**  67:6
**belies**  60:5
**believe**  19:11
19:16 21:20
25:24 36:23,25
37:4 44:14,25
46:23 52:21,22
61:12 63:2
65:10
**believes**  46:3
65:13 70:10
**bench**  21:16
**benefit**  47:13
**best**  33:24,25
**better**  25:8
55:6 56:9
68:11,12
**beyond**  55:23
**bill**  67:2
**bills**  69:22 70:1
**birch**  5:12
**bit**  74:8
**bond**  19:5
**borders**  38:13
44:1
**bound**  46:9,9
**bowling**  1:20
**bradley**  6:19

**breach**  21:17
21:23 22:1,3
23:6 27:11
59:23 60:15
**breached**
27:11
**break**  47:20
**brief**  12:21
19:6,6 22:6
24:3 26:22
28:18,22 30:13
31:3 33:21,23
41:22 43:21
53:11 58:7
61:3,11 74:11
74:16,23 76:2
76:25 77:12,15
**briefing**  30:3
30:18 33:15
42:5 53:8 75:3
**briefly**  14:12
74:14
**briefs**  44:22
77:23,25
**bring**  11:1
50:21 61:24
**brink**  31:7
**broader**  30:16
**broken**  63:14
**brookfield**
4:14
**brought**  12:22
**bryant**  4:6
**bunch**  53:20
**burden**  56:21
61:8

**burks** 6:1
**business** 13:13
  13:14,25 48:6
  70:2 76:4
**busy** 75:8,8

**c**

**c** 4:1 8:1 79:1,1
**call** 10:17 72:5
**called** 13:19
  14:17,24
**calling** 8:3
**camenisch**
  35:24
**can't** 30:8,9,10
  33:5 44:12
  46:4 47:12
  55:1
**carefully** 16:12
  28:12
**carl** 5:14
**carolyn** 6:9
**carveout** 48:18
  49:10,11,19,23
  58:16 68:24,25
  69:4 73:16,23
**case** 1:3,4 5:1
  8:4,4,4 10:10
  12:25 13:11
  18:4,15 20:11
  20:18 22:4,8
  22:25 23:13,14
  23:16 24:6,7
  24:12 27:15
  31:9 32:14
  33:5,9 34:25
  35:12,14,14,24
  36:11 37:2,3

37:22 40:1,16
40:19 41:3,4,5
41:17 42:13,17
45:19,19 46:24
47:10 50:2,6
50:10 65:5
66:23 68:4,11
**caselaw** 25:3
  29:16 37:14
**cases** 20:10,18
  21:4 22:5
  24:16,17 27:17
  28:2 29:9
  31:20 35:11
  41:10 44:17,17
  72:12
**castellana** 5:9
  9:11 11:12
  47:17 57:14
  59:9 64:24
  65:9,19,21
  66:20
**castellana's**
  11:7 64:10
**castellana's**
  58:21
**castellans**
  10:17
**catastrophic**
  15:8
**categories**
  47:20
**causes** 28:19
**cease** 55:7
**celsius** 1:8,12
  3:1 4:5 8:3,5
  9:22 12:4,5,7,8

12:22,25,25
13:4,6 14:6,11
14:13,15,20,25
15:12,21,22
17:6,8,17,20
18:6,10 31:8
31:11 34:15
35:9 43:9,17
45:18 46:15,25
47:5,7,12 50:6
50:19 51:2
54:9,20 59:6
62:19 66:6
70:8,10,12
71:12,19 76:5
78:4
**celsius's** 71:24
**celsius'** 44:15
  46:13,24
**certain** 9:4
  18:5
**certainly** 19:18
  24:2 25:16
  26:3 27:2
  29:13 33:22
  34:1 53:5
  57:17 58:4,8
  59:17 61:10
  65:5,12 67:14
  72:13 73:17
**certified** 79:3
**cetera** 15:18
**chance** 30:25
  47:2 51:7 61:3
  74:18,21
**chang** 6:16

**change** 21:9
  35:12
**changed** 19:19
  22:12,19 23:17
**changes** 51:19
**chapman** 6:7
**chest** 50:23,24
**chris** 5:11 33:2
**christopher**
  5:21 7:11,15
**cir** 19:25 28:3
  40:17 41:5
**circuit** 19:20
  19:23 20:1,2
  20:20 21:10
  22:13,14 23:10
  23:16,18,18
  25:13,15 28:1
  31:6 33:1,5,9
  36:12 37:14
  40:16 41:4
**circuit's** 20:5
  21:9
**circuits** 28:2
  37:14
**circuit's** 28:3
**circumstances**
  26:15 29:11,18
  36:8 51:9
  52:14 67:4
**citation** 24:4
**citations** 27:19
  53:20
**cite** 19:21
  24:15 25:19
  30:15 34:25
  35:14,24 41:2

41:17,19
**cited** 22:11
39:23
**cites** 19:7
32:24 35:11
40:16 41:4,17
**citigroup**
19:24 20:23
21:10,16 22:2
22:5,7,8,10
23:13,14 24:4
24:20 25:18
27:25 28:12
29:7,7 36:11
46:14
**citing** 23:14
**civil** 26:12
40:10 72:17
**claim** 20:6
21:17,17,24
22:1 25:3,6,8
25:11 26:3,4,5
26:10,11,14,17
26:18,20 27:12
29:1 32:16
33:10 35:9
36:18 39:4,5,8
41:7 43:7,17
43:24 45:5,9
47:9 51:12
60:15 61:22
66:13 68:6,8
70:10
**claimed** 40:22
**claims** 13:1,7
18:5,21 19:10
19:15 21:20

22:7 24:19
25:20,22,23
26:8,13 27:7
27:14,16 28:9
28:15,16,17,17
28:24 29:15,17
29:21 30:13,17
32:22 34:21
35:15 38:3
39:21 40:2,4
40:11,15,25
42:2,16 44:20
51:1 60:17,17
61:2,5,6,10,13
61:16,20 66:14
71:25
**claire** 5:13
**clarify** 29:5,24
**clarity** 69:21
74:7
**clear** 11:11
12:7 20:1
23:13 27:6
29:19 30:1,12
39:18 55:20
56:25 61:14
64:2,6,18 66:6
75:11
**clearly** 28:1
32:1 38:19
43:20 50:17
59:5 60:20
**clerk** 8:2,14,19
8:22,25 9:6,9
9:14,23 10:5
10:11,19,24
11:3,10,16,20

16:18
**clerks** 75:8
**client** 9:11
33:18 37:20
38:9 54:10
56:21 58:18
66:15 67:13
69:10,14 70:1
**client's** 54:17
**close** 16:23
28:10 60:10
**closing** 16:19
**coco** 7:15
**code** 17:11
**cognizable**
41:7
**coins** 15:20,21
38:3
**colleague** 71:1
**colleagues** 8:18
10:3 33:20
77:3
**collecting**
15:19,20 48:9
**collection** 23:6
25:2
**colodny** 6:8
**colorable**
61:21
**combination**
15:6,8
**come** 46:4
48:13 49:6
50:11 54:8
63:9 67:1 69:6
69:9 70:6
74:20 75:3

**comes** 50:25
68:8
**coming** 21:19
**commencing**
19:13
**comment**
38:10 45:20
59:18
**commentary**
62:21
**comments**
32:10 37:21
59:22
**committed**
34:3
**committee** 5:2
10:9
**common** 49:15
**communicati...**
17:19
**company** 75:22
**comparatively**
49:1
**comparison**
66:24
**compel** 37:12
45:23
**compelled** 62:8
**competent**
63:8,10,18
64:19,20
**complained**
75:21
**complaint** 18:4
19:8,9,11,15
25:8 27:7
28:15 31:18

[complaint - couple]                                               Page 7

60:18 61:1,12
**complaints**
61:9
**complete** 36:3
**complex** 20:9
**complicated**
55:18
**computer**
11:23 16:13
**conceding**
58:19,24
**conceivably**
38:24
**concern** 37:20
48:11
**concerned**
33:12
**concerning**
35:5 57:14
**concerns** 53:6
**concluded**
27:15 78:10
**concludes**
49:18
**conclusion**
21:10 33:14
73:5
**conclusions**
71:24
**conditions**
14:22 58:11
**conducting**
11:6
**confer** 64:5
**conference** 8:8
8:17

**confess** 21:18
**confidential**
73:12
**confined** 20:10
**confirm** 15:25
52:7 54:18,21
**confirmed**
54:22
**connected**
11:22
**connection**
52:19
**consider** 63:23
**considered**
40:9 65:6,13
72:25
**considering**
48:8 64:14
**consistent**
39:15
**consistently**
69:14
**consolidation**
28:5
**constitutes**
22:24
**constructive**
25:3,5,6 26:4
26:17 28:20
29:3 40:6
**contains** 28:15
**contempt** 37:8
55:10
**contend** 17:16
51:11
**contended**
76:1

**content** 76:3
**contention**
22:18 23:1
39:10 42:12,17
**contest** 71:25
**contested**
57:11
**context** 28:4
**continuation**
59:13
**continue** 51:3
51:10
**continued**
24:23 50:15
**continues**
21:11
**contract** 21:17
21:24 22:1,4
23:6 26:16,16
27:9,12,15
29:15 42:13
44:5,14 45:6
47:22,24 59:23
59:24 60:15,20
62:12 68:17
72:21
**contracts** 62:3
71:11,13,16,16
71:18,21 75:23
75:25
**contractual**
27:7
**contradicted**
22:13
**contrary** 32:19
37:4 60:20

**contributed**
14:9
**conversion**
26:5,6,10,17
27:4,5 28:20
**conveyance**
28:9 33:10
**conveyances**
40:7
**copied** 52:5
**copy** 55:17
**cornell** 5:13
**corning** 28:3
32:25
**correct** 25:19
27:13 53:2
54:15 64:25
67:23
**corrected**
23:11
**corresponde...**
59:19
**cote** 5:14
**counsel** 4:4 8:6
9:8,22 12:4
49:25 50:8
52:5 54:17,22
55:5,13 56:4
57:17,22,22
59:3 62:4,5,9
62:11,14,18
63:13 66:5,18
73:13
**country** 79:21
**couple** 22:6
33:22 74:22

[course - declaration]                                    Page 8

course 37:21
 40:11
court 1:1,19
 8:21 10:4 11:5
 11:19,21 16:9
 16:11,16,19,22
 17:1,3 18:25
 19:2,11,16,22
 20:22 21:1,4
 21:14,22,25
 22:15,20 23:2
 23:5,16 24:6
 24:10,13,16,17
 24:19,25 25:22
 25:24 26:1,6
 26:10 27:10,17
 27:22 28:8
 29:9,19,25
 30:8,8,9,21,24
 31:17 32:2,3
 32:14 33:17
 34:4,5,12
 35:24 36:22
 37:9,15 38:8
 39:7,22 40:20
 41:8,21 42:2
 43:15,20,23
 44:13 45:14,20
 46:8,18 48:15
 50:13 51:17,21
 52:17,18,20,25
 53:3,11,16,19
 53:23 54:5,10
 54:12,23 55:9
 55:12,23 56:11
 56:25 57:4,23
 58:3,14 59:8

59:15 60:9,23
 60:25 62:12
 63:8,23 64:1
 64:12,17,23
 65:8,13,16,17
 65:24 66:19
 67:1,5,10,16
 67:25 68:3,19
 69:3 70:4,16
 70:20,24 71:2
 71:4,7,15 72:1
 72:3,15,17
 73:8,18,20
 74:1,3,6,10
 75:1,7,12,20
 76:7,11,20,25
 77:2,8,10,15
 77:20,23 78:3
 78:5,7
court's 19:4
 25:13 67:3,15
courtney 6:1
courtroom
 11:24
courts 30:10
 40:8 61:9
covered 58:11
creditor 41:6
creditors 5:2
 10:9 47:13
 68:4
cringe 77:11
critical 12:24
criticizing
 44:22
cross 10:18
 11:9 56:23

63:25 64:1,4,8
 64:18,21 65:19
crystal 12:6
 30:12 61:14
 64:6
csc 40:16,19
currently 76:5
customarily
 36:2
customer 14:3
 14:7,8 34:21
cutting 57:21

**d**

d 5:23 7:11 8:1
dalhart 6:17
damage 66:6,7
 66:7
damages 35:16
 40:21 41:1
daniel 5:19
dasser 76:14
dasser's 71:22
 72:11
date 40:12 43:1
 43:4 69:18
 79:25
david 5:17 6:5
 6:14,17 7:5,8
day 12:11
 37:11 46:6
 51:19 53:17
 55:25 56:2,7
 56:14 77:19
days 21:5 22:6
 33:22 74:22,23
de 7:23

deal 27:18
 37:15 48:17
 50:22 54:23
dealing 29:8
 39:16
dean 6:7
deanna 10:21
deborah 6:6
debtor 1:10
 31:19 41:14
 58:5 68:2,8
debtors 9:8
decide 18:11
 33:19 37:17
 46:1 70:13,14
 77:24
decided 25:7
 40:8
decidedly
 18:23 36:15
decides 49:10
deciding 32:19
 61:15
decision 19:4
 20:23 21:16
 22:16,21 27:1
 27:22 28:1,3
 28:12,14 32:25
 33:1,2 65:4
decisions 28:8
declarant
 10:17
declarants
 11:13
declaration
 9:12 11:7
 42:22,23 47:18

56:22 59:20
62:10,14,17,21
63:17,23 64:10
64:14,24 65:9
65:19,21 71:9
71:11,12 72:20
72:22,23 73:4
73:6,7,11
75:16,19 76:6
76:9,16
**declarations**
57:6 59:2,2
62:3,9 65:2,6
70:22 71:22
72:4,12 73:25
75:15,17 76:14
**deeply** 31:10
31:10
**defend** 66:14
**defendant** 1:16
4:13 8:16 31:7
35:5,5,18 41:7
50:11 65:12
**defense** 37:24
50:5,13,16,17
**defenses** 45:17
**defi** 14:4
**defined** 42:25
**definitely**
10:25
**delay** 49:13,13
**demand** 17:6,7
**demanded**
17:17,22 38:18
42:21
**demanding**
15:24

**demonstrate**
36:12 42:6
**demonstrated**
31:22 32:9
**demonstrating**
23:24 45:2
**dennis** 5:16
**denominating**
28:24
**deprive** 20:19
**describe** 14:11
**described**
28:12 46:12
**desser** 62:21
**detail** 47:19
57:18 67:12
**determination**
11:1 73:1
**determinations**
72:1
**determine**
12:13
**determined**
14:14,20
**determines**
49:12
**diaz** 5:15
**didn't** 27:25
35:9 38:21
43:3,14 44:12
45:5 49:20
**different** 36:24
**difficult** 69:24
**difficulties**
20:17,19
**difficulty**
11:23

**difiore** 7:16
**dime** 54:10
**direct** 24:11
59:4 63:19
72:6
**directing** 55:7
**directly** 22:13
**disagree** 58:10
61:3 63:2
**discloses** 73:12
**discounts**
47:23,25
**discussed**
24:17,18
**discussion**
17:18 24:15
27:23 28:5
76:17
**discussions**
68:23
**disgorgement**
27:6
**dismiss** 37:7,12
37:16,23
**disparage**
53:13
**disparity** 32:15
**disposition**
69:20
**disproportio...**
67:3
**dispute** 23:7
28:11 42:20
59:23,24 68:17
**disputes** 20:17
**disputing**
71:15,17

**dissipate** 69:16
**dissipated**
41:25
**dissipating**
69:1
**dissipation**
66:4
**distinction**
72:11
**distinguish**
21:6
**district** 1:2
32:2 40:20
41:18
**doc** 3:3
**documents**
72:25 75:23
76:8
**doesn't** 27:10
28:8,13 35:13
47:19,20,24,25
48:5,5,5
**doing** 11:25
15:19 33:20
39:11 48:9
72:23 75:23
77:4
**dollar** 13:5,5
47:11,12 48:20
48:21 49:7,7
**dollars** 48:18
**donald** 7:2
**dong** 41:17
**don't** 28:11
30:2,2 32:6,7
32:13 33:8,17
33:23 34:22

35:12 38:23
39:4,4 41:21
45:16 46:16
48:15 49:22
50:13 52:25
53:13 55:12
61:12 62:13
63:5,25 67:16
67:23
**dot** 15:2 17:22
17:24,25 38:4
38:5,11,12,16
38:18,20,21,21
39:4,5,8,18,21
41:14 51:18
58:4,6,6,8,17
59:8,14
**doubt** 11:5
24:25 42:19
**doubting** 32:5
**dr** 71:22 72:11
**draft** 54:25
**draw** 72:10
**drawing** 69:8
73:5
**drift** 33:11
**drum** 66:16
**dunne** 5:16
**duty** 39:15
44:9 73:3
**dwell** 36:19

**e**

**e** 2:1,1 4:1,1
8:1,1 79:1
**earlier** 11:22
37:1

**easy** 20:11 77:2
**ecro** 2:5
**edward** 5:12
**effect** 19:3
**effectively** 14:7
15:18 35:8
50:23 52:8
**effort** 37:23
**efforts** 18:2
**eht** 33:2
**either** 36:12
44:22 45:17
55:15,24 56:1
56:12 65:17
69:5 76:22
**element** 32:20
**elements** 18:17
29:1,1 32:22
**elephant** 56:17
56:20 63:7
**elimelech** 6:18
**elizabeth** 4:10
9:7
**email** 51:25
59:20
**emails** 75:25
**emanate** 60:18
**employment**
71:21
**encompasses**
49:11
**endure** 47:1
**engage** 57:23
**enrichment**
26:4,14 28:20
**ensure** 18:8

**enter** 9:5 10:8
17:12 19:11,16
26:1 52:12
53:1 55:6
56:12 61:22
**entered** 14:24
35:19 45:22
50:3,7 52:17
55:17,25 56:3
56:13
**entirely** 60:15
74:15
**entitle** 29:21
32:23
**entitled** 30:2
43:9 49:21
76:12
**entity** 15:6
**entry** 18:16
53:5
**equal** 45:12
**equipment**
66:11
**equitable**
26:11,13,18,18
27:5 28:16,17
28:21 29:20
30:13 32:4,22
33:10 40:2,6
40:11,15,22,24
42:3,16 43:18
44:20 45:25
60:17,17 61:2
61:5,5,6,10,13
61:15,20
**equities** 68:12

**equity** 23:23
41:9
**essence** 34:21
**essentially**
70:2
**established**
32:20
**establishes**
44:15
**estate** 31:20,21
58:1 69:23
**estimate** 20:15
**estimation**
58:17
**et** 15:18
**eth** 13:15,15,19
14:1,3,4,5,9,14
14:15,21 15:10
15:12,13 16:4
16:4,5 31:19
35:9 38:6,12
38:14 42:11,19
42:20,24 43:2
43:9,10,10,13
43:13,14 44:2
44:4,10,12
45:4,8,8,9,12
45:13 58:6
**event** 12:20
13:17,22,23
47:16
**everybody**
52:14 70:18
75:5
**everybody's**
51:8

| | | | |
|---|---|---|---|
| **evidence** 31:9 31:11 34:10,14 35:1,3,4,16,19 35:23 36:3,5 47:8 49:25 56:22 57:19,24 57:25 59:1 61:21 63:8,10 64:10,19,20,24 65:13,18 67:19 69:1 72:7 73:14 75:15 | **executed** 71:14 71:19,22 **execution** 71:10 75:22 **exercised** 36:24 44:8 **exhibit** 42:22 **exhibits** 64:11 64:25 65:9,20 **exhorted** 63:9 **exists** 31:7 45:1 **expect** 74:11 | **f** | **favors** 66:15 **february** 14:20 15:10 71:13 **federal** 26:12 30:10 40:10 72:17 **feedback** 16:17 **feel** 68:1 **feener** 4:19 8:18 10:3 **fees** 32:12 49:2 49:4,5,11,23 50:4,12 54:11 |
| **evidentiary** 10:22 64:15,17 **exact** 19:24 **exactly** 14:18 14:23 15:3 33:14 48:10 65:7 | **expectation** 15:4 **expended** 66:24 **expense** 12:22 48:11,21 **expenses** 48:6 | **f** 2:1 5:16 6:13 79:1 **f.3d** 19:25 28:3 33:1 40:17 41:5 **face** 20:7 60:20 **facing** 35:6 **fact** 15:13 43:7 45:11 49:15,19 57:10 62:1 68:3,23 71:16 71:18 73:23 | **feld** 4:3 **fiat** 45:13 **fifth** 33:5,8 **fighting** 62:6,7 **figures** 58:19 |
| **examination** 10:18 11:9 56:23 64:2,4,8 64:18,21 65:19 **examine** 63:25 | 48:24 57:16 58:20 66:10 **expert** 71:23 72:6,8,13 **explain** 29:10 **explained** | | **file** 28:18 33:22 33:23 61:10,11 74:23 **filed** 17:15 18:3 33:21 44:22 |
| **example** 28:9 39:6 47:21 **exchange** 13:25 14:5,16 15:4 16:3 17:7 18:6 38:20 43:10 59:21,24 60:1,2,4 **exchanged** 59:25 | 21:10 **explaining** 45:4 **extent** 24:2 65:5 66:21 71:23 72:20 73:5 **extra** 27:7 | **facts** 13:10,12 18:14 22:10 73:6 **factual** 20:7,17 **fahey** 5:17 **failed** 60:25 61:1 **failure** 17:9,24 **fair** 18:21 36:14 39:16 **faith** 39:16 44:8,9 73:3 **familiar** 18:17 **familiarity** 22:9 **far** 28:13 58:21 58:21 **fast** 15:15,22 57:15 **fault** 69:5 **favor** 18:20,23 23:23 36:16 46:15,24 | **final** 41:25 51:15,23 **finally** 50:18 73:10,14 **financial** 31:8 31:10 **find** 27:25 33:6 44:17 62:5 67:1 |
| **excuse** 17:24 38:13,14,15,24 39:18 | 77:14 **extreme** 51:4 **extremely** 49:15 | | **finds** 21:7 **fine** 27:10 30:21,21 67:18 72:23 |

finger 15:9
finish 74:19
fireblocks 15:6
firm 10:9
firms 49:15
first 12:22 13:4
   14:7 16:6
   19:18 39:2,14
   45:9,10 46:25
   47:16 49:21
   52:6 60:3
   62:21 72:11,19
   72:22 77:4
flannigan 5:18
flexibility 20:7
flippant 33:18
floor 4:15
florence 5:18
focus 24:1
focused 50:20
   76:2
focusing 19:14
following 8:4
   43:8
footnote 19:6
   26:24 27:21
   30:25 33:21
   39:23,25 40:23
   41:11 74:13
foregoing 79:3
foreign 72:3,3
   72:8,13
forgive 54:16
forgotten 68:7
form 11:7 55:1
   55:5,15,21,24
   56:1,12

formal 35:23
   36:3
forms 55:15
   56:2,13
forward 15:15
   15:22 44:25
   45:1 47:4
   50:11 51:14
   55:17 57:15
found 28:10,13
   33:9
four 12:15,18
   18:8,12 28:19
   47:2,7 49:4,5
   49:23 50:8,24
   59:2 62:1,3
fourth 41:4
frankel 6:6
frankly 50:9
   74:7
fraud 25:5
fraudulent
   28:9 33:9,10
   40:7
freeze 19:12,14
   19:17 22:3
   23:6 25:4
   26:20 28:21
   59:14
freezing 40:3,9
   40:13,21 41:2
   50:2,3 58:15
   60:14 66:9
   68:15 69:11,15
friday 77:20
frishberg 5:19

frivolous 38:13
   44:1
front 24:7,12
   32:6 52:3
frozen 50:14
full 47:9 73:22
fund 19:5
funds 49:5,6
   66:9
further 34:4
   42:5,8 52:16
   52:19 55:8,8
   56:4 74:6,11
   74:22 77:25
future 13:18
   40:3

**g**

g 5:12 8:1
general 20:13
gerber 41:11
gerber's 27:20
   32:25 39:23
getting 18:13
   21:12 57:9
giardiello 6:19
gist 41:6
give 16:19
   20:14 23:8
   24:22 26:6
   27:19 30:24
   33:16,22 35:9
   41:21 43:16
   44:1 67:23
   74:6,12,18,21
   74:23 75:4
   76:11

given 32:25
   35:25,25 53:19
   62:5 66:21
gives 63:4
giving 32:24
glenn 2:2
global 37:2
glossed 54:16
go 8:11 9:5
   19:22 22:4
   25:23 26:6
   31:3 34:5,12
   37:25,25 51:21
   53:23 56:15
   59:15 60:6
   62:8 65:10,25
   65:25 67:10,25
   68:6 70:20,24
   70:24 71:7
   75:12
goes 40:23
   41:10,11 43:2
   62:24
going 8:9 9:3
   10:6,22 12:1
   16:16 18:15,20
   21:15 22:20
   24:2 26:22
   28:25 29:3,15
   30:24 33:22
   34:3 36:14
   38:24 44:23
   46:9 47:3,4,9
   48:18,20 49:24
   50:8,12,24
   51:2,11,13
   52:9 53:12

54:23 55:3,4,6
56:3,4,5,8,11
61:11 63:1,23
64:1 65:3,16
68:11 69:3,16
70:23 74:12,18
74:20,21,22
77:4,12,13
**good**  9:4,21
10:1,10,11
17:3 39:16
44:8,9 71:4
73:3
**govern**  63:21
**governed**
26:15 62:12,15
**governing**
27:16
**government**
3:2
**governs**  56:10
**grant**  30:7,9
**granted**  30:17
36:2 42:1
47:16
**granting**  32:2
**great**  22:2,10
37:20 53:13
**greater**  20:8
68:11,12
**green**  1:20
**gregory**  6:13
**ground**  18:22
36:14
**grounds**  71:9
73:13,14

**group**  28:8
50:25
**groupo**  27:18
27:25 28:6,14
29:8,11,13
30:4,14
**grover**  6:20
**grupo**  19:4,7
19:19 20:2,25
21:1,6,8 22:3
22:12,16,19,23
23:2 25:9,13
25:18,21 26:11
26:25 31:20,24
32:1,21 40:1,8
40:9,12,19
41:1,23 42:7
46:9 74:14
**guess**  19:7
38:24 39:1
50:18 65:1
75:14 77:6
**guidance**  75:7
**gump**  4:3 9:7
9:22 12:3
**gurland**  6:9

**h**

**hand**  49:8 66:8
77:25
**handagama**
5:20
**hang**  33:6
**hanging**  46:21
**happen**  47:3
**happened**
13:22 16:6
55:13

**happens**  42:25
49:12
**happy**  27:2
53:12
**haqqani**  7:17
**hardships**
36:15
**harm**  18:18
23:20 31:5,7
32:18 46:25
47:5,14,15
49:8
**harms**  18:19
18:22 46:15,23
46:24 66:5,6
66:15
**harrison**  7:18
**hasn't**  29:22
52:1,10 55:4
57:10,12
**haste**  36:1
**hatcher**  6:21
**hauer**  4:3
**haven't**  28:9
29:20 30:19
32:9 45:4 60:9
61:20,21
**he'll**  11:1
**head**  76:4
**hear**  8:12
12:12 16:20
17:1,3 55:12
55:13 57:1
76:20
**heard**  12:14
37:11,13 59:22
63:12 70:21

75:18
**hearing**  3:1,2
8:3 10:23 11:6
11:22 16:25
21:15 33:14
34:2 45:21
48:17,19 54:19
56:18 57:4
63:9,10,16
64:3,7,15,16
64:17,23 65:18
68:20 69:18
70:6 71:5 72:5
73:9,17 74:8
77:25
**hearings**  32:10
48:16 52:3
**heine**  6:22
**held**  40:12,20
54:19
**helpful**  19:21
**heras**  7:23
**here's**  33:5
**hershey**  6:10
**hey**  48:13
**he's**  27:20
**high**  31:22
32:5,6 56:19
61:8 63:3
**hire**  49:24
**hired**  15:7
**history**  37:2
**hk**  35:14
**hold**  16:11,22
22:20 41:19
**holders**  13:14

**holding** 25:21
38:8,9 39:11
39:17 69:8,12
**holdings** 40:17
40:19
**holds** 41:23
**hole** 31:15
34:16
**hon** 2:2
**honor** 12:2,3,6
12:11,12,23
13:9 18:11,16
18:24 19:21
20:21 21:19
22:9,17,23
23:15,25 24:2
24:8,9,21
25:17 27:2,14
29:6,10,16,23
30:11,15 31:6
33:13 34:1,8
34:19 35:24
36:7,17 38:2
38:11 41:16
44:24 46:7,10
46:11 47:2
48:23 49:9,12
49:18 50:16,18
51:15,19,25
52:3,12,21
53:7,10,21,24
54:2,4,15
55:11,19,21
56:16 57:5
58:10 60:12
63:9,14,22
64:9,13 65:1,4

65:6,15 66:2
67:11,23 68:21
69:13 70:19,21
70:23 71:3
73:19,24 74:2
74:5,25 75:10
75:13 76:17,18
76:24 77:9,18
77:21 78:6
**hope** 29:16
52:22
**hoped** 73:21
**hopeful** 69:20
**hopefully** 75:3
77:24
**hostage** 38:8,9
**hour** 54:3 60:7
60:9
**housekeeping**
51:24
**hundreds** 15:1
**hurdle** 29:4
**hurley** 4:9 9:20
9:21,21 10:20
10:25 11:2,11
12:1,2,3 16:9
16:10,15,21,24
17:2,5 19:1,18
19:23 20:24
21:3,7,18,23
22:9,17,23
23:4,12 24:8
24:11,14,21
25:16 26:3,8
27:2,13 28:23
29:5,23 30:6
30:11,23 31:4

33:13 34:1,6
34:13 38:2,10
39:9 41:16,23
42:4 43:19,22
44:24 45:15
46:7,10,22
48:15,23 51:19
51:22 52:15,21
53:2,5,14,17
53:21 54:2,9
54:25 55:9,17
55:21 57:10,19
58:7,17 59:19
63:9,15,17
64:12,13 65:1
65:15,17,21
67:6,19 69:5
74:2,11,20
75:12,13,21
76:10,13,15,23
77:1,6,9,14
78:2,4
**hurley's** 68:22
73:11
**hurley's** 52:8
**hyde** 3:25 79:3
79:8

**i**

**idea** 67:1 72:24
**identify** 47:24
47:25
**imminent**
15:23
**impact** 66:9
**impacted** 68:4
**impede** 49:24
50:13

**impeded** 50:15
50:17
**importance**
12:25
**important** 23:9
**impose** 37:5,8
37:18 46:2
**imposition**
40:6
**inability** 69:9
**inapplicable**
40:13 41:1
**incentive** 51:3
51:9,12
**includes** 23:22
31:12 47:18,20
65:21
**including** 27:5
28:24 30:17
35:8 72:4
75:25,25
**inconsistent**
44:5,9 45:6
**incorrect** 24:17
**indicated** 49:3
**indicates** 57:25
**indicating** 35:8
59:19
**indiscernible**
45:15 51:5
57:12
**inference** 69:8
**information**
48:1 72:25
**inherent** 20:8
**injunction**
12:13 20:6,10

20:14,18 23:21
25:4 26:2,9
30:4,16 31:23
35:22 36:1,7
37:12 40:3,21
46:19 48:16
56:19 61:16
64:3,7,22 72:5
**injunctions**
40:10,14 41:2
**injunctive**
25:25 28:16
29:21 32:3,4
32:23 44:19
**injury** 22:25
**injustice** 49:20
**ins** 53:20
**insolvency**
31:8,22,25
32:6 34:9,11
35:1,13 36:5
**insolvent** 31:7
31:11 32:1,8
35:8 36:21
**instance** 13:4
60:3 77:4
**intend** 67:16
**intent** 62:22
**interest** 15:20
22:2 40:22
41:14 42:2
44:18 45:1
58:5,9 68:4
69:23
**interim** 41:9
59:13

**interject** 10:20
**interpretation**
72:21
**interrupt**
18:25
**inunction**
48:19
**invoke** 41:9
**involve** 35:13
66:19
**involved** 56:5
**involvement**
71:20
**involves** 35:23
**involving** 41:8
**ipad** 11:25
16:23 22:21
**ironic** 62:5
63:15
**irrelevant**
73:16
**irreparable**
18:18 22:25
23:20 31:5,6
32:18
**irretrievable**
15:11
**isn't** 27:15
46:8 51:13
56:3
**israel** 66:23
**israeli** 32:13
**issue** 11:15
16:24 18:9
19:12,14 27:1
27:23 28:1
29:14,14 30:4

30:5,14 36:25
40:20 46:4,5
55:3,18 56:10
56:11 58:1,13
59:11 62:16,25
63:4,5,20
68:13,18,22
69:4 74:14
**issues** 73:17
78:8
**items** 72:2
**it's** 27:21,22
28:4,5 30:9
33:2 35:7,21
37:19 39:14,14
39:16,24 41:12
42:22 46:19
47:9 48:25
49:24 50:12,25
51:23 52:8
53:13,17 55:14
56:9 58:13
60:15,21 61:7
61:8 62:13
63:3
**i'll** 27:24 37:17
39:22 55:24,24
56:7
**i'm** 29:7,23,25
30:1,24 31:1
32:5,6,19,24
33:11,19,21,23
35:25 37:19
38:8 44:16,21
45:24 48:21
51:4 54:23
55:4 56:11

58:24 61:7,14
61:14,17,19
62:25
**i've** 27:17
32:24 37:21
39:23 46:4,18
53:19

### j

**j** 5:14 6:17
7:10
**jack** 7:7
**jakobsen** 6:23
**january** 14:17
**jaoude** 6:11
**jasmine** 7:14
**jean** 6:24
**jeff** 7:3 8:18
**jeffrey** 4:20
10:3
**joined** 8:25
9:17 10:12
71:12,19
**joint** 52:3
**jon** 6:21
**jonathan** 7:4
**joshua** 6:15
**judge** 2:3
10:21 11:15
16:18 27:20
32:25 33:2
39:23 41:10
77:11
**judgement**
35:18 40:4
41:10 47:10
49:7

**judgment** 23:7
  23:7
**july** 18:4
**june** 15:16
  68:20
**jurisdiction**
  37:8,10,16,23
**justified** 29:17
**justify** 26:9
  39:10

**k**

**kaila** 7:25
**kaufmann** 7:12
**keith** 5:6 7:19
  10:8
**kevin** 6:25
**keys** 15:10
**kind** 30:16
  38:23 39:10
  44:8 45:1
  48:10 50:22
  51:8
**know** 11:14
  21:15,18 22:2
  22:7 25:5,11
  26:14 27:11
  28:11,24 29:2
  30:4,5,5 32:6,8
  32:8,13 33:3
  37:1,3,16
  45:20 46:5,18
  52:24 56:8
  59:12 60:16
  62:13 63:2
  67:12 77:1,10
**knowledge**
  10:24 59:4,5

  62:2,19 63:19
  63:19 71:10
**kraig** 6:23
**kramer** 4:20
  8:18,20 10:3,4
  71:1,3,6,8,17
  72:10,16,19
  73:10,19,24
  75:19
**ks** 2:5

**l**

**l** 6:2,20 7:2,23
**labeling** 29:2
**laboring** 50:1
**lack** 37:7,16,23
**lackey** 5:21
**language** 54:20
  55:6
**larger** 68:25
**las** 7:23
**lastly** 68:1,21
**late** 17:15
  70:16
**latreille** 6:24
**launched**
  13:13
**law** 23:10,16
  39:16,17 44:7
  44:7 49:15
  56:9 57:1 61:4
  62:12,16,23
  71:25 72:3,4,6
  72:8,8,13,21
  73:2,3,7 75:8
  77:11
**lawyer** 72:1

**lawyers** 49:15
  50:12,14 66:12
  66:13 70:2
**lead** 53:20
**learns** 15:22
**leave** 57:20
**leaves** 31:15
  34:16
**leaving** 74:8
**leblanc** 5:22
**ledanski** 3:25
  79:3,8
**legal** 26:10,13
  26:17 28:15,17
  44:20 49:2,4,5
  49:11 50:4
  54:11 57:16
  61:5,9 71:23
  72:24 73:5
  79:20
**legitimate** 52:8
**length** 36:10
**lengthy** 27:22
  28:5 39:25
  41:11
**letter** 15:24
  16:7 17:12,14
  17:20,23 27:8
  43:6 51:25
  52:3,6,8,11,15
  52:24 54:13,18
  55:21
**letterhead** 52:4
**let's** 32:17
**level** 58:22
**liability** 17:10

**lien** 23:7
**lies** 20:7
**light** 27:18
  30:3
**likelihood**
  18:18 21:12
  23:19,24 36:13
  39:20 46:13,16
  60:22 63:1
  71:24
**likely** 15:23
  20:12 36:9
  47:13
**limbo** 74:9
**limit** 13:11
**limited** 1:12
  3:2 4:5 8:5
  12:9 13:2 24:5
  35:25
**limiting** 20:18
**line** 8:6 9:2,18
  9:24,25 10:13
**lines** 59:22
**linger** 74:19
**liquidation**
  35:10
**liquidity** 13:14
  15:17
**list** 26:7
**listening** 16:12
  60:7,9
**litigate** 50:15
  51:4
**litigation** 9:8
  9:22 12:4
  18:22 20:9
  36:15 66:22,22

68:6,10
**live** 64:7
**lives** 77:13
**llc** 1:8 8:4
**llp** 4:3,12 5:1
10:10
**locke** 4:12 8:16
8:17 10:2
53:25
**lombardi** 6:12
**long** 27:21
41:24 55:4
61:14 68:9
**longer** 13:23
42:18 49:16
**look** 26:21
27:17 31:17
42:8 44:16,24
45:1 46:18
58:7 61:2 68:3
70:4 76:21
**looked** 27:17
**looking** 24:14
52:16
**lord** 4:12 8:16
8:17 10:2
53:25
**lose** 43:3 44:12
45:5
**loser** 56:18
**lost** 15:9 31:14
34:16 35:9
44:10 49:6
**lot** 21:4 22:5
54:3 57:10
59:17 62:20

**lots** 27:17
44:23
**lower** 23:25
40:8 63:4
**lowest** 63:6
**lucy** 6:2

**m**

**m** 5:22,25 6:25
7:12
**made** 15:7 17:6
18:2 20:1
28:10 35:2,4,7
35:17 37:7,10
37:21 38:10
39:9 40:4,15
45:20 48:12
54:9,12,14
57:10 59:18,18
62:25 64:2
66:3 67:19
73:1 75:17
**magnitude**
48:2
**main** 13:10
**maintain** 21:11
66:11,11
**make** 11:1 13:9
18:21 26:21
29:19 30:1
31:2 36:14,16
43:20 50:22
51:7 61:25
65:4 67:14
69:2 72:1
**makes** 45:3
**making** 12:6
61:14 72:25

73:5
**man** 8:11
71:19 75:21,23
76:8
**man's** 71:8
75:19
**managed** 16:22
**mann** 42:22,23
**manner** 45:5
**manus** 6:25
**marcus** 7:1
**mareva** 30:4
**mark** 7:21
**marketxt**
50:10,10
**martin** 2:2
**mary** 4:18
**mason** 7:20
**matic** 15:1
17:22,23,25
38:4,5,11,12
38:16,18,20,20
38:21 39:4,5,8
39:18,21 41:13
51:18 58:3,5,6
58:8,17 59:8
59:14
**matter** 1:6
11:7 33:19
46:3 53:17
**matthew** 7:1
**mean** 27:11,19
30:25 33:17
37:1,17 38:24
44:21 53:13
58:24 60:6
64:14 69:16

70:16
**measures** 46:2
**mechanically**
20:10
**mechanism**
23:6
**meet** 8:6 18:24
36:6
**melanie** 6:4
**mentioned**
18:7
**merits** 18:19
18:21 20:6,12
21:13 36:4,10
36:13,14,17
42:9 45:19
63:1,5,6 71:25
**met** 18:14 63:6
63:11 68:16
**mexicano** 19:4
19:7,19 20:2
20:25 21:1,6,8
22:3,12,16,19
22:23 23:2
25:9,13,19,21
26:11,25 27:19
27:25 28:6,8
28:14 29:8,11
29:13 30:4,14
31:24 32:1,22
40:1,8,9,13,20
41:1,24 42:7
46:9 74:14
**mexico** 26:25
31:20
**mf** 37:2

mg   1:3,4 3:1
michael   5:23
  6:11 7:22
micromanagi...
  48:21
million   13:1,3
  15:1 31:15
  32:16,17 34:16
  38:17 45:15
  47:8,9 50:25
  51:1,20 58:18
  58:19,22,23
  67:7,20 70:11
mind   28:15
  29:25
mineola   79:23
minimum
  28:25
minions   25:7
  53:12
minute   16:11
mira   7:17
miscommuni...
  25:18
misread   23:10
misspoke   29:7
mistake   15:8
mistaken   76:15
mitch   9:21
  12:3
mitchell   4:9
moment   23:8
  67:9 69:19
  74:8
money   35:16
  40:4,21 41:1
  47:22 50:25

70:1
month   15:5
  47:19,20
months   50:14
morning   8:21
  9:1,4,21,24
  10:1,6,10,11
  10:13 59:18
morris   5:23
motion   12:5,7
  12:13,14 18:7
  35:22 37:7,10
  37:12,12,22
  45:23
motions   37:15
mount   50:16
  50:17
mounting   50:5
movant   18:20
  23:24 35:14
  42:1
movant's
  18:21,23
movants   41:25
move   34:3,9
  36:9 38:2
  51:14
moving   36:16
multiple   19:3
  37:21 46:19
munaf   24:18
mute   16:16
muted   8:11
  71:4

**n**

n   4:1 8:1 79:1
name   9:2
native   14:1
  15:1,2 17:7,22
  17:22,23,24,25
  17:25 18:7,9
  31:19 43:13
  45:12
nature   51:24
near   48:13
neat   25:15
necessarily
  42:14 58:14
necessary   36:1
  45:12 58:20
  66:21
need   21:14
  32:11 33:16
  37:25 48:4,7
  48:14,25 52:25
  57:16 58:23
  64:4 76:20
  77:24,24
needed   66:11
needs   39:3
  47:17,18,19,22
  48:12,17 58:14
  63:17
negotiate
  17:13
negotiated
  62:20 71:14,18
negotiation
  56:4 57:14
  75:22

negotiations
  68:24 71:10,20
  73:12,16 76:2
  76:3
nelly   5:10
network   1:8,12
  3:1 4:5 8:3,5
never   17:23,24
  38:15 39:2
  49:6
new   1:2,21 4:7
  4:16 5:4
nicholas   6:12
nken   24:18
noah   5:25
non   29:14
  41:25 42:1
  54:16 64:15
noon   55:16
  56:1
normal   25:24
note   10:16
  27:21 30:25
  39:24 46:14
  65:24
noted   50:13
notes   14:2,15
  14:19 47:23
  48:2
notice   52:16
  65:11
notion   22:12
notwithstand...
  20:1 23:16
  48:10
november
  14:13,15,19

15:12,13 16:4
38:6 42:11,11
43:2,9
**noyes** 7:19
**number** 14:16
14:18,23 15:3
25:19,20 26:25
28:7 57:18
60:7
**ny** 1:21 4:7,16
5:4 79:23

**o**

**o** 2:1 8:1 79:1
**object** 59:21
63:25 64:13
65:17,23 71:9
71:23 73:7,11
73:13
**objecting**
64:23
**objection**
11:12 65:10,25
75:18 76:7,8
76:13,16
**objections** 57:7
57:8 70:22
71:1 72:9 73:9
73:25 75:14,17
**obviously**
11:14 22:25
34:6 35:19
46:10 51:5
53:8 66:15
69:7
**occurred** 16:7
68:9

**occurs** 15:25
**offer** 38:23
64:10 65:12
75:16
**offered** 17:12
17:18 18:1
31:9 35:3,19
47:7
**offering** 75:15
**offers** 31:12
**officer** 75:24
**official** 5:2
10:9
**offline** 53:15
**oh** 8:11 9:17
**okay** 9:5 11:2
16:14,24 17:3
17:5 19:23
23:3,4,9 25:2
26:7 29:4 31:3
31:3,4,23 32:5
32:14,18,21
34:7,13 37:19
39:25 41:22,23
43:20,23 46:7
46:20 51:21,22
53:19 55:10
56:10 65:24
67:25 68:20
69:12 73:22
74:1,19,24
75:1,9 76:10
76:15,23 77:23
78:1,2
**old** 79:21
**once** 15:25
35:18

**ones** 33:18
55:2 68:5
**open** 22:21
29:25
**opened** 24:22
**opens** 37:5
**operate** 47:23
**operating**
48:24 57:16
66:10
**operational**
47:17
**operations**
15:17,17
**opinion** 39:24
**opinions** 27:20
**opponent**
66:17
**opportunity**
29:10 30:12,18
42:5 44:25
63:24 74:12
**oppose** 65:12
**opposite** 49:25
**opposition**
35:11 64:20
73:2,4
**order** 12:5,9,17
18:14,17 34:4
37:8 45:25
48:1,2 50:2,3
52:17,19,25
53:1,3,5 54:7
54:25 55:1,7,8
55:15,16,16,24
56:1,2,3,12
59:14 60:4,14

68:15 69:11,15
**orders** 45:22
52:18 55:25
**ordinary** 14:22
48:6 49:16
**original** 18:4
19:8 31:18
69:18
**outcome** 54:19
**outset** 20:9
**outstanding**
50:12
**overrule** 41:24
**overruled**
25:13 72:9
73:9 76:9,14
**overwhelming**
39:20 45:18
46:13
**overwhelmin...**
46:24
**owens** 28:3
32:25
**own** 32:10 35:7
48:25 53:3
54:11
**ownership**
40:5

**p**

**p** 4:1,1 6:10 8:1
**p.m.** 77:7,8,9
77:15
**page** 24:13,14
27:21
**paid** 48:5,7
**pale** 66:23

| | | | |
|---|---|---|---|
| palissery 7:20 | pay 32:11 | permits 19:11 | platform 34:19 |
| papers 57:2,12 | 34:22 35:18 | 28:16 | 34:23 38:25 |
| 66:3 73:11 | 47:22 48:14 | permitted 49:5 | 39:1,3,12 |
| paragraph | 49:23 50:4,12 | permitting | 43:11 44:3,4,6 |
| 47:18 | 54:11 57:16,16 | 23:5 | 44:11,11 |
| parenthetical | 57:21,22 66:12 | person 11:8 | plausible 45:17 |
| 40:18,19,24 | 66:13,18 67:2 | 64:5 | pleaded 29:2 |
| park 4:6 | 69:22,22 70:1 | personal 37:8 | please 8:7 9:1 |
| part 35:4 37:19 | 70:1 | 37:9,16,23 | 10:13,20 11:16 |
| 42:7 69:12 | paying 66:10 | 59:3,5 62:19 | 11:19 17:21 |
| 72:9 | payment 35:16 | 71:10 | 52:7 |
| particular 20:9 | 48:12 49:14 | personally | pled 32:22 |
| 36:4 38:10 | pending 41:9 | 21:25 76:1 | 61:20 |
| 50:19 54:7 | 48:19 52:19 | perspective | plus 36:15 |
| particularly | 54:19 55:7,8 | 14:8 | pm 78:11 |
| 35:22 57:24 | people 23:17 | persuade 36:6 | podium 53:10 |
| 58:24 63:19 | 34:23 | pesce 6:13 | point 15:9 |
| parties 8:25 | percent 14:10 | peter 7:10 | 19:19 20:21 |
| 9:17 10:12 | 31:12,14 34:14 | philippe 6:24 | 32:1 43:20 |
| 11:9 12:23 | 34:15 | pick 17:4 | 51:15,23 54:9 |
| 14:2,24 15:9 | perfect 11:16 | place 4:14 | 54:12,14 57:9 |
| 17:13 39:8 | 77:21 | 13:24 20:3 | 57:20 59:16 |
| 45:7 50:21 | perfectly 69:10 | 39:14 46:1 | 66:3 68:6,9 |
| 51:7 52:18 | perilous 31:8 | 49:21 | 75:2 |
| 55:7 62:22 | 31:10 | plaintiff 1:13 | pointed 37:2 |
| 63:2 68:13,16 | period 12:10 | 4:4 41:6 42:2 | points 54:6 |
| party 9:24 | 12:10,15,18,21 | 44:17 56:24 | 59:19 |
| 36:16 44:22 | 66:21 69:11 | 57:6,23 59:2 | portion 70:11 |
| 59:25 60:1 | permanent | 60:2 61:4 62:8 | position 45:16 |
| pass 15:10 | 47:7,13 49:9 | 62:25 63:24 | 48:21 60:16,18 |
| past 69:17 | 66:6,8,8 | 69:1 | 67:18 69:23 |
| patel 7:13 | permissible | plaintiff's | possibilities |
| patton 7:3 | 26:20 | 20:16 70:22 | 37:1 |
| pause 8:10,23 | permit 19:16 | plaintiffs 40:14 | possibility |
| 8:24 9:14,16 | 21:16 25:4,24 | plaintiff's | 36:20 50:2 |
| 11:17,18 | 26:1 | 60:16 | 51:10 |

possible 33:11
  42:3 70:9
post 27:25
potential 36:20
poynter 7:2
practice 49:17
practicing
  77:11
precautionary
  46:2
precise 42:15
precisely 61:19
  62:16
precluding
  22:3 66:10
preference
  54:21
prefers 70:19
preliminary
  12:13 20:6,9
  20:15,18 23:20
  25:4 26:1
  31:23 35:22
  36:1 37:11
  48:16,19 56:19
  61:16 64:3,7
  64:21 72:5
preparation
  24:1
prepared
  33:16
present 5:8
  20:19 57:7,15
  57:16 71:1
  72:7 76:1
presented
  20:17 29:18

34:10,14 40:2
  40:11 59:1
preserve 41:9
  48:13 54:10
preserving
  12:9,17,24
pretty 25:15
prevailing
  39:20
prevails 13:6
  45:23
prevent 50:3
  54:10
prevented 50:4
prices 51:20
primarily
  13:15 60:15
principal
  67:13
principles
  39:19
prior 20:16
  32:10 64:15
priya 7:6
probability
  45:18
probably
  32:20 46:8
  56:8 58:13
  69:4 74:16
problem 37:21
  52:20
problems
  60:10 78:8
procedure
  26:12 40:10
  72:18

procedures
  35:23 36:2
proceed 31:4
proceeding 3:1
  17:12 68:2
proceedings
  78:10 79:4
proceeds 45:19
produce 11:8
profit 40:25
progeny 31:24
prong 23:20
  36:6
proper 41:2
  65:10 66:18
  72:7
properly 61:1
  61:5,12,15,20
property 18:8
  31:19,21 40:5
  44:16,18 45:1
  58:1,5,9 59:6
  59:25 60:2,5
  63:20
propose 77:6
proposed
  12:19 54:25
  55:22 58:15,20
proposing
  59:12
proposition
  22:11 23:15
protect 40:3
protected 68:5
protecting
  69:23

provable 72:4
  72:13
provide 13:9
  15:7 26:13
  29:16 38:15
  41:19 43:12
  44:19 45:12
  57:18 60:4
provided 13:4
  13:7 14:10
  15:1,21 18:10
  31:12 34:15
  36:6 38:14
  39:10 42:20
  43:25 50:23
  51:24 61:21
provides 12:19
  42:23 43:8
  44:5
providing
  13:14,25
provision
  12:19
purpose 20:14
  24:5 35:25
purposes 64:23
  65:18 73:8
pursuant
  14:16,21,25
pursue 66:12
pushing 30:1
put 19:12
  25:12 41:21
  45:22 48:20
  55:3 58:6 61:3
  70:2 73:20

| | | | |
|---|---|---|---|
| **putting** 32:6 60:13 73:22 | **ramifications** 42:15 | 69:12 70:4 | **refresher** 13:10 |

**q**

| | | | |
|---|---|---|---|
| **query** 25:1 | **range** 36:25 37:5 | **reason** 27:6 39:3 51:2 55:20 | **refusal** 18:6 |
| **question** 19:7 19:24 21:19,20 22:24 25:1,23 28:14 30:13 31:5 32:21 41:18 42:9 50:19 52:9 60:21 63:21 67:5,12,15 | **rate** 47:22,24 47:24 | **reasons** 42:16 | **refused** 17:8 |
| | **rather** 17:14 45:7 | **rebates** 47:23 48:1 | **refusing** 16:8 |
| | **reach** 12:23 76:21 | **rebooted** 16:12 | **regard** 67:15 |
| | **reached** 70:12 | **receive** 17:19 76:12 | **regarding** 42:9 75:19 |
| | **read** 21:4,14 22:2,2,5,5,18 23:2,5 25:10 26:11 27:24 28:11 31:17,24 32:3 39:22 41:10 57:12 59:22 61:4 73:4,4 | **received** 51:25 | **reiterate** 42:12 |
| | | **recent** 51:20 | **related** 47:3 |
| | | **recognize** 8:10 69:22 | **relates** 36:20 51:16 |
| | | **recollection** 24:16 | **release** 48:11 |
| **questions** 18:20 19:2,3 24:24 34:9 36:14 44:23 46:17 47:3 53:10 70:7 76:18 | | **reconnect** 11:23 | **relevance** 73:14 |
| | | **record** 8:2 9:1 9:19 10:13,16 12:3 53:25 57:24,25 63:14 79:4 | **relevant** 62:22 71:11 |
| | **readily** 18:14 18:23 | | **relied** 35:1,3 |
| **quickly** 13:11 30:22 | **ready** 54:17 | | **relief** 12:8 20:15 21:21 25:25 28:16 29:12,17,21 30:7 32:3,5,23 33:10 37:18 40:6,14,24 41:15 42:1,3,7 42:17 43:18 44:19,20 45:25 46:2 47:1 50:11 61:6 |
| **quite** 12:9 60:9 | **reaffirmation** 36:11 | **recording** 8:23 9:15 11:17 | |
| **quo** 12:9,17,24 41:9 | **realize** 56:18 59:11 61:23 63:11 | **records** 76:4 | |
| **quote** 20:4 | | **recover** 44:18 | |
| **quoting** 35:25 | | **recovered** 13:6 47:12 | |

**r**

| | | | |
|---|---|---|---|
| **r** 2:1 4:1 8:1 79:1 | **really** 22:11,11 22:24 23:13 28:10 30:19 38:23 39:9 44:1 48:14 50:20 51:13 57:25 60:4 62:5 66:23 67:3 68:3,17 | **recovery** 40:7 | **relying** 23:1 28:19 |
| **rahmen** 41:5 | | **redisi** 40:17 | **remain** 15:13 18:11 45:25 |
| **raised** 59:11 68:22 69:4 70:6 | | **reference** 33:6 | **remained** 15:12 |
| | | **referencing** 17:11 | |
| **rakesh** 7:13 | | **referred** 13:18 | |
| | | **refers** 26:25 | |

remains  16:5
   20:3 23:18
remedied
   35:15
remedies  27:5
   72:22
remedy  20:20
   26:13 41:8
remember  46:4
   77:10
remotely  45:17
render  36:21
rendered  49:14
repeatedly
   40:12
reply  33:24
   54:18 68:23
   72:23
representative
   9:11
request  40:13
   74:7
requested
   68:24,25
require  26:22
   38:19 43:1
   52:13
required  11:8
   16:1 45:7,11
   61:23,25 69:17
requirement
   32:18
requires  21:8
requiring
   20:11
researching
   75:8

resign  50:8
resolution  18:3
   20:16 30:16
resolved  55:14
   55:14
resources
   66:24 67:3
respect  12:17
   13:7 19:12
   25:9,18 27:4
   28:17 29:6,12
   29:13,17 30:17
   34:10 36:22
   38:3,4 39:3,12
   39:21 42:10,19
   43:23,24 47:5
   48:23 49:2
   51:22 56:24
   57:5 61:6
   62:10,17 63:6
   71:8,22 72:3
   72:19 73:10
   75:18 76:15
respond  17:14
   19:18 30:25
   52:23 54:21
   57:18 67:18
   74:2,12,21
   75:16 77:17
responded
   17:23 52:2
responding
   75:14
response  17:19
   22:18 33:23
   43:24 45:3
   52:10,13 67:21

74:24
responses  44:1
rest  46:17
restraining
   12:5 18:14,17
restraint  12:16
result  17:10
   22:19
resulting  40:25
retrieved  13:16
   13:20
return  17:25
   38:19,20 42:21
   45:8
returned  17:22
   17:24 45:4
returning  38:9
revenue  14:24
   58:12
review  77:23
reviewed  19:8
revisit  47:3
rewards  14:2
   15:19 48:9
rickie  6:16
rigas'  40:5
right  8:2,10,19
   8:22 9:9,14,17
   9:23 10:5,11
   10:19 11:10,16
   16:19,20 17:1
   21:22 22:20
   24:6 38:7
   39:13 42:1
   44:7,16 53:9
   54:24 57:9,21
   65:8,24 71:17

72:16 75:1
   77:13,16 78:3
   78:5,9
righting  62:6
rights  68:11
   69:10
rise  63:5
risk  31:22,25
   32:5 33:19
   35:5 53:4 66:4
   69:1
road  79:21
robert  7:12
robinson  7:21
rodriguez  7:4
role  19:20
room  8:9,17
   56:17,20 63:7
routine  72:14
rule  20:13
   21:15 24:2
   26:12 28:16
   40:10 41:24
   42:6 65:11
   72:15
rules  26:12
   72:17
ruling  25:13
   65:25
run  14:1
ryan  5:24 7:5

s
s  4:1 8:1
sa  1:15 3:2 8:5
   8:16 10:2
safety  12:20

saihgal 7:6
salaries 48:4
samuel 6:10
sanctions
  36:20 37:5,9
sandali 5:20
satisfaction
  47:10
satisfactory
  35:21
satisfied 25:25
  28:25 30:3
  34:8
satisfy 23:19
  29:16 32:17
  34:21 39:5
  53:6 61:7,8
saw 33:8 45:10
saying 16:8
  17:21 26:12
  31:25 32:4
  45:24 48:25
  51:4 52:14
  61:7,19 64:22
says 25:14 32:9
  40:1,18,19
  41:6 47:16,18
  47:22 48:4,6
  58:18 60:20
scenarios 20:8
scheduled
  12:14
scheinman
  35:12
schickler 7:7
scholarly
  27:23 41:12

schottenstein
  5:25
scott 4:10 9:3,4
  9:7,7,10
screen 9:11
sean 4:19 8:18
  10:3
search 28:10
second 16:7
  19:20,23,25
  20:20 21:9,9
  22:13,13 23:10
  23:15,18,18
  25:12,14 27:25
  31:6 36:12
  37:13 40:16
  41:20 72:11
secret 26:21
section 24:23
  42:23 43:1,5,8
secure 15:12
  15:14 16:5
security 15:7
see 8:9 11:24
  11:25 16:14
  17:13 18:2
  24:23 33:7
  44:21 46:6
  51:14 63:17
  67:21 68:19
  72:12 74:3
seeking 12:7,8
  12:16 18:4
  21:21 23:20
  28:22 29:12
  30:7 40:14
  43:18 44:18

seeks 12:8 18:7
  41:8
seem 32:19
  33:8
seems 16:13
  66:14
send 15:24
senes 7:8
sense 13:9
  64:18 69:2
sent 17:20 52:3
separate 16:2
  43:3 55:2,15
  56:2,13
september
  12:14 47:4,11
  48:22 49:9,18
serious 18:20
  24:24,25 27:1
  36:13
services 14:17
  42:10,18,21
  49:14
settlement
  73:12
shanghai 13:19
  13:24 15:23
  16:7
shara 5:13
share 54:25
sharing 14:25
  58:12
sheet 31:16
  34:17
short 12:10
  69:7

shot 33:24,25
shouldn't 35:2
show 18:18
  46:14,16 60:22
showing 20:11
  36:17 58:25
  61:25 62:25
shows 49:25
shut 34:19
shuttered
  15:17
side 42:12
  66:25 69:5
sides 65:2
side's 57:21
signature 79:7
significant
  17:10 20:19
  46:17
similar 16:24
  35:1,6
simon 6:18
simple 20:11
simply 25:11
  25:14 28:23
  32:7 39:17
  69:25 72:20
sit 17:18
sites 26:25
sits 36:15
situation 35:6
situations
  23:22
six 34:15
small 49:1
smoothly
  16:14

solely  40:3
  57:2 60:1
solutions  79:20
solve  30:14
  52:20
sontchi  33:2,2
sonya  3:25
  79:3,8
sorry  8:12
  11:20,21 21:7
  24:14 25:20
  35:17 42:6
  43:24 71:6
sort  26:23
  48:25 61:25
sought  40:3,5
  40:25
sound  16:16
  28:13 63:14
sounded  59:23
sounds  58:4,8
southern  1:2
  41:18
sparks  7:9
speak  53:14,19
speaking  8:9
  9:1,3,24 10:6
  10:12 54:2
special  4:4 9:8
  9:22 12:4
specific  19:8
  19:20 21:18
  22:10 41:7,19
  43:17 54:20
specifically
  10:22 12:10
  19:15 22:18

31:14 34:20
  42:24 63:21
  76:2
specifics  13:8
spend  49:3,5
  70:1 76:17
spending  54:10
spent  13:5 47:6
  47:11
split  14:2
sprofera  7:10
ssa  14:18 16:2
  16:5
st  17:7 18:6
  38:21,21,21
  43:10,13,14
  45:8,13
stage  20:6 68:5
stake  14:17,20
  42:10
staked  13:15
  13:16 14:1,3
  14:13 15:20
  38:6 58:6
stakehound
  1:15 3:2 4:13
  8:5,16 9:12
  10:2 13:1,13
  14:1,9,10,11
  14:18,21 15:2
  15:6,7,10,16
  15:24 16:8
  17:14,20 18:1
  18:10 27:8
  31:9,11,13,13
  31:13 32:16
  34:3,18,25

35:7,10,11
  36:21 38:20
  42:20 43:2,6
  43:12,12,16,25
  44:15 45:3
  47:8,15,16
  48:8,17,22
  49:4,8,22 50:1
  50:23 51:10
  52:5,7,23 54:1
  66:7 67:6,20
  70:7 75:24
stakehound's
  13:2,25 14:7
  14:22 73:1
stakehound's
  31:15 43:11
  50:7
staker  13:17
staking  15:17
  42:18,21 76:5
stand  23:10
  26:15
standard  18:16
  20:2 21:9,11
  22:12,19 23:15
  23:17,18,24
  24:24 25:1,10
  25:25 36:4,11
  46:19,20,21
  56:18 63:3,4,6
  65:23
standards
  18:13,24 36:17
  68:15
standing  41:24

stands  51:2
standstill
  17:13
stanley  7:22
start  9:20 12:6
  18:16,24 33:20
  54:8
started  34:13
  71:21
starting  8:2
state  8:6 9:2,18
  9:25 10:14
  30:8,8,9 31:8
  31:10 59:16
  73:7 74:8
stated  29:20
  66:5,20
statement
  57:11,14 67:6
  67:19 74:17
statements
  35:2,4,7 59:17
  60:8 63:12
  65:22 73:13
  74:15
states  1:1,19
stating  72:20
  73:15
status  12:9,17
  12:24 41:9
stay  17:16 18:5
  19:13 36:19,23
  37:4,6,19,24
  39:3 56:6
stdot  15:3
  17:21

steadman   6:1
step   50:6
stephanie   4:18
  8:9,15 10:1,15
  53:25
steth   13:25
  14:3,16,19,23
  16:3
stmatic   15:3
  17:21
stop   55:12,12
  69:3 73:22
strauss   4:3
street   4:14
strength   20:16
stronger   31:2
  74:17
strongly   23:23
  46:15
struggling
  68:19
stuff   43:2
subject   12:18
  12:19 16:4
  25:21 47:6
  50:4 51:1,12
  58:16 64:4,8
  64:21
submission
  42:8
submissions
  24:3
submit   39:18
  42:4,5 43:25
  44:4 50:22
  55:2 56:13
  63:11 72:6

77:12
submitted   9:12
  11:7 56:21,22
  57:6,13 59:4
  62:3,3 63:18
  63:24
submitting
  77:6
subsequent
  44:15
substantial
  37:14 49:3
  51:12 65:22
substantiated
  40:4
substantive
  28:4 54:17
succeed   71:24
succeeding
  45:18
success   18:19
  20:12 21:12
  23:25 36:10,13
  39:20 42:9
  46:13,16 60:22
  63:1
successful   43:8
suffer   47:6
sufficient
  34:20 36:6
  61:22 62:25
sufficiently
  18:20 36:13
suggested
  32:15 39:2
  68:2

suggesting
  11:5 25:17
  29:7,20 42:14
suggestion
  35:17 50:7
suggests   49:22
  59:24 60:3
suit   20:16
suite   79:22
sums   49:3
supplemental
  26:22 28:18
  58:7 74:23
  77:15
support   21:21
  22:1 25:5
  31:22 61:16,21
supported
  64:19,20
supporting
  28:21 48:2
suppose   33:14
supreme   19:4
  23:16 24:16,17
  25:13 29:9
  32:3 35:24
sure   9:6 10:24
  19:1,22 25:11
  26:19 31:1
  33:19 37:19
  44:16 45:24
  48:7 71:2
  74:15
suspect   77:3
suspend   34:23
  44:6,10 52:18

suspended
  38:25,25 39:3
  39:12 44:3,11
suspension
  39:14 52:10,16
sustainable
  43:25
swiss   39:17
  44:7 54:17,21
  55:5,13 56:4,9
  62:4,9,12,14
  62:15,22 71:25
  72:6,8,20,21
  73:2,3,7
switzerland
  17:15 30:6
  62:8
sympathy
  16:25

**t**

t   79:1,1
tactic   57:23
  66:18
take   13:22,23
  33:24,24 64:22
  67:16 74:22
  76:3
taken   50:6
talk   46:25
  56:17 68:22
talked   36:10
talking   12:15
  58:22
tammy   6:20
taylor   7:18
team   53:13

technical 60:10
  78:8
technically
  69:16
telephonically
  5:8
tell 19:10,15
  25:22,23 33:14
  56:7 77:2,5
telling 30:1
  56:11
temporarily
  44:6
temporary
  12:5 18:14,17
  20:15 39:15
ten 20:24
tendered 17:21
  38:21 43:13
term 48:13
  69:7
terminated
  27:9
termination
  43:1,4
terms 12:16
  14:22 34:8
  45:3 50:19
  58:11 68:8
  69:24 74:7
testify 57:1
  63:15
testimony
  63:18 64:7
  67:16 72:6
text 31:1 74:13

thank 8:19,22
  9:9,14,23 10:5
  10:11,19 11:10
  11:16 38:2
  41:16 46:10
  53:14,24 55:19
  56:16 60:11,11
  66:2 69:13
  71:3 73:19,24
  74:5,25 75:10
  75:13 77:21
  78:6,9
thanks 78:7
that's 27:10
  30:21,21 34:23
  41:2 44:4
  45:10 46:20,21
  47:13 51:1,13
  53:7 55:18
  56:10 59:1
  63:2
theory 60:5
there's 28:14
  33:1 38:5,5
  39:2 42:19
  51:2,23 54:3
  58:25 59:18
  62:1,20 63:4
they'll 37:13
they're 32:8
  38:24 39:10,11
  48:25 61:23,24
they've 38:15
  39:2,9 61:15
thing 23:14
  50:16 59:16

things 10:25
  16:6 17:9
  27:12 29:5
  47:21 51:14
  57:18 62:6
think 8:8 18:13
  18:23 21:5,7
  21:25 22:1,24
  23:9 25:20
  26:8,24 27:1
  29:10,15 30:2
  30:3,13,15
  32:7,8,10 33:5
  33:11 35:12,21
  36:5,16 37:3
  37:11,19,22
  38:13 41:18
  42:6 44:13
  45:16,20,22
  46:12 51:23
  52:13 53:17
  54:2 56:8 58:2
  58:11,13,16,19
  58:22,24 59:7
  59:12,20 60:13
  60:21 62:13,21
  62:24 63:5,9
  63:16,25 65:5
  68:14,22 69:11
  70:18 72:10,15
  73:15 74:13
  75:25 76:6,16
  77:24
thinks 55:5
third 28:2 33:1
thomas 7:16

thomson 6:2
thought 13:9
  26:10 33:3
  55:3
thousands 15:2
three 59:2 62:4
thursday 69:18
time 9:18
  12:10,10,12,18
  12:21 13:15,21
  15:12 45:7,9
  45:10 49:14
  53:11 62:19
  66:21 67:2
  74:20 76:25
  77:14,16
timeframe
  61:24
times 46:19
tips 18:22
today 12:8,11
  21:16 24:3
  47:1 55:4,13
  57:4 59:12
  63:12 65:19
  67:17 78:3
today's 56:10
  56:11
together 37:13
  50:21
tokens 13:15
  13:15 15:1,2,7
  17:7,7,10 18:6
  18:7,9 38:6
  66:11
told 74:11

**tomorrow**  55:2
  55:16,16,25
  56:1,14 70:2
  77:1,7,16
**tony**  6:3
**tool**  25:2
**total**  69:14
**touching**  58:22
**tough**  78:8
**trade**  65:16
**traditionally**
  20:3
**transactions**
  62:20 68:9,13
**transcribed**
  3:25
**transcript**  79:4
**transfer**  14:14
  16:2 38:7 43:2
  43:7,9
**transferred**
  59:10
**transpired**
  68:12
**trial**  20:17
  35:23 36:3
  37:15 56:19
  65:23
**trick**  25:15
**tried**  38:15
  75:4
**tristan**  5:15
**tro**  3:3 12:19
  19:11,16 21:16
  25:4 26:1
  27:18 30:2,16
  31:23 47:16

  48:12 50:7
  52:12 56:18
  58:14,25 60:13
  61:16,22 63:10
  63:12 64:2,19
  64:23 65:11,12
  65:18 68:15
  69:18 73:8
  74:7
**tros**  57:1
**trouble**  25:9
**true**  50:16
  56:24 58:3
  79:4
**truly**  12:21
**trust**  25:3,6
  26:5,18 28:20
  29:3 40:6
**trustee**  68:7,10
**trying**  29:24
  60:2 69:24
**turetsky**  6:14
**turn**  17:10
  18:15 46:22
  70:25
**turning**  47:15
**two**  13:22,23
  15:8 16:6 21:5
  21:12 26:16
  29:5 39:1 44:1
  53:18 55:24
  62:4,9 64:4
  68:16 69:15

|       u       |
|---------------|

**u.s.**  2:3 19:5
  39:16 44:7
  62:10 66:22

**ubierna**  7:23
**ultimate**  20:12
  73:16
**ultimately**
  68:10 72:2
**unable**  69:6
**unacceptable**
  20:13
**unartfully**
  61:19
**uncertainties**
  20:8
**uncommon**
  61:9
**under**  16:2
  17:11 24:23
  29:11 36:4,7
  36:17 39:16
  40:10 44:7
  46:14 50:2
  51:9 52:14
  57:9 61:24
  62:22 63:5
  67:3 71:25
  73:3
**underlying**
  24:19 26:15
**understand**
  13:12 15:13
  29:23 31:20
  41:13 42:8
  46:22 51:17
  52:15 55:11
  56:25 57:3,20
  66:17 68:5
  70:10,15,22
  75:4 76:8,13

**understanding**
  10:21 11:13
  15:18 34:2
  64:14 65:2
**understands**
  13:2
**understood**
  26:17 30:11
  31:18 44:24
  46:7 48:23
**undertaken**
  43:7
**undisputed**
  13:12 14:6
  15:5 17:6
**unfortunately**
  67:11,22
**uniformly**
  40:12
**united**  1:1,19
**unjust**  26:4,14
  28:20
**unknown**
  35:18
**unmute**  8:6 9:1
  9:18,25 10:13
**unpack**  54:3
**unsecured**  5:2
  10:9
**unusual**  62:13
**upgrade**  13:18
  13:19,24 15:23
  15:25 16:7
  42:25
**upwards**  13:1
**urgent**  12:21

us1   33:2
use   14:3 32:11
   51:10
used   25:2
   50:24
uses   57:17
using   3:2 22:22
   50:3
utility   20:20

**v**

v   1:14 3:2 19:4
   19:24 40:17
vacuum   72:24
valuable   66:13
value   20:5
   45:13 51:17
   65:4
valve   12:20
   48:11
varying   20:7
vcg   19:24
vejseli   6:3
veritext   79:20
versus   8:5
vesey   4:14
viability   24:23
viable   25:5
victor   7:23
view   27:9
   29:14 37:22
   59:10 60:19
vigor   51:4
vigorous   50:5
vigorously
   51:6
violate   53:3
   55:9 73:2

violated   37:4
violating   37:18
violation   17:16
   18:5 19:13
   36:18,23 37:6
   37:24 39:19
   56:5 73:2
virtual   11:24
virtually   13:3
   18:9 50:5

**w**

w   7:1
waiting   55:13
   55:20
wallet   16:3
   43:3
walton   7:11
want   12:6
   16:13 18:24
   22:4 29:6
   30:12,22 33:24
   41:15 42:11
   44:21 48:15
   49:3 50:11,18
   53:11 54:8
   55:12 56:1
   59:21 61:11
   65:9 66:4 67:2
   67:23 68:21
   72:5,10 74:10
   74:18,21 75:2
   76:25 77:17
wanted   10:16
   67:21
wanting   66:17
wants   54:9
   74:4

war   50:23,24
waste   67:2
way   23:2,19
   25:12 28:13
   50:21 51:13
   61:4,15 72:7
   73:20
ways   21:12
   37:15
we've   63:12
weedman   6:15
week   12:18
   48:14,16 49:13
   63:10
weeks   12:15
   18:8,12 47:2,7
   49:4,6,13,16
   49:24 50:8,24
   69:15
weigh   18:19
   23:23 46:24
weighs   46:15
weight   73:22
   76:11
welcome   29:10
   30:12,19 42:5
weren't   49:20
westover   6:4
we'll   33:15
   46:6 53:22
we're   27:2,13
   29:12,15 48:7
   52:12,16 56:3
   57:4 58:22
   59:11 62:6,6
we've   35:19
   60:6

what's   47:3
   52:9
white   5:1 10:10
wickouski   4:18
   8:12,15,15,20
   10:1,2,15,16
   11:4 19:6
   26:23 30:24
   32:9,18 33:19
   34:2 37:3,20
   44:13 45:23
   53:23,24,25
   54:6,15 55:1,3
   55:11,19,23
   56:16 57:3,5
   58:10 59:9,16
   60:11,24 61:2
   61:18 62:15
   64:9 65:14
   66:1,2 67:9,11
   67:22 68:1,21
   69:13 70:15,18
   70:21,25 73:15
   74:3,5,25 75:2
   75:6,10 77:16
   77:18,21 78:6
willing   59:13
winter   24:18
wise   48:2
wish   69:6 70:5
   76:21
wished   11:9
withdrawal
   17:17
withholding
   38:14,16

**witness**  9:12
  56:23 59:3,4
  62:2,18 63:18
**witnesses**  57:1
  57:4 61:24
  63:25 64:3
**wl**  33:3
**wofford**  5:6
  10:5,7,8
**won't**  36:19
  42:24 46:9
  51:4
**words**  20:25
  45:6,6
**work**  33:20
  64:6 77:5
**worldwide**
  30:5
**worth**  38:16
  65:3
**wouldn't**  59:14
**wound**  13:24
**writing**  74:16
**writings**  43:16
  44:15
**wrong**  25:12
  25:12
**wrote**  17:9,17
  52:6

**x**

**x**  1:5,11,17
  48:17

**y**

**yanez**  6:4
**yeah**  9:3 11:3
  16:15,15 24:14

  45:14 48:17
  52:22
**year**  20:22
  48:3 71:13,19
**years**  13:22,23
  20:24 39:1
  46:5
**yield**  53:10
**yoon**  7:24
**york**  1:2,21 4:7
  4:16 5:4
**you'll**  28:22
  30:22 41:10
  42:8 43:20
  44:17 61:3
**you're**  28:19
  28:21 30:2,7
  33:17 43:17
  44:23 54:15
**you've**  28:12
  30:3 32:15
  53:8

**z**

**zaharis**  7:25
**ziotech**  34:25
**zoom**  3:2 11:8
  22:22 64:5