**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |
| CELSIUS NETWORK LIMITED, | |
| Plaintiff, | Adversary Proceeding |
| v. | No. 23-01138 (MG) |
| STAKEHOUND SA, | |
| Defendant. | |

## CELSIUS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The Debtors' service address in these Chapter 11 Cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

## <u>TABLE OF CONTENTS</u>

**Page**

DISCUSSION ................................................................................................................................. 1

    I.      *Grupo Mexicano* Does Not Limit the Injunctive Power of Bankruptcy Courts.................. 1

    II.    All Courts May Grant Freezing Orders for Equitable Claims and Remedies..................... 4

CONCLUSION ............................................................................................................................. 17

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Adelphia Comms. Corp. v. Rigas*,
  2003 WL 21297258 (S.D.N.Y. June 4, 2003) ................................................................ *passim*

*In re Adelphia Comms. Corp. v. Rigas*,
  323 B.R. 345 (Bankr. S.D.N.Y. 2005) ........................................................................... 2, 7

*In re Arcapita Bank B.S.C.(c)*,
  628 B.R. 414 (Bankr. S.D.N.Y. 2021) ................................................................................ 13

*Arch Ins. Co. v. Sierra Equip. Rental, Inc.*,
  No. CIV S-12-0617 KJM, 2012 WL 5897327 (E.D. Cal. Nov. 13, 2012) .......................... 14

*Bice v. Robb*,
  No. 07 CIV. 2214 (PAC), 2010 WL 11586924 (S.D.N.Y. Jan. 15, 2010) ........................... 8

*Black v. Cakor Rest., Inc.*,
  No. 22-CV-1447 (VEC), 2022 WL 17689840 (S.D.N.Y. Dec. 15, 2022) ............................ 4

*Braunstein v. McCable*,
  571 F.3d 108 (1st Cir. 2009) ...................................................................................... 11, 12

*In re Celsius Network LLC*,
  No. 22-10964 (MG), 2022 WL 17541051 (Bankr. S.D.N.Y. Dec. 8, 2022) ............... 1, 15, 16

*In re Columbia Sussex Corp., Inc.*,
  No. 4:06CV118SNL, 2006 WL 305959 (E.D. Mo. Feb. 8, 2006) ........................................ 2

*Cruz v. McAneney*,
  31 A.D.3d 54 (2006) ................................................................................................... 8, 9

*CSC Holdings, Inc. v. Redisi*,
  309 F.3d 988 (7th Cir. 2002) ...................................................................................... 5, 7

*In re Dow Corning Corp.*,
  280 F.3d 648 (6th Cir. 2002) ........................................................................................ 1

*EHT US1, Inc. v. EHT Asset Management, LLC*,
  2021 WL 3828556 (Bankr. D. Del. Aug. 27, 2021) .......................................................... 1

*Fabry's S.R.L. v. IFT Int'l, Inc.*,
  No. 02 CIV. 9855 (SAS), 2003 WL 21203405 (S.D.N.Y. May 21, 2003) ..................... 15, 16

*Farsura v. QC Terme US Corp.*,
  No. 21 CIV. 9030 (AT), 2022 WL 4226266 (S.D.N.Y. Sept. 13, 2022) ............................. 8

*Fed. Trade Comm'n v. 4 Star Resol., LLC*,
No. 15-CV-112S, 2015 WL 7431404 (W.D.N.Y. Nov. 23, 2015) ......................................... 4

*In re Focus Media Inc.*,
387 F.3d 1077 (9th Cir. 2004) ................................................................................... 1, 5

*Frias v. Frias*,
No. 524563/2017, 2023 WL 3746401 (N.Y. Sup. Ct. May 16, 2023) ................................... 8

*Grosz v. Museum of Mod. Art*,
772 F. Supp. 2d 473 (S.D.N.Y.), *aff'd*, 403 F. App'x 575 (2d Cir. 2010) ........................... 15

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*,
527 U.S. 308 (1999) ................................................................................................... *passim*

*In re HMKR, Inc.*,
No. 99-B-10968 (RDD), 2003 WL 21696521 (Bankr. S.D.N.Y. July 18, 2003), *aff'd
sub nom. Homemaker Indus., Inc. v. Off. Comm. of Unsecured Creditors of HMKR,
Inc.* ........................................................................................................................... 11

*Kottler v. Deutsche Bank AG*,
607 F. Supp. 2d 447 (S.D.N.Y. 2009) ......................................................................... 10

*In re Kwok*,
2023 WL 186964 (Bankr. D. Conn. Jan. 13, 2023) ......................................................... 1

*Lyungstrandh v. William Haaker Co.*,
16 Misc. 387, 38 N.Y.S. 129 [App. Term 1896] ........................................................... 15

*Marvel Ent. Grp., Inc. v. Elliott*,
169 A.D.2d 473, 564 N.Y.S.2d 720 [1st Dept 1991] ..................................................... 16

*Matter-of-Kossoff PLLC, No. 21-10699 (DSJ)*,
2023 WL 3404907 (Bankr. S.D.N.Y. May 11, 2023) ....................................................... 7

*In re MF Glob. Inc.*,
531 B.R. 424 (Bankr. S.D.N.Y. 2015) ......................................................................... 13

*Motorola Credit Corp. v. Uzan*,
202 F. Supp. 2d 239 (S.D.N.Y. 2022), *rev'd on other issues*, 332 F.3d 130 (2d Cir.
2003) ........................................................................................................................ 5, 10

*Mullins v. City of New York*,
626 F.3d 47 (2d Cir. 2010) ......................................................................................... 4

*In re NM Holdings Co., LLC*,
407 B.R. 232 (Bankr. E.D. Mich. 2009) ......................................................................... 2

*Off. Comm. of Unsecured Cred. V. Bk. of Amer. (In re Adelphia Commc'ns Corp.).*,
No. 02-41729(REG), 2007 WL 2403553 (Bankr. S.D.N.Y. Aug. 17, 2007) ......................... 7

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*,
305 F. Supp. 2d 340 (S.D.N.Y. 2004) ............................................................... 14

*Owens Corning*,
419 F.3d 195 (3d Cir. 2005) ...........................................................................1, 3

*Paradigm Biodevices, inc. v. Centinel Spine, Inc.*,
2013 WL 1915330 (S.D.N.Y. May 9, 2013) ........................................................ 9

*Paramount Film Distrib. Corp. v. State*,
285 N.E.2d 695 (1972) .................................................................................... 8

*Paramount Film Distrib. Corp. v. State*,
30 N.Y.2d 415 (1972) ...................................................................................... 8

*United States ex rel. Rahman v. Oncology Assocs., P.C.*,
198 F.3d 489 (4th Cir.1999) ....................................................................... 7, 11

*In re Randolph Towers Coop., Inc.*,
458 B.R. 1 (Bankr. D.D.C. 2011) ..................................................................... 13

*Reliance Hosp. LLC v. 5251 S Julian Drive LLC*,
No. CV2200149TUCJASMSA, 2023 WL 2601255 (D. Ariz. Mar. 22, 2023) ................ 2

*S.E.C. v. Musella*,
578 F. Supp. 425 (S.D.N.Y. 1984) ..................................................................... 4

*Schubert v. Premier Paper Prods., LLC*,
2006 WL 3498065 (Bankr. D. Del. Dec. 4, 2006) ................................................. 3

*Schwartz v. Cap. Liquidators, Inc.*,
984 F.2d 53 (2d Cir. 1993) ............................................................................. 16

*Shaoxing Bon Textiles Co. v. 4-U Performance Grp. LLC*,
No. 16 CIV. 6805 (JSR), 2017 WL 737315 (S.D.N.Y. Feb. 6, 2017) (Rakoff, J.) ........... 7

*Silverman v. H.I.L. Assocs. Ltd. (In re Allou Distribs., Inc.)*,
387 B.R. 365 (Bankr. E.D.N.Y. 2008) ................................................................ 7

*Singer v. Xipto Inc.*,
852 F. Supp. 2d 416 (S.D.N.Y. 2012) ........................................................... 7, 10

*Slidell, Inc. v. Millennium Inorganic Chemicals, Inc.*,
No. CIV A. 02-213 ......................................................................................... 14

*In re Soundview Elite Ltd.*
543 B.R. 78 (Bankr. S.D.N.Y. 2016) (Gerber, J.) ........................................*passim*

*St. John's Univ., New York v. Bolton*,
757 F. Supp. 2d 144 (E.D.N.Y. 2010) .......................................................... 15, 16

iv

*State of N.Y. v. SCA Servs., Inc.*,
 761 F. Supp. 14 (S.D.N.Y. 1991) ........................................................................................ 8

*Steinberg v. Zebrasky*,
 No. 10 CIV. 4372 RJS, 2011 WL 2565498 (S.D.N.Y. June 14, 2011) ............................................... 15

*Tempur-Pedic Int'l, Inc. v. Waste to Charity, Inc.*,
 483 F. Supp. 2d 766 (W.D. Ark. 2007) ............................................................................ 15

*Tow v. Park Lake Cmtys.*,
 C.A. No. H-17-3364, 2018 U.S. Dist. LEXIS 1720 (S.D. Tex. Jan. 4, 2018).................................... 12

*Walker v. Weese*,
 286 F. 294 (D. Md. 2002)......................................................................................... 12

*Winklevoss Cap. Fund, LLC v. Shrem*,
 351 F. Supp. 3d 710 (S.D.N.Y. 2019) ......................................................................... 6, 9

*Wishnatzki & Nathel v. H.P. Island-Wide*,
 2000 U.S. Dist. LEXIS 15664 (S.D.N.Y. Oct. 27, 2000).................................................... 11

Celsius Network Limited ("Celsius") respectfully submits this supplemental brief pursuant to the Court's invitation during the August 29, 2023 hearing on Celsius' *Motion for Temporary Restraining Order and Preliminary Injunction* [ECF No. 39] (the "Motion") against Defendant StakeHound S.A. ("Defendant" or "StakeHound").  As explained below, the Court has discretion to grant Celsius' Motion under the circumstances of this case, notwithstanding the holding of *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308 (1999).

## DISCUSSION

### I.  *Grupo Mexicano* Does Not Limit the Injunctive Power of Bankruptcy Courts

Courts within this Circuit and elsewhere have held that *Grupo Mexicano* is "not applicable in the bankruptcy context."  *See, e.g.*, *Adelphia Comms. Corp. v. Rigas*, 2003 WL 21297258, \*4 (S.D.N.Y. June 4, 2003); *see also Owens Corning*, 419 F.3d 195 (3d Cir. 2005) (opining that, "had the company in *Grupo Mexicano* been in bankruptcy, the bankruptcy court would have had the authority" to enter an order freezing the defendant's assets in connection with contract claim for money damages); *In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002) (noting a bankruptcy court is not confined to traditional equity jurisprudence; thus, *Grupo Mexicano* does not limit a bankruptcy's court's equitable powers); *In re Focus Media Inc.*, 387 F.3d 1077, 1085 (9th Cir. 2004) (holding that "*Grupo Mexicano* . . . exempts from its proscription against preliminary injunctions freezing assets cases involving bankruptcy"); *EHT US1, Inc. v. EHT Asset Management, LLC*, 2021 WL 3828556, \*1 (Bankr. D. Del. Aug. 27, 2021) ("I … conclude that the *Grupo Mexicano* decision holding that district courts cannot grant preliminary injunctions to freeze a defendant's assets if a plaintiff had no legal claim to those assets *does not apply* in bankruptcy courts in general or, more specifically to fraudulent transfer actions in bankruptcy.") (emphasis added); *In re Kwok*, 2023 WL 186964, \*20 (Bankr. D. Conn. Jan. 13, 2023) (observing that *Grupo

*Mexicano* indicated its holding was "not necessarily applicable in bankruptcy court"); *Reliance Hosp. LLC v. 5251 S Julian Drive LLC*, No. CV2200149TUCJASMSA, 2023 WL 2601255, at *2 (D. Ariz. Mar. 22, 2023) ("One can thus draw the rule that a preliminary injunction meant to preserve access to money for potential legal remedies, by way of an asset freeze, is only appropriate in cases seeking equitable relief, redress for claims under the Uniform Fraudulent Transfers Act, *or relief in bankruptcy*." (emphasis added)); *In re NM Holdings Co., LLC*, 407 B.R. 232, 271 (Bankr. E.D. Mich. 2009) (recognizing that "*Grupo Mexicano* does *not* limit a bankruptcy court's equitable powers" (emphasis in original)); *In re Columbia Sussex Corp., Inc.*, No. 4:06CV118SNL, 2006 WL 305959, at *4 (E.D. Mo. Feb. 8, 2006) (refusing to "apply *Grupo Mexicano* so broadly as to interfere with the bankruptcy court's injunctive powers").

Judge Gerber reached the same conclusion in a case from 2016, more than a decade after his *Adelphia*[2] decision referenced during the hearing. *See In re Soundview Elite Ltd*. 543 B.R. 78, 120 (Bankr. S.D.N.Y. 2016) (Gerber, J.) (citing *Rigas* approvingly). In *Soundview*, the trustee asserted claims for turnover, breach of contract and an accounting to recover the net asset value of the debtor's investment in a fund called Composite Ltd. ("Composite"). Composite had refused to honor the trustee's redemption request, claiming that Composite had the right under "gating" provisions in the investment documents to withhold payment to the debtor. *Id.* at 82-83. Judge Gerber entered an injunction freezing Composite's assets, virtually all of which were owed to the debtor, "pending the completion of this case" pursuant to "each of" FRCP 65(a) and Bankruptcy Code Section 105(a). *Id*. at 115.

Judge Gerber rejected the defendant's *Grupo Mexicano* arguments for two separate and independent reasons. *Id.* at 120-22. First, Judge Gerber observed that "[i]t has been repeatedly

---

[2] *In re Adelphia Comms. Corp. v. Rigas*, 323 B.R. 345 (Bankr. S.D.N.Y. 2005).

held, in this District and elsewhere, and even at the Circuit Court of Appeals level, that *Grupo Mexicano* does not constrain the powers to freeze the disposition of assets held by bankruptcy courts, whose equitable authority is not derived from generally applicable, pre-1789 authority." *Id.* at 120-21 (citing *Owens Corning*, 419 F.3d 195 (3d Cir. 2005); *Adelphia-Rigas*, 2003 WL 21297258; *Schubert v. Premier Paper Prods., LLC*, 2006 WL 3498065, *3 (Bankr. D. Del. Dec. 4, 2006)).  As the Third Circuit noted in *Owens Corning*, the case under review in *Grupo Mexicano* "was *not* a bankruptcy case."  *Owens Corning*, 419 F.3d at 208 n.14 (emphasis in original). Moreover, in *Grupo Mexicano*, the Court suggested that the equity authority district courts lack is present in bankruptcy cases.  *Id.*  The Third Circuit reasoned that "had the company in *Grupo Mexicano* been in bankruptcy, the bankruptcy court would have had the authority to implement the remedy the district court lacked authority to order under general equity power" – to wit, a freezing injunction based on a non-equitable claim.  *Owens Corning*, 419 F.3d at 208 n.14.

Judge Gerber adopted the Third Circuit's logic in *Soundview* and entered the requested freezing injunction:

> Here, where the Trustee is attempting to marshal the [debtor's] estates assets for the benefit of its creditors, and to protect those creditors from efforts to dissipate property that may technically not yet be estate property but will be imminently, the Third Circuit's analysis in *Owens Corning* makes for a perfect fit.

543 B.R. at 121.  Celsius' position is similar to the trustee's in *Soundview*.  Virtually all of the assets in StakeHound's possession were provided by Celsius, and they are insufficient to satisfy Celsius' claims.  *See* Hurley Decl. [ECF No. 35] Ex. A (Notice of Arbitration) ¶ 21 (StakeHound alleging that 96% of the ETH in its possession supplied by Celsius, 60% of which StakeHound and/or Fireblocks lost)*; see also* Third Declaration of Richard Man ¶¶ 5-6, Exs. A-D (offering additional evidence that 100% of the MATIC and DOT in StakeHound's possession was provided

by Celsius, a claim that StakeHound never has denied or sought to rebut).[3]  As in *Soundview*, despite due demand, StakeHound continues to retain all of the Celsius property.  *Compare Soundview*, 543 B.R. at 83 (despite demand, Composite "refuse[d] to return [debtor's] investment – or what's left of it").  StakeHound offers **_no_** excuse for its refusal to turnover the MATIC and DOT, and provides borderline frivolous theories in its failed attempt to justify depriving Celsius of the ETH.  As in *Soundview*, "sooner or later [Celsius] will win," the only question is when, and how much of the Subject Property[4] will be left.  The Court should exercise its equitable power to protect Celsius' creditors by entering a TRO and injunction freezing the Subject Property until this matter can be resolved.

## II.    All Courts May Grant Freezing Orders for Equitable Claims and Remedies

The Court also can enter the requested TRO and injunction because Celsius asserts equitable claims and remedies in this proceeding, including a claim for an accounting.  Indeed, this was the "second" reason Judge Gerber offered for rejecting the defendant's argument in

---

[3]  StakeHound only criticizes the quality of Celsius' evidence on the MATIC and DOT.  *See Defendant StakeHound, S.A.'s Objection to Plaintiff's Motion for Temporary Restraining Order/Preliminary Injunction* (the "Objection") [ECF No. 42] at ¶ 43 (no denial that the MATIC and DOT all came from Celsius); *Declaration of Albert Castellana Lluís* [ECF No. 43] ¶¶ 31, 32, 35 (same).  While Mr. Man's testimony in part is based on his review of information on the blockchain and other documents, courts routinely admit and consider evidence at the TRO and preliminary injunction stage that is less robust than may be presented at trial, including evidence that arguably would be inadmissible at a later stage of the case.  *E.g., Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010).  Where, as here, the defendant does not even try to refute the moving parties' claims the Court may accord full weight to Celsius' evidence, including concerning the MATIC and DOT.  *Black v. Cakor Rest., Inc.*, No. 22-CV-1447 (VEC), 2022 WL 17689840 (S.D.N.Y. Dec. 15, 2022) (defendant's argument against the admissibility of plaintiff's evidence, without refuting plaintiff's interpretation of the evidence, did not prevent the court from considering plaintiff's evidence to find a likelihood of success on the merits); *Fed. Trade Comm'n v. 4 Star Resol., LLC*, No. 15-CV-112S, 2015 WL 7431404, at *3 (W.D.N.Y. Nov. 23, 2015) (consumer declarations in support of TRO were "appropriately considered on a preliminary injunction motion" because "Defendants neither expressly discuss nor dispute the factual assertions in the consumer declarations, or any other piece of specific evidence cited by Plaintiffs"); *S.E.C. v. Musella*, 578 F. Supp. 425, 427 (S.D.N.Y. 1984) ("[G]iven the exigent nature of an application for preliminary relief," a court "may give full weight" to hearsay evidence in instances where defendants have not "proffered conflicting evidence to contest the 'raw facts.'").

[4]  The term Subject Property has the meaning ascribed to it in the *[Proposed] Order Granting Temporary Restraining Order* [ECF No.39-1] (the "Proposed Order").

*Soundview*.  "Even if *Grupo* Mexicano applied to bankruptcy courts," Judge Gerber held that he still "would have the authority to issue the asset freezing injunction against Composite" because **the trustee alleged a claim for accounting, "which is a classic basis for an asset freezing order" and a "well recognized form of equitable relief."**  *Soundview*, 543 B.R. at 122 (citation and internal quotations omitted).  "The fact that a plaintiff may *also* have valid claims for damages does not result in a forfeiture of the asset-freezing power."  *Id.*; *see also CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) (holding that even a district court can, notwithstanding *Grupo Mexicano*, enter an asset freezing order if the suit seeks equitable relief); *Rubin v. Pringle (In re Focus Media, Inc.)*, 387 F.3d 1077, 1085 (9th Cir. 2004), *cert denied*, 544 U.S. 923 (2005) (where a party in an adversary proceeding alleges fraudulent conveyance or other equitable claims, *Grupo* does not bar issuance of an asset freezing injunction); *Rigas*, 2003 WL 21297258, at *5 (*Grupo* inapplicable where imposition of a constructive trust and accounting sought in addition to money damages); *Motorola Credit Corp. v. Uzan*, 202 F. Supp. 2d 239, 250 (S.D.N.Y. 2022), *rev'd on other issues*, 332 F.3d 130 (2d Cir. 2003) (same where plaintiff sought a constructive trust and other equitable remedies in addition to money damages).  Celsius too alleges equitable claims and seeks equitable relief, and a freezing order would be authorized "even if *Grupo Mexicano* applied to bankruptcy courts."

**Accounting**.  First, as noted, Celsius has adequately pleaded a claim for accounting.  A party seeking an accounting must establish that it provided property to the defendant under circumstances justifying an accounting, and that the party has no adequate remedy at law.  If the party can show that the case involves "adjudication of issues relating to an account of a complicated character," it need not show a confidential or fiduciary relationship with the defendant.  *See Soundview* 543 B.R. at 123 & *id.* n. 235 (rejecting argument that a fiduciary or

confidential relationship is required to sustain claim for accounting).[5] "If a plaintiff is successful in an accounting claim, in addition to returning the property, a fiduciary must return any profits generated by the use of the property." *Winklevoss Cap. Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 721 (S.D.N.Y. 2019).

In *Soundview*, the debtor sued Composite based on its failure to honor the debtor's demand for redemption of the debtor's investment. Except for payments owed to creditors, virtually all of Composite's property was claimed by the debtor, but an accounting was required to determine the precise amount due to the debtor. *See In re Soundview Elite Ltd.*, 543 B.R. at 82-83. In this case, Celsius' claim dwarfs the assets in StakeHound's possession. Nevertheless, including to calculate a potential disgorgement remedy, Celsius requires a full accounting of StakeHounds' activities with Celsius' assets, including the precise number of tokens in StakeHound's control that were provided to or derived from Celsius through earned rewards or otherwise. StakeHound alleges in its arbitration that "96%" of its ETH was provided by Celsius, and that "60%" of that ETH was lost by StakeHound and/or Fireblocks, but when queried by the Court, counsel was unable to confirm the ETH figures or identify amounts of ETH provided by other customers. Nor has StakeHound documented its activities with any precision, identified rewards earned on that ETH or Celsius' MATIC and DOT over time, including based on the ever-shifting reward rates applicable during the more than two years it has held those tokens.

Just as in *Soundview,* the defendant here must provide an accounting of the assets in its possession, and the Court is authorized to enter a freezing injunction in the meantime. *See, e.g.,*

---

[5] It is unnecessary to plead or prove a confidential relationship to establish an entitlement to an accounting, as discussed above. Celsius notes, however, that it entrusted tokens worth vast sums to StakeHound on a "one to one" basis for stTokens, with the expectation based on StakeHound's repeated assurances that Celsius would be permitted return of its native tokens on a one-to-one basis. It was introduced to StakeHound through a pre-exiting relationship between Albert Castellana and Jason Stone, and on this pre-discovery motion, dealings between Castellana and Stone of less than arms-length remain a distinct possibility.

*In re Adelphia Comms. Corp. v. Rigas*, 323 B.R. 345 (Bankr. S.D.N.Y. 2005) (citing *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir.2002) (Grupo Mexicano "held that a district court may not issue an injunction freezing assets in an action for money damages where no equitable interest is claimed"; where equitable relief—for an accounting and resulting profits—was sought, in the alternative to claims for money damages, Grupo Mexicano was inapplicable, and asset-freezing injunction was proper); *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 489, 496–97 (4th Cir.1999) (observing, in Fed.R.Civ.P. 64 context, that "when the plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the status quo pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested.").

**Unjust Enrichment and Constructive Trust**.  In addition to its claim for accounting, Celsius alleges other claims that support a freezing injunction even if *Grupo Mexicana* applied to this Bankruptcy Court, including claims for unjust enrichment and constructive trust.  *See, e.g., Shaoxing Bon Textiles Co. v. 4-U Performance Grp. LLC*, No. 16 CIV. 6805 (JSR), 2017 WL 737315, at *2 (S.D.N.Y. Feb. 6, 2017) (Rakoff, J.) (entering injunction and rejecting argument that *Grupo Mexicana* bars relief relating to unjust enrichment claim."); *Adelphia Comms. Corp.*, 2003 WL 21297258, at *5 (holding that "*Grupo Mexicano* is inapplicable" to constructive trust and accounting claims).[6]

---

[6] Courts routinely "permit plaintiffs to plead breach of contract and unjust enrichment in the alternative, even when the existence of a contract would preclude recovery under unjust enrichment."  *Off. Comm. of Unsecured Cred. V. Bk. of Amer.* (*In re Adelphia Commc'ns Corp.*)., No. 02-41729(REG), 2007 WL 2403553, at *7 (Bankr. S.D.N.Y. Aug. 17, 2007); *see also Matter-of-Kossoff PLLC*, No. 21-10699 (DSJ), 2023 WL 3404907, at *1 (Bankr. S.D.N.Y. May 11, 2023) (noting that the court had denied a motion to dismiss the Trustee's claim for unjust enrichment and had ruled that the claim was permissibly raised as an alternative form of relief); *Singer v. Xipto Inc.*, 852 F. Supp. 2d 416, 426 (S.D.N.Y. 2012) (allowing alternative claims for breach of contract or unjust enrichment where plaintiffs alleged they invested in the defendant company pursuant to a contract, and that their monies were not returned in breach of that contract or as an act of unjust enrichment by the defendant); *Silverman v. H.I.L. Assocs. Ltd.* (*In re Allou*

Celsius alleges all of the elements of an unjust enrichment claim, including "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Cruz v. McAneney*, 31 A.D.3d 54, 59 (2006); Am. Compl. ¶¶ 19, 35, 38-41, 103-109.  Unjust enrichment "does not require the performance of any wrongful act by the one enriched." *Id.*  "The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421 (1972).  "[A] plaintiff who establishes a prima facie case of unjust enrichment is entitled to the equitable remedy of restitution." *State of N.Y. v. SCA Servs., Inc.*, 761 F. Supp. 14, 15 (S.D.N.Y. 1991); *see also Paramount Film Distrib. Corp. v. State*, 285 N.E.2d 695, 698 (1972) ("Such a claim is undoubtedly equitable and depends upon broad considerations of equity and justice.").

Celsius also alleges the elements of a constructive trust.  *See* Am. Compl. ¶¶ 19, 35, 38-41, 103-109.  While sometimes identified as fourfold, the constructive trust factors "serve only as a guideline, and a constructive trust may still be imposed even if all four elements are not established." *Frias v. Frias*, No. 524563/2017, 2023 WL 3746401, at *3 (N.Y. Sup. Ct. May 16, 2023); *see also Farsura v. QC Terme US Corp.*, No. 21 CIV 9030 (AT), 2022 WL 4226266, at *9 (S.D.N.Y. Sept. 13, 2022), on reconsideration in part, No. 21 CIV 9030 (AT), 2022 WL 16838212 (S.D.N.Y. Nov. 8, 2022) (analyzing a count for constructive trust as a claim that is "equitable in

---

*Distribs., Inc.*), 387 B.R. 365, 412 (Bankr. E.D.N.Y. 2008) ("While there can be no doubt that the Trustee would not be entitled to duplicative relief, there similarly is no doubt that at the pleadings stage, a plaintiff is not required to elect a single theory upon which to proceed.").  Courts also routinely permit the assertion of breach of contract claims alongside constructive trust claims. *Bice v. Robb*, No. 07 CIV. 2214 (PAC), 2010 WL 11586924, at *3 (S.D.N.Y. Jan. 15, 2010).

nature" and explaining that "the constructive trust factors should not be 'rigidly limited.'").[7]   The

ultimate purpose of a constructive trust is to prevent unjust enrichment, and thus, a constructive

trust may be imposed "when property has been acquired in such circumstances that the holder of

the legal title may not in good conscience retain the beneficial interest." *Cruz v. McAneney*, 31

A.D.3d 54, 58–59 (2006).   More unjust circumstances could hardly exist than allowing Mr.

Castellana and StakeHound to keep, or dissipate, $90 million worth of assets provided by Celsius

based on their own catastrophic loss of another $70 million worth of Celsius' property.[8]

Celsius' extra-contractual claims for unjust enrichment and constructive trust are especially

critical concerning the ETH, because StakeHound has suggested any transfer of native ETH to

Celsius would have to be outside of the contract.   In an April 11, 2023 letter to Celsius,

StakeHound's counsel made clear that StakeHound contends that the Staking Services Agreement

terminated upon the unlocking of the staked ETH and that at least as of April 11, 2023, the Staking

Services Agreement was "at an end."   *See* Letter from Alexander Carter-Silk to Mitchell P. Hurley

(Apr. 11, 2023) at 1-2, attached as Exhibit D to *Declaration of Mitchell P. Hurley in Support of*

*Plaintiff Celsius Network Limited's Motion for an Order Authorizing Alternative Service on*

*Defendant StakeHound SA Pursuant to Federal Rule of Civil Procedure 4(f)(3)* [Adv. Proc. No.

10].   StakeHound went on to assert that once the ETH was unlocked and transferred to

StakeHound, Celsius' right to receipt of those assets from StakeHound "under the Staking Services

Agreement cease[d], and the Agreement terminate[d]."   *Id.* at 2.   StakeHound went on to argue

---

[7] *See Winklevoss Cap. Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 720 (S.D.N.Y. 2019) (Rakoff, J.). (identifying the traditional factors as "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment").

[8] The fact that Celsius pursued these equitable claims alongside its legal claims in no way diminishes the Court's authority to enter a freezing order. *See, e.g.*, *Paradigm Biodevices, inc. v. Centinel Spine, Inc.*, 2013 WL 1915330, at *2-3 (S.D.N.Y. May 9, 2013) ("as many courts have held, where plaintiffs seek both equitable and legal relief" a court "retains its equitable power to freeze assets") (internal quotation marks and citation omitted).

that Celsius' "entitlement to exchange on platform on availability is not an obligation on [StakeHound] to deliver up, but an entitlement for [Celsius] to request an exchange (if available)." StakeHound claims, in other words, that any obligation it might have to transfer tokens to Celsius arises outside of the contract.

Given StakeHound's contention that the agreement between the parties terminated and that Celsius should look outside of the contract for any purported entitlement to the return of Native Tokens, Celsius seeks equitable relief related to StakeHound's conduct outside of the scope of the contract and *after* StakeHound contends the contract was terminated in April 2023. Further, as to this conduct, at the very least, it remains unsettled whether an enforceable contract governs the dispute at hand, given StakeHound's contentions, and so Celsius is entitled to proceed with its equitable claims for unjust enrichment and constructive trust at least in the alternative to its contractual claims. *See, e.g.*, *Singer v. Xipto Inc.*, 852 F. Supp. 2d 416, 426 (S.D.N.Y. 2012); *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 468 (S.D.N.Y. 2009) ("where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue, a court should not dismiss a claim of unjust enrichment at the motion-to-dismiss stage").

**<u>Claim by Debtor for Property of the Estate</u>**. Celsius alleges still more grounds for entry of an injunction, in addition to its claims for an accounting, constructive trust and unjust enrichment. For example, Celsius seeks equitable relief pursuant to a number of its claims tied to the specific assets sought to be frozen, including Celsius' request for turnover, specific performance, constructive trust, disgorgement, and replevin which likewise supports the imposition of an asset freezing injunction notwithstanding *Grupo Mexicano*. *See Motorola Credit Corp. v. Uzan*, 202 F. Supp. 2d 239, 250 (S.D.N.Y. 2002) ("[A]s the Supreme Court in *Grupo Mexicano* further indicated, such equitable remedies [i.e., preliminary injunctive relief] are

available, both historically and now, to creditors possessing a lien or equitable interest in the property at issue, *see Grupo Mexicano* at 329-33, and subsequent decisions have expressly so held."); *Wishnatzki & Nathel v. H.P. Island-Wide*, 2000 U.S. Dist. LEXIS 15664, at *4 (S.D.N.Y. Oct. 27, 2000) ("[W]here the particular funds sought to be frozen are also the funds at issue in the suit, a preliminary injunction is proper.").

Stated differently, "when the plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the status quo pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested." *U.S. ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496 (4th Cir. 1999).[9]

**Turnover**. One such claim to recover the specific assets at issue is turnover. Celsius' claim for turnover under Section 542(b) of the Bankruptcy Code is an equitable claim seeking an equitable remedy, and therefore sufficient to support a temporary restraining order or preliminary injunction under *Grupo Mexicano*. The First Circuit considered the nature of the turnover claim in *Braunstein v. McCable*, 571 F.3d 108 (1st Cir. 2009) in the context of determining whether a jury trial right attaches to a claim for turnover, which requires a substantially similar analysis to that required under *Grupo Mexicano* to determine if a claim has a basis in the traditional power of equity courts prior to the merger of the courts of law and equity.

---

[9] The Native Tokens that Celsius seeks to freeze are indisputably property of the estate. Under Section 541(a) of the Bankruptcy Code, the "estate" consists of all tangible and intangible property—"wherever located and by whomever held"—in which the debtor has any legal or equitable interest. The definition is extensive, and "as the legislative history to section 541 indicates, Congress intended property of the estate to include all interests of a debtor, including a debtor's contract right to future, contingent property." *In re HMKR, Inc.*, No. 99-B-10968 (RDD), 2003 WL 21696521, at *5 (Bankr. S.D.N.Y. July 18, 2003), *aff'd sub nom. Homemaker Indus., Inc. v. Off. Comm. of Unsecured Creditors of HMKR, Inc. f/k/a Homemaker Indus., Inc.*, No. 03 CIV.9303(DLC), 2004 WL 838168 (S.D.N.Y. Apr. 20, 2004).

As an initial matter, the First Circuit held turnover is an equitable claim. According to the First Circuit, "[t]he trustee's gathering of the 'property' of the estate, as both that property and the exclusions have been defined by Congress, is inherently an equitable task." *Id.* at 119. The First Circuit traced the history of the turnover claim back to the pre-merger courts of equity in England, and concluded that "[a] turnover action is not an action to recover damages for the taking of estate property but an action to recover possession of property belonging to the estate at the time of the filing. It invokes the court's most basic equitable powers to gather and manage property of the estate." *Id.* at 122 (internal citations omitted); *see also Tow v. Park Lake Cmtys.*, C.A. No. H-17-3364, 2018 U.S. Dist. LEXIS 1720, at *8 (S.D. Tex. Jan. 4, 2018) ("[A] turnover action is not a legal action for monetary damages, but an action to recover property belonging to the estate. The action sounds in equity."); *Walker v. Weese*, 286 F. 294, 299 (D. Md. 2002) ("[T]urnover . . . is also fairly characterized as an equitable claim . . . . Commanding turnover is at the very root of the bankruptcy court's equitable powers.").

The First Circuit then held that a claim for turnover seeks an equitable remedy. "The statutory cause of action ***expressly calls for an accounting remedy . . . which the Court has recognized is an inherently equitable remedy.*** *Braunstein* at 122. "Further, a court issuing a turnover order has the power to order injunctive relief to allow the trustee to gather the property of the estate. Such relief is inherently equitable." *Id.* at 122 (internal citations omitted). And the First Circuit concluded that it makes no difference if the judgment itself calls for the turnover of money because "[a] monetary award may be an equitable remedy when the award is restitutionary, such as in action[s] for disgorgement of improper profits or when it is incidental to or intertwined with injunctive relief." *Id.* at 123 (internal quotations and citations omitted); *see also Tow*, U.S.

Dist. LEXIS 1720, at *10 ("the monetary nature of the remedy does not make the action legal in nature").

Celsius has asserted colorable claims for turnover under Section 542(b). "Debts owing to the debtor under a contract constitute property of the estate for purposes of Section 542(b) where it has been established that the contracting party was unconditionally liable under the contract's terms." *Off. Comm of Unsec'd Cr. v. Bahrain Islamic Bank In re Arcapita Bank B.S.C.(c)*, 628 B.R. 414, 478 (Bankr. S.D.N.Y. 2021) (citing *In re MF Glob. Inc.*, 531 B.R. 424, 437–38 (Bankr. S.D.N.Y. 2015)). A debt is matured for purposes of a turnover claim when it is "presently payable." *Id.* Specifically, the inquiry is whether the party "pursuing turnover seeks the **collection** rather than the creation, recognition, or liquidation" of a debt. *Id.* The fact that a defendant "may assert a valid defense to payment of the debt . . . does not require a holding that the debt is not matured." *Id.*; *see also In re MF Glob. Inc.*, 531 B.R. at 438 ("[F]or an action to be a turnover proceeding, it is not relevant that [all] the defendant[s] dispute the existence of the debt by, perhaps, denying the complaint's allegations, as long as these allegations state the existence of a mature debt."); *In re Randolph Towers Coop., Inc.*, 458 B.R. 1, 6 (Bankr. D.D.C. 2011) (explaining that a turnover action is proper when "an account obligation [is] payable on demand" notwithstanding that "the account obligor may dispute the existence of the obligation.").

Here, there is no dispute that the native MATIC and DOT are fully matured payments that have been due to Celsius upon demand since 2021. While StakeHound does dispute its obligation to return the native ETH, the dispute is not *bona fide*. Moreover, this does not alter the fact that the debt itself is fully matured and payable, which is all that is required under Section 542(b).[10]

---

[10] Following the unlocking of the November 2020 Staked ETH upon completion of the Upgrade and the successful transfer of the November 2020 Staked ETH (together with the Rewards accruing thereon) to StakeHound's wallet, Celsius is entitled to exchange its stETH for ETH. *See* ECF No. 40 (Man Declaration), Ex. B (SSA) §§ 1.4, 1.5, 1.8. The Upgrade occurred on or about April 12, 2023, and StakeHound subsequently transferred the November

**Specific Performance**.  Additionally, while its claim for breach of contract is itself a legal claim, Celsius' breach of contract claim seeks specific performance, which is the primary remedy for breach of contract under Swiss law.  ECF No. 37 (F. Dasser Decl.) at ¶¶ 10-11.  Celsius' request for specific performance is yet another form of equitable relief that permits the Court to grant a preliminary injunction freezing StakeHound's assets under *Grupo Mexicano*.  *See Arch Ins. Co. v. Sierra Equip. Rental, Inc.*, No. CIV S-12-0617 KJM, 2012 WL 5897327, at *4 (E.D. Cal. Nov. 13, 2012) (granting preliminary injunction freezing assets based on causes of action for promissory estoppel and a request for specific performance under the parties' indemnity agreement, which the court recognized as claims "based in equity," thus permitting the court to grant such relief under *Grupo Mexicano* and other precedent); *Slidell, Inc. v. Millennium Inorganic Chemicals, Inc.*, No. CIV A. 02-213 (JRT/F, 2002 WL 649086, at *3 (D. Minn. Apr. 17, 2002) (distinguishing *Grupo Mexicano* and granting injunctive relief on the basis that the underlying breach of contract claims sought "equitable relief in the form of a constructive trust, equitable lien, specific performance and/or replevin.").  Indeed, Judge Kaplan noted in an otherwise inapposite case that *Grupo Mexicano* "leave[s] open the possibility that orders freezing particular assets may be appropriate . . . where a plaintiff seeking specific performance of a contract to convey real property seeks a preliminary injunction to prevent the defendant from selling the property to another." *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 305 F. Supp. 2d 340, 348 n. 43 (S.D.N.Y. 2004).

**Conversion**.  Finally, Celsius' claim for conversion seeks equitable replevin relief with respect to the assets sought to be frozen.  "Under New York law, [r]eplevin is a remedy employed

---

2020 Staked ETH to its own wallet, and thus the underlying debt is fully matured and subject to a valid turnover claim under Section 542(b).  *See* ECF No. 35 (Hurley Declaration), Ex. E (Letter from StakeHound counsel) at 1-2 (admitting StakeHound has "executed the transfer procedure" following the unlocking).

to recover specific, identifiable items of personal property."[11]   *Bank of Am., N.A. v. City View Blinds of N.Y.,* Inc., No. 20 CIV. 9911 (SLC), 2022 WL 580764, at *6 (S.D.N.Y. Feb. 25, 2022) (internal citations omitted).   Requests for equitable replevin relief support the Court's imposition of an asset freezing injunction within the boundaries of *Grupo Mexicano.   See, e.g.*, *Tempur-Pedic Int'l, Inc. v. Waste to Charity, Inc.*, 483 F. Supp. 2d 766 (W.D. Ark. 2007) (instituting an asset freezing injunction against property subject to a replevin claim).

Celsius anticipates that StakeHound will argue that the conversion claim is duplicative of its claim for breach of contract.   Not so.   New York courts allow claims for conversion to be pled in parallel with breach-of-contract claims when they constitute a "separately actionable" wrong. *In re Celsius Network LLC,* No. 22-10964 (MG), 2022 WL 17541051 at *9 (Bankr. S.D.N.Y. Dec. 8, 2022).   For example, conversion claims have been found not duplicative when they involve conduct postdating the termination of the contract.   *Id.* at *10; *see also Fabry's S.R.L. v. IFT Int'l, Inc.*, No. 02 CIV. 9855 (SAS), 2003 WL 21203405 at *4 (S.D.N.Y. May 21, 2003) ("[Defendant's] continued retention" of assets after termination of the contract "in defiance of plaintiff's superior right of ownership is sufficient to establish conversion.").   Courts have also found separately actionable claims for conversion related to conduct outside the four corners of the contract, as when one party "took steps to prevent" the other "from asserting its rights" under the agreement, *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 179 (E.D.N.Y. 2010), or "acquiesced

---

[11] While replevin and conversion are sometimes conceived of as separate causes of action under New York law, the claims are frequently discussed as "a legal and an equitable remedy…as to the same subject-matter…[involving] an action to recover a chattel or damages for the taking or detaining of a chattel."   *Grosz v. Museum of Mod. Art,* 772 F. Supp. 2d 473, 481 (S.D.N.Y.), *aff'd,* 403 F. App'x 575 (2d Cir. 2010); *see also Steinberg v. Zebrasky,* No. 10 CIV. 4372 RJS, 2011 WL 2565498, at *4 (S.D.N.Y. June 14, 2011) (discussing the history of conversion, replevin and related common law causes of action related to recovery of chattels).   Courts in New York have affirmed judgments ordering the equitable remedy of replevin for claims styled as causes of action for conversion, where the plaintiff seeks recovery of the wrongfully detained property, as opposed to damages for its value.   *See, e.g., Lyungstrandh v. William Haaker Co.,* 16 Misc. 387, 389, 38 N.Y.S. 129, 130 [App. Term 1896] ("The pleadings were oral, and the complaint fails to disclose whether the action is in replevin or trover; but, as conversion would authorize an action in either form, it cannot be said that the judgment is unwarranted.").

in a course of performance" outside of the contract's explicit terms. *Marvel Ent. Grp., Inc. v. Elliott*, 169 A.D.2d 473, 475, 564 N.Y.S.2d 720, 722 [1st Dept 1991].

Both of those fact patterns are alleged here. First, StakeHound asserted in an April 11, 2023 email to Celsius that that the SSA came to "an end" upon the unlocking of the Staked ETH on April 12, 2023. *See* Motion at 9. StakeHound's "continued retention" of the Native Tokens after that date "in defiance of [Celsius's] superior right of ownership" constitutes a distinct act of conversion.[12] *Fabry's S.R.L.*, 2003 WL 21203405 at *4; *see also In re Celsius Network LLC,* 2022 WL 17541051 at *9 ("Plaintiffs allege that Defendants have simply kept assets that do not belong to them, outside the scope of any other duties of performance owed under the contracts."). Second, even before that date, StakeHound "took steps to prevent [Celsius] from asserting its rights" under the contract. *St. John's Univ., New York*, 757 F. Supp. 2d at 179. StakeHound suspended the operation of its platform on June 22, 2021 in response to its own negligent conduct and that of its agent, Fireblocks, in losing the private keys necessary to unlock a significant amount of Celsius's Staked ETH. *See* Motion at 8. The platform has remained suspended for over two years, depriving Celsius of its ability to tender its st Tokens in exchange for Native Tokens, despite the fact that StakeHound is only permitted to suspend transfers *temporarily*, and to do so in good faith. *See* Celsius' *Reply Memorandum in Support of Motion for TRO* [ECF No. 50] at 4. This extra-contractual wrongdoing suffices to state an alternative claim for conversion.

---

[12] Celsius anticipates that StakeHound may attempt to argue that it is the rightful owner of the Native Tokens, in an attempt to defeat Celsius's claim for conversion. However, even if "the original possession [was] lawful," the Second Circuit has found that conversion occurs once "the defendant refuses to return the property after demand." *Schwartz v. Cap. Liquidators, Inc.*, 984 F.2d 53, 54 (2d Cir. 1993). Here, Celsius possessed the right to demand return of the assets and made such demand on April 11, 2023 (ETH) and May 25, 2023 (MATIC and DOT). *See* Motion at 9-10. Thus, StakeHound's failure to honor its obligations to return the assets constituted its conversion thereof.

## **<u>CONCLUSION</u>**

The Court has the discretion to enter a freezing injunction notwithstanding *Grupo Mexicana*, and Ceslius urges the Court to use it.  By the time the Court receives StakeHound's response to this submission, the hearing on the parties' motions, including Celsius' motion for a preliminary injunction, will be just 27 days away.  If StakeHound is allowed to proceed with its plan to spend Subject Property during that very short interregnum, Celsius and its creditors will be permanently harmed, since StakeHound already lacks the assets necessary to satisfy a judgment in this case.

In contrast, StakeHound offers no evidence of any kind that suggests StakeHound will be harmed at all by an order freezing assets for the next 27 days.  StakeHound does not claim that any of the so-called "operating costs," which Castellana vaguely references in paragraph 37 of his declaration, require payment in the next 27 days.  As for StakeHound's lawyers, they have been engaged with extreme vigor in this matter now for several weeks knowing that the Subject Property may not be available to pay their fees.  A few more weeks will neither prejudice StakeHound, nor result in any kind of unusual delay in the payment of professional fees.  Celsius urges the Court to enter an order preserving all of the Subject Property until the Court has an opportunity, on a more complete record, to revisit these issues in less than one month.

Dated:      August 30, 2023
            New York, New York

                       AKIN GUMP STRAUSS HAUER & FELD LLP

                       By:  */s/ Mitchell P. Hurley*
                             Mitchell P. Hurley
                             Dean L. Chapman Jr.
                             One Bryant Park
                             New York, New York 10036
                             Telephone: (212) 872-1000
                             Facsimile: (212) 872-1002
                             mhurley@akingump.com
                             dchapman@akingump.com

                             Elizabeth D. Scott (admitted *pro hac vice*)
                             Nicholas R. Lombardi (admitted *pro hac vice*)
                             2300 N. Field Street, Suite 1800
                             Dallas, TX 75201
                             Telephone: (214) 969-2800
                             Facsimile: (214) 969-4343
                             edscott@akingump.com
                             nlombardi@akingump.com

                             *Special Litigation Counsel for Debtors and*
                             *Plaintiff Celsius Network Limited*

18