**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*, | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |
| CELSIUS NETWORK LIMITED, | |
| Plaintiff, | Adversary Proceeding |
| v. | No. 23-01138 (MG) |
| STAKEHOUND SA, | |
| Defendant. | |

## CELSIUS' *GRUPO MEXICANO* REPLY BRIEF

## <u>TABLE OF CONTENTS</u>

**Page**

I.    CELSIUS IS NOT REQUIRED TO POST A BOND ..............................................1

II.    THIS COURT HAS THE POWER TO ENTER A FREEZING

INJUNCTION NOTWITHSTANDING *GRUPO MEXICANO* ............................2

III.    CELSIUS' EQUITABLE CLAIMS ARE WELL-PLED AND WOULD

WARRANT ENTRY OF A FREEZING INJUNCTION EVEN IF *GRUPO*

*MEXICANO* APPLIED ....................................................................................5

  A.    StakeHound's "Choice of Law" Arguments Are a Red Herring. .................6
  B.    StakeHound's Attacks on Celsius' Accounting Claim Fail. .........................8
  C.    Celsius' Other Equitable Claims and Remedies Also Are Well-
    Pleaded. ....................................................................................................10
  D.    Celsius' Legal Claims Do Not Limit the Court's Power to Grant a
    Freezing Injunction in Connection with Celsius' Equitable Claims. .........13
  E.    Celsius' Turnover Claims Also Justify Entry of a Freezing
    Injunction. ................................................................................................16
  F.    The Court Can Enter a Freezing Injunction Under Section 105(a). ..........18

CONCLUSION ......................................................................................................19

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Adelphia Commcn's Corp. v. Rigas*,
2003 WL 21297258 (S.D.N.Y. June 4, 2003) ............................................................2, 5, 8, 13

*Allstate Ins. Co. v. N.J. Mfgs. Ins. Co.*,
81 N.Y.2d 219 (1993) ...............................................................................................7

*Arch Ins. Co. v. Sierra Equipment Rental, Inc.*,
2012 WL 5897327 (E.D. Cal. Nov. 13, 2012)............................................................12

*Ball v. Soundview Composite Ltd. (In re Soundview Elite Ltd.)*,
543 B.R. 78 (Bankr. S.D.N.Y. 2016)................................................................ *passim*

*Bass v. World Wrestling Fed'n Ent., Inc.*,
129 F. Supp. 2d 491 (E.D.N.Y. 2001) .......................................................................6

*Bice v. Robb*,
2010 WL 11586924 (S.D.N.Y. Jan 15, 2010) .........................................................14

*Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*,
2015 WL 9269413 (M.D. Fla. Dec. 21, 2015)............................................................9

*In re Caesars Ent. Operating Co., Inc.*,
561 B.R. 441 (Bankr. N.D. Ill. 2016) .......................................................................2

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
598 F.3d 30 (2d Cir. 2010)........................................................................................3

*In re Columbia Sussex Corp., Inc.*,
2006 WL 305959 (E.D. Mo. Feb. 8, 2006)............................................................3, 4

*CUnet, LLC v. Quad Partners, LLC*,
2017 WL 945937 (S.D.N.Y. Mar. 7, 2017) ...............................................................7

*Dart Brokerage Corp. v. Am. Commerce Ins. Co.*,
2013 WL 5966901 (S.D.N.Y. Nov. 7, 2013)............................................................7

*In re Dow Corning Corp.*,
280 F.3d 648 (6th Cir. 2002) ...............................................................................3, 4

*EHT US1, Inc. v. EHT Asset Mgmt., LLC*,
2021 WL 3828556 (Bankr. D. Del. Aug. 27, 2021) ............................................3, 4

*Fantozzi v. Axsys Techs., Inc.*,
  2008 WL 4866054 (S.D.N.Y. Nov. 6, 2008) ..........................................................14

*In re Focus Media Inc.*,
  387 F.3d 1077 (9th Cir. 2004) ..........................................................................3, 4

*In re Gaston & Snow*,
  243 F.3d 599 (2d Cir. 2001)..................................................................................7

*Gate Techs. LLC v. Delphix Cap. Markets, LLC*,
  2013 WL 3455484 (S.D.N.Y. July 9, 2013) ..........................................................14

*Gold v. Winget (In re NM Holdings Co., LLC)*,
  407 B.R. 232 (Bankr. E.D. Mich. 2009) ................................................................3

*Golden Budha Corp. v. Canadian Land Co. of America, N.V.*,
  931 F.2d 196 (2d Cir. 1991)..........................................................................11, 12

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999) ................................................................................. *passim*

*Kottler v. Deutsche Bank AG*,
  607 F. Supp. 2d 447 (S.D.N.Y. 2009).................................................................16

*Lyondell Chem. Co. v. CenterPoint Energy Gas Servs. Inc. (In re Lyondell Chem. Co.)*,
  402 B.R. 571 (Bankr. S.D.N.Y. 2009) .............................................................2, 18

*Morales v. Next Stop 2006, Inc.*,
  2022 WL 15523370 (S.D.N.Y. Oct. 27, 2022) .......................................................7

*Motorola Credit Corp. v. Uzan*,
  202 F. Supp. 2d 239 (S.D.N.Y. 2022), *remanded on other issues*, 332 F.3d
  130 (2d Cir. 2003)........................................................................................11, 13

*Northern Shipping Funds I, LLC v. ICON Cap. Corp.*,
  921 F. Supp. 2d 94 (S.D.N.Y. 2013)...................................................................14

*Official Comm. of Unsecured Creditors of Arcapita Bank B.S.C.(c) v. Bahrain
Islamic Bank (In re Arcaptia Bank B.S.C.)*,
  628 B.R. 414 (Banrk. S.D.N.Y. 2021) .................................................................17

*Okimoto v. Yougjun Cai*,
  2015 WL 3404334 (S.D.N.Y. May 21, 2015) .........................................................7

*In re Owens Corning*,
  419 F.3d 195 (3d Cir. 2005)..................................................................................2

iii

*Pac. All. Asia Opportunity Fund L.P. v. Kwok (In re Kwok)*,
    2023 WL 186964 (Bankr. D. Conn. Jan. 13, 2023) ............................................................3, 4

*Park Place Ent. Corp. v. Transcon. Ins. Co.*,
    225 F. Supp. 2d 406 (S.D.N.Y. 2002)..........................................................................................6

*Pena v. Guzman*,
    2004 WL 253331 (S.D.N.Y. Feb. 11, 2004) ..............................................................................12

*Picone v. Shire PLC*,
    2017 WL 4873506 (D. Mass. Oct. 20, 2017)...............................................................................8

*Portanova v. Trump Taj Mahal Assocs.*,
    270 A.D.2d 757 (3d Dept. 2000) ..................................................................................................6

*Reliance Hosp. LLC v. 5251 S Julian Drive LLC*,
    2023 WL 2601255 (D. Ariz. Mar. 22, 2023) ...........................................................................3, 4

*Shimer v. Fugazy (In re Fugazy Express)*,
    114 B.R. 865 (Bankr. S.D.N.Y. 1990) .........................................................................................9

*Singer v. Xipto Inc.*,
    852 F. Supp. 2d 416 (S.D.N.Y. 2012)...................................................................................14, 16

*Wishnatzki & Nathel, Inc. v. H.P. Island–Wide, Inc.*,
    2000 WL 1610790 (S.D.N.Y. Oct. 26, 2000) ............................................................................13

*Zaki Kulaibee Establishment v. McFliker*,
    771 F.3d 1301 (11th Cir. 2014) ...................................................................................................9

**Statutes**

11 U.S.C. § 105..................................................................................................................................5

11 U.S.C. § 542(b) ..........................................................................................................................17

**Other Authorities**

Fed. R. Bankr. P. 7065......................................................................................................................1

Celsius' motion for a temporary restraining order ("TRO") is not barred by *Grupo Mexicano,* and should be granted, including for the reasons explained in more detail in Celsius' prior submissions, and no bond should be required.[1]

## I.    CELSIUS IS NOT REQUIRED TO POST A BOND

StakeHound argues in its September 1, 2023 objection ("Obj." [ECF No. 56]) that Celsius should be required to post a bond during the period of the TRO Celsius seeks.  StakeHound ignores Bankruptcy Rule 7065, which provides that debtors are not subject to Rule 65(c), and therefore are not required to post any form of security in connection with entry of a preliminary injunction or temporary restraining order, and does not cite a single case requiring a bond notwithstanding that rule.  *See* Fed. R. Bankr. P. 7065; *see* Obj. at 23-25.

Significantly, StakeHound's witness, Mr. Castellana, does not even *contend* much less *prove* that StakeHound may be harmed during the period of the TRO, which could be as short as 22 days.  While he claims that StakeHound incurs regular costs, he does not contend, much less prove, the amount of any alleged obligation, or that any bills will become due in the next 22 days, much less that the failure to make a payment in that period of time will have negative consequences either for the Subject Property or for StakeHound.  *Compare* Castellana Decl. ¶ 38.

That is unsurprising.  StakeHound specifically claims to be involved in only one "business" activity:  collecting rewards on Celsius' coins.  StakeHound claims it must pay a vendor to operate the nodes for those tokens, and apparently does so under a "contract," though StakeHound does not identify the contract rate, nor the lower rate that would apply "after discounts and rebates."  More to the point, StakeHound does not contend that any payment on

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in *Celsius' Supplemental Brief in further Support of Temporary Restraining Order and Preliminary Injunction* [ECF No. 54].

that contract is due to be paid in the next 22 days.  Why?  Perhaps because the contract was pre-paid, or perhaps it was paid quarterly or annually in arrears.  We do not know, because Castellana does not say.

Nor does StakeHound's counsel point to any *evidence* that any of the harms of counsel breathlessly warns in its brief will *ever* come to pass, much less between now and September 27, 2023.  StakeHound's demand for a bond should be denied accordingly.  *See, e.g., In re Caesars Ent. Operating Co., Inc.*, 561 B.R. 441, 457 (Bankr. N.D. Ill. 2016) (refusing to impose bond where requesting party had "not shown, or even attempted to show, that a preliminary injunction will damage them in any way"); *Lyondell Chem. Co. v. CenterPoint Energy Gas Servs. Inc. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 595 (Bankr. S.D.N.Y. 2009) (absent evidence the non-movant will suffer harm during the period of the injunction, there is no reason to "depart from the general rule" that a bond is unnecessary when a debtor in possession is granted preliminary injunctive relief).

## II.    THIS COURT HAS THE POWER TO ENTER A FREEZING INJUNCTION NOTWITHSTANDING *GRUPO MEXICANO*

StakeHound acknowledges that numerous courts within and outside this Circuit have held that *Grupo Mexicano* simply does not apply to bankruptcy courts.  Obj. at 3-4.  StakeHound tries to distinguish these cases by arguing that none involve "non-core" claims "that could be heard in a state or Article III court," and instead that all solely involve "a bankruptcy court exercising the core and inherent powers granted to it by the Bankruptcy Court."  Obj. at 4.  In fact, the cases cited by StakeHound feature a range of claims—including claims for breach of contract, turnover, unjust enrichment and equitable accounting—and nevertheless concluded that *Grupo Mexicano* is inapplicable to bankruptcy courts.  *See, e.g.*, *Adelphia Commc'n's Corp. v. Rigas*, 2003 WL 21297258, at *4 (S.D.N.Y. June 4, 2003); *In re Owens Corning*, 419 F.3d 195, 208 &

n.14 (3d Cir. 2005); *In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002); *In re Focus Media Inc.*, 387 F.3d 1077, 1085 (9th Cir. 2004); *EHT US1, Inc. v. EHT Asset Mgmt., LLC*, 2021 WL 3828556, at *1 (Bankr. D. Del. Aug. 27, 2021); *Pac. All. Asia Opportunity Fund L.P. v. Kwok (In re Kwok)*, 2023 WL 186964, at *20 (Bankr. D. Conn. Jan. 13, 2023); *Reliance Hosp. LLC v. 5251 S Julian Drive LLC*, 2023 WL 2601255, at *2 (D. Ariz. Mar. 22, 2023); *Gold v. Winget (In re NM Holdings Co., LLC)*, 407 B.R. 232, 271 (Bankr. E.D. Mich. 2009); *In re Columbia Sussex Corp., Inc.*, 2006 WL 305959, at *4 (E.D. Mo. Feb. 8, 2006);

Judge Gerber reached exactly the same conclusion when he entered a freezing injunction in *Soundview*, relying on claims for declaratory relief and accounting (under New York law) relating to a fund investment governed by written contracts. *Ball v. Soundview Composite Ltd. (In re Soundview Elite Ltd.)*, 543 B.R. 78, 83 (Bankr. S.D.N.Y. 2016) (finding that trustee's "main entitlements are to declaratory relief [and] an accounting"). The sole distinction StakeHound can muster is that in *Soundview*, Judge Gerber granted partial summary judgment in favor of the debtor on its breach of contract and accounting claims. In fact, Judge Gerber did not enter a "final order" on the Trustee's underlying claim, and made crystal clear that a TRO also would have been warranted *at the outset of the case*, long before entry of even partial summary judgment. According to Judge Gerber, only the defendant's promise not to dissipate assets at the beginning of the case "induced the court not to then enter a TRO." *Id*. at 12-25.

In any case, it is axiomatic that a party seeking a TRO or injunction need not obtain a judgment on the merits of its underlying claim to prevail on its motion. "The very purpose of an injunction is to give temporary relief based on a preliminary estimate of the strength of plaintiff's suit, *prior* to the resolution … of the factual disputes and difficulties presented by the case." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d

Cir. 2010) (emphasis added).  In fact, where, as here, the equities weigh decidedly in Celsius'

favor, even a mere showing that Celsius' claims present "a fair ground for litigation" is sufficient.

*Id*.  That showing is easily made on these facts.  It is *undisputed* that Celsius provided 96% of all

native ETH tokens, and 100% of all native MATIC and DOT tokens, in StakeHound's

possession.[2]  It is undisputed that StakeHound (or the security provider StakeHound hired) lost

60% of the ETH tokens Celsius provided.  Unlike in *Soundview*, it is *undisputed* that Celsius

demanded the return of all of its native tokens.  543 B.R. at 83 (disputing evidence that debtor

submitted request for redemption).

According to StakeHound, however, *Grupo Mexicano* must apply, because "to hold

otherwise would be to conclude that the injunctive powers of the federal bankruptcy courts are

greater than … the federal district courts."   Obj. at 7.  But that is exactly the conclusion reached

by the majority of federal courts considering the question.  *See, e.g.*, *Rigas*, 2003 WL 21297258,

at *4; *see also Owens Corning*, 419 F.3d at 208 n.14 (opining that, "had the company in *Grupo*

*Mexicano* been in bankruptcy, the bankruptcy court would have had the authority" to enter an

order freezing the defendant's assets in connection with contract claim for money damages); *In*

*re Dow Corning Corp.*, 280 F.3d at 658; *In re Focus Media Inc.*, 387 F.3d at 1085; *EHT*, 2021

WL 3828556, at *1; *In re Kwok*, 2023 WL 186964, at *20; *Reliance Hosp.*, 2023 WL 2601255,

at *2; *In re NM Holdings Co., LLC*, 407 B.R. at 271; *In re Columbia Sussex Corp.*, 2006 WL

305959, at *4.

*Grupo Mexicano* was *not* a bankruptcy case, and is a limiting decision that addressed

expressly, and solely, whether "in an action for money damages, a **United States District Court**

has the power to issue" a freezing injunction.  *Grupo Mexciano*, 527 U.S. at 310 (emphasis

---

[2] StakeHound claims Celsius has not done enough to prove that 100% of the MATIC and DOT in its
possession came from Celsius, but does not actually dispute the fact itself.

added).  The Court concluded that it did not because the equitable powers of district courts are

limited to those recognized "by the English Court of Chancery" at the time of the Judiciary Act

of 1789, which did not include the power to freeze a debtor's assets prior to entry of judgment on

the debt.  *Id*. at 330 (noting "the historical principle that before judgment (or its equivalent) an

unsecured creditor has no rights at law or in equity in the property of his debtor").  But

bankruptcy courts are not Article III courts and did not exist in 1789, and it follows that their

power is not so limited under the reasoning of *Grupo Mexicano*.

Moreover, Congress has granted authority to bankruptcy courts to issue injunctions that

the district courts lack, including under Section 105(a).  *See Grupo Mexicano*, 527 U.S. at 326

(recognizing that where court granted express statutory authority to grant freezing injunctions, it

may do so); *see also Adelphia,* 2003 WL 21297258, at \*4-5 (explaining that there is "no

substantial and material conflict ... between the bankruptcy court's power under 11 U.S.C. § 105

to issue a pre-judgment order freezing assets and the Supreme Court's holding in *Grupo

Mexicano*").  Entry of a Section 105(a) injunction under the circumstances of this case would be

in furtherance of "powers already expressed in the provisions of the Bankruptcy Code,"

including Sections 542(b) and (e).  In short, while Celsius has alleged viable equitable claims

(discussed below), even if it had not this Court would have the power to restrain StakeHound

from dissipating the Subject Property.

### III.    CELSIUS' EQUITABLE CLAIMS ARE WELL-PLED AND WOULD WARRANT ENTRY OF A FREEZING INJUNCTION EVEN IF *GRUPO MEXICANO* APPLIED

During the August 29, 2023 hearing, the Court advised that it was "not pushing back

because [it didn't] think [Celsius is] entitled to a TRO."  Rather the Court observed (without

deciding) that Celsius "probably [has] established [the] element" of insolvency[3] necessary to warrant a freezing injunction, and that "the question for me then is … have you pled the elements of equitable claims that would entitle you to injunctive relief?"  Hr'g Tr. at 32:20–23 (Aug. 29, 2023).  The answer to that question undoubtedly is "yes."

**A.  StakeHound's "Choice of Law" Arguments Are a Red Herring.**

StakeHound argues that Celsius' equitable claims must fail because Swiss law, rather than New York law, supposedly governs those claims.  But StakeHound does not even claim, much less seek to establish, a conflict between the two jurisdictions laws regarding Celsius' claims, Obj. *passim*, and its demand for application of Swiss law should be rejected on this ground alone. "If the party advocating" for application of another jurisdiction's laws "fails to demonstrate an actual conflict between New York and [the other jurisdiction's] laws, no choice of law analysis need be undertaken." *Park Place Ent. Corp. v. Transcon. Ins. Co.,* 225 F. Supp. 2d 406, 408-09 (S.D.N.Y. 2002) (presuming "Nevada law will resemble New York law" in the absence of evidence to the contrary) (citations omitted); *see also Bass v. World Wrestling Fed'n Ent., Inc.*, 129 F. Supp. 2d 491, 504 (E.D.N.Y. 2001) ("Because Defendants have not articulated a meaningful conflict between New York law and Connecticut law with respect to Plaintiff's state law claims, this court could apply New York law without further inquiry.") (citing *Portanova v. Trump Taj Mahal Assocs.*, 270 A.D.2d 757, 759–60 (3d Dept. 2000)).

If StakeHound had established a conflict between Swiss and New York law – and it has not – the putative agreements between the parties would not require application of Swiss law to

---

[3] StakeHound's complains that Celsius has not proven by a preponderance of the evidence that StakeHound is currently insolvent, but that is not the standard on a motion for a TRO.  Significantly, moreover, StakeHound does not deny that it is insolvent.  *Compare Soundview,* 543 B.R. at 99 (noting that defendant did not deny that redemption request was made, and rejecting defendant's "artful affidavit" and "efforts to exclude the Trustee's evidence" to argue that "the trustee has not proven her case").

Celsius' extra contractual claims.  The choice of law clauses, which provide only that "[t]his

agreement shall be construed in accordance with the laws of Switzerland," *see* SSA § 9; RSA

§ 9,[4] are "insufficiently broad to govern" extra-contractual claims, including "quasi-contractual

unjust enrichment" claims.  *Dart Brokerage Corp. v. Am. Commerce Ins. Co.*, 2013 WL 5966901,

at *2 (S.D.N.Y. Nov. 7, 2013) (clause providing that "Agency Agreement 'shall be interpreted

under the laws of the State of Ohio'" did not "encompass the entire relationship between the

contracting parties" and did not govern equitable and tort claims); *see also CUnet, LLC v. Quad

Partners, LLC*, 2017 WL 945937, at *6 (S.D.N.Y. Mar. 7, 2017) (clause providing that "[t]his

Agreement shall be governed by and construed in accordance with the laws of the State of

Nebraska" was too narrow to "extend to 'extra-contractual' claims such as quantum meruit"

because it did not "encompass the entire relationship between the parties").

Determining the law applicable to Celsius' extra-contractual claims would require

assessing which jurisdiction has the "greater interest" in adjudicating Celsius' claims.  *In re

Gaston & Snow,* 243 F.3d 599, 607-08 (2d Cir. 2001); *Allstate Ins. Co. v. N.J. Mfgs. Ins. Co.,* 81

N.Y.2d 219, 224-28 (1993).  But even if StakeHound had established the requisite conflict that

would justify a "conflicts analysis" (it has not), engaging in that fact intensive inquiry would be

premature on this pre-discovery footing.  *See, e.g., Morales v. Next Stop 2006, Inc.,* 2022 WL

15523370, at *2 (S.D.N.Y. Oct. 27, 2022) ("[B]ecause a choice of law analysis is fact intensive,

courts often decline to make a choice of law determination at the motion to dismiss stage.");

*Okimoto v. Yougjun Cai*, 2015 WL 3404334, at *3 (S.D.N.Y. May 21, 2015) (denying motion to

dismiss based on conflict between the laws of two jurisdictions because discovery was necessary

---

[4] The choice of law provision in the SSTC is not materially broader than in the SSA and RSA, but if it
were, it would be inapplicable.  *See* SSA § 1.1 ("In the event of any conflict or inconsistency between the terms and
conditions of this Agreement and any terms or conditions set forth in the StakeHound Services Terms and
Conditions, the terms and conditions set forth in this Agreement shall prevail"); *see also* RSA § 2.1 (same).

to determine which jurisdiction had the greater interest); *Picone v. Shire PLC*, 2017 WL
4873506, at *15 (D. Mass. Oct. 20, 2017) (refusing to dismiss claim based on choice of law
argument where plaintiff had no discovery).  For all of these reasons, Celsius' pleadings should
be analyzed under New York law for purposes of considering its motion for a TRO.[5]

### B.  StakeHound's Attacks on Celsius' Accounting Claim Fail.

The equitable claims alleged by Celsius, as in *Soundview* and *Adelphia-Rigas*, include a
demand for an accounting—"a classic basis for an asset-freezing order."  *Soundview* 543 B.R. at
122.  StakeHound argues that Celsius was required to prove the existence of a fiduciary or
confidential relationship between Celsius and StakeHound to prevail on its accounting claim, but
Judge Gerber rejected that exact argument in *Soundview*:   a defendant "cannot rely on a general
rule that no confidential or fiduciary relationship exists" between the parties to escape an
accounting. *Id*. at 123.  And even where the parties' relationship is completely "arms-length,"
the existence of "an account of a complicated character" is sufficient to sustain a claim for
accounting. *Id.*

StakeHound argues that the accounts at issue here are "not complicated" because some
transfers are "visible on the blockchain."  Obj. at 12.  Unfortunately, however, blockchain
transactions conceal far more than they reveal.  For example, while a transfer from one wallet
directly to another may be visible, the identity of the wallets' owner(s) is not.  Moreover, passing
assets through an "exchange" like Binance can render even wallet-to-wallet transfers obscure.
StakeHound appears to have "assigned" rewards to a variety of wallets in the past, including
relatively recently, though without an accounting Celsius only can speculate as to the actual

---

[5] StakeHound argues that Celsius "acknowledged that Swiss law governs" by submitting declarations from
a Swiss lawyer "concerning the substance of Swiss contract law."  Obj. at 9.  As discussed below, Celsius pleads
breach of contract claims and extra-contractual claims in the alternative, as is its right, and never has suggested that
Swiss law could apply to anything but the former.

ownership of any of the relevant wallets. *See* Trans. Decl. of Richard Man [ECF No. 44] ¶¶ 5, 10. And setting "visibility" aside, StakeHound has been holding Celsius' assets for a period of more than two years, apparently collecting "rewards" that entire time, based on rates of return that vary from coin-to-coin, and not just from day-to-day, but from moment-to-moment. Determining exactly what was earned on the coins during the relevant period, the value attributable to Celsius' tokens, and (potentially) the comparatively tiny amount associated with ETH contributed by other customers, will be at least as complex as the exercise required in connection with the *Soundview* investment account.

StakeHound complains that the authorities Judge Gerber relied on in connection with the *Soundview* accounting claims are old, and that they "do not square with more recent decisions." Obj. at 12. But "none [of the relevant authorities] has been overruled," and the "same principle has been articulated in courts in other jurisdictions very recently." *Soundview*, 543 B.R. at 123 n.235.[6] Moreover, the key case cited by Judge Gerber "has been relied on in this District for the broader principle that plainly emerges from it: 'The remedy of an accounting is available where special circumstances are present warranting equitable relief in the interests of justice.'" *Id.* at n.236 (citing *Shimer v. Fugazy (In re Fugazy Express),* 114 B.R. 865, 876 (Bankr. S.D.N.Y. 1990)) (Lifland, C.J.), *aff'd* 124 B.R. 426 (S.D.N.Y. 1991) (Duffy, J.), *appeal dismissed,* 982 F.2d 769 (2d Cir. 1992)).

As in *Soundview*, the defendant's refusal to return property to the debtor for the benefit of its creditors, despite due demand, and based on only the most threadbare putative justification (in

---

[6] *See also id.* ("Under Florida law, for example, to be entitled to an equitable accounting, 'a party must show either 1) *a sufficiently complicated transaction* and an inadequate remedy at law *or* (2) the existence of a fiduciary relationship.' *Zaki Kulaibee Establishment v. McFliker,* 771 F.3d 1301, 1310 & n. 21 (11th Cir. 2014) (emphasis added); *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.,* 2015 U.S. Dist. LEXIS 170093, 2015 WL 9269413, at *8 (M.D. Fla. Dec. 21, 2015) (same, quoting *Zaki Kulaibee*).") (emphases in original).

the case of the ETH) and ***no justification whatsoever*** (in the case of the MATIC and DOT) warrant the equitable relief sought.

Next, StakeHound argues that Celsius' claim for an accounting must fail because Celsius also alleges breach of contract. But exactly the same circumstance prevailed in *Soundview*, and it did not interfere with the debtor's claim for an accounting. Moreover, StakeHound acknowledges that StakeHound itself has contended that "the SSA is terminated." Obj. at 14. According to StakeHound, however, "any transactions thereafter" would be "expressly governed by the SSTC." Obj. at 14. But Celsius never agreed to be bound by the SSTC. Rather, Celsius agreed to the SSA, which purported to incorporate consistent terms of the SSTC by reference. To the extent the SSA terminated – as StakeHound claims – so too did any agreement among the parties concerning the terms of the SSTC. Indeed, according to StakeHound itself, after the SSA terminated, Celsius become just like "*any other user,*" with StakeHound's suspended platform as its only recourse for retrieving ETH. *See* Hurley Decl., Ex. E [ECF No. 35-5] at 4. While Celsius may have had the right "after the Termination of this Agreement" to sign onto the platform, agree to the "click wrap" SSCT and "use the services of StakeHound," StakeHound does not claim Celsius ever did so – in part because StakeHound shut down its platform almost two years before the SSA terminated. If StakeHound is correct concerning termination of the SSA, and given that Celsius could not have accessed the platform even if it wanted to, StakeHound's claim that Celsius somehow is bound by the SSCT is meritless.

### C. Celsius' Other Equitable Claims and Remedies Also Are Well-Pleaded.

In addition to its accounting claims, Celsius also pleads claims for unjust enrichment and imposition of a constructive trust, as well as the equitable remedies of disgorgement and rescission. *See* First Am. Comp. ¶¶ 93–97; 103–109; Prayer for Relief ¶¶ (h), (j). Again and

again, these types of equitable claims and remedies have been found sufficient to justify entry of a freezing injunction, even by courts that are subject to the limitations imposed by *Grupo Mexicano*. *Soundview*, 543 B.R. at 121-22 ("The fact that a plaintiff may *also* have valid claims for damages does not result in a forfeiture of the asset-freezing power"); *see also Rigas*, 2003 WL 21297258, at *5 (*Grupo* inapplicable where imposition of a constructive trust and accounting sought in addition to money damages); *Motorola Credit Corp. v. Uzan*, 202 F. Supp. 2d 239, 250 (S.D.N.Y. 2022), *remanded on other issues*, 332 F.3d 130 (2d Cir. 2003) (same where plaintiff sought a constructive trust and other equitable remedies in addition to money damages). Celsius too alleges equitable claims and seeks equitable relief, and a freezing order would be authorized "even if *Grupo Mexicano* applied to bankruptcy courts."

StakeHound does not dispute that Celsius adequately pleads the elements of a claim for unjust enrichment, including that StakeHound was enriched at Celsius' expense, and that it would be against equity and good conscience to permit the defendant to retain what is sought to be recovered. *See* Obj. at 14. While StakeHound argues that Celsius failed to allege a claim for constructive trust, it does so in exactly the way courts in this Circuit forbid, by seeking to rigidly and inflexibly define the circumstances in which a constructive trust claim is available. Obj. at 8-10, 20-22.

According to StakeHound, Celsius has not alleged a fiduciary or confidential relationship with StakeHound – one of the four supposed "elements" required for a constructive trust – and therefore cannot prevail on its claim. But the factors StakeHound cites are "guidelines," not requirements, and need not be present to sustain a claim for constructive trust, as the Second Circuit held when it reversed a district court's dismissal of constructive trust claims in *Golden Budha Corp. v. Canadian Land Co. of America, N.V.*, 931 F.2d 196 (2d Cir. 1991). The district

court in *Golden Budha* had "determined that three of the four necessary elements were lacking:

a confidential or fiduciary relationship, a promise, express or implied; and a transfer in reliance

on the promise." *Id.* at 202. As the Second Circuit held, however, while those factors may be

"useful" in some cases, the "constructive trust doctrine is not rigidly limited." *Id.* (citations and

internal quotations omitted). "In pleading as in proof, a constructive trust is a flexible device and

must not be bound by an 'unyielding formula.'" *Id.* (citation omitted). A plaintiff adequately

pleads the elements for a claim for the imposition of a constructive trust by alleging "that

defendants hold property they should not retain, in good conscience and equity, under the

circumstances revealed." *Id.* Celsius easily meets that standard here.

Next, StakeHound argues that *Pena v. Guzman*, 2004 WL 253331 (S.D.N.Y. Feb. 11,

2004), limits constructive trust claims to circumstances where it appears that "money damages"

may be "inadequate to fully compensate for the damages" the plaintiff suffered. Obj. at 14-15.

But that is exactly what Celsius contends here. StakeHound has liabilities to Celsius for property

worth in excess of $160 million or more, but currently holds property worth only approximately

$90 million. Even if a legal claim is available for that property, the already inadequate remedy

will be rendered still less "adequate" absent imposition of a constructive trust and freezing order

preventing StakeHound from dissipating the Subject Assets. This is exactly the type of

circumstance that warrants an exercise of the Court's equitable authority.

Celsius also is entitled to equitable remedies that support entry of a freezing order. For

example, while Celsius' alternative claim for breach of contract is itself a legal claim, the

primary remedy for under Swiss law is an award of specific performance, an equitable doctrine

that supports a freezing injunction notwithstanding *Grupo Mexicano*. In *Arch Ins. Co. v. Sierra

Equipment Rental, Inc.*, 2012 WL 5897327, at *4 (E.D. Cal. Nov. 13, 2012), the plaintiff alleged

both breach of contract and promissory estoppel, and sought specific performance, an

"acknowledged ground of equity jurisdiction" which authorized the district court to enter an

injunction freezing assets despite *Grupo Mexicano*.  StakeHound offers no answer to Celsius'

entitlement to specific performance, nor to *Arch Insurance*.  Obj. *passim*.  StakeHound also

tacitly concedes that Celsius' request for the equitable remedy of replevin would warrant a

freezing order, but argues that Celsius fails to allege it has a "possessory right" to the Subject

Property.  Obj. at 19 n.8.  In reality, Celsius alleges again and again that the Subject Property is

Celsius' property, should have been turned over to Celsius long ago, and is being "wrongfully

withheld" by StakeHound.  *See, e.g.*, FAC ¶¶ 12, 44, 60, 64, 78, 86, 111.[7]

### D. Celsius' Legal Claims Do Not Limit the Court's Power to Grant a Freezing Injunction in Connection with Celsius' Equitable Claims.

StakeHound argues incorrectly that Celsius' motion for a TRO must be denied because

Celsius alleges *both* legal and equitable claims.  In fact, courts have held uniformly that where a

plaintiff seeks not only money damages, but also equitable relief, "a court retains it[s] equitable

power to freeze assets.  *See, e.g.*, *Adelphia,* 2003 WL 21297258, at *5; Motorola, 202 F. Supp. 2d

at 250 (*Grupo Mexicano* did not bar plaintiffs' request for a preliminary injunction since, in

addition to asserting money damages, plaintiffs there also asserted a demand for a constructive

trust, and other equitable remedies); *Wishnatzki & Nathel, Inc. v. H.P. Island–Wide, Inc.*, 2000

WL 1610790, at *1 (S.D.N.Y. Oct. 26, 2000) (Martin, J.) ("[C]ourts since *Grupo Mexicano* have

found that where plaintiffs seek both equitable and legal relief in relation to specific funds, a

court retains it[s] equitable power to freeze assets.").

---

[7] As discussed in detail elsewhere herein, including below, StakeHound claims the SSA was terminated, and no longer governs any right Celsius may have to recover its tokens.  Celsius' alternative claim for conversion based on StakeHound's refusal to return to Celsius the assets it has demanded therefore is not duplicative of its breach of contract claims.

Nor does Celsius' claim for breach of contract in any way impede its right to plead, in the alternative, unjust enrichment and other equitable claims. "While a party generally may not simultaneously *recover* upon a breach of contract and unjust enrichment claim arising from the same facts, it is still permissible to plead such claims as alternative theories." *Singer v. Xipto Inc.*, 852 F. Supp. 2d 416, 426 (S.D.N.Y. 2012); *see also Bice v. Robb*, 2010 WL 11586924, at *5 (S.D.N.Y. Jan 15, 2010) ("An unjust enrichment claim may be pled in the alternative with a claim for breach of contract."); *Gate Techs. LLC v. Delphix Cap. Markets, LLC*, 2013 WL 3455484, at *5 (S.D.N.Y. July 9, 2013) (defendant's motion to dismiss unjust enrichment claim "on the ground that it is duplicative of Plaintiff's contract claim … ignores the reality of pleadings in the alternative—a familiar practice in this Circuit"). Indeed, even on summary judgment, courts in this circuit have held that a plaintiff can continue to raise quasi-contract claims alongside breach of contract claims. *E.g., Fantozzi v. Axsys Techs., Inc.*, 2008 WL 4866054, at *10-11 (S.D.N.Y. Nov. 6, 2008).

StakeHound cites *Northern Shipping* for the proposition that Celsius' breach of contract claim is inconsistent with Celsius' constructive trust claim. Again, StakeHound ignores that Rule 8 permits parties to plead claims in the alternative. Moreover, in *Northern Shipping*, the constructive trust claim was "merely duplicative of the breach of contract claim," and did not allege any "distinct harm giving rise to a separate claim for a constructive trust." *Northern Shipping Funds I, LLC v. ICON Cap. Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013). Here, in contrast, Celsius specifically alleges circumstances demonstrating inequitable conduct by StakeHound, including through its attempt to reap a massive windfall as the result of the loss by StakeHound or its agent of other Celsius' property worth in excess of $70 million.

Moreover, StakeHound claims that the SSA terminated on April 12, 2023, and that any recovery of native tokens by Celsius must be accomplished, if at all, *outside of the bounds of the contract*. For example, in an April 11, 2023 letter, StakeHound asserted that the SSA "is at an end," and specifically claimed that Celsius' "right to delivery [of tokens] under the Staking Service Agreement" had "cease[d]." *See* Hurley Decl., Ex. E [ECF No. 35-5] at 4. StakeHound went on to claim that Celsius "is now entitled, *as with any other user*," to exchange stTokens for native Tokens "through StakeHound's platform in accordance with the StakeHound Terms and Conditions." *Id.*; *see also* SSA ¶ 1.8 ("For the sake of clarity, the Termination of this Agreement *does not prevent* Celsius to use the services of StakeHound.") (emphasis added).

Since no other users *ever* were party to the SSA, StakeHound's assertion only can mean that Celsius' rights (if any, see below) to recover tokens must exist *independent* of the SSA. Indeed, StakeHound further contends that it no longer has any contractual obligation to "deliver up" native tokens; rather, Celsius merely can "request an exchange" because, post termination of the SSA, "there is no right of redemption." Notably, StakeHound offers no evidence to suggest that Celsius ever agreed to be bound by the SSTC, except pursuant to the SSA, which StakeHound claims was terminated. Nor could Celsius bind itself to the "click wrap" SSTC even if it wanted to, since StakeHound suspended the platform almost two years before it claims the SSA terminated.[8]

The Court need not, and should not, resolve on this motion whether StakeHound is correct that Celsius' rights to recover ETH must be found outside of the contract. But neither can

---

[8] In addition, StakeHound has said it may not permit Celsius to access its property even on an extra-contractual basis, and even assuming the platform ever is again available. For example, StakeHound indicated that, before any exchange with Celsius would be honored, StakeHound would require "evidence that [Celsius] has full unencumbered legal and beneficial rights to exchange whatever stETH it controls." StakeHound warned that "[i]f an exchange of stETH were to fall within the … scope of the SEC's current views as 'securities' might be considered an investment contract … [and] at a high level such contracts may be void under US law."

StakeHound defeat Celsius' equitable claims as duplicative to its breach of contract claims

where, as here, there is a "dispute as to the existence of a contract or where the contract does not

cover the dispute in issue." *Kottler v. Deutsche Bank AG,* 607 F. Supp. 2d 447, 468 (S.D.N.Y.

2009).  In such circumstances, a court "should not dismiss a claim of unjust enrichment at the

motion-to-dismiss stage."  *Id.*  (refusing to dismiss unjust enrichment claim where a dispute

existed concerning the continuing vitality of agreement); *see also, e.g.*, *Singer*, 852 F. Supp. 2d at

426.

### E.  Celsius' Turnover Claims Also Justify Entry of a Freezing Injunction.

StakeHound acknowledges that turnover claims ordinarily are equitable in nature and

"justify equitable remedies," but argues that Celsius' turnover claims are not, and do not.  Obj. at

17-18.  According to StakeHound, Section 542 is not available where the estate's claim to

property is "legitimately debatable."  *Id.*

The MATIC and DOT would constitute estate property subject to a turnover even

accepting this formulation.  StakeHound has all but admitted it has been holding the MATIC and

DOT "hostage" for months in order to gain leverage against Celsius in this litigation.  Certainly,

StakeHound never before has offered ***any*** excuse for refusing to turn over the MATIC and DOT,

and the excuse it now offers is not remotely "legitimate."  According to StakeHound, its retention

of the MATIC and DOT is justified because (i) StakeHound supposedly "holds absolute

ownership of the MATIC and the DOT," and (ii) "contractual conditions" to the return of

Celsius' tokens allegedly have "not been satisfied."  Obj. at 7, n.4.

StakeHound does not bother to identify the "conditions" that supposedly have "not been

satisfied," because they do not exist.  StakeHound certainly was not allowed to "suspend" the

platform with respect to MATIC and DOT—not even temporarily.  Indeed, the RSA specifically

provides that Celsius' right to exchange stMATIC and stDOT "into Native Tokens" ***shall be
available to [Celsius] at any time (subject to applicable processing time of such exchange)***,
notwithstanding any allegedly contrary term of the SSCT.  RSA § 2.7 (emphasis added); *see also
id.* § 2.1 (providing that in the event of "any conflict or inconsistency" between the RSA and the
SSTC, "the terms and conditions set forth in [the RSA] shall prevail).  Nor has StakeHound ever
contended that any MATIC or DOT is "missing," or otherwise "unavailable" for return to Celsius
(the pretext it offers for refusing to return Celsius' ETH).  Finally, it is undisputed that Celsius
made due demand for return of the MATIC and DOT, and tendered its stTokens on May 25,
2023—more than three months ago.

StakeHound's reliance on phantom unsatisfied "conditions" to dispute Celsius' rights to
the MATIC and DOT cannot undermine Celsius' rights to turnover of that property.  Section
542(b) provides that "an entity that owes a debt that is property of the estate and that is matured,
payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee."
11 U.S.C. § 542(b). "Debts owing to the debtor under a contract constitute property of the estate
for purposes of Section 542(b)," provided the contracting party is "unconditionally liable" under
the contract's terms, as StakeHound is here with respect to the MATIC and the DOT.  *See
Official Comm. of Unsecured Creditors of Arcapita Bank B.S.C.(c) v. Bahrain Islamic Bank (In
re Arcaptia Bank B.S.C.)*, 628 B.R. 414, 478 (Banrk. S.D.N.Y. 2021).  As to whether the debts
are matured, "matured refers to debts that are presently payable, as opposed to those that are
contingent and become payable only upon the occurrence of a certain act or event." Id. (citation
and internal quotations omitted).  StakeHound's obligation to return the MATIC and DOT easily

17

satisfies these standards, constitutes property of the estate, and "justif[ies] equitable remedies." *Id*.; Obj. at 18.[9]

### F. The Court Can Enter a Freezing Injunction Under Section 105(a).

Finally, and in addition, a bankruptcy court can enter a freezing injunction pursuant to Section 105(a) in the absence of any equitable claims, to the extent the injunction will "facilitate[] a reorganization plan." *Soundview*, 543 B.R. at 118. The standard under Section 105(a) asks whether there is a likelihood of a successful reorganization, and eliminates the need to establish "the usual grounds for injunctive relief, such as irreparable injury." *Id*. at 119 & n.214. "Courts do not demand certainty of a successful reorganization; they expect only reasonable prospects of one." *Id*. at 119 (granting 105(a) injunction despite fact that any plan would "almost certainly be a liquidating plan"). That standard is easily met here, where requisite disclosures have been made, a plan proposed, and confirmation scheduled for just a few weeks hence, and where a TRO is necessary to "preserve or protect the debtor's estate." *See, e.g., In re Lyondell Chem. Co.*, 402 B.R. at 590 ("[W]here debtors are proceeding on track and have met the challenges they have faced so far, that is sufficient" to satisfy "[t]he 'Likelihood of Successful Reorganization' factor.'").

---

[9] Unlike the MATIC and DOT, StakeHound purports to justify withholding the 25,000 Celsius ETH (plus rewards) that StakeHound and Fireblocks did not manage to lose. But StakeHound purports to do so based on the catastrophic loss by StakeHound and/or its agent Fireblocks in May 2021 of another 35,000 Celsius ETH (plus rewards), arguing that, as a consequence, StakeHound gets to keep virtually all of the tokens Celsius supplied to it, resulting in a massive windfall for StakeHound. As discussed elsewhere, StakeHound's "defense" regarding the ETH borders on the frivolous and should not prevent the Court from concluding it too represents an absolute and matured debt to subject to turnover under Section 542.

18

## **<u>CONCLUSION</u>**

For the reasons described in this reply brief and Celsius' prior submissions, Celsius

respectfully asks the Court to grant a TRO and preliminary injunction restraining and enjoining

StakeHound from dissipating any Subject Property without requiring a bond.

Dated:          September 5, 2023
                New York, New York


                                        AKIN GUMP STRAUSS HAUER & FELD LLP

                                        By:   */s/ Mitchell P. Hurley*
                                              Mitchell P. Hurley
                                              Dean L. Chapman Jr.
                                              One Bryant Park
                                              New York, New York 10036
                                              Telephone: (212) 872-1000
                                              Facsimile: (212) 872-1002
                                              mhurley@akingump.com
                                              dchapman@akingump.com

                                              Elizabeth D. Scott (admitted *pro hac vice*)
                                              Nicholas R. Lombardi (admitted *pro hac vice*)
                                              2300 N. Field Street, Suite 1800
                                              Dallas, TX 75201
                                              Telephone: (214) 969-2800
                                              Facsimile: (214) 969-4343
                                              edscott@akingump.com
                                              nlombardi@akingump.com

                                              *Special Litigation Counsel for Debtors and*
                                              *Plaintiff Celsius Network Limited*