Page 1



1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 22-10964-mg

4    Adv. Case No. 23-01138-mg

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    CELSIUS NETWORK LLC,

9

10           Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   CELSIUS NETWORK LIMITED,

13               Plaintiff,

14          v.

15   STAKEHOUND SA,

16               Defendant.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19               United States Bankruptcy Court

20               One Bowling Green

21               New York, NY  10004

22

23               August 22, 2023

24               11:13 AM

25

Page 2

```
 1    B E F O R E :

 2    HON MARTIN GLENN

 3    U.S. BANKRUPTCY JUDGE

 4

 5    ECRO:   UNKNOWN

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    HEARING re Adversary proceeding: 23-01138-mg Celsius Network

2    Limited v. StakeHound SA Scheduling Conference Held Using

3    Zoom for Government. (Doc ## 27, 28)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 4

```
1    A P P E A R A N C E S :

2

3    AKIN GUMP STRAUSS HAUER FELD, LLP

4         Special Counsel for the Plaintiff,

5         Celsius Network Limited

6         One Bryant Park

7         New York, NY 10036

8

9    BY:  MITCHELL HURLEY

10        ELIZABETH SCOTT

11

12   LOCKE LORD LLP

13        Attorneys for the Defendant, StakeHound

14        Brookfield Place, 200 Vesey Street

15        20th Floor

16        New York, NY 10281

17

18   BY:  MARY STEPHANIE WICKOUSKI

19        SEAN ANDREW FEENER

20

21   ALSO PRESENT TELEPHONICALLY:

22   DEAN CHAPMAN

23   TAYLOR HARRISON

24   NICHOLAS LOMBARDI

25   MASON PALISSERY
```

1    JONATHAN RANDLES

2    MICHAEL STANLEY

3    VINCE SULLIVAN

4    VICTOR UBIERNA DE LAS HERAS

5    KAILA ZAHARIS

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                 P R O C E E D I N G S

2              CLERK:  All right.  Starting the August 22nd, 2023

3     at 11:15 a.m. calendar, calling Celsius Network Limited v.

4     StakeHound SA, Case No. 23-1138.  If we could have counsel

5     for plaintiffs unmute and give their appearances, please.

6              MR. HURLEY:  Good morning.  Mitch Hurley with Akin

7     Gump on behalf of Celsius and Celsius' Special Litigation

8     Counsel.

9              CLERK:  All right, thank you.  Do we have anyone

10    else for the plaintiffs?  Ms. Scott, are you -- or for the

11    defendants, just unmute one at a time and please give your

12    appearances.

13             MS. SCOTT:  Good morning.  Elizabeth Scott from

14    Akin Gump also special litigation counsel to the Debtors.

15             CLERK:  All right.  Thank you.  Whoever would like

16    to give their appearance.  Ms. Wickouski?

17             MS. WICKOUSKI:  Good morning, Stephanie Wickouski

18    from Locke Lord on behalf of the defendant StakeHound.

19             CLERK:  All right, thank you.  Is it Mr. Feener?

20    Anyone else?  Yeah.

21             MR. FEENER:  Sean Feener on behalf of the

22    defendant from Locke Lord.

23             CLERK:  Okay.  Thank you.  Any additional parties

24    that are speaking on the record this morning and have not

25    given their appearance yet?  All right.

Page 7

1          MR. HURLEY:  Deanna, can I just address one

2     housekeeping issue?  I should probably raise it with the

3     judge, too.

4          CLERK:  Sure.  Do you want it on the record or

5     not?

6          MR. HURLEY:  Well, I'll just tell you first and I

7     guess after we go on, I'll tell the judge, too.  It's just

8     related to the Zoom connection.  So I'm dialed --

9          THE COURT:  I'm in -- yeah, thank you.  Okay.  so

10    I'm in receipt of the letters from both Ms. Wickouski and

11    Mr. Hurley regarding scheduling and other issues and Mr.

12    Hurley, let me ask you first, any change since those letters

13    were written?

14         MR. HURLEY:  No, Your Honor.

15         THE COURT:  Okay.  Ms. Wickouski?

16         MS. WICKOUSKI:  No, Your Honor.

17         THE COURT:  Okay.  So let me raise a couple of

18    concerns I have and then I'm just going to give you a

19    schedule.  So the -- you know, Mr. Hurley, you raised the

20    issue that StakeHound has with the term revoked or -- it

21    will no longer agree to freeze its assets as of today.  And

22    so you raise that concern.  What you didn't address and I do

23    specifically want to ask, are you seeking a TRO?  I mean,

24    you don't have -- you have not filed papers for a TRO at

25    this point.  You've asked to make a preliminary injunction

Page 8

1    motion and I'll certainly prepare to do that.  But are you

2    also going to seek a TRO?

3              MR. HURLEY:  Yes, Your Honor, to the extent it's

4    required.  We didn't want to file it until we saw Your Honor

5    again, in light of the communication we got from the Court

6    on Friday, but we are prepared to proceed with that and

7    again, absent agreement, I think that it's necessary given

8    that.  And just to be clear, my understanding from Ms.

9    Wickouski is that the agreement expires at the end of today.

10   Just to be --

11             THE COURT:  Okay.

12             MR. HURLEY:  -- clear on that front.  But yeah.

13   Yeah.  The answer is yes, Your Honor.  With Your Honor's

14   permission, we would propose to do that, again provided we

15   can't reach some kind of an agreement.  Which to date,

16   obviously we have been unable to do it.

17             THE COURT:  Yeah.  So let me -- I mean, look, you

18   either agree or you don't.  If you don't, the issue is then

19   what's the Court going -- what are the parties, is Celsius,

20   is CNL going to seek further relief from the Court.  Let me

21   just say that with respect to the scheduling, I'm prepared

22   to enter a scheduling order as follows, that on or before

23   August 25th StakeHound shall file the following motions and

24   supporting briefs.  I mean, you don't have to write this

25   down verbatim.  I've got a draft order already, Ms.

Page 9

1   Wickouski, but essentially I'm going to permit you to file a

2   motion, a brief not to exceed 25 pages.  The pages limit

3   does not apply to supporting evidence or the declarations or

4   affidavits.  They don't -- page limit doesn't account.

5   Requesting the Court to lift or otherwise modify the

6   automatic stay or abstain from exercising jurisdiction on

7   international comity grounds and compel the parties to

8   submit to the Swiss arbitration.  I'm shortening it a little

9   bit.

10             Second, it certainly sounds that you want to file

11   a motion to dismiss for lack of personal jurisdiction and if

12   you want to do that, the same date is going to apply, 5 p.m.

13   August 25th.  Motion to dismiss brief not to exceed 20

14   pages, page limit doesn't apply to any supporting evidence.

15   Okay.  On or before August 25th, CNL shall file a motion

16   seeking a preliminary injunction, brief not to exceed 25

17   pages, page limit doesn't apply to supporting evidence.

18   Opposition briefs on or before September 8th Celsius shall

19   file and serve a response to the motion to compel, brief not

20   to exceed 25 pages.  Page limit doesn't apply to supporting

21   evidence.

22             And also a response to the motion to dismiss that

23   same date, brief not to exceed 20 pages.  Page limit doesn't

24   apply to supporting evidence.  And StakeHound shall file a

25   response to the preliminary injunction motion, brief not to

1    exceed 25 pages, page limit doesn't apply to supporting

2    evidence.  And then finally, replies on or before September

3    25th.  StakeHound shall file or reply in further support of

4    the motion to compel and motion to dismiss, each brief not

5    to exceed 10 pages, page limit doesn't apply to supporting

6    evidence.

7            Celsius shall file a further reply in further

8    support of preliminary injunction motion, brief not to

9    exceed 10 pages.  Page limit doesn't apply to supporting

10   evidence.

11           Hearing.  The Court will hold a hybrid hearing on

12   the motions on September 27th at 9 a.m.  Counsel for

13   StakeHound and Celsius must appear in person.  The hearing

14   will be an evidentiary hearing.  Declarants must be

15   available for cross examination.  Counsel shall confer and

16   seek to agree on which witnesses shall appear for cross

17   examination in Court and which may appear by Zoom.  If they

18   can't agree, counsel should contact the Court, I'm thinking

19   by September 20th I'll resolve that.

20           Then the last thing and I'm still playing with

21   this language and I'll explain in a minute, only parties in

22   interest or their attorneys of record may attend the hearing

23   on Zoom.  (All parties in interest or attorneys of record

24   must register in advance to attend the hearing on Zoom and

25   will be required to certify under oath that they are

Page 11

1    appearing in those capacities.  The public may only attend

2    the hearing in the courthouse.  This change in practice

3    regarding evidentiary hearings reflects the policies of the

4    Judicial Conference of the United States in effect on the

5    date of the hearing.)

6            The world changes for Zoom on September 21st.  I

7    don't know whether anybody is going to want to -- you know,

8    there's been obviously lots of interest for Celsius

9    hearings, business press and others.  They can't attend

10   evidential hearings on Zoom.  They can show up in the

11   courthouse, but they can't -- anyway.  I mean, the gist of

12   this is, you know, I'm -- and I know you disagree to how

13   many motions you'd have to file, Ms. Wickouski.

14           Assuming that you are, you know, you are going to

15   move to dismiss for lack of personal jurisdiction, it's got

16   to be a standalone motion.  So that's the schedule that I've

17   come up with.  Again, that doesn't address the issue of a

18   TRO.  Certainly, Mr. Hurley, the pleadings to date support

19   Celsius' contention that StakeHound violated the automatic

20   stay, but that's just on the face of the pleadings.  They

21   can certainly contest that brief against -- you know, argue

22   against it.

23           I have a separate, something separate that I'm

24   going to file.  It says at the urging of the Court, the

25   party has tried unsuccessfully to reach a stipulated

Page 12

1    scheduling order to brief the issue whether the claims are

2    arbitable.  They also agreed on a partial freeze of assets

3    by StakeHound to protect Celsius' claim that StakeHound is

4    improperly holding and refuses to return Celsius' assets.

5    StakeHound no longer has an operating business.  Celsius

6    contends that its assets face a risk of dissipation if no

7    restraint on assets is imposed, at least pending decision

8    whether to compel arbitration.

9            Assuming that all disputed issues between the

10   parties are arbitable, a Court-ordered freeze can be

11   maintained in place until the arbitration proceeds and a

12   request for protective measures can be determined by the

13   arbitrator.  You know, I go on, negotiations of an agreed

14   motion and briefing schedule are broken down.  StakeHound

15   also refuses to continue a negotiated freeze of assets

16   beyond April -- August 22.

17           You know, if you're going to seek a TRO, you tell

18   me when you're going to file your papers.  I'll have an

19   emergency hearing on it, but the -- you know, I'm scheduling

20   the preliminary injunction hearing for September 27th.  So

21   you tell me where we are.  I mean, I know Ms. Wickouski

22   didn't want to have to file so many long briefs, but they're

23   separate issues.  I'd be happy, Ms. Wickouski, if you filed

24   200 briefs.  These are page limits.  You know, I frequently

25   tell people, less is more when it comes to briefing, so --

1              MS. WICKOUSKI:  Your Honor, may I address one

2      issue --

3              THE COURT:  Yeah, sure.

4              MS. WICKOUSKI:  Very serious issues that I feel

5      really need to be rebutted.  And with respect, Mr. Hurley

6      misrepresented our position with respect to the extension of

7      the freeze.  And this is made abundantly clear by the last

8      paragraph of my letter that was filed with ECF and submitted

9      --

10             THE COURT:  Yeah, I have it in front of me.

11             MS. WICKOUSKI:  And we propose and this is our

12     position, is that the temporary freeze that is in place

13     right now under the one-week stipulation which has now

14     turned into a two-week stipulation will continue and we will

15     abide by it until there's a superseding order of the Court.

16     We have asked that that superseding order, at least with

17     respect to the freeze, be on the terms that we submitted,

18     which is basically a blanket freeze of all assets of

19     StakeHound with some carveouts, primarily for legal fees.

20             And it would be, I think frankly it's unseemly and

21     overreaching for the plaintiff to demand to escalate the

22     litigation including a TRO when we're agreeing to a freeze,

23     but we need assets -- access to a small fraction of assets

24     to be able to fund legal fees.

25             THE COURT:  May I ask you this?  I think -- let me

Page 14

1    -- Mr. Hurley's letter.  Bear with me.  I'm not finding it

2    now.  Mr. Hurley, what did you say, 90 or 95 percent of

3    StakeHound's assets, you believe, are your -- are Celsius'?

4              MR. HURLEY:  Well, it's more than that, Your

5    Honor.  It's -- they -- so actually in the arbitration,

6    StakeHound itself alleges that of the ETH, just the ETH,

7    that 96 percent is contributed by Celsius.  The

8    (indiscernible), we believe 100 percent of the

9    (indiscernible) in their possession is contributed by us of

10   course those are the assets where they haven't identified

11   and excused --

12             THE COURT:  I have -- not I see it in your letter.

13   Okay.  I see the paragraph.  But how much -- what's the

14   proximate dollar amount of StakeHound assets that are not

15   alleged to be Celsius' assets?

16             MR. HURLEY:  If that's directed to me, I...

17             THE COURT:  Well, for either of you.

18             MS. WICKOUSKI:  And, Your Honor, I can't answer

19   that question precisely.  However, I do have an issue with

20   counsel testifying.

21             THE COURT:  Ms. Wickouski, he's not testifying.

22   This is not an evidentiary hearing.  If and when we have an

23   evidentiary hearing you each can put on your proof.  Can you

24   tell me, Ms. Wickouski, how much of StakeHound's assets do

25   you believe are free of any claim by Celsius?

1              MS. WICKOUSKI:  Well, we believe -- and I don't

2      have a dollar amount for this -- but we believe that the

3      rewards that are being claimed are not -- that there's no

4      ostensible claim, even under Celsius' theory.

5              THE COURT:  Here's what I'm trying to get; if you

6      can't work this out longer term, I'll set it down for --

7      I've given you the schedule on a preliminary injunction.

8      The issue is how do we get from now until then?  I don't

9      have a TRO motion.  There's no competent evidence in front

10     of me.  I'm not going to issue a TRO today -- full stop.

11             But what I'm trying to explore with you both is --

12     and I don't know whether you've talked about this... I'm not

13     saying that Celsius is going to get a TRO, but if you can

14     each agree for these purposes, not necessarily for purposes

15     of a preliminary injunction hearing, if you represent that

16     StakeHound's non-Celsius assets are approximately X dollars,

17     will that be sufficient to cover legal fees until you get to

18     the September 27th hearing?

19             MR. HURLEY:  I think I understand the question,

20     Your Honor, is there were assets that Celsius doesn't

21     contend that it contributed to StakeHound.

22             THE COURT:  Right.

23             MR. HURLEY:  And the value of the assets that

24     Celsius doesn't contend it contributed to StakeHound.  I

25     understand.  I guess would be in the couple of million

1   dollar range I think.  That's speculating I guess to some

2   degree on my part.  We do have...

3           THE COURT:  Does that get you to a hearing on --

4   you can't resolve it fully.  Let me say one other thing

5   before you go on.  And I read you something quickly about

6   this.  I believe if this is arbitrable -- I'm not saying it

7   is, I don't know, you haven't briefed it or not -- I think

8   they have -- I read the contract.  It looked to me like a

9   broad form arbitration clause.  So because I've done this

10  before, I can -- I'm quite comfortable, I have the authority

11  to issue a preliminary injunction to preserve assets pending

12  -- arbitrators have the authority, unless you convince me

13  that the Swiss arbitration center doesn't provide this

14  authority, they have the authority to issue protective

15  measures.  And so what I would say is, okay, if the disputes

16  are arbitrable, I might be persuaded to grant a preliminary

17  injunction that freezes assets to some defined amount until

18  the arbitration.  And then the arbitrator will decide.  The

19  arbitrator is going to decide whether there ought to be

20  protective measures or not.  Okay.

21          What I view my goal, if it's arbitrable -- I

22  haven't reached -- you know, you haven't briefed it yet.  If

23  it's arbitrable, my goal would be protect the assets until

24  the arbitrator decides what if any protective measures to

25  impose.  That's if it's arbitrable.  You know, you believe

Page 17

1    it's arbitrable, Ms. Wickouski, Mr. Hurley says no.  You

2    know.

3            Look, my schedule is really tight.  Okay?  These

4    dates that I've given you, I think if -- the hearing date is

5    pretty firm from my standpoint.  If the two of you want to

6    adjust somewhat the briefing schedule and you agree on it, I

7    am open to that.  We're not going to go back and forth.

8    Okay?  I'll enter this order with a schedule and I'll add a

9    sentence that says, you know, something about letting the

10   two of you -- if the two of you agree on a modification of

11   the briefing schedule as long as I have -- the one thing I

12   always insist on, I have everything I need sufficiently in

13   advance.  If the two of you want to work -- and maybe you

14   can settle the whole dispute in the meantime rather than

15   spending all your time writing motions in the next few days.

16           MR. HURLEY:  May I make a suggestion on the TRO,

17   Your Honor?

18           THE COURT:  Sure.

19           MR. HURLEY:  So if Ms. Wickouski can commit to say

20   another day or two of honoring the current terms -- and I'm

21   not sure exactly what she said a moment before.  Maybe she

22   is suggesting she already has made that commitment, and so I

23   didn't understand it that way.  But if she can commit to

24   that for another couple of days, and let's say you give us a

25   hearing date on the TRO for maybe, you know, tomorrow or

1    Thursday or whenever is convenient for Your Honor --

2              THE COURT:  I should add to this.  I am on a train

3    to Washington DC at 3:00 today.  That's why we're having

4    this hearing right now.

5              MR. HURLEY:  Okay.

6              THE COURT:  The Federal Judicial Center has a

7    conference for chief judges of district bankruptcy courts.

8    I will be there until Friday afternoon.  If we had to have a

9    TRO, you'll be doing it in the evening or very early morning

10   before I'm in the sessions for chief judges.  So it's not

11   like I'm going to be sitting here at my desk.  But if I have

12   to have a TRO hearing, we'll have a TRO hearing.  It may not

13   be the most convenient time of the day for either of you,

14   but you'll get it.  Okay?  I'm hoping you can work it out.

15             MR. HURLEY:  Yeah.  That's what I was going to

16   suggest.  Is if we have a date for a hearing and if it's

17   maybe Friday afternoon if Ms. Wickouski is --

18             THE COURT:  It's not going to be Friday afternoon.

19   I'm going to be on a train on the way back to New York on

20   Friday afternoon.  Okay.

21             MR. HURLEY:  I should say whenever is convenient

22   for Your Honor.  And then I promise I will immediately get

23   on the phone with Ms. Wickouski and see if we can avoid

24   having to have that TRO hearing.  Perhaps there is a way for

25   us to reach agreement in advance.  But I think it makes

1   sense to have it on the calendar so that if we can't, then

2   we can just proceed with the submission.

3           THE COURT:  When are you going go -- look, proceed

4   with submission.  I've got to read papers.  Okay?  And I'm

5   going to be reading papers while I'm at meetings that I have

6   to attend.  I'll do it.

7           MR. HURLEY:  We can certainly submit the papers as

8   soon as tomorrow if that is soon enough.

9           THE COURT:  Yes.

10          MR. HURLEY:  And, you know, it would of course be

11  very helpful if Ms. Wickouski could confirm that for the

12  next couple of days that StakeHound at least is going to

13  continue to honor the current agreement.  Again, she may

14  have already said that, and I apologize if she did.  And I'm

15  just belaboring the point.

16          MS. WICKOUSKI:  Well, Your Honor, just to address

17  this, this was in our last paragraph of our letter.  And we

18  said that we commit to extend the phrase on the current

19  terms until the Court enters a superseding order.  And in

20  the superseding order that we proposed, basically I think

21  the only thing that I think would be different in what Mr.

22  Hurley is asking for is no carveouts.  We've asked for

23  carveouts for two things.  One is legal fees.  And I'm not

24  the only counsel.  The other one is some operating expenses.

25          I know Mr. Hurley says that StakeHound is not

Page 20

1    operating, but StakeHound I think he would admit has

2    equipment that needs to be maintained.  And there's small

3    costs associated with that.

4           Maybe we can quibble about the numbers, but when

5    we were making that proposal, Your Honor, I did not know and

6    had no way of knowing what kind of timeframe we would be

7    looking at.  So we were conservative in terms of asking for

8    a high enough number in case this went on into September or

9    even October.

10          You know, with that said, I note what Mr. Hurley

11   said in response to Your Honor's question that he even --

12   even Celsius admits that at least a couple million dollars

13   of assets they have no claim on.  And the amount of

14   carveouts that we have proposed are far less than that.  I

15   think our carveouts were --

16          MR. HURLEY:  Sorry, that --

17          THE COURT:  Let her finish, Mr. Hurley.

18          MR. HURLEY:  Apologies.  Apologies.

19          THE COURT:  Let her finish.  Mr. Hurley, let her

20   finish.

21          MS. WICKOUSKI:  I'm not sure why we are taking the

22   Court's time on a TRO when what we are proposing is well

23   within what StakeHound could even essentially present.  We

24   would agree to a phrase on those terms.

25          THE COURT:  I'll decide what I have to decide.

Page 21

1    Okay?  It makes more sense if you work this out.  It just

2    seems to me that if there are several million dollars in

3    value that, Mr. Hurley, you and your client think, okay,

4    those are -- that amount is not an amount that Celsius has a

5    good claim for --

6            MR. HURLEY:  So I just --

7            THE COURT:  -- agree to a dollar carveout, I would

8    like to get you to -- unless you can resolve everything, I

9    would like to get you to a hearing date that I gave you in

10   September.  You know.

11           MR. HURLEY:  Can I just clarify two things?  One

12   is that it's not that Celsius doesn't contend it has a claim

13   to it.  So Celsius' claims are valued at $160 million plus.

14   And our understanding is that the only assets they have

15   amount to about $90 million.  So we think our claims are

16   massively in excess of any assets that they have.

17           I also want to be crystal clear.  I don't know how

18   much other customers contributed other than what I've seen

19   in the StakeHound arbitration demand which alleges that we

20   contributed 96 percent of the ETH.  So what I said before.

21   I mean, I have no idea whether that's right or wrong.  It

22   would be consistent with my understanding of the math if

23   that allegation is correct.  So I just want to be clear

24   about that.

25           If we get a hearing date -- and I thank Ms.

Page 22

1    Wickouski for clarifying.  Perhaps I should have understood

2    that from her letter, that she is -- they are going to be

3    bound by the current agreement until further order of the

4    Court.  That gives us a little bit more breathing room.  We

5    certainly can get papers in tomorrow, Your Honor.  And if

6    there's a date you have or a time -- I know you don't have

7    much time.  But if there is a time that you can provide us,

8    we will work in good faith both towards getting the papers

9    you need and trying to avoid you having to hear it.

10             THE COURT:  Hang on.

11             Okay.  I took this time to look at my schedule in

12    D.C.  And I'll be at the administrative office, so I'll have

13    a good internet connection.

14             If you're going to proceed with a TRO, all papers

15    must be filed by tomorrow, Wednesday, at 3:00 p.m.  And the

16    hearing would be on Thursday at 5:00 p.m.  That's when my

17    meetings end for the day.  I won't be particularly happy

18    having to hear it, but that's when I would be available.

19    I'll have to arrange for -- tentatively for an ECRO operator

20    here at this court to be available so that the hearing would

21    be recorded.

22             And I would just say, Mr. Hurley, that any TRO

23    application has to be supported by competent evidence,

24    declarations by people with personal knowledge.  Any

25    exhibits they're relying on have to be appropriate.

Page 23

1    Foundation has to be established in those documents.  I

2    don't intend to hear live testimony.  The TRO hearing will

3    be based on papers only.  And so in the limited time

4    available, I will scrutinize it and make sure that any

5    assertions you make are supported with competent evidence.

6            MR. HURLEY:  Understood, Your Honor.  We

7    appreciate the accommodation on the schedule.  We will do

8    our best to work through it.

9            THE COURT:  And what I would ask is I am hopeful

10   that you'll be able to work these issues out to get

11   yourselves to a hearing on September 27th at 9:00 a.m.  And,

12   you know, as I say, if it's -- and I do think that -- let's

13   put aside the preliminary injunction.  Even, you know, the

14   motion to dismiss for lack of personal jurisdiction requires

15   evidence.  The motion to compel arbitrations are going to

16   require evidence.  So that's going to be an evidentiary

17   hearing.  Hopefully it will be a shorter evidentiary

18   hearing, but it will be an evidentiary hearing.

19           What I will do is before I leave for the train or

20   right after my clerks will make sure that the scheduling

21   order, briefing and scheduling order gets entered.

22   Obviously if you're able to resolve the preliminary

23   injunction issues, okay, so be it.  That won't go forward.

24   I assume that Ms. Wickouski and her client want to go

25   forward with the motion to compel arbitration.  And I had

1    indicated at prior hearings I was prepared to move

2    expeditiously, more forward expeditiously to do that.  I

3    think the schedule I'm giving you I think does that.

4            MR. HURLEY:  Understood, Your Honor.  With respect

5    to the TRO, we appreciate the accommodation on your

6    schedule.  We will do our best to work with Ms. Wickouski to

7    see what we can do between now and then.

8            THE COURT:  Okay, Ms. Wickouski, anything you want

9    to add?

10           MS. WICKOUSKI:  No, Your Honor.  Just I thank the

11   Court for accommodating us in terms of this expedited

12   schedule for the motion to compel.  Our clients are very

13   appreciative.

14           THE COURT:  I'll say one other thing that's just

15   consistent with what I said at a prior hearing, you

16   obviously reserved your right to move to dismiss for lack of

17   personal jurisdiction.  I made some comments at the prior

18   hearing.  It seemed to me that on the four corners of the

19   complaint Celsius appears to allege a prima facie basis for

20   personal jurisdiction over StakeHound.  That's just bad.

21   It's not in evi... The standards that a court can use on a

22   motion to dismiss for lack of personal jurisdiction, you

23   look at the pleadings, yes, sometimes you'll hear evidence

24   on it.  You may or may not want to go forward with that.

25   You can, if you and your client feel that there is no

1    personal jurisdiction you'll make that motion and that will

2    be one of the things I'll hear and decide.

3          MS. WICKOUSKI:  I understand, Your Honor.  We are

4    somewhat constrained to preserve the argument to the extent

5    that we have an argument.

6          THE COURT:  Sure.

7          MS. WICKOUSKI:  So, we're not seeking to burden

8    the Court with another motion just to preserve our...

9          THE COURT:  I'm not trying to take anything away

10   from StakeHound on this.  If they believe they have got a

11   basis for it they can't sit on it.  If they're going to

12   assert it, they need to go forward and do that.  It can be

13   waived.  If they litigate -- anyway, I'm not trying to tell

14   you not to make that motion.  If you are going to make it,

15   make it and I'll decide it.

16         MS. WICKOUSKI:  Understood, Your Honor.  Thank

17   you.

18         THE COURT:  Alright.  So, probably what I'm going

19   to do is enter two separate documents; one is the scheduling

20   order and one we'll just refer to what we talked about at

21   the hearing today.  Please, if you're able to work things

22   out so that we don't have to have a TRO hearing -- I mean,

23   it's not only me, but I've got to arrange for an ECRO

24   operator to work late at the Court on Thursday.

25         MR. HURLEY:  Understood, Your Honor.

Page 26

1              THE COURT:  Alright.  Thanks very much.

2              MR. HURLEY:  Thank you.

3              MS. WICKOUSKI:  Thank you, Your Honor.

4              (Whereupon these proceedings were concluded at

5      11:45 AM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 27

1               C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  August 28, 2023