**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,<br><br>　　　　　　　　　　Debtors.<br><br>CELSIUS NETWORK LIMITED,<br><br><br>　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>STAKEHOUND SA,<br><br>　　　　　　　　　　Defendant. | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>Jointly Administered<br><br><br><br>Adversary Proceeding<br><br>No. 23-01138 (MG) |

## ORDER GRANTING TRO

Pending before the Court is the motion (the "Motion," ECF Doc. # 39) of Plaintiff Celsius Network Limited ("Celsius") in the above-captioned adversary proceeding against StakeHound SA ("StakeHound") for a temporary restraining order pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7065 and Federal Rule of Civil Procedure ("FRCP") 65 preventing (i) dissipation by StakeHound of assets due to Celsius and (ii) violations of the automatic stay. In support of the Motion, Celsius relies on (i) the Declaration of Richard Man, the Head of Staking at Celsius (the "Man Decl.," ECF Doc #. 40); (ii) the Declaration of Felix Dasser, Esq., a partner at Homburger, a Swiss law firm (the "Dasser Decl.," ECF # 37); and (iii) the Declaration of Mitchell Hurley, Esq, counsel to Celsius, which attaches certain exhibits (the "Hurley Decl," ECF Doc. # 35.) Attached to the Motion as Exhibit A is a proposed order (the

"Proposed Order".)  The deadline for objections was August 25, 2023 at 12:00 P.M. StakeHound filed an objection (the "Objection," ECF Doc. # 42).  In support of its Objection, StakeHound relies on the declaration of Albert Castellana Lluís, Chief Executive Officer of StakeHound  (the "Castellana Declaration," ECF Doc. # 43.)  The Debtor filed a reply (the "Reply," ECF Doc. # 50) and a supplemental declaration of Felix Dasser (the "Supplemental Dasser Decl.," ECF Doc. # 51).

The Court held a hearing on the Motion on August 29, 2023.  At the hearing, the Court directed the parties to submit supplemental briefing regarding the application of *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund*, Inc., 527 U.S. 308 (1999) to the Motion.  The Debtor submitted a supplemental brief (the "Debtor Suppl. Brief," ECF Doc. # 54), as well as an additional declaration of Richard Man (the "Third Man Decl.," ECF Doc. # 55).  StakeHound also submitted a supplemental brief (the "StakeHound Suppl. Brief," ECF Doc. # 56).  Finally, the Debtor filed a supplemental reply (the "Suppl Reply, ECF Doc. # 57).  For the reasons discussed herein, the Motion is **GRANTED** to the extent set forth herein.

## I.    PERSONAL JURISDICTION

As an initial matter, the Court finds that Celsius has made a *prima facie* showing that this Court has personal jurisdiction over StakeHound in its amended complaint (the "Amended Compliant," ECF Doc. # 31).  A court may exercise specific jurisdiction over a foreign corporation only where (1) the corporation purposefully directed its activities at residents of the forum, (2) the cause of action arose out of those activities, and (3) the corporation reasonably should anticipate being hauled into court in the forum state.  *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, (1985).  Celsius alleges that StakeHound has purposefully availed itself of the privilege of conducting activities within the United States, and its contacts with the

2

forum give rise to, or are related to Celsius' claims. (Amended Complaint ¶ 18.) Examples of these allegations include:

- StakeHound sought to solicit interest in its services amongst persons located in the United States, one of the largest markets for ETH and other digital assets. (*Id*.)
- StakeHound conducted a significant amount of its messaging and advertising in English on Twitter, which both operates and is headquartered in the United States and whose greatest number of users are in the United States. The level of Twitter activity was such that StakeHound's Twitter account operated as a de facto marketing arm for StakeHound, including by providing digital forms through Twitter and soliciting job applications, questions and information from users. (*Id.*)
- StakeHound maintained an account on YouTube—a video sharing and social media platform headquartered in California—and posted a series of videos where Albert Castellana, StakeHound's CEO—who on information and belief is a Spanish citizen—hosted discussions with cryptocurrency professionals and stated at the beginning of each video that "thanks to StakeHound, you'll be able to trade a one to one representation of any proof-of-stake token on Uniswap or borrow against it on tools like Aave or Cream." Uniswap is headquartered in New York. (*Id.* ¶ 19.)
- On further information and belief and during all relevant times not only did StakeHound make no attempt to block U.S. IP addresses to its website, but also its website was hosted on a U.S. based server with a U.S. based IP address by a U.S. based company, Cloudfare, Inc. (*Id.* ¶ 20.)

While StakeHound may ultimately be able to convince the Court otherwise through its motion to dismiss for lack of personal jurisdiction (ECF Doc. # 45), for the purposes of this Motion, Celsius has made a *prima facie* showing that StakeHound purposefully availed itself of the United States crypto market, that this dispute arose out of this purposeful action, and that StakeHound therefore should have reasonably anticipated being hauled into court in the United States.

## II.    TEMPORARY RESTRAINING ORDER

Celsius has also established grounds for a TRO. The standards for issuance of a temporary restraining order are not materially different from the standards for issuance of an

3

injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7065 of the Federal Rules of Bankruptcy Procedure, Bankruptcy Rule 7065. *See Adelphia Commc'ns Corp. v. The American Channel, et al. (In re Adelphia Commc'ns Corp.)*, 2006 WL 1529357, at *4 (Bankr. S.D.N.Y. June 5, 2006).

A party seeking a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Mkts.', Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). The traditional standards for issuance of an injunction pursuant to Rule 65 are made applicable to adversary proceedings under Bankruptcy Rule 7065. *See Eastern Air Lines v. Rolleston (In re Ionosphere Clubs, Inc.)*, 111 B.R. 423, 431 (Bankr. S.D.N.Y. 1990). On the briefs and attendant evidentiary submissions, Celsius has shown that: (A) it is likely to succeed on the merits, or at a minimum, there are serious questions going to the merits here; (B) it is likely to suffer irreparable harm in the absence of a TRO; and (C) that the equities, i.e., balance of hardships, tip decidedly in its favor. Thus, Celsius has shown that it is entitled to a TRO.

A. **Likelihood of Success on the Merits**

To establish a likelihood of success on the merits, a movant "'need not show that success is an absolute certainty.'" *Broker Genius, Inc. v. Volpone*, 313 F. Supp. 3d 484, 497 (S.D.N.Y. 2018) (quoting *Eng v. Smith,* 849 F.2d 80, 82 (2d Cir. 1988)). On the contrary, a preliminary injunction may be issued even if the movant's likelihood of success on the merits is unclear, provided that the movant demonstrates the existence of "'serious questions going to the merits of

4

its claims to make them fair ground for litigation.'" *New York ex rel. Schneiderman v. Actavis*, 787 F.3d 638, 650 (2d Cir. 2015) (quoting *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)).  Nor must the movant demonstrate a likelihood of success on the merits of every one of its claims; just one will do.  *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019) (stating that "a likelihood of success on the merits of at least one of [movant's] claims" sufficient for injunction).

       As an initial matter, the Court faces the gating question of whether a freezing injunction is even proper, where as here, it is largely undisputed that StakeHound has title to the subject assets and Celsius's claim is that StakeHound has breached the applicable contract by not returning the assets.  (Reply at 5 (acknowledging StakeHound's argument that is has title to the assets and not directly refuting it).)  The U.S. Supreme Court's controlling decision in *Grupo Mexicano* bars the injunctive relief where the claims, at bottom, are purely contractual in nature.  In *Grupo Mexicano*, the plaintiff sought a preliminary injunction preventing the defendant from transferring certain assets without which the defendant would be unable to satisfy a judgment on plaintiff's breach of contract claims.  *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 312 (1999).  Reversing the Second Circuit, the Supreme Court held that the equitable authority afforded a district court could extend only as far as what could have been granted to it "at the time of the adoption of the Constitution and the enactment of the original Judiciary Act, 1789." *Id.* at 318.  This authority, the Supreme Court held, did not encompass the power "to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages." *Id.* at 333.

       Celsius provides two arguments to circumvent this problem.  First, it argues that *Grupo Mexicano* is inapplicable in bankruptcy courts.  (Suppl. Reply at 2–3.)  Numerous courts

5

including the Third, Six and Ninth Circuits have concluded that *Grupo Mexicano* is inapplicable to bankruptcy courts in certain circumstances. *See, e.g., In re Owens Corning*, 419 F.3d 195, 208 n.14 (3d Cir. 2005); *In re Focus Media Inc.*, 387 F.3d 1077, 1085 (9th Cir. 2004); *In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002); *Adelphia Commcn's Corp. v. Rigas*, 2003 WL 21297258, at *4 (S.D.N.Y. June 4, 2003); *EHT US1, Inc. v. EHT Asset Mgmt.*, LLC, 2021 WL 3828556, at *1 (Bankr. D. Del. Aug. 27, 2021); *Reliance Hosp. LLC v. 5251 S Julian Drive LLC*, 2023 WL 2601255, at *2 (D. Ariz. Mar. 22, 2023); *Pac. All. Asia Opportunity Fund L.P. v. Kwok (In re Kwok)*, 2023 WL 186964, at *20 (Bankr. D. Conn. Jan. 13, 2023); *Gold v. Winget (In re NM Holdings Co., LLC)*, 407 B.R. 232, 271 (Bankr. E.D. Mich. 2009); *In re Columbia Sussex Corp., Inc.*, 2006 WL 305959, at *4 (E.D. Mo. Feb. 8, 2006). StakeHound tries to distinguish these cases by arguing that none involve "non-core" claims "that could be heard in a state or Article III court," and instead that all solely involve "a bankruptcy court exercising the core and inherent powers granted to it by the Bankruptcy Court." (Objection at 4.) In fact, the cases cited by StakeHound feature a range of claims—including claims for breach of contract, turnover, unjust enrichment, and equitable accounting—and nevertheless concluded that *Grupo Mexicano* is inapplicable to bankruptcy courts. The Second Circuit has not ruled on this issue, thus there is no controlling law for this Court on the question. Given the substantial persuasive authority on this issue, the Court concludes, with respect to the applicability of a bankruptcy exception to *Grupo Mexicano*, that at a minimum Celsius has raised "serious questions" going to the merits of its claims to make them fair ground for litigation.'" *New York ex rel. Schneiderman v. Actavis*, 787 F.3d at 650. The Court need not resolve today whether the bankruptcy exception applies here.

6

Celsius's second counter with respect to the *Grupo Mexicano* problem is that *Grupo Mexicano* is inapplicable where a party brings equitable claims in addition to breach of contract claims. (Debtor Suppl. Brief at 4–5.) This proposition finds support in the case law. *See, e.g*, *In re Soundview Elite Ltd.*, 543 B.R. 78, 121 (Bankr. S.D.N.Y. 2016) (collecting cases and holding that "Courts have routinely held that when equitable claims have been asserted, the *Grupo Mexicano* rule barring issuance of a preliminary injunction freezing assets does not apply") Here, Celsius does plead equitable claims, but StakeHound argues that these claims do not change the result for two related reasons  First, because Swiss Law applies. Second, because, even if New York law applies, the claims are not properly plead under New York law.

As to the first argument, StakeHound does not claim, much less seek to establish, a conflict between the two jurisdictions laws regarding Celsius' claims. "If the party advocating" for application of another jurisdiction's laws "fails to demonstrate an actual conflict between New York and [the other jurisdiction's] laws, no choice of law analysis need be undertaken." *Park Place Ent. Corp. v. Transcon. Ins. Co.*, 225 F. Supp. 2d 406, 408-09 (S.D.N.Y. 2002) (presuming "Nevada law will resemble New York law" in the absence of evidence to the contrary) (citations omitted); *see also Bass v. World Wrestling Fed'n Ent., Inc.*, 129 F. Supp. 2d 491, 504 (E.D.N.Y. 2001) ("Because Defendants have not articulated a meaningful conflict between New York law and Connecticut law with respect to Plaintiff's state law claims, this court could apply New York law without further inquiry.") (citing *Portanova v. Trump Taj Mahal Assocs.*, 270 A.D.2d 757, 759–60 (3d Dept. 2000)). Because StakeHound has not demonstrated an actual conflict between New York and Swiss law, which is its burden, the Court will apply New York law.

7

As to the second argument, the Court finds that with respect to at least one of Celsius's equitable claims[1], its accounting claim, Celsius has at a minimum established serious questions going to the merits that make the claim fair grounds for litigation. The equitable claims alleged by Celsius, as in *Soundview*, include a demand for an accounting—"a classic basis for an asset-freezing order." *Soundview*, 543 B.R. at 122. StakeHound argues that Celsius was required to prove the existence of a fiduciary or confidential relationship between Celsius and StakeHound to prevail on its accounting claim, but Judge Gerber rejected that exact argument in *Soundview*: a defendant "cannot rely on a general rule that no confidential or fiduciary relationship exists" between the parties to escape an accounting. *Id.* at 123. And even where the parties' relationship is completely "arms-length," the existence of "an account of a complicated character" is sufficient to sustain a claim for accounting. *Id.* If StakeHound believes the claims are not sufficiently plead, they are free to bring a motion to dismiss, but for the purposes of a temporary restraining Celsius has met its burden on the merits.

### B. Irreparable Harm

As to irreparable harm, Celsius argues that it will face imminent harm if the Court does not freeze the assets for two primary reasons First, because StakeHound is deeply insolvent, and unless the Subject Property is preserved during the course of this litigation, StakeHound's ability to satisfy a judgment in favor of Celsius will be further and severely reduced. (Motion at 12.) Second, because absent an injunction StakeHound will materially dissipate assets. (*Id.* at 13–15.) The Court agrees with both contentions.

---

[1] The Court need not consider the merits of Celsius's remaining claims today because Celsius need not demonstrate a likelihood of success on the merits of every one of its claims; just one will do. *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d at 459.

Here, Celsius has provided competent evidence that StakeHound is insolvent. In its arbitration demand StakeHound indicated it had to shutter operations in order to focus solely on its lawsuit against Fireblocks. (*See* Hurley Decl. Ex. A at ¶ 24.) StakeHound represented that it no longer has assets sufficient to satisfy the claims of Celsius. (*See id.* ¶ 28) (stating that "exchange as requested by ETHs and the ongoing suspension of the Platform the Respondent is currently not possible, given the limited availability of the ETHs and the ongoing suspension of the Platform"). According to StakeHound, Celsius was its "largest user," and provided "approx. 96%" of StakeHound's total supply of ETH. (*See id.* ¶ 21.) StakeHound goes on to allege that it shut down its business more than two years ago specifically because "60%" of all native ETH in its possession was lost, and thus StakeHound lacks sufficient "ETHs" to satisfy customer claims. (*Id.* ¶ 23.)

Celsius offered unrebutted proof that Celsius provided more than $160 million worth (at recent prices) of ETH, MATIC and DOT to StakeHound, and proof that StakeHound lacks the assets necessary to satisfy its obligations to Celsius because StakeHound (or its agent) lost ETH provided by Celsius that is worth approximately $70 million. (*See* Man Decl. ¶ 40.) In other words, Celsius' evidence indicates that StakeHound's liabilities exceed its assets by at least $70 million, a contention which, again, StakeHound does not directly refute.

This is the essence of insolvency, and more than sufficient to support Celsius motion for a TRO. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("Given [its] limited purpose, and given the haste that is often necessary . . . a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."). Further, this insolvency matters because it means that any assets dissipated will irreparably harm Celsius, in that every dollar spent is a dollar Celsius cannot recover.

9

Celsius has also established that if the Court does not enter a TRO StakeHound will materially dissipate the only assets available to satisfy a Celsius judgment in this case.  For such evidence, the Court need look no further than StakeHound's statements in its brief that it estimates that "through and including the hearing scheduled for September 27, 2023" (the "PI Hearing") StakeHound estimates that its legal fees "will total $1,500,000 and ordinary course expenses will total $500,000" and also contends that "it must be permitted to incur court cost in the FireBlocks litigation." (Objection ¶ 26.)  Counsel for StakeHound also noted on the record that "it's very hard for me as counsel to agree that a client shouldn't pay any of their lawyers their July legal bills." (August 7, 2023 Hr'g Tr. at 25:15–17 (ECF Doc. # 24).)  The Court does not fault StakeHound for failing to agree to a total freeze nor does it consider the failure to reach agreement to be evidence of an intent to dissipate assets.  However, the Court does consider statements of counsel on the record and in its brief that StakeHound has expenses it needs pay using the subject assets to be evidence that, in the absence of a freeze, StakeHound would dissipate assets.

### C. Balance of Equities

The equities decidedly weigh in favor of Celsius' requested relief.  Celsius primarily seeks to preserve the status quo by preventing StakeHound from dissipating Subject Property during the course of the case.  Safeguarding assets from dissipation so that they can be available for the benefit of Celsius' creditors is manifestly equitable, and in the public interest. *See, e.g., In re Calpine Corp.,* 365 B.R. 401, 413 (S.D.N.Y. 2007).  Celsius argues, that StakeHound would suffer no cognizable harm from an injunction freezing assets that should be transferred to Celsius. (Motion at 24.)   StakeHound counters that it needs the assets to pay legal fees and to pay ordinary course business expenses.  But Celsius cites case law indicating that even where a

defendant seeks legal fees to defend against a criminal case, they are not entitled to a carve out in the context of a freezing injunction. *See, e.g.*, *In re MarketXT Holdings Corp.*, 376 B.R. 390, 424 (Bankr. S.D.N.Y. 2007) (denying motion to access frozen funds to pay legal fees to prohibit "any further depletion of the restrained funds" which already were insufficient to satisfy the plaintiff's claims, and observing that "courts have generally not recognized a constitutional right to counsel unless a party's physical liberty is jeopardized"); *see also SEC v. Bremont*, 954 F. Supp. 726 (S.D.N.Y. 1997) (freezing funds before trial and denying defendant access to the funds for legal expenses); *SEC v. Credit Bancorp Ltd.*, 2010 WL 768944, at *3 (S.D.N.Y. Mar. 8, 2010) (similar). The Court is nevertheless cognizant of StakeHound's claims that it needs the ability to dissipate some of the assets between now and the PI Hearing. Accordingly, the Court will permit StakeHound to spend $200,000 worth of assets between now and the PI hearing.

### III. REQUEST FOR BOND

The request for a bond is **DENIED**. StakeHound has not provided sufficient evidence that it will be harmed in the absence of a bond. *See, e.g., In re Caesars Ent. Operating Co., Inc.*, 561 B.R. 441, 457 (Bankr. N.D. Ill. 2016) (refusing to impose bond where requesting party had "not shown, or even attempted to show, that a preliminary injunction will damage them in any way"); *Lyondell Chem. Co. v. CenterPoint Energy Gas Servs. Inc. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 595 (Bankr. S.D.N.Y. 2009) (absent evidence the non-movant will suffer harm during the period of the injunction, there is no reason to "depart from the general rule" that a bond is unnecessary when a debtor in possession is granted preliminary injunctive relief). Additionally, Bankruptcy Rule 7065 excepts a debtor from the requirements of Federal Civil Rule of Civil Procedure 65(c) which requires the moving party to provide security for a preliminary injunction.

### IV. CONCLUSION

For the reasons discussed herein, the Court **GRANTS** the Motion for a Temporary Restraining Order ("TRO").

**STAKEHOUND, AND ALL PERSONS ACTING IN CONCERT WITH STAKEHOUND, ARE HEREBY PROHIBITED AND PRELIMINARILY ENJOINED FROM TRANSFERRING ANY ASSETS OR PROPERTY WITHIN STAKEHOUND'S POSSESSION, CUSTODY OR CONTROL TO ANY PERSON OR ENTITY PENDING THE OUTCOME OF THE PRELIMINARY INJUNCTION HEARING, WHICH, WITH THE AGREEMENT OF COUNSEL, WILL BE HEARD BY THE COURT ON SEPTEMBER 27, 2023 AT 9:00 AM.**  Notwithstanding the terms of this TRO, StakeHound shall be permitted to spend $200,000 in money or money's worth of the subject assets between now and the PI Hearing.

**IT IS SO ORDERED**

Dated:   September 8, 2023
         New York, New York
         Issued on September 8, 2023 at 10:00 am (New York Time)

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge