Mitchell P. Hurley
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
mhurley@akingump.com
dchapman@akingump.com

Elizabeth D. Scott (admitted *pro hac vice*)
Nicholas R. Lombardi (admitted *pro hac vice*)
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
edscott@akingump.com
nlombardi@akingump.com

*Special Litigation Counsel for Debtors and Plaintiff Celsius Network Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |
| CELSIUS NETWORK LIMITED, | |
| Plaintiff, | Adversary Proceeding |
| v. | No. 23-01138 (MG) |
| STAKEHOUND SA, | |
| Defendant. | |

### CELSIUS' BRIEF IN OPPOSITION TO DEFENDANT STAKEHOUND SA'S MOTION TO DISMISS

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The Debtors' service address in these Chapter 11 Cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 1

ARGUMENT ......................................................................................................... 5

I.    STAKEHOUND PURPOSEFULLY AVAILED ITSELF OF THE PRIVILEGE OF DOING
      BUSINESS IN THE UNITED STATES. ................................................................. 6

      A.  StakeHound Transacted Business in the United States by Opening a Staked.us
          Account to Receive the November 2020 Staked ETH.................................................. 7

      B.  StakeHound Purposefully Directed Its Activities at Celsius Personnel in the United
          States ..................................................................................................... 13

II.   EXERCISING PERSONAL JURISDICTION OVER STAKEHOUND COMPORTS WITH
      DUE PROCESS .............................................................................................. 17

CONCLUSION....................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al Rushaid v. Pictet & Cie*,
    28 N.Y.3d 316 (2016) ...........................................................................................................11

*Amigo Foods Corp. v. Marine Midland Bank-N.Y.*,
    39 N.Y.2d 391 (1976) ...........................................................................................................8

*In re Arcapita Bank B.S.C.(C) ("Arcapita II")*,
    640 B.R. 604 (S.D.N.Y. 2022) .....................................................................................10, 11

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
    480 U.S. 102 (1987) ............................................................................................................19

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
    No. 12-CV-8852 (JMF), 2018 WL 922191 (S.D.N.Y. Feb. 15, 2018) .............................10, 16

*Averbach v. Cairo Amman Bank*,
    No. 19-CV-0004-GHW-KHP, 2020 WL 486860 (S.D.N.Y. Jan. 21, 2020), ),
    *report and recommendation adopted*, 2020 WL 1130733 (S.D.N.Y. Mar. 9,
    2020) ....................................................................................................................................11

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    305 F.3d 120 (2d Cir. 2002) ............................................................................................17, 18

*In re Bernard L. Madoff Inv. Sec., LLC*,
    No. 1:22-cv-06561 (LGS), 2023 WL 395225 (S.D.N.Y. Jan. 25, 2023) ...........................20

*Broker Genius, Inc. v. Seat Scouts LLC*,
    No. 17-CV-8627 (SHS), 2019 WL 4054003 (S.D.N.Y. Aug. 27, 2019) ............................6

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010) ............................................................................................12, 13

*Fiore v. Walden*,
    688 F.3d 558 (9th Cir. 2012), rev'd, 571 U.S. 277 (2014) .................................................16

*Graceland v. Plutus Enters. LLC*,
    No. 8:21-CV-2356-VMC-CPT, 2022 WL 1212801 (M.D. Fla. Apr. 25, 2022) ...............14

*Gucci Am., Inc. v. Weixing Li*,
    135 F. Supp. 3d 87 (S.D.N.Y. 2015) ................................................................................20

*Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*,
    470 F. Supp. 2d 345 (S.D.N.Y. 2007) ..............................................................................15

*Int'l Shoe Co. v. Wash.*,
    326 U.S. 310 (1945) .................................................................................................5

*Jones-Theophilious v. Avery (In re Jones)*,
    No. ADV 13-1502, 2015 WL 1544524 (B.A.P. 9th Cir. Apr. 7, 2015).................................14

*Licci v. Lebanese Can. Bank, SAL*,
    20 N.Y.3d 327 (2012) .............................................................................................8, 9

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)...................................................................................8, 18

*MF Global Holdings Ltd. v. Allied World Assurance Co. (In re MF Glob.Holdings Ltd.)*
    561 B.R. 608 (Bankr. S.D.N.Y. 2016) ...............................................................5, 7, 19

*In re Motors Liquidation Co.*,
    565 B.R. 275 (Bankr. S.D.N.Y. 2017) ............................................................. *passim*

*NIKE, Inc. v. Wu*,
    349 F. Supp. 3d 346 (S.D.N.Y. 2018)......................................................................11

*Nowak v. Tak How Inv., Ltd.*,
    94 F.3d 708 (1st Cir. 1996)....................................................................................20

*Official Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016)........................................................................ *passim*

*PDK Labs, Inc. v. Friedlander*
    103 F.3d 1105 (2d Cir. 1997)..................................................................................15

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
    627 B.R. 546 (Bankr. S.D.N.Y. 2021) ...............................................6, 10, 17, 20

*Schindler v. Lyon*,
    No. 12-CV-5928 JFB AKT, 2013 WL 4544263 (E.D.N.Y. Aug. 28, 2013) ...........................15

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec.*, LLC,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011) ......................................................................19

*Treeline Inv. Partners, LP v. Koren*,
    No. 07 CIV 1964 DLC, 2007 WL 1933860 (S.D.N.Y. July 3, 2007) .................................7, 15

*Walden v. Flores*,
    571 U.S. 277 (2014)...............................................................................................16

**Statutes**

11 U.S.C. § 101 (55) ...............................................................................................14

iv

N.Y. C.P.L.R. § 302(a)(1)..........................................................................................7, 8, 10, 15, 18

Plaintiff Celsius Network Limited respectfully submits this brief in opposition to StakeHound's *Motion to Dismiss First Amended Adversary Complaint* [ECF No. 45] (the "Motion to Dismiss" or "Mot") and respectfully states as follows:

## PRELIMINARY STATEMENT

Personal jurisdiction requires only that the defendant purposefully directs its activities at residents of the forum, and the underlying cause of action arise out of or relate to those activities. Here, StakeHound already has *admitted* the factual predicate necessary to make that showing, including by opening an account with Staked.us – a U.S.-based platform with offices in New York – so that it could receive the nodes associated with the November 2020 Staked ETH and effecting the transfer of those nodes through that U.S.-based platform.  In addition, StakeHound directed its conduct at the United States by engaging in extensive communications with Celsius' U.S.-based personnel (including Jason Stone) for purposes of negotiating the Staking Services Agreement relating to the November 2020 Staked ETH, the Revenue Sharing Agreement relating to the MATIC and DOT, and securing transfers of the 35,000 February Staked ETH.  Through this conduct, StakeHound has purposefully availed itself of the privilege of doing business in the United States, and this Court may exercise jurisdiction over StakeHound with respect to all of Celsius' claims, which relate to and arise out of that conduct.

## STATEMENT OF FACTS[2]

When StakeHound launched in or around October, 2020, StakeHound intended to engage in the business of managing and operating ETH validator nodes to provide staking services to ETH holders.  Declaration of Richard Man [ECF No. 40] ("Man Decl.") ¶ 4.  In addition, other

---

[2] Celsius incorporates by reference the entirety of the allegations made in the *First Amended Adversary Complaint* [ECF No. 31] (the "Amended Complaint").  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Amended Complaint.

digital assets such as MATIC and DOT were delegated to public staking providers.  *Id.*  The staked native tokens are used to validate transactions on the associated blockchain, and in exchange earn interest, fees, and other rewards.  *Id.*  Celsius and, on information and belief, a handful of other StakeHound customers entrusted their Native Tokens to StakeHound, and StakeHound minted and issued to its customers stTokens, allowing the customer (in theory) to use the stTokens as liquidity in the DeFi ecosystem and tender them back to StakeHound on a one-to-one basis for Native Tokens.  *Id.*

Celsius was introduced to StakeHound in November 2020 through Jason Stone.  Man Decl. ¶ 7, Ex. A.  Stone was the U.S.-based CEO of Celsius KeyFi LLC, a Delaware limited liability company.  *See* Declaration of Mitchell P. Hurley, Ex. 28, *Celsius Network Limited, et al. v. Jason Stone, et al.*, Case No. 22-01139-mg (Bankr. S.D.N.Y. Aug. 23, 2022), [ECF No. 24] (October 5, 2020 Limited Liability Company Agreement of Celsius KeyFi LLC listing Jason Stone as the Chief Executive Officer and Member of Celsius KeyFi LLC, which is identified as a Delaware limited liability company with a principal office address in New Jersey).

In connection with its agreements with Celsius and the transfers at issue in this action, StakeHound engaged in extensive and purposefully directed negotiations and communications via phone calls and videoconferences with and emails and slack messages to U.S.-based Celsius personnel located in the United States and its territories, including but not limited to Mr. Stone, Jeremie Beaudry, Harumi Urata-Thompson, Connor Nolan, Dean Tappen, and Alex Mashinky. Declaration of Connor Nolan ("Nolan Decl." filed concurrently herewith) ¶ 7, Ex. A (email chain among StakeHound's Edgars Nemse and Albert Castellana and Celsius' Jason Stone, Harumi Urata-Thompson, Jeremie Beaudry, and Daniel Leon regarding negotiations with respect to the SSA).

In particular, StakeHound communicated with Celsius personnel located in the United States to facilitate and execute the specific transactions and transfers at issue in this case, including Mr. Stone, Ms. Urata-Thompson, Mr. Tappen, and Mr. Nolan.  Nolan Decl. at Ex. E (slack communications between StakeHound's Edgars Nemse and Albert Castellana and Celsius' Jason Stone, Harumi Urata-Thompson, and Connor Nolan regarding February 2021 ETH transfers in which Urata-Thompson confirms the 35K ETH transfers with Castellana, and Nolan executes and confirms the transfers with Edgars Nemse from StakeHound); *id.* at Ex. C (email chain among Urata-Thompson, Tappen, and Nolan of Celsius and Castellana and Edgars Nemse of StakeHound regarding the stETH provided in connection with the November 2020 staking). Indeed, New York-based Urata-Thompson is one of two individuals listed in the SSA to receive notices or communications required or permitted under the agreement.  *See* Man Decl. Ex. B at § 8.2.

StakeHound's communications with Celsius' U.S.-based personnel ultimately culminated in the transfer of substantial amounts of ETH, MATIC, and DOT from Celsius to StakeHound. Man Decl. ¶ 8.  First, in November 2020, Jason Stone, staked 24,960 ETH owned by Celsius by transferring the ETH to the ETH2 depositer address 0x39DC6a99209B5e6B81dC8540C86Ff10981ebDA29 to accrue staking Rewards (the "November 2020 Staked ETH").  *Id.* ¶ 9.  The ETH2 depositor address was controlled by Staked.us, a U.S.-based entity that provides non-custodial staking services.  *Id.*  Staked.us subsequently transferred the ETH to the "Beacon Deposit Contract"0x00000000219ab540356cBB839Cbe05303d7705Fa.  *Id.*  At the time, all ETH transferred to the Beacon Deposit Contract, including the November 2020 Staked ETH, was

3

locked and unavailable for withdrawal pending completion of an ongoing upgrade to the Ethereum blockchain (the "Upgrade").  *Id.*

Following the transfer, Celsius and StakeHound entered into the SSA on January 20, 2021. Man Decl. ¶ 10.  Pursuant to the SSA, Celsius agreed to transfer to StakeHound the nodes for the November 2020 Staked ETH in exchange for the number of stETH equal to the number of native ETH associated with the nodes (plus Rewards).  *Id.* ¶ 11.  At the time of contracting between Celsius and StakeHound, the November 2020 Staked ETH was locked in the Deposit Smart Contract with Staked.us.  *Id.* ¶ 12.  In order to facilitate the transaction, the private keys for the wallet that Celsius used to fund the contract were transferred from Celsius to StakeHound, and in return StakeHound transferred stETH in the same number as the number of November 2020 Staked ETH (plus Rewards) to Celsius.  *Id.*  Because StakeHound did not have an account with Staked.us prior to November 2020, StakeHound opened an account with Staked.us in order to receive the transfer of the applicable nodes.  Declaration of Albert Castellana Lluis [ECF No. 43] ("Castellana Decl.") ¶ 25.  Celsius and StakeHound then asked Staked.us to assign the existing nodes for the November 2020 Staked ETH to StakeHound's account, admin@stakehound.com, such that StakeHound could assume access to the nodes funded by the November 2020 Staked ETH.  Staked.us proceeded to do so on or around January 26, 2021.[3]  Man Decl. ¶ 12, Ex. C.

StakeHound engaged directly with U.S.-based personnel to arrange for the direct, wallet-to-wallet transfer of the February 2021 Staked ETH to StakeHound in exchange for stETH.  *See* Nolan Decl. ¶¶ 10-12.  Mr. Castellana notes that the SSA did not govern the transfer of the

---

[3] Castellana claims in his declaration, with no support or explanation regarding the source his belief, that "to [his] knowledge" StakeHound's "*main* provider of validator nodes, Allnodes, does not host any of StakeHound's nodes in the U.S."  Castellana Decl. ¶ 12 (emphasis added).  Celsius has not yet been able to take discovery regarding this unsupported claim, but would note that two of the transactions at issue in this case involve Ethereum, and approximately 43% of the validator nodes for Ethereum are located in the United States.  *See* www.ethernodes.org/countries (last accessed September 6, 2023).

February 2021 Staked ETH. *Cf.* Castellana Decl. ¶ 30. While he claims that Celsius agreed to the StakeHound Services Terms and Conditions ("SSTC") with respect to that transfer, Mr. Castellana offers no evidence for his claim. *See id.* Celsius subsequently entered into the RSA with StakeHound setting forth the terms under which Celsius transferred native MATIC and DOT to StakeHound in April, 2021. Man Decl. ¶¶ 13-17.

StakeHound engaged in active business discussions with additional U.S.-based entities relating to its affairs with Celsius. For example, in October 2020, Mr. Castellana, through Mr. Stone, was introduced to Horizen Labs, Inc. ("Horizen Labs"). Nolan Decl. ¶ 8, Ex. B. Horizen Labs is a company with offices in Austin, Texas that designs web 3.0 tools that enable programmable blockchains. *Id.* StakeHound entered into a memorandum of understanding with Horizen Labs in March 2021, and a Token Listing Agreement with the related entity Zen Blockchain Foundation on January 7, 2021 pursuant to which StakeHound agreed to list stakedZEN on its platform. *See* Castellana Decl. ¶ 21. StakeHound additionally engaged with at least two other U.S.-based companies during the course of its dealing with Celsius, including Bison Trials and Totle, Inc. *See id.* And StakeHound created stTokens for deployment on "DeFi" platforms based or operating in the United States, such as Uniswap, which StakeHound identified in its terms and conditions as DeFi protocols in which its stTokens could be used, and which Celsius later utilized to deploy its stTokens. *See* Man Decl. Ex. B at Ex. B; Nolan Decl. ¶ 14.

## ARGUMENT

For a court to exercise specific personal jurisdiction, a person or entity must have sufficient "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *MF Global Holdings Ltd. v. Allied World Assurance Co. (In re MF Glob. Holdings Ltd.)*, 561 B.R. 608, 620 (Bankr. S.D.N.Y. 2016) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). Where, as here, a challenge is made

before the parties have engaged in discovery, "plaintiffs need only make a prima facie showing of personal jurisdiction over the defendant," *In re Motors Liquidation Co.*, 565 B.R. 275, 284 (Bankr. S.D.N.Y. 2017) (citation omitted), and a plaintiff may meet this burden by pleading good faith allegations sufficient to establish jurisdiction, *Broker Genius, Inc. v. Seat Scouts LLC,* No. 17-CV-8627 (SHS), 2019 WL 4054003, at *3 (S.D.N.Y. Aug. 27, 2019).

Specific personal jurisdiction over a foreign entity entails two inquiries. *First*, the court must "determine whether the defendant has the requisite minimum contacts with the United States at large," which "focuses on the affiliation between the forum and the underlying controversy." *In re Motors Liquidation Co.*, 565 B.R. at 286 (internal quotation marks and citations omitted). "Specific jurisdiction exists when the defendant purposefully directs his activities at residents of the forum and the underlying cause of action arises out of or relates to those activities." *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) (internal quotation marks and citation omitted). Sufficient contacts may be shown where "the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *In re Motors Liquidation Co.*, 565 B.R. at 286 (internal quotation marks and citations omitted). *Second*, if minimum contacts are shown, the court must determine whether exercising personal jurisdiction comports with traditional due process notions of fair play and substantial justice. *Id.* at 290. StakeHound's purposeful contacts with the United States satisfy both inquiries.

I.   **STAKEHOUND PURPOSEFULLY AVAILED ITSELF OF THE PRIVILEGE OF DOING BUSINESS IN THE UNITED STATES**

While not co-extensive with due process, the Court may look to New York's long-arm statute for guidance regarding the minimum contacts required for the exercise of personal jurisdiction. *See, e.g.*, *Official Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549

B.R. 56, 68 (S.D.N.Y. 2016) ("Although this is an adversary proceeding arising out of a chapter 11 bankruptcy reorganization, given the striking similarities between the analysis conducted under N.Y. C.P.L.R. § 302(a)(1) and constitutional due process, whether jurisdiction lies under § 302(a)(1) is particularly probative of the ultimate inquiry.").  Section 302(a)(1) of the New York Civil Practice Law and Rules ("<u>CPLR</u>") provides that "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." *In re MF Glob. Holdings*, 561 B.R. at 621.  Under this provision, "proof of one transaction, or a single act, in New York is sufficient to invoke long-arm jurisdiction, even though the defendant never enters New York." *Treeline Inv. Partners, LP v. Koren*, No. 07 CIV 1964 DLC, 2007 WL 1933860, at *3 (S.D.N.Y. July 3, 2007) (citation omitted).

That standard is easily satisfied here where StakeHound repeatedly engaged in business in the United States with respect to the claims at issue in this case, including opening an account in the United States specifically so that it could receive the initial November 2020 Staked ETH and repeatedly engaging with Celsius personnel in the United States for purposes of negotiating the SSA and RSA, and arranging the transfer of the tokens at issue in this action from Celsius to StakeHound.

A.      <u>StakeHound Transacted Business in the United States by Opening a
        Staked.us Account to Receive the November 2020 Staked ETH</u>

To assure itself of its jurisdiction over StakeHound, the Court need look no further than the declaration testimony StakeHound itself submitted in support of its Motion to Dismiss.  There, StakeHound's CEO Albert Castellana Lluis testified that in November 2020, StakeHound opened an account with Staked.us – a U.S.-based platform with offices in New York – so that it could receive the nodes associated with the November 2020 Staked ETH, and the transfer of those nodes

7

was effectuated through that U.S.-based platform. Castellana Decl. ¶ 25. By opening an account in the United States and effecting the transfer at issue in this action through that account in the United States, StakeHound has undoubtedly purposefully availed itself of the privilege of doing business in the United States such that it could foresee being haled into the courts of the United States. Mr. Castellana admits as much in his declaration, explaining that it was not StakeHound's standard practice to accept already staked tokens but that "seeing the opportunity to grow StakeHound's business" StakeHound decided to open an account with Staked.us in order to receive the transfer of the November 2020 Staked ETH. *Id.* ¶¶ 24, 25.

StakeHound's actions in opening an account in the United States and utilizing that account for the transfer from Celsius are analogous to well-established Second Circuit case law on the use of correspondent bank accounts to establish specific jurisdiction. *See, e.g.*, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) ("*Licci IV*"). In *Licci* , the foreign defendant's use of a New York correspondent account to execute wire transfers was sufficient purposeful conduct to constitute a transaction of business under CPLR § 302(a)(1) and fairly subject the foreign bank to personal jurisdiction. *Id.* at 165. In reaching this conclusion, the Second Circuit relied on the New York Court of Appeals's analysis regarding questions the Second Circuit had certified to that court with respect to the jurisdictional issue. *Id.* at 167.

The New York Court of Appeals held that the contacts at issue satisfied the doing business prong of the New York long-arm statute. *Licci v. Lebanese Can. Bank, SAL*, 20 N.Y.3d 327, 340-41 (2012) ("*Licci III*"). The court distinguished *Licci* from its prior decision in *Amigo Foods Corp. v. Marine Midland Bank-N.Y.*, 39 N.Y.2d 391 (1976), where it had found that the "mere maintenance" of a correspondent account in New York was not sufficient for personal jurisdiction. The court explained that *Amigo Foods* involved a defendant's passive and

unknowing receipt of funds in a New York correspondent account that the defendant had rejected upon receipt, which did not amount to purposeful availment. *Licci III*, 20 N.Y.3d at 337. The court noted, however, that purposeful availment "may be satisfied by the defendant's use of a correspondent bank account in New York, even if no other contacts between the defendant and New York can be established," so long as the "use of that account was purposeful." *Id.* at 338. The court further concluded that a claim arises from such contact with the forum so long as the use of the account "is not completely unmoored" from the claim, "regardless of the ultimate merits of the claim." *Id.* at 339.

The Southern District of New York applied that same reasoning to find it had personal jurisdiction over foreign banks that used correspondent accounts in the United States for receipt of three pre-petition investments from a foreign entity debtor – an Islamic Wholesale bank by the Central Bank of Bahrain headquartered in Bahrain – in an action seeking to recover those transfers. *Arcapita*, 549 B.R. at 60-62. The court explained that the foreign banks effectuated the investments by directing the transfers through New York accounts, which constituted sufficient minimum contacts with the forum, and that the causes of action for the avoidance of those transfers related to those contacts. *Id.* at 70-71. This Court reached a similar conclusion in *In re Motors Liquidation Co.*, holding that the defendant's selection of a correspondent bank account in New York for its receipt of payments in connection with a term loan purchased from JP Morgan Chase Bank, N.A. and the bank's payment of the disputed transactions in New York to the defendant's New York account satisfied the required purposeful availment for personal jurisdiction. 565 B.R. at 288-89.

StakeHound's actions in opening an account with a U.S. platform for receipt of the November 2020 Staked ETH and its receipt and retention of the nodes for the November 2020

Staked ETH through that account in the United States is sufficient purposeful conduct to constitute a transaction of business under CPLR § 302(a)(1), and Celsius' claims in this action indisputably arise from that business activity in the United States.[4]  *See, e.g.*, *In re Fairfield Sentry Ltd.*, 627 B.R. at 566 ("The 'arises out of or relates to those activities' prong may be satisfied when defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum.") (internal quotation marks and citation omitted).

StakeHound seeks to avoid the devastating effect of its own conduct on its personal jurisdiction challenge by arguing that its "use of the Staked.us platform resulted from Plaintiff's unilateral activity."[5]  *See* Mot. ¶ 31.  StakeHound claims that "[Celsius] unilaterally had determined to stake the Locked ETH with Staked.us prior to contracting with StakeHound, and in order to receive the transfer of the applicable nodes, StakeHound was required to open an account with Staked.us."  *Id.*  In other words, Defendant seeks to turn its voluntary decision to do business in the United States with a U.S.-based entity into a "unilateral" decision by Plaintiff over which it had no control.  Not so.

In *In re Arcapita Bank B.S.C.(C) ("Arcapita II")*, 640 B.R. 604 (S.D.N.Y. 2022), the court rejected an argument similar to that StakeHound makes here.  In that case, the defendant argued that its contacts with the United States were not purposeful because plaintiff chose to effectuate

---

[4] That Celsius Network Limited itself is a U.K. entity does not affect this analysis.  Indeed, both the foreign debtor entity at issue and defendants were foreign entities in the *Arcapita* case wherein a Southern District of New York court found that it had personal jurisdiction over foreign banks that used correspondent accounts in the United States for receipt of pre-petition transfers from the foreign entity debtor.  549 B.R. at 60-62; *see also Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, No. 12-CV-8852 (JMF), 2018 WL 922191, at *4-5 (S.D.N.Y. Feb. 15, 2018) (finding that foreign plaintiffs satisfied personal jurisdiction requirements against foreign defendants "their residencies notwithstanding" and that they were in "no different position, jurisdictionally speaking" from separate American plaintiffs and explaining that "[a] defendant's contacts with the relevant forum are not irrelevant . . . merely because they are directed at the forum 'generally' rather than the plaintiff specifically").

[5] StakeHound implies that Celsius somehow acted inappropriately in staking the November 2020 Staked ETH, but Celsius staked that ETH two months before the execution of the SSA, at a time when Celsius had an unequivocal right to do whatever it chose with its own property.

its investments in U.S. dollars. *Arcapita II*, 640 B.R. at 617. But the court found that the fact that plaintiff "wanted to invest in U.S. Dollars" did not render the defendant's contact with the forum a mere happenstance because defendant was "free to accept or reject the [plaintiff's] proposed terms." *Id.* at 617-18.

Similarly, in *Averbach v. Cairo Amman Bank*, No. 19-CV-0004-GHW-KHP, 2020 WL 486860 (S.D.N.Y. Jan. 21, 2020), *report and recommendation adopted*, 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020), the court explained that to demonstrate purposeful availment of the New York forum, the plaintiff need only show that defendant's use of a New York correspondent bank account was more than just "happenstance." *Id.* at *6. Purposeful availment of a New York correspondent bank account "does not require that the foreign bank itself direct the deposits, only that the bank affirmatively act on them." *Id.* (quoting *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 326 (2016)). And "[w]hen a foreign bank repeatedly approves deposits and the movement of funds through a correspondent account, it is transacting business; that the foreign bank did not initiate the transaction does not change the analysis." *Id.* at *7; *see also NIKE, Inc. v. Wu*, 349 F. Supp. 3d 346, 356 (S.D.N.Y. 2018) ("New York law is clear: a bank need not 'direct' that a customer use its correspondent account in order to be subject to personal jurisdiction in New York, as long as the establishment and maintenance of the account evinces a purposeful availment of New York as a place for conducting business."). The defendant's crediting of the funds in the correspondent account evinced a volitional and purposeful use of the account. *Averbach*, 2020 WL 4866860, at *7.

As in the foregoing cases, StakeHound was "free to accept or reject [Celsius'] proposed terms" for the transfer of the nodes for the November 2020 Staked ETH through Staked.us. StakeHound chose to open an account with and use Staked.us to obtain a significant benefit; a

benefit that formed the basis for its desire to partner with Celsius.  Thus, its use of Staked.us was more than just "happenstance."  Celsius did not direct StakeHound's use of Staked.us without its knowledge or consent, nor did StakeHound reject the transfer of the November 2020 Staked ETH nodes when they were received at that account.

To the contrary, StakeHound chose to affirmatively open an account in the United States to receive the nodes for the November 2020 Staked ETH, which it affirmatively accepted, because it wanted to seize the "opportunity to grow StakeHound's business."  Castellana Decl. ¶ 24. StakeHound admits that it was not its standard practice to accept already staked tokens, and that the transaction presented a difficult issue for StakeHound because "the withdrawal keys of these Locked ETH could not be modified," which meant that once the November 2020 ETH was unlocked, "Celsius would still have access to these (formerly) Locked ETH."  *Id.*  StakeHound worked closely with Celsius to solve this issue by "design[ing] a complex set-up using a third-party provider" (i.e. Staked.us).  *Id.* ¶¶ 24-25.  There was thus nothing "random, fortuitous, or attenuated" about StakeHound's opening and use of the staked.us account nor was that a "unilateral act" of a third-party.

StakeHound's voluntary and deliberate creation of its Staked.us account and receipt of the November 2020 Staked ETH nodes demonstrate conclusively that it purposefully availed itself of the privilege of doing business in the United States, and this one transaction of business in the United States is sufficient, in and of itself, to establish personal jurisdiction over StakeHound. *See, e.g.*, *Arcapita*, 549 B.R. at 65 n.12 ("Indeed, it has long been recognized that 'proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's [New York] activities were purposeful and there is a substantial relationship between the transaction and the claim asserted.'") (quoting *Chloe v.*

12

*Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010)).  Nevertheless, StakeHound also repeatedly transacted business in the United States by directing its activities at Celsius personnel in the United States for purposes of negotiating and executing the relevant agreements and staking transactions with Celsius.

> **B.**     **StakeHound Purposefully Directed Its Activities at Celsius Personnel in the United States**

In addition to opening a U.S. account to receive the November 2020 Staked ETH, StakeHound also repeatedly directed its activities to the United States for purposes of negotiating the relevant agreements with Celsius and securing and consummating the associated transfers.

It is undisputed that StakeHound directed its communications regarding the SSA (which was signed by Celsius' New York-based CEO), the RSA, and the transfers at issue in this case to U.S.-based personnel of Celsius and its affiliates.  StakeHound engaged in extensive negotiations and communications via phone calls and videoconferences with and emails and slack messages to U.S.-based Celsius personnel in the United States, including but not limited to Jason Stone, Jeremie Beaudry, Connor Nolan, Dean Tappen, Harumi Urata-Thompson, and Alex Mashinky. Nolan Decl. ¶ 6.  StakeHound communicated with Celsius personnel in the United States, including Mr. Stone, Ms. Urata-Thompson, Mr. Tappen, and Mr. Nolan, to facilitate and execute the specific transactions and transfers at issue in this case, which were authorized and executed on Celsius' end from New Jersey.  *Id.* at Ex. E (slack communications between StakeHound's Edgars Nemse and Albert Castellana and Celsius' U.S.-based Jason Stone, Harumi Urata-Thompson, and Connor Nolan regarding February 2021 ETH transfers in which Urata-Thompson authorizes and confirms the direct, wallet-to-wallet transfers of 35K ETH with Castellana, and Nolan executes and confirms the transfers with Edgars Nemse from StakeHound); Ex. C (email

13

chain among Urata-Thompson, Tappen, and Nolan of Celsius and Castellana and Edgars Nemse of StakeHound regarding the stETH provided in connection with the November 2020 staking).

Indeed, StakeHound's CEO Mr. Castellana admits in his declaration that he was initially connected with Celsius through Jason Stone, the U.S.-based CEO of Celsius KeyFi, a Delaware limited liability company.[6] Castellana Decl. ¶ 13; *see also* Man Decl. ¶ 7; Declaration of Mitchell P. Hurley, Ex. 28, *Celsius Network Limited, et al. v. Jason Stone, et al.*, Case No. 22-01139-mg (Bankr. S.D.N.Y. Aug. 23, 2022), [ECF No. 24] (October 5, 2020 Limited Liability Company Agreement of Celsius KeyFi LLC listing Jason Stone as the Chief Executive Officer and Member of Celsius KeyFi LLC, which is identified as a Delaware limited liability company with a principal office address in New Jersey). Mr. Castellana further admits that he communicated with Mr. Stone in exploring options to work with Celsius and that he negotiated the agreements and ETH staking transactions at issue with Mr. Stone. Castellana Decl. ¶¶ 16-19, 21. And StakeHound relied on Mr. Stone to introduce it to other U.S.-based "players in the crypto market" with which StakeHound explored further partnerships. *Id.* ¶ 21.

---

[6] While many of StakeHound's communications were directed to Mr. Stone in New York, some of the communications may have occurred after Mr. Stone moved temporarily to Puerto Rico in or around January 2021. *See* Nolan Decl. ¶ 6. Nevertheless, communications that StakeHound directed at Mr. Stone in Puerto Rico are just as salient to the personal jurisdiction analysis as those directed at New York. "In a Bankruptcy proceeding, the sovereign is the United States," so the personal jurisdiction inquiry looks at "whether the defendant has the requisite minimum contacts with the United States at large." *In re Motors Liquidation Co.*, 565 B.R. at 285. Communications and activities directed at Stone are therefore relevant whether he was in New York or Puerto Rico given Puerto Rico's status as a United States territory. *Cf., e.g.*, *Graceland v. Plutus Enters. LLC*, No. 8:21-CV-2356-VMC-CPT, 2022 WL 1212801, at *3-4 (M.D. Fla. Apr. 25, 2022) (applying RICO's nationwide service of process provision, which required the court to examine defendants' aggregate "contacts with the nation as a whole, as opposed to their contacts with the forum state" and finding sufficient contact with the United States as a whole based on defendant's residence in Puerto Rico); *Jones-Theophilious v. Avery (In re Jones)*, No. ADV 13-1502, 2015 WL 1544524, at *5 (B.A.P. 9th Cir. Apr. 7, 2015) (rejecting defendant's argument that bankruptcy court did not have personal jurisdiction over him because he was incarcerated in Puerto Rico and holding that bankruptcy court jurisdiction extends "nationwide," citing with approval 10 *Collier on Bankruptcy* ¶ 7004.05 (Alan N. Resnick and Henry J. Sommer, eds. 16th ed. 2014) explaining that "United States" would "presumably comprise every jurisdiction in which a district court is located, which includes Puerto Rico, Guam and the Virgin Islands"); 11 U.S.C. § 101 (55) (defining "United States" for purposes of the Bankruptcy Code "when used in a geographical sense, [as including] all locations where the judicial jurisdiction of the United States extends, including territories and possessions of the United States").

Through its extensive actions and communications directed at Celsius personnel located in the United States in negotiating and consummating the agreements and transactions at issue in this case, which were then performed at least in part in the United States and through a U.S.-based account, StakeHound purposefully projected itself into business transactions occurring within the United States.[7]  Celsius' claims in this case are primarily aimed at retrieving the assets transferred as a result of StakeHound's contacts with the forum, and therefore plainly arise out of and relate to those contacts.  *See, e.g.*, *Treeline Inv. Partners, LP v. Koren*, No. 07 CIV 1964 DLC, 2007 WL 1933860, at *4 (S.D.N.Y. July 3, 2007) ("Plaintiffs have sufficiently alleged that Koren has purposefully availed himself of the privilege of conducting business in the forum state.  The contracts at issue were negotiated between Koren's domicile and New York, during which Koren directed his business to New York by telephone, fax, and email, and through at least one visit to the state."); *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 358-59 (S.D.N.Y. 2007) (explaining that transacting business in the state "may consist of telephone calls or other communications directed into the state" and finding that communications via telephone, email, and fax with plaintiff who worked from home in New York were "sufficient to demonstrate purposeful transaction of business that has a substantial nexus to [p]laintiff's employment discrimination cause of action, within the meaning of section 302(a)(1)").

---

[7] StakeHound also retained counsel in New York, which further supports a finding of personal jurisdiction over StakeHound.  *Cf., e.g.*, *Schindler v. Lyon*, No. 12-CV-5928 JFB AKT, 2013 WL 4544263, at *6 (E.D.N.Y. Aug. 28, 2013) ("[A]fter carefully reviewing the totality of defendant's activities in New York—notably, defendant's hiring of a New York based attorney to perform services solely in New York, a substantial on-going attorney-client relationship regarding those New York services, and the wiring of money to a New York domiciliary as partial payment for those services—the Court finds that defendant purposefully availed himself of the privilege of conducting activities in New York."); *see also PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997). StakeHound claims it retained Locke Lord only "for purposes of representing StakeHound in these proceedings," but that is not accurate.  In fact, these proceedings had not even been commenced when Mr. Castellana directed a Celsius executive to contact StakeHound's counsel in New York, and the full scope and duration of StakeHound's relationship with U.S. counsel has yet to be disclosed.

StakeHound seeks to escape the legal effect of its repeated communications with Celsius personnel in the United States by characterizing those communications as Celsius' unilateral actions given that StakeHound "could not control the physical location of [Celsius'] personnel during their engagement."  Mot. ¶ 30.  But StakeHound misapprehends the case law regarding unilateral conduct.  *Walden v. Flores*, 571 U.S. 277 (2014), a case StakeHound cites, involved phone calls and letters from an attorney in the forum state to the defendant, to which the defendant never responded, and which the Court held were not sufficient to establish minimum contacts with the forum because the relationship must arise out of conduct that "the defendant *himself*" creates with the forum state.  *Id.* at 280-81, 284 (emphasis in original); *see also Fiore v. Walden*, 688 F.3d 558, 574 (9th Cir. 2012), *rev'd*, 571 U.S. 277 (2014) (explaining that the defendant had declared that he did not ever contact plaintiff's attorney or anyone else in the forum state).  Here, however, StakeHound's alleged communications with Celsius personnel in the United States are based on StakeHound's own actions, including phone calls, videoconferences, emails, and slack messages that StakeHound itself initiated and directed to Celsius personnel in the United States.  Moreover, "the relevant inquiry focuses not on whether the defendant's contacts are specifically targeted at a plaintiff in the forum, let alone on whether the defendant knows about the plaintiff's presence in the forum, but rather on whether a particular plaintiff's claims relate to the defendant's contacts with the forum."  *Atlantica Holdings, Inc.*, 2018 WL 922191, at *5.

StakeHound additionally spends the bulk of its Motion to Dismiss arguing that it has not directed its activities at the United States because its website[8] and social media posts make clear that it is a Swiss entity, its standard terms and conditions, which are available on its website, state that individuals in the United States may not use its staking platform, and it utilizes a KYC/AML

---

[8] StakeHound admits that its website, stakehound.com, is registered with Namecheap, Inc. located in Phoenix, Arizona, and its landing page is hosted on WPEngine, Inc. located in Austin Texas.  Castellana Decl. ¶ 12.

provider to confirm users from the United States are not using its staking platform.  Mot. ¶¶ 19-29.  But StakeHound's disclaimers and use of a KYC/AML service for its website do not immunize its actual conduct in repeatedly contacting Celsius personnel in the United States to negotiate agreements and negotiate and execute cryptocurrency transactions that were then performed at least in part in the United States and through a U.S.-based account from establishing minimum contacts with the United States for jurisdictional purposes.  This is particularly true where, as here, such conduct had nothing to do with StakeHound's website or its social media marketing.  To hold otherwise would allow defendants to use routine disclaimers to escape the reach of United States courts notwithstanding the extent of their contacts with the forum.  That is not the law.[9]

## II.    **EXERCISING PERSONAL JURISDICTION OVER STAKEHOUND COMPORTS WITH DUE PROCESS**

Where, as here, Celsius has made a *prima facie* showing that StakeHound has the requisite minimum contacts with the United States, due process is generally considered to be satisfied, and the defendant bears the burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) (citation omitted); *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 ("When purposeful availment has been satisfied, the burden shifts to the defendant to present a 'compelling case' that jurisdiction would be unreasonable under the circumstances.").

That burden is extraordinarily heavy, and examples of it being satisfied are virtually unheard of.  As the Second Circuit has observed,

---

[9] Moreover, the actual disclaimer StakeHound references is contained in SSTC, Mot. ¶¶ 9-11, and StakeHound has offered no evidence Celsius ever agreed to the SSTC with respect to the February 2021 Staked ETH transfers.

> We pause to note that, despite the fact that … personal jurisdiction permitted under the long-arm statute may theoretically be prohibited under due process analysis, we would expect such cases to be rare.  It would be unusual, indeed, if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1) and yet, in connection with the same transaction of business, the defendant cannot be found to have purposefully availed itself of the privilege of doing business in the forum and to have been able to foresee being haled into court there or the assertion of specific jurisdiction would somehow otherwise offend traditional notions of fair play and substantial justice.  Indeed, we have been pointed to no such decisions in this Circuit.

*Licci IV*, 732 F.3d at 170 (internal quotation marks and citations omitted); *see also Arcapita*, 549 B.R. at 70 ("In fact, to this Court's knowledge, no court has yet held that § 302(a)(1) confers jurisdiction, but that asserting such jurisdiction would nonetheless violate constitutional due process.").

StakeHound has not met the exceptional burden of making that showing here.  Courts consider the following factors when assessing whether the exercise of jurisdiction comports with traditional due process notions of fair play and substantial justice:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*In re Motors Liquidation Co.*, 565 B.R. at 287.  The weight of these factors tips decidedly in favor of the exercise of personal jurisdiction over StakeHound.

First, apart from the burden inherent to being a party in a lawsuit, StakeHound cannot demonstrate any unusual burden in defending itself in this proceeding.  *See, e.g.*, *Bank Brussels Lambert*, 305 F.3d at 129-30 ("Even if forcing the defendant to litigate in a forum relatively distant from its home … the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.") (internal quotation marks and citation omitted);

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec.,* LLC, 460 B.R. 106, 119 (Bankr. S.D.N.Y.

2011) (similar).   StakeHound has secured U.S. counsel, that U.S. counsel and StakeHound's

management have appeared at Zoom hearings before this Court, and StakeHound's Motion to

Dismiss fails to even allege any burden in being required to defend itself in this Court.   *See In re*

*Motors Liquidation Co.*, 565 B.R. at 290 ("The fact that [Austria-domiciled defendant] Immigon

will have to defend itself in a foreign legal system and foreign language is not dispositive[,]

otherwise a United States court could never constitutionally exercise jurisdiction over a non-US

entity.").

Second, "[t]his Court has a strong interest in adjudicating claims arising under the

Bankruptcy Code."   *Id.*   Third, Celsius, a chapter 11 debtor, has a strong interest in obtaining

convenient and cost-effective relief in this forum and before the same court administering its

bankruptcy estate.   Finally, the fourth and fifth factors, each of which consider principles of

comity, *see Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 115 (1987) (stating that,

in the international context, a court considers the procedural and substantive policies of other

nations whose interests are affected by the assertion of jurisdiction by the U.S. court) are neutral

at best and do not overcome Celsius' strong interest in obtaining convenient and efficient relief

in this Court.

StakeHound claims an exercise of jurisdiction would offend federal policy favoring

arbitration agreements or the laws of Switzerland.   But the arbitration clause – to the extent it is

even applicable to any of the claims at issue here – does not deprive this Court of personal

jurisdiction or overcome the compelling interests the other three factors place on exercising

jurisdiction.   *See, e.g.*, *In re MF Glob. Holdings*, 561 B.R. at 622 ("The fact that the insurance

policies contain arbitration clauses does not strip this Court of personal and subject matter

jurisdiction over this adversary proceeding."). Nor does the interest of Switzerland. Indeed, StakeHound has not submitted a declaration from a Swiss lawyer on this point and "does not [even] explain what that interest is or why it outweighs the factors favoring the exercise of jurisdiction in New York." *See In re Bernard L. Madoff Inv. Sec., LLC*, No. 1:22-cv-06561 (LGS), 2023 WL 395225, at *6 (S.D.N.Y. Jan. 25, 2023); *cf. also Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 100 (S.D.N.Y. 2015) ("With respect to the forum's interest in adjudicating the dispute, courts do not 'compare the interests of the sovereigns' but rather 'determine whether the forum state has an interest.'") (quoting *Nowak v. Tak How Inv., Ltd.*, 94 F.3d 708, 718 (1st Cir. 1996)).

As such, StakeHound has failed to establish the required "compelling case" that exercising jurisdiction would be unreasonable under the circumstances, and this Court may exercise jurisdiction over StakeHound consistent with due process. *See In re Fairfield Sentry Ltd.*, 627 B.R. at 568-69.

<u>**CONCLUSION**</u>

For the foregoing reasons, Celsius respectfully request that the Court deny StakeHound's Motion to Dismiss in its entirety and grant such other and further relief as the Court deems just and proper.

Dated:      September 8, 2023
            New York, New York

AKIN GUMP STRAUSS HAUER & FELD LLP

By:   */s/ Mitchell P. Hurley*
      Mitchell P. Hurley
      Dean L. Chapman Jr.
      One Bryant Park
      New York, New York 10036
      Telephone: (212) 872-1000
      Facsimile: (212) 872-1002

mhurley@akingump.com
dchapman@akingump.com

Elizabeth D. Scott (admitted *pro hac vice*)
Nicholas R. Lombardi (admitted *pro hac vice*)
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
edscott@akingump.com
nlombardi@akingump.com

*Special Litigation Counsel for Debtors and Plaintiff Celsius Network Limited*