**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,[1]<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>Jointly Administered |
| CELSIUS NETWORK LIMITED,<br>　　　　　　　　　Plaintiff<br>　　　v.<br>STAKEHOUND SA,<br>　　　　　　　　　Defendant | Adversary Proceeding<br>No. 23-01138 (MG) |

## SECOND DECLARATION OF ALBERT CASTELLANA LLUÍS

I, Albert Castellana Lluís, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am the Chief Executive Officer and a member of the Board of StakeHound S.A. ("***StakeHound***").

2. I submit this Second Declaration in further support of StakeHound's Objection to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 42] and Supplemental Objection [ECF No. 64] (the "***TRO/PI Objection***").[2]

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The Debtors' service address in these Chapter 11 Cases is 121 River Street, PH05, Hoboken, New Jersey (07030).

[2] Capitalized terms used but not defined herein shall have the meanings given such terms in the TRO/PI Objection.

3. As set forth herein and in my prior Declaration, I am familiar with and have personal knowledge of the factual issues raised by the TRO/PI Objection.

4. If called as a witness, I could and would testify competently to the truth of the facts set forth in this Second Declaration. The facts which I set forth are known to me personally except to the extent otherwise stated.

## I. StakeHound Will Suffer Significant Damages in the Event it is Wrongfully Restrained in its Use of its Assets.

5. In an effort to facilitate an early ruling on our Motion to Compel Arbitration and at the request of the Court, StakeHound has voluntarily refrained from selling Native Tokens or Staking Rewards since July 26, 2023. Over the forty-four (44) day period since that date (the "***Voluntary Freeze Period***"), StakeHound has been required to pay its ordinary course operating expenses solely from cash on hand. StakeHound's expenses over the Voluntary Freeze Period—which include ordinary operating expenses and also attorneys' fees and costs associated with pending litigation—have totaled $1,309,164, including (i) amounts already paid that total $773,249, comprised of $567,911 in legal costs and $205,338 in operational costs, and (ii) amounts currently due and owing that total $535,875, comprised of $428,725 in legal costs and $107,190 in operational costs. This voluntary standstill has depleted StakeHound's available cash, which totals $518,729.95 as of the date of this Second Declaration.

6. The temporary restraining order entered by the Court at ECF No. 59 (the "***TRO***") imposes a total freeze on StakeHound's use of its assets through the date of the hearing on September 27, 2023. Assuming that the Court does not rule on the parties' currently pending motions until a week after that date, StakeHound expects to have to spend an additional $774,354 through October 4, 2023. As is clear, the amount of StakeHound's expenses currently due and owing are well in excess of its available cash and the $200,000 carve-out provided by the TRO,

compromising StakeHound's ability to fund operating expenses and attorneys' fees both in the United States and Israel.

7. StakeHound will be gravely prejudiced by the inability to pay its operating expenses. In particular, StakeHound needs to maintain the validator nodes that support the Native Tokens and Staking Rewards, and must pay approx. $80,000 per month for that purpose representing the contract rate before discounts and rebates.[3] If it is unable to make those payments, StakeHound will be forced to unstake all unlocked ETH in order to avoid further loss in value of the ETH. This unstaking—the removal of the tokens from the blockchain—will prevent StakeHound from realizing upon the associated Staking Rewards in the approximate amount of $200,000 per month, which rewards have to date more than covered the costs of operating the nodes. Moreover, StakeHound cannot unstake the locked ETH for which Fireblocks lost the keys, which will result in those tokens first being slashed, and ultimately the related nodes will be removed from the validator pool, causing permanent damage in the revenue such nodes can generate in perpetuity, which is $90,000 per month at current prices.

8. StakeHound also needs to pay its attorneys, as the ongoing litigations prosecuted and defended by StakeHound are essential to maintaining our company's ability to continue as a going concern. We also expect that we will be required to make a supplemental court deposit in our pending litigation against Fireblocks in Israel. That deposit is expected to total in excess of $1.63 million. While the timing of this payment is uncertain, StakeHound believes that it could come due before the case might resume before a request for injunctive relief could be presented to the Swiss Arbitrator. If StakeHound is unable to pay its attorneys and cannot make payment for

---

[3] StakeHound is prohibited by the terms of a non-disclosure agreement from disclosing the amount of the applicable discounts and rebates in a public filing. StakeHound is willing to disclose these amounts to the Court *in camera*.

the deposit in Israel, it will be unable to pursue its claims against Fireblocks. The damages StakeHound alleges in the Fireblocks litigation total approximately $190 million.

9. Since the suspension of our platform, StakeHound is now primarily focused on prosecuting and defending the pending litigation, and recovering the substantial losses caused by Fireblocks for the benefit of StakeHound's users and shareholders. This does not mean that StakeHound has discontinued its business. While the platform has been suspended, StakeHound has been able to keep its business afloat for over a year generating revenue by staking the Native Tokens it owns and receiving Staking Rewards (of which it keeps a percentage after paying costs), the same business model it has operated since before the Fireblocks loss. StakeHound's staking activities include a number of action items including confirming that the nodes are operating properly, and that all rewards are being optimized and received. As of the date of this Declaration, StakeHound is managing 1,944 ETH validator nodes, and also managing 9 batches of MATIC, and delegating DOT to a node. We hope that a meaningful recovery from Fireblocks would position StakeHound to restore its platform, and to resume trading and exchange activities; conversely, the inability to maintain the current litigation threatens to diminish or destroy StakeHound's going concern value. Moreover, as we have stated in our papers, I believe that a recovery in the Fireblocks litigation would be a benefit to StakeHound and CNL alike, and that it is in neither party's interest to prevent StakeHound from pursuing its claims against Fireblocks in Israel.

10. StakeHound is pursuing litigation against Fireblocks with for the express purpose of recovering damages from the loss of the ETH, and with the hope that such recovery could permit the restoration of StakeHound's platform. During the period following the suspension of the platform, StakeHound has endeavored to preserve and maximize the value of its assets, and has

not disposed of Native Tokens or Staking Rewards other than to pay costs. Moreover, StakeHound has repeatedly and voluntarily committed to hold the bulk of the assets (*i.e.*, those not needed to pay ongoing expenses and attorneys' fees and costs) while the parties' disputes are decided. When the Plaintiff demanded exchange of its stTokens, Stakehound explained its position based on the plain language of the various agreements, which CNL has not, and cannot, dispute. By filing the Swiss arbitration, Stakehound sought to clarify the parties' obligations under the agreements, and it remains committed to doing so.

11. If StakeHound is wrongfully restrained from monetizing its own assets, including by the entry of a preliminary injunction that lasts through a ruling on the merits in this proceeding; that restraint would prevent StakeHound from paying key operating and litigation expenses. The failure to pay these obligations could ultimately lead to further loss of Staking Rewards, the eventual loss of the nodes, and, potentially, the inability to prosecute the claims against Fireblocks. These consequences pose meaningful risks of StakeHound's ongoing business and enterprise value being reduced or potentially destroyed. The damages from this chain of events would total no less than the $200,000 a month in lost Staking Rewards, but could also include a permanent loss of revenue associated with the nodes attributable to the lost ETH, which totals $90,000 a month at current value. In addition, StakeHound could also suffer the loss of the value of its $190 million claim against Fireblocks in Israel if StakeHound is unable to pay its legal bills and the associated court deposit.

12. We ask that, if StakeHound is to be restrained from monetizing its own property, the Plaintiff be required to post a bond in an amount sufficient to compensate and reimburse StakeHound from the damage that will result, including the loss of value to our business, in the event that it is ultimately determined that StakeHound has been wrongfully restrained. We also

ask for a carveout from the restraint to permit StakeHound to pay its ongoing operating expenses and attorneys' fees, both in the United States and Israel.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of September, 2023
Barcelona, Spain

> */s/ Albert Castellana Lluís*
> Albert Castellana Lluís
> Chief Executive Officer
> StakeHound S.A.