**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,[1]<br><br>    Debtors.<br><br>CELSIUS NETWORK LIMITED,<br>    Plaintiff<br>        v.<br>STAKEHOUND SA,<br>    Defendant | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>Jointly Administered<br><br>Adversary Proceeding<br>No. 23-01138 (MG) |

**DECLARATION OF BERNHARD BERGER
IN SUPPORT OF STAKEHOUND SA's OBJECTION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

I, Bernhard Berger, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.  I am a Swiss-qualified attorney-at-law and partner at Kellerhals Carrard, one of the largest Swiss business law firms where I co-head the arbitration practice group. My main area of practice is international arbitration and commercial litigation.

2.  I hold an LL.M. degree from Harvard Law School (2001) and a Ph.D. in law (Dr. iur.) from the University of Berne (2000). I obtained my law degree and admission to the bar in Switzerland in 1997. I have practiced law for over twenty years, including as chair, co-arbitrator, sole arbitrator, and counsel in more than 100 international arbitrations. I am currently the President of the Board of Directors of the Swiss Arbitration Centre. I have authored numerous articles, commentaries, and treatises in the fields of international arbitration, civil procedure, commercial and contract law, including comprehensive books on general contract

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The Debtors' service address in these Chapter 11 Cases is 121 River Street, PH05, Hoboken, New Jersey (07030).

134632768v.1

law (*Allgemeines Schuldrecht*, 3rd ed., 2018) and arbitration (*International and Domestic Arbitration in Switzerland*, 4th ed., 2021). A copy of my CV is attached as Exhibit A.

3. I submit this Declaration in support of StakeHound's (i) Objection to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, (ii) Supplemental Objection to Plaintiff's Motion for a Preliminary Injunction [ECF No. 64], and (iii) Reply in Further Support of StakeHound SA's Objection to Motion for Preliminary Injunction (collectively, the "**Objection**").

4. I have reviewed the following documents:

   a. The First Amended Complaint filed by CNL at ECF Number 31 ("**Amended Complaint**") [ECF No. 31];

   b. First Declaration of Felix Dasser [ECF No. 37] (the "**First Dasser Declaration**");

   c. CNL's Memorandum of Law in Support of Temporary Restraining Order and Preliminary Injunction [ECF No. 39];

   d. Second Declaration of Felix Dasser [ECF No. 51] (the "**Second Dasser Declaration**", and together with the First Dasser Declaration, the "**Dasser Declarations**");

   e. CNL's Reply Memorandum in Support of Motion for TRO [ECF No. 50];

   f. CNL's *Grupo Mexicano* Reply Brief [ECF No. 57]; and

   g. Order Granting Temporary Restraining Order [ECF No. 59].

5. I have been asked by Locke Lord, acting for StakeHound in the present proceedings, to provide an expert declaration on Swiss law in connection with the Objection, as well as the so-called equitable claims asserted in the Amended Complaint and the opinions of Swiss law submitted in the Dasser Declarations.

I. **Applicable law and arbitral jurisdiction**

6. I understand that the contracts between the parties as well as the StakeHound Services Terms and Conditions all contain a choice of law clause providing for the application

2

of the laws of Switzerland.[2] The contracts provide that they "shall be construed in accordance with the laws of Switzerland"; the Terms and Conditions state that they "shall be governed in all respects, including as to validity, interpretation and effect, by the laws of Switzerland."

7.      When parties have chosen Swiss law to govern their contractual relationship, this choice will in principle be interpreted as a comprehensive reference, *i.e.*, a reference by which the parties intended to capture not only the claims (directly) arising from the contract, but also any quasi-contractual claims (such as *culpa in contrahendo* claims) and any non-contractual claims that may arise in connection with the subject-matter of the contract (*e.g.*, related tort claims or claims for unjust enrichment). *See*, *e.g.*, Girsberger/Voser, International Arbitration – Comparative and Swiss Perspectives, 4th edn., 2021, para. 1358a.

8.      Furthermore, I understand that the contracts between StakeHound and CNL as well as the StakeHound Services Terms and Conditions all contain an arbitration clause providing for arbitration in accordance with the Swiss Rules of International Arbitration of the Swiss Chambers of Commerce.[3]

9.      Under the terms of the arbitration clauses, "[a]ny dispute, controversy or claim arising out of or in relation to this contract [respectively, these Terms and Conditions], including the validity, invalidity, breach or termination thereof," shall be settled before an arbitral tribunal seated in Geneva, Switzerland.

10.     Under Swiss law, broadly worded arbitration clauses covering "any dispute arising out of or in relation with" a contract will be interpreted broadly. The parties will be deemed to have intended to confer broad jurisdiction on the arbitral tribunal in the sense that all claims arising from the contract or affecting the subject-matter of the contract were intended

---

[2] Clause 9 of the Staking Services Agreement; Clause 9 of the Revenue Sharing Agreement; Clause 3 of the StakeHound Services Terms and Conditions.
[3] Clause 10 of the Staking Services Agreement; Clause 10 of the Revenue Sharing Agreement; Clause 3 of the StakeHound Services Terms and Conditions.

to be submitted to the exclusive jurisdiction of the arbitral tribunal. *See* Judgment of the Swiss Federal Supreme Court of 6 August 2012, 4A_119/2012, BGE 138 III 681 E. 4.4.

**II.     "Equitable" claims under Swiss law**

11.    In the Amended Complaint, CNL invokes certain "equitable claims." I understand these equitable claims to include:

    a.    Unjust enrichment;

    b.    Conversion and replevin;

    c.    Constructive trust; and

    d.    Accounting.

12.    The equitable claims do not appear to be pleaded under Swiss law.

13.    Switzerland is a civil law jurisdiction. The distinction between legal claims and equitable claims does not exist under Swiss law. The equitable claims presented by CNL are thus not convertible into corresponding Swiss law claims, *i.e.*, it is not clear what CNL claims under Swiss law. However, it is reasonable to believe that a Swiss court would consider such claims to be claims arising from the contracts or affecting the subject-matter of the contracts, if it determined that the claims were closely related to the contracts.

14.    Thus, a Swiss court is likely to consider that Swiss law is applicable to the so-called equitable claims (see para. 7 above).

15.    Even if the equitable claims were recognizable under Swiss law, they have not been sufficiently pleaded. CNL's submission does not contain the required factual and legal elements of a viable claim under Swiss law.

16.    Moreover, it is reasonable to believe that the so-called equitable claims fall within the exclusive jurisdiction of the agreed arbitral tribunal seated in Geneva, Switzerland (see para. 9 above).

**III.      Contract interpretation under Swiss law**

17.     Under Swiss law, in interpreting contractual provisions, a court must first seek to establish the common and true intention of the parties based on the evidence presented (so-called subjective or empirical interpretation; *see* Article 1(1) of the Swiss Code of Obligations ["**CO**"] and Article 18(1) CO). Only if this is not possible, the court shall interpret the contract according to the meaning that reasonable and loyal parties acting in good faith would have given to it in the same circumstances (so-called objective or normative interpretation). *See also* the First Dasser Declaration, paras. 4-6.

18.     The subjective method is the primary method of interpretation; the objective method is the secondary method. There is no room for the objective method of interpretation if the court (or arbitral tribunal) can ascertain the actual true and common intention of the Parties applying the subjective method of interpretation.

19.     Under both methods – subjective and objective – the starting point for the interpretive process is the text (wording) of the disputed contractual provision. The wording of the disputed clause is the primary indicator of the parties' actual intention (*see* Judgment of the Swiss Federal Supreme Court of 12 November 1991, BGE 117 II 609 E. 6c/bb) and, thus, serves as the primary means of interpretation under Swiss contract law. Only if the wording is unclear or ambiguous, additional means of interpretation (*e.g.*, the purpose of the contract, the interests of the parties, usages etc.) may have to be considered.

20.     In the First Dasser Declaration, at paras. 7 and 8, the author seems to imply that the wording of the disputed provision is only taken into account when applying the objective method of interpretation. As explained above (para. 19), this is not accurate. The wording is always the starting point and the primary indicator of the parties' actual intention.

21.     In the Second Dasser Declaration, at para. 8, Dasser states that "the duty to act in good faith [...] animates the interpretation of every contract under Swiss law". This statement

is accurate in the context of the (secondary) method of objective interpretation (*see* para. 17 above). However, under the (primary) method of subjective interpretation, there is no room for the application of the principle of good faith. Instead, under the subjective method, the court is simply required to assess whether the wording of the disputed provision (and, possibly, further means of interpretation) provides sufficient indication of the parties' actual intention or not.

**IV.**     **The duty to act in good faith and the prohibition of abuse of a right**

22.     Article 2 of the Swiss Civil Code ("**CC**") is headed "Acting in good faith" and reads as follows:

> [1] Every person must act in good faith in the exercise of his or her rights and in the performance of his or her obligations.
>
> [2] The manifest abuse of a right is not protected by law.

23.     Article 2 CC combines two related orders that are, however, distinct from each other: The duty to act in good faith (para. 1), on the one hand, and the prohibition of abuse of a right, on the other hand (*see* Hausheer/Aebi-Müller, Berner Kommentar zum schweizerischen Privatrecht, 2012, Art. 2 ZGB N 1). While the duty to act in good faith (para. 1) sets a general standard of conduct for the purpose of mutual legal ethical reliability and fairness (Hausheer/Aebi-Müller, *op. cit.*, Art. 2 ZGB N 31), the prohibition of abuse of rights (para. 2) sets a general limit on the exercise of rights by denying legal protection in case of a manifest abuse (Hausheer/Aebi-Müller, *op. cit.*, Art. 2 ZGB N 41).

24.     Article 2 para. 1 CC (duty to act in good faith) is the legal basis for the method of objective or normative interpretation of contract. Indeed, under this (secondary) method, the court shall interpret the disputed contractual provision according to the meaning that reasonable and loyal parties acting in good faith would have given to it in the same circumstances (*see* para. 17 above).

25. The purpose of Article 2 para. 2 CC (prohibition of abuse of rights), on the other hand, exceptionally allows the court to intervene and "correct" a contractual provision if its application, in the circumstances of the case, would result in a manifest abuse of rights (Hausheer/Aebi-Müller, *op. cit.*, Art. 2 ZGB N 58).

26. In the Second Dasser Declaration, at para. 7, the distinction between Article 2 para. 1 CC (duty to act in good faith) and Article 2 para. 2 CC (prohibition of abuse of rights) and the different function of the two concepts is not clearly drawn. In the context of contract *interpretation*, only Article 2 para. 1 CC is relevant, namely where it was impossible to ascertain the true and common intention of the parties and the court, therefore, must proceed to the objective (or normative) interpretation (*see* para. 17 above). For its part, Article 2 para. 2 CC may only become relevant in the context of contract *performance*: It may prevent a party from exercising a contractual right (which it has) if this would result in a manifest abuse of a right.

27. It is noteworthy in this context that the application of Article 2 para. 2 CC is subject to a strict standard. Article 2 para. 2 CC does not provide a basis to interfere with any provision that a court might find problematic. Rather, the court may intervene by corrective action only in cases of a "manifest" abuse of a right (Hausheer/Aebi-Müller, *op. cit.*, Art. 2 ZGB N 198).

28. Whether the threshold of a "manifest" abuse of a right is met must be determined with due regard to (i) the specific circumstances of the individual case, and (ii) the groups of cases (*Fallgruppen*) of abuse of rights developed in Swiss case law and legal writing (*see*, *e.g.*, Judgment of the Swiss Federal Supreme Court of 16 December 2008, 4A_319/2008, BGE 135 III 162 E. 3.3.1; on the recognized groups of cases of abusive conduct, *see* Hausheer/Aebi-Müller, *op. cit.*, 2012, Art. 2 ZGB N 198 *et seq.*).

7

I hereby solemnly declare that the foregoing is true and correct.

Executed on 15th day of September, 2023
Berne, Switzerland

_____
Bernhard Berger