**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,[1]<br><br>　　　　　　　　　Debtors.<br><br>CELSIUS NETWORK LIMITED,<br>　　　　　　　　　Plaintiff<br>　　　v.<br>STAKEHOUND SA,<br>　　　　　　　　　Defendant | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>Jointly Administered<br><br>Adversary Proceeding<br>No. 23-01138 (MG) |

## THIRD DECLARATION OF ALBERT CASTELLANA LLUÍS

　　I, Albert Castellana Lluís, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

　　1.　　I am the Chief Executive Officer and a member of the Board of StakeHound S.A. ("***StakeHound***").

　　2.　　I submit this Third Declaration in support of StakeHound's Reply (the "***Reply***") in support of its Motion to Compel Arbitration or, in the Alternative, for Abstention [ECF No. 46] (the "***Motion***").[2]

　　3.　　As set forth herein and in my prior Declaration, I am familiar with and have personal knowledge of the factual issues raised by the Reply and the Motion.

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The Debtors' service address in these Chapter 11 Cases is 121 River Street, PH05, Hoboken, New Jersey (07030).

[2] Capitalized terms used but not defined herein shall have the meanings given such terms in the Reply.

4.      If called as a witness, I could and would testify competently to the truth of the facts set forth in this Third Declaration. The facts which I set forth are known to me personally except to the extent otherwise stated.

## I. The Services Terms and Conditions Were at all Times an Applicable Agreement Governing StakeHound's Relationship with CNL

5.      I began negotiating the terms of StakeHound's relationship with CNL, through Jason Stone and Roni Pavon, in November 2020. At this stage, the parties began discussing the terms under which CNL would stake ETH and potentially other tokens. On November 16, 2020, at Mr. Pavon's request. I provided Mr. Pavon and Mr. Stone a copy of StakeHound's Services Terms and Conditions (the "*SSTC*"). The version of the SSTC provided at that time was substantially the same as the version later attached and incorporated by reference into both of StakeHound's other agreements with CNL—the SSA and the RSA. A true and correct copy of this email correspondence is attached hereto as **Exhibit A**.

6.      The SSTC defines "Services" as (i) sending Native Tokens as payment to StakeHound, which will upon receipt instantly mint and issue Staked Token(s) and operate the nodes, also clearly stating that "For the avoidance of doubt, the Company will have the ownership of the Native Token" and "at its sole discretion, can allocate part of the Reward to the User" and (ii) "buy[ing] upon availability Native Tokens with…Staked Token(s), at the same value in the equivalent crypto currency" (subject to all applicable terms and conditions, including satisfactory completion of KYC/AML due diligence). A true and correct copy of the SSTC is attached hereto as **Exhibit B**.

7.      Furthermore, the SSTC expressly says that "The Native Tokens or the Staked Tokens: (a) does not provide you with rights of any form with respect to the Company or its revenues or assets, including, but not limited to, any dividend, voting, distribution, redemption,

2

liquidation, proprietary (including all forms of intellectual property), or other financial or legal rights; (b) is not a loan to the Company; and (c) does not provide you with any ownership or other interest in the Company."

8. CNL began onboarding with StakeHound's compliance partner, Altcoinomy, on November 30, 2020. CNL completed the KYC/AML process and was approved by Altcoinomy on December 7, 2020. True and correct copies of the relevant email correspondence with Altcoinomy is attached hereto as **Exhibit C**. My understanding was that Altcoinomy requires users to consent to the SSTC as part of the onboarding process.

9. On December 21, 2020, StakeHound, through outside counsel, again provided CNL with a copy of the SSTC. A true and correct copy of the transmittal email is attached hereto as **Exhibit D**.

10. As I have testified before, the day before the effective date of the SSA, Yarden Noy, CNL's outside counsel and later Head of Regulation, proposed a new clause by which StakeHound would have granted CNL a "*first priority lien in and to the Assets.*" StakeHound rejected that change and the proposal was deleted from all further drafts and the executed version of the SSA. StakeHound indicated that it would only conclude the SSA if it retained sole ownership of the Locked ETH, for the reasons explained to CNL. CNL then expressly accepted that StakeHound would be the sole owner of the Locked ETH. The parties' agreement on this point is reflected in the explicit wording of the SSA, which provides in Clause 1.3 that "*StakeHound will have the legal ownership of those Locked ETH.*"

11. The parties executed the SSA effective January 20, 2021. As noted in my prior declaration, *see* ECF No. 43 at ¶ 24, the purpose of the SSA was to define the terms under which StakeHound would accept the Locked ETH tokens previously staked by CNL in exchange for

3

issuing stETH, and the mechanism for transferring the Locked ETH, as it was not StakeHound's standard practice to accept tokens that were already staked. Furthermore, the SSA expressly incorporated the SSTC because StakeHound considered and intended for *all* transactions to be covered by the SSTC, including the use of the stTokens, StakeHound's ability to suspend the platform, and all risks associated with these transactions. *See* SSA § 1.1.

12. Section 8.2 of the SSA, titled "Notices," states that notices or communications required to be given to CNL under that agreement needed to be delivered to two people: Mr. Pavon and Ms. Urata-Thompson. *See* SSA § 8.2.

13. On January 21, 2021, Jason Stone requested that Staked.us transfer CNL's account to StakeHound for purposes of transferring the Locked ETH. As I have previously testified, prior to November 2020, when CNL initiated the transfer of the Locked ETH to StakeHound, StakeHound did not have an account with Staked.us. Because CNL had on their own determined to stake the Locked ETH with Staked.us, in order to receive the transfer of the applicable nodes, StakeHound was required to open an account with Staked.us. Thereafter, on January 23, 2021, StakeHound minted and provided to CNL a number of stETH corresponding to the number of Locked ETH. True and correct copies of the relevant correspondence are attached hereto as **Exhibit E**.

14. At all times during and following the negotiation of the SSA, it was the intention of the parties that StakeHound's relationship with CNL would extend beyond the SSA and the transfer of the Locked ETH. For example, following the completion of the transfer of initial transfer of the Locked ETH, on January 22, 2021, I received an email from Ms. Urata-Thompson, CFO of Celsius, who we understood to be acting on behalf of CNL, in which she informed me that she was "one of the two authorized personnel **as per agreement**" and that CNL "would like to

4

initiate creating stETH and start staking." In subsequent conversations with Mr. Pavon on January 22 and again on January 25, 2021, Mr. Pavon informed me that he and Ms. Urata-Thompson were the only people in the CNL organization authorized to direct StakeHound under "**the agreement**," which applied to both the NDA and "the business relationship." I understood Ms. Urata-Thompson's and Mr. Pavon's references to the "agreement" to mean the SSA and SSTC because they were the two people authorized under Section 8.2 to receive notices for Celsius. And on January 24, 2021, I received a WhatsApp message from Jason Stone in which he stated "We need more stETH issued ASAP." True and correct copies of the relevant correspondence are attached hereto as **Exhibit F**.

15. On February 1, 2021, Fernando Dreyfus created a Slack channel titled "#authorizations-celsius-StakeHound." The purpose of the channel, according to Ms. Urata-Thompson, was to "talk about staking ETH" once again stating that she and Roni were "the only authorized personnel" to do so. On February 2, 2021, Ms. Urata-Thompson wrote that the Slack channel was "the one and only channel to do this business…under [her] direct command, there [would] be people on the coin deployment desk that will be touching the coins." Subsequently, Jason Stone messaged the channel requesting two separate mintings of stETH following an exchange of a total of 35,000 ETH, to be sent to two separate addresses. On February 3, 2021, Connor Nolan, on behalf of CNL, confirmed that the 35,000 ETH had been sent to StakeHound, at which time StakeHound completed the minting of the corresponding stETH and sent the same to CNL. True and correct copies of the relevant correspondence are attached hereto as **Exhibit G**.

16. In subsequent correspondence, I made clear to CNL that the SSTC apply to all coin exchanges with StakeHound. On September 1, 2021, I received an email from Ron Sabo in which he requested to "redeem [CNL's] stZEN holdings." In response, I clarified that twice that

5

23-01138-mg    Doc 71    Filed 09/15/23    Entered 09/15/23 16:30:44    Main Document
Pg 6 of 6

"***according to StakeHound's terms and conditions*** this is not a redemption, but a trade of stZEN for ZEN" and "***our agreements*** make clear that there is no right of redemption." In response, Mr. Sabo said "thanks for the clarification…we would like to proceed with the purchase of ZEN vs stZEN based on a 1:1 price." A true and correct copy of this email is attached hereto as **Exhibit H**.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of September, 2023
Barcelona, Spain                                              */s/ Albert Castellana Lluís*
                                                              Albert Castellana Lluís
                                                              Chief Executive Officer
                                                              StakeHound S.A.