Mitchell P. Hurley
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
mhurley@akingump.com
dchapman@akingump.com

Elizabeth D. Scott (admitted *pro hac vice*)
Nicholas R. Lombardi (admitted *pro hac vice*)
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
edscott@akingump.com
nlombardi@akingump.com

*Special Litigation Counsel for Debtors
and Plaintiff Celsius Network Limited*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*, | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |
| CELSIUS NETWORK LIMITED, | |
| Plaintiff, | Adversary Proceeding |
| v. | No. 23-01138 (MG) |
| STAKEHOUND SA, | |
| Defendant. | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
<u>PRELIMINARY INJUNCTION</u>**

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

I.    Celsius Will Suffer Irreparable Harm Absent an Injunction ................................................2

II.    The Merits of Celsius' Claims Are More Than Sufficient To Warrant An Injunction ........................................................................................................................3

       A.    StakeHound's Unsupported Choice of Law Argument Fails ...................3

       B.    Each of Celsius' Claims Are Fair Grounds For Litigation .......................4

III.    StakeHound Is Not Entitled To A Bond Or "Carve Out" ..................................................9

CONCLUSION ................................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Arcapita Bank B.S.C.(c)*,
  628 B.R. 414 (Bankr. S.D.N.Y. 2021) ................................................................................6

*Arch Ins. Co. v. Sierra Equip. Rental, Inc*
  No. CIV S-12-0617 KJM, 2012 WL 5897327 (E.D. Cal. Nov. 13, 2012) ...........................7

*Bank Cap. Servs. LLC v. Chef's Depot Inc.*,
  No. 19 CV 1469 (VB), 2019 WL 7291240 (S.D.N.Y. Dec. 30, 2019) .................................7

*Celsius Network Limited v. Stone*,
  Case No. 22-01139-mg (Bankr. S.D.N.Y. Aug 23, 2022), ECF No. 76 ................................2

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
  598 F.3d 30 (2d Cir. 2010) ....................................................................................................2

*Enter. Warehousing Sols., Inc. v. Cap. One Servs., Inc.*,
  No. 01 C 7725, 2002 WL 406976 (N.D. Ill. Mar. 15, 2002) .................................................6

*In re Freckles, Ltd.*,
  60 B.R. 6, 7 (Bankr. E.D.N.Y. 1986) ...................................................................................9

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*,
  527 U.S. 308 (1999) ..............................................................................................................3

*In re Hellas Telecomms. (Luxembourg) II SCA*,
  535 B.R. 543 (Bankr. S.D.N.Y. 2015) ..................................................................................4

*In re Highland Cap. Mgmt. L.P.*,
  No. 19-34054-SGJ-11, 2021 WL 7541482, at *4 (Bankr. N.D. Tex. July 14,
  2021), *report and recommendation adopted*, No. 3:21-CV-1378-N, 2021 WL
  7540340 (N.D. Tex. July 26, 2021), *reconsideration denied sub nom.
  Highland Cap. Mgmt., L.P. v. Highland Cap. Mgmt. Servs., Inc.*, No. 3:21-
  CV-1378-N, 2021 WL 7540296 ............................................................................................5

*Hoffman v. Conn. (In re Willington Convalescent Home, Inc.)*,
  850 F.2d 50 (2d Cir. 1988), *aff'd sub nom. Hoffman v. Connecticut Dep't of
  Income Maint.*, 492 U.S. 96 (1989) .......................................................................................5

*Hughes v. BCI Int'l Holdings, Inc.*,
  452 F. Supp. 2d 290 (S.D.N.Y. 2006) ...................................................................................7

*KDH Consulting Group LLC v. Iterative Capital Mgmt. L.P.*,
  No. 20 CIV. 3274 (VM), 2020 WL 2554382 (S.D.N.Y. May 20, 2020)..................................2

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  672 F.3d 155 (2d Cir. 2012)..................................................................................................4

*Monroe Staffing Serv's, LLC v. Whitaker*,
  2023 WL 4285292 (S.D.N.Y. June 9, 2023) .........................................................................4

*Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance
  Co., Inc.*,
  239 F. Supp. 3d 761 (S.D.N.Y. 2017)...................................................................................8

*In re Netia Holdings S.A.*,
  278 B.R. 344 (Bankr. S.D.N.Y. 2002 (Gerber, J.)................................................................2

*Silverman v. Payward, Inc.*,
  No. 19-CV-2997(JSR), 2019 WL 3242347 (S.D.N.Y. June 24, 2019) .................................8

*Slidell, Inc. v. Millennium Inorganic Chemicals, Inc.*,
  2002 WL 649086 (D. Minn. Apr. 17, 2002) ..........................................................................7

*In re UAL Corp.*,
  412 F.3d 775 (7th Cir. 2005) ...............................................................................................10

*Wells Fargo Bank, Nat'l Ass'n v. Leafs Hockey Club, Inc.*,
  No. 13 C 2247, 2014 WL 3855318 (N.D. Ill. July 31, 2014) ................................................6

*Winklevoss Cap. Fund, LLC v. Shrem*,
  351 F. Supp. 3d 710 (S.D.N.Y. 2019).............................................................................7, 8

**Statutes**

11 U.S.C. § 542................................................................................................................................4

11 U.S.C. § 542(b) .....................................................................................................................5, 6

**Rules**

Fed. R. Civ. P. 4(f)(3) ...................................................................................................................10

Fed R. Civ. P. 65(c) ........................................................................................................................8

**PRELIMINARY STATEMENT**

StakeHound[1] has no serious defenses to Celsius' turnover and other claims relating to its wrongful retention of MATIC, DOT and ETH coins provided to it by Celsius. Indeed, StakeHound never has offered *any excuse* for withholding the MATIC and DOT, and its so-called "justification" for retaining the ETH is a fantasy. According to StakeHound, because it or its agent (Fireblocks) lost 35,000 ETH provided to StakeHound by Celsius (plus rewards), StakeHound gets to keep the 25,000 ETH (plus rewards) that Celsius provided in January, 2021. And StakeHound now argues it is *never* required to allow Celsius access to its ETH, turning StakeHound's putative right to "temporarily" suspend ETH withdrawals into a permanent financial windfall for itself and its founders. Celsius seeks a freezing injunction to ensure that when StakeHound's frivolous positions are finally swept away, StakeHound will not have further dissipated its already grossly deficient assets – virtually all of which were provided to it by Celsius – thus further undermining Celsius ability to obtain a remedy in this action.

In its Objection, StakeHound seeks "carve-outs" from the injunction to permit StakeHound to pay its lawyers, primarily for fees incurred litigating directly against Celsius. StakeHound's demand is counter to settled law, and should be rejected, particularly in light of StakeHound's aggressive and contemptuous litigation tactics in this matter. *See infra.* n. 27.. Nor has StakeHound provided proof sufficient to justify carve-outs for so-called "business expenses" – which it does not identify – or its costs in pursuing claims against Fireblocks in Israel – which it does not specifically quantify, or seek coherently to justify. Indeed, StakeHound does not identify a single alleged deadline for payment of any putative expense, much less one that is imminent and

---

[1] Capitalized terms undefined herein have the meaning ascribed in Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. ("Mot.") [ECF No. 34].

1

would result in cognizable harm to StakeHound if not immediately paid. Celsius respectfully submits its proposed injunction should be entered without modification.[2]

## ARGUMENT

### I. Celsius Will Suffer Irreparable Harm Absent an Injunction

"It is well established, at least in this district, that the dissipation of the finite resources of an insolvent estate constitutes irreparable injury." *In re Netia Holdings S.A.*, 278 B.R. 344 (Bankr. S.D.N.Y. 2002 (Gerber, J.). Here, by its own account, StakeHound lacks adequate "Eths" to satisfy its customers claims. *See* ECF No. 10–9 at (the "Arbitration Demand") at 13–14, ¶ 28. Indeed, StakeHound's liabilities exceed its assets by at least $70 million, which "is the essence" of balance-sheet insolvency, and "more than sufficient to support" Celsius' motion.[3] StakeHound also admits to cash-flow insolvency, claiming in its sworn declaration that it cannot pay its legal bills unless StakeHound sells some of the very assets Celsius seeks to recover in this proceeding.[4] Similarly, and as the Court has found already, StakeHound's own words demonstrate it will dissipate assets

---

[2] Notably, were StakeHound ever to actually demonstrate to Celsius that expenditures are necessary and appropriate to preserve and maximize the value of assets currently in StakeHound's control, it would be in Celsius' interest to consent. The injunction order proposed by Celsius includes a mechanism for such requests. Celsius has managed a similar notice and objection provision in the *Stone* TRO for nearly eight months with minimal need for Court intervention, *See Celsius Network Limited v. Stone*, Case No. 22-01139-mg (Bankr. S.D.N.Y. Aug 23, 2022), ECF No. 76 (the "Stone TRO"). Celsius will similarly engage in good faith with any requests that StakeHound may make here if the proposed order is entered.

[3] TRO at 8–9. StakeHound argues that Celsius cannot sufficiently demonstrate insolvency without first obtaining judgment on its claims, *see* [ECF No. 64] (the "Objection" or "Obj.") ¶ 34, but of course that is not the standard on a motion for a preliminary injunction. *See Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) ("The very purpose of an injunction is to give temporary relief based on a preliminary estimate of the strength of plaintiff's suit, *prior* to the resolution … of the factual disputes and difficulties presented by the case."). Next, StakeHound alleges "the value of StakeHound's claim against Fireblocks" should be factored into the insolvency equation, but StakeHound does not bother even to identify, much less attempt to support, the supposed value of that claim. Obj. ¶ 35. Finally, StakeHound cites to *KDH Consulting Group LLC v. Iterative Capital Mgmt. L.P.*, No. 20 CIV. 3274 (VM), 2020 WL 2554382 (S.D.N.Y. May 20, 2020) to support its argument that Celsius has not shown that StakeHound is insolvent, but in that case "the evidence for [insolvency was] scant." Here in contrast, StakeHound's own sworn statements demonstrate its insolvency.

[4] Castellana Decl. [ECF No. 65] ¶¶ 5–8 (tacitly acknowledging the "carve out" from the TRO is sufficient to pay to operate the nodes for the staked coins, but complaining it would need to sell Celsius' tokens to pay its legal bills, primarily bills StakeHound has incurred through its scorched earth litigation against Celsius itself).

2

absent an injunction.[5]  And as a result of StakeHound's insolvency, any "assets dissipated will irreparably harm Celsius, in that every dollar spent is a dollar Celsius cannot recover."[6]

## II. The Merits of Celsius' Claims Are More Than Sufficient To Warrant An Injunction

"The equities weigh decidedly in favor of Celsius."  TRO at 10.  Hence, under settled law, the "merits" requirement for an injunction is met as long as at least one of Celsius' claims presents "sufficiently serious questions going to the merits to make them a fair ground for litigation." *Id.* at 4 (citing *Citigroup*, 598 F.3d at 35).  All of Celsius' claims meet this test.

### A. StakeHound's Unsupported Choice of Law Argument Fails

StakeHound again argues halfheartedly for application of Swiss law to Celsius' equitable claims.  Once again, however, "StakeHound does not claim, much less seek to establish, a conflict between the two jurisdictions laws regarding Celsius' claims."  *See* TRO at 7.[7]  Therefore "the Court [should] apply New York law."  *Id.* (citing *Bass v. World Wrestling Fed'n Ent., Inc.,* 129 F. Supp. 2d 491, 504 (E.D.N.Y. 2001) ("Because Defendants have not articulated a meaningful conflict … this court could apply New York law without further inquiry.") (other citations omitted).

---

[5] See TRO at 10.  StakeHound doubles down on dissipation in its most recent filing. For example, StakeHound's CEO Albert Castellana promises to spend Subject Property to pay existing debts (mainly to law firms) of more than $535,000, and to incur and pay another nearly $775,000 in legal fees in the next three weeks alone (through October 4).  Those sums do not even include another $1.63 million of Subject Property StakeHound apparently wants to pay to a Court in Israel (and may forfeit) in connection with pursuing claims it has yet even to try to value. *See* [ECF No. 65] ¶¶ 6–8.  In other words, absent an injunction, StakeHound plans to dissipate as much as 5% or more of the value of Celsius' November 2020 Staked ETH in just the next few weeks alone, at a rate that would burn through all of that ETH before this case can be resolved on any reasonable schedule.

[6] TRO at 9.  In its objection, StakeHound reheats arguments based on *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund,* 527 U.S. 308 (1999), that already have been thoroughly briefed by the parties, and rejected by the Court. *See* TRO at 6. Celsius incorporates by reference its prior briefs explaining why *Grupo Mexicano* does not apply here. *See* Celsius' Supplemental Brief in Further Supp. of TRO and Preliminary Injunction [ECF No. 54] Celsius' *Grupo Mexicano* Reply Brief [ECF No. 57] at 3–4 (same).

[7] Obj. ¶ 16 (asserting, without a Swiss law declaration or any other support, that "[a] Swiss court analyzing CNL's equitable claims would not grant any relief to CNL on these claims as pled.")

If StakeHound had shown a conflicts analysis is necessary (it has not), New York law would apply.[8] The "interest analysis" used by Courts in New York provides a "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157–58 (2d Cir. 2012). Switzerland's sole connection to this dispute is as the place of StakeHound's incorporation. But that factor never is sufficient by itself, especially where, like here, StakeHound's only connection to Switzerland is its registration there. *In re Hellas Telecomms. (Luxembourg) II SCA*, 535 B.R. 543, 576 (Bankr. S.D.N.Y. 2015). Here, StakeHound's founder and CEO is located in Spain, and StakeHound does not claim ever to have carried out any operations or activities in Switzerland of any kind. By contrast, a significant amount of activity underlying the conduct at issue is connected with New York. The parties had New York accounts with staked.us; the parties effected the SSA via staked.us in New York; most Celsius personnel who negotiated with StakeHound were in New York; the SSA was executed in New York; and Celsius' bankruptcy proceeding is in New York.

**B.    Each of Celsius' Claims Are Fair Grounds For Litigation[9]**

**Turnover**. In its prior submissions, Celsius demonstrated that StakeHound's obligation to transfer all of the MATIC, DOT and ETH is fully matured and unconditional, and subject to

---

[8] As a preliminary matter, the choice of law clauses in the RSA and SSA are not broad enough to require application of Swiss law to Celsius' extra-contractual claims, as StakeHound tacitly admits. And if the SSCT were sufficiently broad to require a different result, by definition it would not apply. *See* SSA § 1.1; RSA § 2.1. But it is not broad enough. The SSCT provides only that Swiss law "governs" the "Terms and Conditions," not any claims "arising from" or "relating to" the terms of conditions. According to *Monroe Staffing Serv's, LLC v. Whitaker*, 2023 WL 4285292 (S.D.N.Y. June 9, 2023), the only case cited by StakeHound, the SSCT clause is **not** broad enough to cover extra-contractual claims. *Id.* at *11-12 (holding that "provisions applying to disputes 'arising out of' or 'relating to' a contract" are broad enough to reach extra-contractual claims "while provisions stating that a contract will be 'governed by' or 'construed in accordance with' the law of a state are not.") (citations omitted).

[9] Celsius provides further argument concerning only those claims to which StakeHound raised new challenges in its Objection.

4

turnover under Section 542. *See, e.g.,* ECF No. 57, at 16-18; ECF No. 39, at 17–18. Among other things, Celsius has identified the existence and amount of StakeHound's debts, and StakeHound admits Celsius demanded payment.[10] Concerning the MATIC and DOT, StakeHound is not permitted to suspend Celsius' right to redemption even temporarily, and, in any case, StakeHound does not offer even a pretext for doing so. RSA § 2.7 (providing that Celsius exchange right "***shall be available to [Celsius] at any time (subject to applicable processing time of such exchange)***").[11] Regarding the ETH, StakeHound's putative right to suspend redemptions expressly is "temporary," but its suspension has continued for more than two years, and StakeHound now threatens to make it permanent.[12] This is not the kind of "legitimate dispute" that could interfere with Celsius' turnover rights.[13]

Stymied, StakeHound's invents a new argument in its Objection, claiming that its obligation to return Celsius' assets is subject to Celsius clearing a KYC/AML process.[14] According to the SSCT, however, customers are required to provide KYC/AML "information and documents" specifically "request[ed]" and identified by StakeHound as "necessary or appropriate." Here it is

---

[10] *See* ECF No. 62 (Celsius' Opposition to Arbitration) at 13-18; ECF No. 39 (Celsius' TRO Motion) at 17-18.

[11] StakeHound claims the SSCT allows for a temporary suspension of MATIC and DOT but ignores that the terms of the RSA expressly prevail over any conflict with the SSCT. RSA § 2.1.

[12] According to Castellana, he will only ever provide access to Celsius to its ETH ***if*** StakeHound prevails in its litigation against Fireblocks. ECF No. 54 (Second Castellana Decl.) at ¶ 10 ("StakeHound is pursuing litigation against Fireblocks . . . with the hope that such recovery ***could*** permit the restoration of StakeHound's platform.") (emphasis added).

[13] *See, e.g., Hoffman v. Conn. (In re Willington Convalescent Home, Inc.)*, 850 F.2d 50, 52 n.2 (2d Cir. 1988), *aff'd sub nom. Hoffman v. Connecticut Dep't of Income Maint.*, 492 U.S. 96 (1989) ("The mere fact that Connecticut denies that it owes the matured debt … does not take the trustee's action outside the scope of section 542(b).") (alterations in original omitted); *see also In re Highland Cap. Mgmt. L.P.,* No. 19-34054-SGJ-11, 2021 WL 7541482, at *4 (Bankr. N.D. Tex. July 14, 2021), *report and recommendation adopted*, No. 3:21-CV-1378-N, 2021 WL 7540340 (N.D. Tex. July 26, 2021), *reconsideration denied sub nom. Highland Cap. Mgmt., L.P. v. Highland Cap. Mgmt. Servs., Inc.*, No. 3:21-CV-1378-N, 2021 WL 7540296 (N.D. Tex. Dec. 7, 2021) ('Matured' refers to 'debts that are presently payable, as opposed to those that are contingent and become payable only upon the occurrence of a certain act or event. … The presence of a dispute does not preclude a debt from being matured," and therefor subject to turnover).

[14] ECF No. 64 (StakeHound Objection) at ¶ 29.

5

undisputed that StakeHound completely ignored Celsius' demand for the return of both the MATIC and DOT, and never "request[ed]" any KYC "information and documents" of any kind.[15] This new supposed "condition" is an obvious pretext. In any event, the need to take a perfunctory step to exchange tokens does not change the fact that debts are matured within the meaning of Section 542(b). *See In re Arcapita Bank B.S.C.(c)*, 628 B.R. 414, 478 (Bankr. S.D.N.Y. 2021) (debts are mature when there is "no legitimate dispute" about the amount owed or date payable).

**Accounting**. According to StakeHound, Celsius accounting claim cannot be sustained because not every detail concerning the complicated nature of the account at issue is included in the complaint.[16] But the federal rules do not require a plaintiff to plead every fact relevant to its claim, as long as it includes the requisite "short and plain statement." *See*, *e.g.*, *Wells Fargo Bank, Nat'l Ass'n v. Leafs Hockey Club, Inc.*, No. 13 C 2247, 2014 WL 3855318, at *4 (N.D. Ill. July 31, 2014) (accounting claim was sufficiently alleged by stating right to relief above the speculative level). Celsius' Amended Complaint includes more than sufficient allegations concerning the complexity of the parties' relationship and accounts to meet that standard.[17] The inquiry upon which StakeHound insists, in contrast, "is more appropriate after commencement of discovery and

---

[15] Under the SSTC, a user shall "provide to [StakeHound], or to its KYC/AML provider, ***immediately upon request***, information and documents that [StakeHound], in [its] sole discretion, deems necessary or appropriate in order to maintain compliance with any federal, state, local, domestic or foreign law, regulation or policy, including any 'Know Your Customer' requirements and policies or any judicial process." SSTC Representations and Warranties, clause (n) (emphasis added).

[16] *See* ECF No. 64 (StakeHound Reply) ¶ 20.

[17] For example, Celsius has alleged that the tokens at issue were "staked" by StakeHound, which is itself a complex arrangement in which native tokens are used to validate transactions on associated blockchains to accrue interests, fees, and other rewards. *See* ECF No. 31 (Amended Compl.) ¶¶ 28-41. The complexity of this arrangement is reflected by the contracts governing its terms—for example, the SSA alone requires a 15-page single-spaced attachment to show the various nodes on which the November 2020 Staked ETH was staked. *See* ECF No. 40-2 (SSA), Ex. A. Indeed, the underlying transactions effectuating the transfers of Celsius' tokens to StakeHound involved multiple contracts, various third parties (including Altcoinomy, Chainalysis, Staked.us and Fireblocks) and multiple regulators. *See* ECF No. 31 (Amended Compl.) ¶¶ 28-43. This is hardly comparable to the investment account analogy that StakeHound attempts to draw in its Objection. *See* ECF No. 64 (StakeHound Reply) at ¶ 21.

upon filing of summary judgment motions." *See, e.g., Enter. Warehousing Sols., Inc. v. Cap. One Servs., Inc.*, No. 01 C 7725, 2002 WL 406976, at *5 (N.D. Ill. Mar. 15, 2002).

**Specific Performance**. StakeHound asserts that *Grupo Mexicano* forecloses the issuance of a freezing order based on a breach of contract claim that seeks equitable relief by way of specific performance.[18] Not so. First, despite spending a page attempting to distinguish *Arch Ins. Co. v. Sierra Equip. Rental, Inc.*, No. CIV S-12-0617 KJM, 2012 WL 5897327 (E.D. Cal. Nov. 13, 2012) StakeHound does not even mention the other case Celsius included on this point, *Slidell, Inc. v. Millennium Inorganic Chemicals, Inc.*, 2002 WL 649086, at *3 (D. Minn. Apr. 17, 2002), where the Court granted the defendant's motion for a preliminary injunction and held that: "*Grupo Mexicano* is distinguishable from the case at bar because … [defendant]'s counterclaim also seeks equitable relief in the form of a constructive trust, equitable lien, *specific performance* and/or replevin." (emphasis added). StakeHound also ignores the fact that specific performance is the default remedy for claims for breach of contract under Swiss law.[19] Thus, StakeHound's claim that allowing specific performance as a basis to support a freezing injunction would "open a loophole" is unfounded.

**Constructive Trust**. Relying on a case that applies Georgia law, StakeHound argues that "constructive trust is a remedy, not a cause of action."[20] But courts in New York have repeatedly dismissed precisely this argument, finding a cause of action for constructive trust despite defendants' claims that it is merely an equitable remedy that should be dismissed. *See Winklevoss Cap. Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 721 (S.D.N.Y. 2019); *Hughes v. BCI Int'l Holdings,*

---

[18] ECF No. 64 (StakeHound Reply) at ¶ 26.
[19] *See* ECF No. 37 (F. Dasser Decl.) at ¶¶ 10-11.
[20] Defendant StakeHound SA's Supplemental Objection to Plaintiffs' Motion for a Preliminary Injunction at ¶ 25 (the "Reply") [ECF No. 56].

7

*Inc.*, 452 F. Supp. 2d 290, 309 (S.D.N.Y. 2006); *Bank Cap. Servs. LLC v. Chef's Depot Inc.*, No. 19 CV 1469 (VB), 2019 WL 7291240, at *4 (S.D.N.Y. Dec. 30, 2019). The Second Circuit has reviewed and affirmed an opinion regarding a constructive trust claim "without making any suggestion that it was being improperly considered as a cause of action." *Winklevoss*, 351 F. Supp. 3d. at 721 (citing *Jaffer v. Hirji*, 887 F.3d 111, 114-15 (2d Cir. 2018)).

StakeHound also argues that equitable claims cannot be pled alongside claims for breach of contract.[21] But that is not so, particularly where the existence and scope of express contracts are the subject of dispute. *See, e.g., Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 239 F. Supp. 3d 761, 795 (S.D.N.Y. 2017) ("A court may allow a breach of contract and an unjust enrichment claim to proceed past the motion to dismiss stage when the validity or scope of the contract is difficult to determine") (quoting U.*S. Bank Nat'l Ass'n v. BFPRU I, LLC*, 230 F. Supp. 3d 253, 266 (S.D.N.Y. 2017)). As discussed at length in Celsius' prior submissions, there are serious questions as to the applicability and terms of any express contracts relating to the Subject Property – virtually all of which indisputably was provided to StakeHound by Celsius – and it would be premature to reject Celsius' equitable claims under these circumstances. *See* ECF Nos. 39, 50, 54, 57; *see also, e.g.*, *Silverman v. Payward, Inc.*, No. 19-CV-2997(JSR), 2019 WL 3242347, at *2 (S.D.N.Y. June 24, 2019) ("Courts regularly allow plaintiffs to maintain unjust enrichment and quantum meruit claims as pleadings in the alternative at the motion to dismiss stage where 'the validity and scope of the contract is difficult to determine,' 'where the parties dispute[ ] the existence of a contract,' or where the claims arise out of 'agreements or understandings of the parties that were not expressly written in the contract.'").

---

[21] See Obj. ¶ 13.

### III.  StakeHound Is Not Entitled To A Bond Or "Carve Out"

StakeHound still has not "provided sufficient evidence that it will be harmed" by the requested injunction to warrant imposition of a bond. TRO at 11 (the "TRO") [ECF No. 59].[22] StakeHound claims it needs funds to pay "necessary business expenses," Obj. ¶ 1, but specifically identifies only one such expense – the cost of staking nodes – and fails to identify the amount of that expense, or when any payment(s) will supposedly come due.[23] In fact, defendant's actual staking fees are likely a small fraction of the top-line amount suggested by StakeHound before (unidentified) "discounts and rebates." *See* Fourth Man Decl. ECF 63 ¶¶ 4-8. Moreover, to the extent the staking provider deducts its fees before depositing earned rewards with StakeHound, there would be no need for a carve-out from the injunction to pay even these modest costs.[24]

The overwhelming majority of the funds StakeHound hopes to spend are for lawyers, not operating expenses, and mostly to litigate *directly against Celsius*. According to StakeHound, for years the modest rewards generated by Celsius' coins were enough to pay "operating expenses" *and* expenses relating to StakeHound's litigation against Fireblocks in Israel.[25] Suddenly, however,

---

[22] StakeHound argues that Celsius seeks a "waiver of the bond requirement," Obj. at 24, n.6, ignoring that FRCP 65(c) expressly is inapplicable to debtors, and that FRBP 7065 therefore places the burden of demonstrating the propriety of a bond squarely on the defendant. TRO at 11. StakeHound also cites *In re Freckles, Ltd.*, to argue it is entitled to a bond. 60 B.R. 6, 7 (Bankr. E.D.N.Y. 1986). In that case, however, the Court merely accepted the debtor's affirmative "offer[] to deposit $4,000 as security," while rejecting the defendant's demand for a larger bond due to the defendant's failure to provide evidence of harm, and noting that "a nominal bond would probably be sufficient."

[23] StakeHound claims to have withheld the relevant contract from this Court because it is "confidential." Notably, StakeHound has refused to sign the Court's standard protective order, despite Celsius' offering at least four different versions of that document on four separate occasions beginning on August 7, 2023. *See* Hurley Reply Decl. Exs. A–C, E. Exs. 1-4.

[24] To the extent StakeHound ever documents its actual staking costs, and demonstrates that a reasonable carve-out is required to ensure the tokens remain staked, Celsius would consent. But so far StakeHound has done neither, despite numerous opportunities. Similarly, while StakeHound implies that it has other "operational costs," it does not bother to identify the nature or amount of any of these phantom "business" expenses. *See, e.g.,* Second Castellana Decl. ¶ 5.

[25] StakeHound founder Albert Castellana Lluís claimed in his opening declaration that the Rewards derived from the staking of the Native Tokens are $300,000 per month; StakeHound was apparently able to support its operating expenses and legal costs of the Israeli action "with this revenue alone" until the commencement of the present action. Declaration of Albert Castellana Lluís at ¶¶ 35-36 ("Castellana Decl.") [ECF No. 43]. Castellana's reply declaration claimed that the value of the rewards had declined to $200,000 a month, "which rewards have to date more than covered the costs of operating the nodes." Castellana Reply Decl. at ¶ 7.

StakeHound claims it needs to pay its lawyers millions. What changed? Rather than attempt to amicably resolve its disputes with Celsius as Celsius has proposed time and again,[26] StakeHound launched a protracted legal war against Celsius, in rank violation of the automatic stay, and at predictably great expense. Celsius should not be required to pay for StakeHound's extraordinary and wasteful belligerence.[27]

Concerning the Israeli litigation, it is *possible* that Celsius shares an interest in StakeHound's pursuit of claims against Fireblocks, but StakeHound has done nothing to so demonstrate. Notably, Celsius' proposed order includes a mechanism for StakeHound to seek Celsius' consent for funding the Fireblocks litigation, which would allow disclosures to be made confidentially. Celsius has an incentive to consent to requests for expenditures that StakeHound can show actually preserve and maximize value of the Subject Assets. And a similar notice and objection mechanism in the Stone TRO has resulted in the need for Court intervention just once since was entered some eight months ago. Were the Court to conclude either party was behaving unreasonably with respect to a similar provision respecting the injunction, nothing would prevent it from modifying its order at that juncture. But given StakeHound's total failure of proof, on this record, it should not be given any carve out to pursue litigation agains Fireblocks, or for any other putative purpose, much less the blank check it seeks.[28]

---

[26] *See, e.g.,* Apr. 11, 2023 Letter from M. Hurley to A. Carter-Silk [ECF No. 10-5] at 1–2 (Celsius offering to "forbear from seeking immediate provisional relief" and "negotiate a resolution"); Jul. 5, 2023 Email from M. Hurley to S. Wickouski [ECF No. 10-12] at 1 (proposing standstill to discuss "a negotiated resolution").

[27] To provide just a few examples, in April, 2023, StakeHound commenced arbitration against Celsius in knowing violation of the automatic stay, rather than engage in settlement discussions proposed by Celsius. In July, 2023, StakeHound required a motion, full briefing and two hearings on Celsius' request to serve StakeHound pursuant to FRCP 4(f)(3) before finally agreeing to accept service. *See* ECF Nos. 9, 10, 13, 15, 16,18, 19 21, 22, 23.. In August, 2023, after the putative arbitrator sought confirmation from StakeHound that the parties' joint letter suspending the arbitration was legitimate, rather than send that confirmation, StakeHound required another hearing before this Court, and entry by the Court of an order for presentation by Celsius to the putative arbitrator. *See* ECF Nos. 53, 59; *see also* Hr'g. Tr. 51–56 (Aug. 29, 2023) (attached as Ex. G to the Hurley Reply Decl.).

[28] *In re UAL Corp.*, 412 F.3d 775, 778-79 (7th Cir. 2005) is distinguishable because, among other things, there was no notice and objection period along the lines of that Celsius proposes here and because it did not involve a situation

10

## **CONCLUSION**

For the reasons herein and in Celsius' Motion, Celsius respectfully requests entry of a preliminary injunction substantially in the form attached hereto as Exhibit A.

---

where a defendant's harm would result from its purposeful decision to use its revenues to fund offensive litigation rather than manage its business.

11

Dated: September 15, 2023
New York, New York

                                 AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Mitchell P. Hurley*
     Mitchell P. Hurley
     Dean L. Chapman Jr.
     One Bryant Park
     New York, New York 10036
     Telephone: (212) 872-1000
     Facsimile: (212) 872-1002
     mhurley@akingump.com
     dchapman@akingump.com

     Elizabeth D. Scott (admitted *pro hac vice*)
     Nicholas R. Lombardi (admitted *pro hac vice*)
     2300 N. Field Street, Suite 1800
     Dallas, TX 75201
     Telephone: (214) 969-2800
     Facsimile: (214) 969-4343
     edscott@akingump.com
     nlombardi@akingump.com

     *Special Litigation Counsel for Debtors and Plaintiff Celsius Network Limited*