# Exhibit G



Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 22-10964-mg

4    Adv. Case No. 23-01138-mg

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    CELSIUS NETWORK LLC,

9

10            Debtor.

11    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12    CELSIUS NETWORK LIMITED,

13                 Plaintiff,

14          v.

15    STAKEHOUND SA,

16                 Defendant.

17    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19                 United States Bankruptcy Court

20                 One Bowling Green

21                 New York, NY   10004

22

23                 August 29, 2023

24                 10:58 AM

25

Page 2

1   B E F O R E :

2   HON MARTIN GLENN

3   U.S. BANKRUPTCY JUDGE

4

5   ECRO:   KS

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    HEARING re Adversary proceeding: 23-01138-mg Celsius Network

2    Limited v. StakeHound SA Hearing Using Zoom for Government

3    RE:   TRO (Doc # 29, 31, 33 to 42, 49, 50, 51).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 51

1    assets that's subject to claims of $160 million from

2    Celsius.  It just stands to reason there's not going to be

3    much incentive for them to do anything other than continue

4    to litigate with extreme vigor.  I'm not saying they won't

5    do it anyway.  Obviously, as I just said, (indiscernible)

6    vigorously already.

7            But for there to be a chance for parties to make

8    some kind of an agreement, everybody's got to have an

9    incentive.  And under the circumstances here, if there is a

10   possibility that StakeHound could continue to use these

11   assets, that we at least contend are assets that are going

12   to be subject to a very substantial claim, that incentive

13   isn't going to be there.  And that's really the way we would

14   like to see things move forward.

15           And then just a final point, Your Honor.  It

16   relates to the arbitration.

17           THE COURT:  What do you understand the value of

18   the MATIC and DOT to be?

19           MR. HURLEY:  It changes every day, Your Honor.

20   But recent prices, it was around $40 million.

21           THE COURT:  Okay.  Go ahead.

22           MR. HURLEY:  Okay.  So with respect to the

23   arbitration, there's just one final point.  I think it's

24   almost in the nature of housekeeping.  As we provided in our

25   August 21st letter to Your Honor, an email that we received

Page 52

1    from the arbitrator on August 18th.  And that hasn't been

2    responded to yet.  The arbitrator asked -- so after the

3    hearings in front of Your Honor, we sent a joint letter to

4    the arbitrator on August 11th.  And it was on my letterhead

5    and I copied counsel for StakeHound.  And in the August 18th

6    letter, the arbitrator wrote back and said first of all,

7    StakeHound, please just confirm that you agree with Mr.

8    Hurley's letter, that it's effectively legitimate.  And then

9    a question about whether or not this is -- what's going on

10   is a suspension.  And there hasn't been a response yet to

11   that letter.

12          And the TRO that we're asking Your Honor to enter,

13   it would require a response that we think is appropriate

14   under the circumstances, basically everybody saying yes, we

15   understand the letter from Mr. Hurley, we agree with, and

16   we're looking for a suspension until further notice.

17          THE COURT:  Would you agree that an order entered

18   by the court that orders the parties to suspend all activity

19   in connection with the arbitration pending further order of

20   the court, would that solve your problem on this?

21          MR. HURLEY:  I believe it would, Your Honor.  And

22   yeah, I believe it would.  My hope would be that in addition

23   to that, StakeHound would also respond and just say, you

24   know, we authorize the letter.  But yes --

25          THE COURT:  They don't need to authorize my order

Page 53

1    if I enter an order.

2              MR. HURLEY:  Correct.

3              THE COURT:  They can violate an order at their own

4    risk.

5              MR. HURLEY:  Entry of an order would certainly

6    satisfy our concerns.

7              So, Your Honor, that's all I have for now.

8    Obviously you've asked for some additional briefing and we

9    will get right on it.  But other than that, unless Your

10   Honor has other questions, I will yield the podium.

11             THE COURT:  How much time do you want for a brief?

12   Your minions are not going to be happy with your answer.  I

13   don't mean to disparage them.  It's a great team you have.

14             MR. HURLEY:  Thank you.  I agree.  Can I speak

15   with them offline?

16             THE COURT:  Yes, you can.

17             MR. HURLEY:  I think it's a matter of a day or

18   two.

19             THE COURT:  Okay.  Speak to them.  I've given you

20   a bunch of lead-ins of citations.

21             MR. HURLEY:  Very much so, Your Honor.  We

22   appreciate that.  And we'll address those.

23             THE COURT:  Ms. Wickouski, go ahead.

24             MS. WICKOUSKI:  Thank you, Your Honor.  For the

25   record, Stephanie Wickouski, Locke Lord, on behalf of

Page 54

1    StakeHound.

2            Your Honor, I think Mr. Hurley has been speaking

3    for about an hour here, and there's a lot to unpack.  So if

4    Your Honor would bear with me.

5            THE COURT:  I will.

6            MS. WICKOUSKI:  I would like to address points

7    maybe not in any particular order.  And I would like to

8    start out, and I want to come back to this.  But with the

9    last point that Mr. Hurley made.  And Celsius wants the

10   Court to prevent my client from spending a dime to preserve

11   its own assets or pay its legal fees.

12           THE COURT:  Actually, the last point he made was

13   about a letter to the arbitrator.  And that was the last

14   point he made.

15           MS. WICKOUSKI:  You're correct, Your Honor.  And

16   forgive me if I glossed over that as perhaps being non-

17   substantive.  Our client's Swiss counsel has been ready to

18   reply to the letter to confirm our agreement to it and

19   actually had held off pending the outcome of this hearing

20   because Celsius has asked for specific language.  It would

21   be our preference that we respond and confirm that the Swiss

22   counsel confirmed --

23           THE COURT:  This is you I'm going to deal with

24   right now.

25           Mr. Hurley, draft a proposed order.  Share it with

Page 55

1   Ms. Wickouski.  If you can't get an agreed form of order by

2   tomorrow, each of you can submit to me separate ones.  I

3   thought this issue, Ms. Wickouski, was going to be put to

4   bed long before today.  It hasn't.  So I'm not going to get

5   into whether your Swiss counsel thinks that one form of

6   language is better than another.  I am going to enter an

7   order directing that the parties cease all activity pending

8   further -- in the arbitration pending further order of the

9   court.  If you violate it, Mr. Hurley will be back for

10   contempt.  Okay?

11          MS. WICKOUSKI:  I understand, Your Honor.  We --

12          THE COURT:  No, stop.  Stop.  I don't want to hear

13   that Swiss counsel was waiting to hear what happened today.

14   This should have been resolved.  It's resolved now.  I will

15   get either an agreed form of order or separate forms of

16   order tomorrow.  And by tomorrow at noon an order will be

17   entered on that.  And, Mr. Hurley, you can forward a copy to

18   the arbitrator or not.  But that's not a complicated issue.

19          MS. WICKOUSKI:  Thank you, Your Honor.  And just

20   to be clear, the reason we were waiting was because if Your

21   Honor agreed with the form of letter that Mr. Hurley had

22   proposed --

23          THE COURT:  Ms. Wickouski, we are beyond that.

24   Either I'll get an agreed form of order or I'll get your two

25   orders.  One will be entered by the end of the day tomorrow.

1    So I want either an agreed form of order by noon tomorrow or

2    separate forms of order.  And by the end of the day, there

3    will be an order entered.  We're not going to -- there isn't

4    going to be any further negotiation.  Swiss counsel is not

5    going to be involved.  This is a violation of the automatic

6    stay.

7              And at the end of the day I'll tell both of you I

8    still think that, you know, you probably are both going to

9    be better off having this arbitrated.  It's Swiss law that

10   governs.  But that's not for today's issue.  Okay?  But for

11   today's issue, I'm just telling you the Court is going to

12   enter an order.  You can either have an agreed form or

13   submit your separate forms and one will be entered by the

14   end of the day tomorrow.

15             Go on with your argument.

16             MS. WICKOUSKI:  Thank you, Your Honor.  Let me

17   talk about the elephant in the room, which is that this is a

18   TRO hearing.  And I realize that the standard is loser and

19   not as high as a preliminary injunction or an actual trial.

20   But the elephant in the room is that we have, even though

21   our client did not have the burden, we have submitted

22   evidence, we have submitted a declaration, and we have a

23   witness available for cross-examination.  None of that is

24   true with respect to the Plaintiff.

25             THE COURT:  Let me be clear that I understand the