Mitchell P. Hurley
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
mhurley@akingump.com
dchapman@akingump.com

Elizabeth D. Scott (admitted *pro hac vice*)
Nicholas R. Lombardi (admitted *pro hac vice*)
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
edscott@akingump.com
nlombardi@akingump.com

*Special Litigation Counsel for Debtors
and Plaintiff Celsius Network Limited*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |
| CELSIUS NETWORK LIMITED, | |
| Plaintiff, | Adversary Proceeding |
| v. | No. 23-01138 (MG) |
| STAKEHOUND SA, | |
| Defendant. | |

**CELSIUS' OPPOSITION TO STAKEHOUND MOTION TO RECONSIDER TRO**

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The Debtors' service address in these Chapter 11 Cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT...................................................................................................1

ARGUMENT .............................................................................................................................2

I.     THE STANDARDS FOR RECONSIDERATION ARE NOT MET .................................2

II.    STAKEHOUND OFFERS NO EVIDENCE OF IMMINENT, OR ANY, HARM ............3

        A.     StakeHound Offers No Evidence of Amounts Due to Maintain Validator
               Nodes ...............................................................................................................4

        B.     Vague and Unsupported Assertions Concerning Litigation In Israel Do Not
               Warrant Reconsideration of the TRO, Or Justify This Costly Extra
               Proceeding........................................................................................................8

        C.     StakeHound Has No Right To Use Subject Property To Litigate Against
               Celsius.............................................................................................................10

        D.     StakeHound Can Have No Administrative Claim Against Celsius .......................12

CONCLUSION.........................................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co. Ltd.*,
  2023 WL 4249356 (S.D.N.Y. June 29, 2023) ...................................................2, 3

*Asia TV USA, Ltd. v. Total Cable USA LLC*,
  No. 16-CV-6873 (AJN), 2018 WL 1626165 (S.D.N.Y. Mar. 29, 2018) .................................9

*Chambers v. Capital Cities/ABC*,
  159 F.R.D. 441 (S.D.N.Y. 1995) ...............................................................5

*Church of Universal Love & Music v. Fayette Cnty.*,
  No. CIV. A. 06-872, 2009 WL 2612313 (W.D. Pa. Aug. 24, 2009) ....................................4, 5

*Doe v. Benjamin Zaremski M.D., P.C.*,
  No. 21 CIV. 3187 (ER), 2022 WL 2966041 (S.D.N.Y. July 27, 2022)...................................5

*Hoffman v. Sbarro, Inc.*,
  No. 97 Civ. 4484 (SS), 1997 WL 736703 (S.D.N. Y Nov. 26, 1997) .......................................5

*Holzer v. Barnard*,
  No. 15-CV-6277 (JFB), 2016 WL 4046767 (E.D.N.Y. July 27, 2016)...................................13

*Matter-of-Kossoff PLLC*,
  No. 21-10699 (DSJ), 2023 WL 3404907 (Bankr. S.D.N.Y. May 11, 2023) ...........................2

*New York v. Actavis, PLC*,
  No. 14 CIV. 7473, 2014 WL 7015198 (S.D.N.Y. Dec. 11, 2014), *af'd sub
  nom. New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638 (2d Cir.
  2015) ..........................................................................................9

*In re Patient Educ. Media, Inc.*,
  221 B.R. 97 (Bankr. S.D.N.Y. 1998) ..................................................................13

*Perez v. Byrnes*,
  No. 15 Civ. 93 (FJS) (DJS), 2016 WL 11763718 (N.D.N.Y. Feb. 24, 2016) ..........................5

*TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*,
  652 F. Supp. 2d 763 (N.D. Tex. 2009) ...............................................................9

**Other Authorities**

Fed. R. Bankr. P. 9018...............................................................................5

**Statutes**

11 U.S.C. § 503(b) ........................................................................................................................13

## PRELIMINARY STATEMENT

StakeHound's[2] motion to reconsider ("Motion to Reconsider," or "MTR") this Court's September 8, 2023 temporary restraining order ("TRO") should be denied.  First, StakeHound's Motion does not present any kind of "emergency" that could possibly justify imposing on the Court and Celsius still more briefing and a third hearing on Celsius' motion for a TRO, particularly with the preliminary injunction hearing fast approaching.  StakeHound does not identify a single, *specific* payment that it claims must be paid *ever*, much less one that is due in the next few days or weeks.  To be sure, StakeHound says it has outstanding bills, but does not identify specifically what any of them are, or claim any are imminently due.  Nor does StakeHound bother to explain how any *specific* harm could befall the Subject Property, or StakeHound, absent the immediate further carve-out from the TRO that StakeHound demands.

StakeHound's motion simply rehashes arguments it has made previously, and repeatedly, in its vain effort for continued access to the Subject Property to fund its litigation campaign against Celsius.[3]  But those arguments already were considered and rejected by the Court in its September 8, 2023 TRO.  StakeHound does not even try to identify any of the factors that sometimes will warrant reconsideration: (i) an intervening change in controlling law, (ii) previously unavailable evidence, or (iii) clear error.  Instead, contrary to settled law, StakeHound bases its reconsideration motion on new evidence that was available to StakeHound at the time the TRO originally was granted – allegations contained in a new declaration from StakeHound's co-founder and CEO, Albert Castellana.  But even if the new (but previously available) declaration could be considered,

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in Celsius' *Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunction* [ECF No. 39] (the "Opening Memorandum")/

[3] We now know that StakeHound used Subject Property to pay its lawyers almost three quarters of a million dollars in the past few weeks alone.  No further carve-out should be provided to pay them more.

it simply recycles and repackages the same vague, unsubstantiated and speculative claims of harm that StakeHound has advanced before this Court repeatedly in the past. Indeed, StakeHound uses its motion in exactly the manner this Circuit forbids – as a vehicle for taking a "second bite at the apple," and seeking to relitigate issues already decided by the Court. StakeHound's motion should be denied.

## ARGUMENT

### I.    THE STANDARDS FOR RECONSIDERATION ARE NOT MET

Motions for reconsideration are rarely granted, and only under circumstances that StakeHound does not even contend are present here. *See* MTR ¶ 20 (acknowledging StakeHound's motion is governed by "the standards applicable to … a motion for reconsideration"). The Second Circuit has explained that the "standard for granting a motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusions reached by the court. *Matter-of-Kossoff PLLC*, No. 21-10699 (DSJ), 2023 WL 3404907, at *2 (Bankr. S.D.N.Y. May 11, 2023) (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Motions for reconsideration "are not vehicles for taking a second bite at the apple" and "a motion for reconsideration will not be granted if the party is merely seeking to relitigate the issue already decided by the court." *Id.* (internal citations omitted).

As StakeHound admits, reconsideration must be based on "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." MTR ¶ 20 (citations omitted). According to StakeHound "the Second Castellana Declaration" is "new evidence" that "constitutes cause for the Court to amend its TRO." *Id*. ¶ 19. It is black letter law, however, that new evidence only can be cited on a motion for reconsideration if it is also "newly discovered." *See, e.g. Altimeo Asset Mgmt. v. Qihoo 360 Tech.*

*Co. Ltd.*, 2023 WL 4249356, *6 (S.D.N.Y. June 29, 2023). "For evidence to be considered 'newly discovered' on a motion for reconsideration, it must be evidence that was 'truly newly discovered or could not have been found by due diligence.'" *Id.* (string cite omitted). StakeHound does not argue (nor could it), that anything in the Second Castellana declaration somehow was unavailable when the TRO was decided. Indeed, nothing prevented Castellana from including in his August 25, 2023 declaration every word that he has since added to his September 8, 2023 declaration, he just elected not to.

But even if the Second Castellana declaration could properly be considered, StakeHound's Motion to Reconsider still would fail. StakeHound simply reheats exactly the same arguments that it made in opposition to the TRO in the first place, including, primarily, by arguing yet again that this Court should allow StakeHound to use even more Subject Property to litigate against Celsius. *Compare, e.g.* MTR ¶ 25 (arguing in motion to reconsider that "the Second Castellana declaration" establishes StakeHound needs "to pay the attorneys' fees and costs associated with prosecuting and defending its critical ongoing litigation"); *with* ECF No. 42 ¶ 50 (arguing in original opposition to TRO that "the [original] Castellana declaration substantiates StakeHound's need" for "carve outs" from the TRO to pay expenses supposedly "necessitated by having to litigate this matter before the Court."). This kind of "re-litigation" of points already considered and rejected in the Court's original order does not justify reconsideration. As discussed below, moreover, nothing in any of the Castellana declarations support StakeHound's claim that reconsideration is necessary, or remotely "urgent."

## II.     <u>STAKEHOUND OFFERS NO EVIDENCE OF IMMINENT, OR ANY, HARM</u>

In its Motion to Reconsider, StakeHound claims it must be able "to spend $500,000 in the next approximately three weeks." MTR ¶ 2. That amount is in addition to the $200,000 carve-out the Court already permitted, which means StakeHound claims it must spend a total of $700,000 in

the next 21 days, or about $233,000 per week. As discussed below, this sum is *also* in addition to the more than $710,000 of Subject Property that StakeHound apparently spent paying its lawyers over the past several weeks, during what StakeHound misleadingly calls the "Voluntary Freezing Period."[4]

According to Celsius, the additional $233,333 per week is necessary "to [1] maintain the validator nodes that allow Stakehound to stake tokens and earn rewards, and also to cover legal fees [2] related to its defense in this case and [3] its pursuit of its claim against Fireblocks." MTR ¶ 2. But StakeHound offers no evidence that it will ***ever*** suffer harm absent a carve-out from the TRO for these purposes, much less in the short period between now and the preliminary injunction hearing. StakeHound's Motion to Reconsider should be denied accordingly.

### A. StakeHound Offers No Evidence of Amounts Due to Maintain Validator Nodes

The ***only*** so-called "operational expense" that StakeHound ever has identified in connection with its shuttered business are fees it claims are required to maintain the validator nodes for Celsius' coins. StakeHound has submitted no fewer than four briefs concerning Celsius' motion, and three declarations from Albert Castellana, but still has not even identified the specific amount of the fees it claims are at issue. StakeHound cites a cost of "$80,000 per month," but according to Castellana that amount merely "represents the contract rate ***before*** discounts and rebates" Second Castellana Decl. ¶ 7 (emphasis added). StakeHound never has produced the "contract," or identified the amount of any applicable "discounts and rebates," and hence never has identified the amount of the fees. StakeHound's argument based on the validator nodes can be rejected on this basis alone. *See, e.g., Church of Universal Love & Music v. Fayette Cnty.*, No.

---

[4] The Subject Property includes not just the coins wrongfully withheld by StakeHound but also any reward interest earned on those coins, and thus any "cash on hand" transferred to StakeHound's lawyers was in fact Subject Property. *See* Second Castellana Decl. ¶ 10 (admitting that StakeHound has been using "Native Tokens and Staking Rewards" during the so-called "voluntary freezing period" to "pay costs," including attorneys' fees).

4

CIV. A. 06-872, 2009 WL 2612313, at *2 (W.D. Pa. Aug. 24, 2009) (affidavit insufficient to justify

bond where it claimed "losses in the amounts of $45,000 for pre-paid non-refundable deposits,

$25,000 for 'lost gate' receipts and $130,000 for 'damage to membership growth'" but supplied

"[n]o contracts concerning the pre-paid non-refundable deposits … and no financial information

documenting the gate receipt history").

StakeHound claims the contract is subject to a private "non-disclosure agreement" that

prohibits StakeHound from disclosing its terms to this Court (though it admits it could do so "*in

camera*").  *Id.* n. 3.  This is no excuse.  First, private confidentiality agreements do not trump a

party's litigation disclosure obligations.  *Doe v. Benjamin Zaremski M.D., P.C.*, No. 21 CIV. 3187

(ER), 2022 WL 2966041, at *10 (S.D.N.Y. July 27, 2022) ("Nondisclosure agreements do not

preclude  discovery  in  federal  litigation.   Instead,  protective  orders  can  be  used  to  maintain

confidentiality  of  information  disclosed  in  discovery")  (internal  citation  omitted);  *see also,

e.g.*,  *Hoffman v. Sbarro, Inc.*, No. 97 Civ. 4484 (SS), 1997 WL 736703, at *1 (S.D.N.Y Nov. 26,

1997); *Chambers v. Capital Cities/ABC*, 159 F.R.D. 441, 442 (S.D.N.Y. 1995);  *Perez v. Byrnes*,

No. 15 Civ. 93 (FJS) (DJS), 2016 WL 11763718, at *1–2 (N.D.N.Y. Feb. 24, 2016).  Second,

StakeHound  could  have  availed  itself  of  sealing  procedures  provided  in  this  Court's  form

protective order by signing it when offered by Celsius more than a month ago, but StakeHound

has refused to do so.  *See* Reply Dec. of Mitchell P. Hurley in Further Support of Mtn. for P.I. Ex.

A-F [ECF No. 73]; *see also Zaremski*, 2022 WL 2966041, at *10 ("Courts commonly require

parties to produce confidential documents; the confidentiality of those documents is protected not

by denying access to them, but by entering a protective order to cover them.").  Third, StakeHound

could have availed itself of procedures clearly provided under this Court's rules for submitting

documents under seal, but chose not to.  *See, e.g.,* Fed. R. Bankr. P. 9018; Chief Judge Glenn's

Chambers Rules ("Sealing Orders").  Fourth, and most fundamentally, StakeHound cannot be permitted to assert alleged staking costs as a basis for requiring a "carve-out" from the TRO, and then refuse to identify those costs, or the terms under which they are paid, because they supposedly are "confidential."

Notably, it appears that the actual cost for staking nodes may be a small fraction of the sums implied by Mr. Castellana's vague and unsubstantiated declaration.  *See* Fourth Decl. of Richard Man [ECF No. 63] ¶¶ 4–9.  Moreover, StakeHound never has identified any supposed "deadline" for paying staking fees, despite Celsius' repeated requests for that information.  *See, e.g.*, Hurley Decl, Ex. A.[5]  Some staking service providers actually deduct their fees from rewards before depositing them with the customer.  *Id*.  If that is the case here, no carve out whatsoever would be required to ensure that Celsius' coins remained staked while this case is pending.  And critically, even if StakeHound had established it must pay the full $80,000 per month out of pocket – and it has not – *the existing carve out from the TRO provided by the Court would be sufficient for more than two months' worth of staking*.

In other words, StakeHound specifically admits that the existing $200,000 carve-out is more than enough to ensure that the nodes remain staked *through and including a hearing and decision on Celsius' preliminary injunction motion*.  There is no "emergency" here.  Provided that StakeHound uses the $200,000 to pay staking fees – to the extent such fees even are due – there is not even a remote risk of the litany of horrors StakeHound breathlessly describes.  *Compare* Second Castellana Decl. ¶ 7, 11.  Recognizing this fact, StakeHound tries to create a crisis where none exists, threatening that it will divert the Court's $200,000 carve-out to paying StakeHound's

---

[5] StakeHound's lawyers assert in their brief, without explanation or citation, that "StakeHound needs to spend $60,000 in the next approximately three weeks to maintain the nodes."  MTR ¶ 3.  StakeHound offers no evidence for its lawyers' claim, which is found nowhere in any of the three Castellana declarations.  And of course, even if it were true, the existing carve-out would be more than enough to cover the cost, as discussed below.

legal fees "even at the cost of … permanent damage" to the Celsius staked coins.  MTR ¶ 3 (declaring that "of course" StakeHound will choose to divert the $200,000 to paying legal fees for "this adversary proceeding and the Fireblocks litigation" rather than paying fees to "maintain[] the nodes").  The Court should not be swayed by StakeHound's threats, and instead should reaffirm that the carve-out is meant to cover StakeHound's operational expenses – to the extent any even exist – not the fees of StakeHound's overly aggressive lawyers.  *See* TRO at 11 (holding that defendant is "not entitled to a carve out in the context of a freezing injunction" to pay "legal fees").

It Is evident that there is no "emergency" relating to maintaining the nodes.  Nevertheless, after seeing StakeHound's motion to shorten notice on Friday, September 15, 2023, Celsius wrote StakeHound to get further details concerning its claimed need to "urgently" pay staking fees, and to try to avoid the costs of this further hearing on the TRO.  Celsius wrote:

> In an effort to avoid the substantial cost and expense of [] briefing and hearing [on StakeHound's motion to reconsider], we again ask you to please immediately identify, in writing, the specific amount(s), recipient(s), due date(s), and purpose(s) of the payment(s) you contend must be made on or before [the injunction hearing] in order to "maintain the validator nodes." I am confident that if StakeHound can actually demonstrate such payment is necessary, we can reach agreement to ensure that it is timely paid without requiring the Court's intervention or spending tens of thousands of dollars on additional briefing.

*See* Hurley Decl. Ex. A.  In a terse email response the next day, StakeHound referred Celsius to the papers StakeHound already had submitted, claiming incorrectly that they provide the information sought by Celsius' September 15, 2023 letter.  They do not (as discussed above), and StakeHound has utterly failed to justify foisting the costs of this so-called "emergency" on Celsius and its creditors.

**B. <u>Vague and Unsupported Assertions Concerning Litigation In Israel Do Not
Warrant Reconsideration of the TRO, Or Justify This Costly Extra Proceeding</u>**

StakeHound next tries to justify convening an "emergency" hearing on its Motion to Reconsider by arguing that it must be allowed immediately to spend millions of dollars' worth of Subject Assets on its claims against Fireblocks in Israel. StakeHound does not bother to explain the nature of the claims against Fireblocks, or outline their merits, nor provide any information to support its assertion that they are "valuable." Moreover, because StakeHound has failed and refused to provide any discovery concerning the litigation or the "Key Loss Event" that apparently animates StakeHound's claims, Celsius is unable to come to its own view concerning their value. *See* ECF No. 75 at 1–2.[6]

Critically, moreover, StakeHound does not identify, much less establish, any specific payment that it alleges is due imminently in connection with the Israeli litigation, much less before Celsius' preliminary injunction motion can be heard. Mr. Castallana, a Spanish citizen and non-lawyer, claims that StakeHound "expects" that it may be "required" to "make a supplemental court deposit" that is "expected" to total $1.63 million. Second Castellana Declaration ¶ 8. Castellana does not say why that payment might be "required," or identify what the payment is for, or how it was calculated, or what will happen to the Subject Property if StakeHound loses in Israel. Nor does Castellana dispel the possibility that the payment it has identified in fact is voluntary, and not "required" at all. Critically, StakeHound does not allege (much less prove) that any such payment will be due before Celsius' injunction motion can be heard. Instead, StakeHound alleges, with no competent support, that an Israeli court payment "***could***" come due "before a request for injunctive relief could be presented ***to the Swiss Arbitrator.***" *Id.* ¶ 8. Even if Mr. Castallana were competent

---

[6] Celsius is not "seeking to prejudice or impair StakeHound's litigation against Fireblocks," MTR ¶ 30, it is seeking to understand that litigation, an exercise that is particularly important given StakeHound's desire to invest an additional $1.6 million in Subject Property in the form of unidentified "court costs" for that proceeding.

to make this claim concerning Israeli law – and of course he is not – it would not justify an "emergency" hearing in advance of the preliminary injunction hearing in this adversary proceeding.

StakeHound also claims it must be given relief from the TRO immediately so it can pay legal fees associated with the Israeli litigation.  Here, StakeHound is even less specific, claiming only that StakeHound "could lose the value" of its "claim against Fireblocks in Israel" if it is "unable to pay its legal bills." Second Castellana Decl. ¶¶ 8, 11.  Nowhere does StakeHound identify a single, specific amount supposedly due to lawyers in Israel, much less explain how any harm would be caused if the bill were not immediately paid.  *See id*. *passim*.  As this Court is no doubt acutely aware, lawyers get paid in arrears, and it is not uncommon for services to be rendered many weeks or months (or longer) before payment is received.  StakeHound offers no reason to believe that requiring immediate payment to lawyers in Israel somehow is required here.  StakeHound's vague, unsupported and speculative assertions are insufficient to carry its burden of demanding relief from the TRO.  *See, e.g.*, *New York v. Actavis, PLC,* No. 14 CIV. 7473, 2014 WL 7015198, at *44 (S.D.N.Y. Dec. 11, 2014), *af''d sub nom. New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638 (2d Cir. 2015) (rejecting defendants' argument that balance of hardships tipped in their favor where defendants failed to quantify any material costs that would result from an injunction); *Asia TV USA, Ltd. v. Total Cable USA LLC*, No. 16-CV-6873 (AJN), 2018 WL 1626165, at *9 (S.D.N.Y. Mar. 29, 2018) (finding balance of hardships weighed in favor of granting an injunction where defendant claimet it would "suffer irreparable loss" but did "not offer any details to support that statement"); *TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*, 652 F. Supp. 2d 763, 774 (N.D. Tex. 2009) (finding defendant's request for $10 million bond to be "unwarranted and excessive" because the defendants estimate of costs was "not supported by any

evidence" and the court had "no basis in the record [] to calculate or even estimate" the costs and fees that would have been "[t]he fairest measure of the security amount").

Again, it is evident that no "emergency" exists relating to the Israeli litigation. Nevertheless, after receiving StakeHound's notice of intent to bring this motion, Celsius wrote to seek more information, in an effort to avoid the costs associated with this hearing. Celsius wrote:

> To the extent you contend that some payment must be made … before [the injunction hearing] in connection with StakeHound's "ongoing litigation," please identify in writing the specific amount(s), due date(s), and purpose(s) of the payment(s) you contend are necessary, and how non-payment on or before [the injunction hearing] would harm StakeHound or diminish the value of the Subject Property. To the extent you can do so, it is possible the very expensive process on which you appear determined to embark between now and the hearing on Tuesday can be avoided. We therefore urge you to supply this information immediately.

Once again, StakeHound provided none of the information sought, claiming incorrectly in a brief email on September 16, 2023 that the information sought by Celsius was included in StakeHound's prior submissions. As discussed above, it plainly is not.

### C. StakeHound Has No Right To Use Subject Property To Litigate Against Celsius

StakeHound argues that the Subject Property should be made available for use in litigating directly against StakeHound. The Court already has rejected this contention. *See* TRO at 10–11. Indeed, the case law is crystal clear that in the context of a freezing order, a defendant has no right to use frozen funds to pay legal fees, even in criminal cases. *See Mem. ISO Mtn. for TRO and Prelim. Inj.* [ECF No. 39] at 15–16. Critically, StakeHound does not even try to identify any specific harm of any kind – much less "imminent" harm – that it would suffer if its lawyers are not immediately paid. Once again, there simply is no "emergency" justifying StakeHound's decision to foist the costs and distraction of this extra proceeding on Celsius and the Court.

It is now evident, moreover, that StakeHound already has been using the Subject Property to fund its litigation against Celsius, and that StakeHound's lawyers have been paid handsomely for their efforts over the past several weeks, including during the so-called "Voluntary Freeze Period." The Subject Property expressly includes "rewards" earned on the MATIC, DOT and ETH tokens that StakeHound is wrongfully withholding. Moreover, Celsius has always made clear that, given the paucity of assets available at StakeHound to pay Celsius' $160 million-plus claim, none of those assets (including any associated rewards) should be dissipated while this case is pending. StakeHound certainly has long known that is Celsius' position. *See, e.g.,* Aug. 29, 2023 Hr'g Tr. at 54 (StakeHound complaining that TRO would not permit it to use Subject Property to "pay its legal fees"). Reward interest accruing on Celsius' coins should be preserved to close the massive gap between the value of available assets and Celsius' claim, not spent litigating against Celsius.[7]

StakeHound repeatedly has claimed that it has "voluntarily" refrained from using any Subject Property during the pendency of Celsius' motion, and in particular has not been paying its lawyers. For example, during an August 29, 2023 hearing, StakeHound's counsel assured the Court that "our client has abided by a total freezing order" awaiting the Court's decision, which she hoped would provide some "clarity" so that StakeHound could "pay some bills," including "to pay its lawyers." Aug. 29, 2023 Hr'g Tr. 69:13-70:2; *see also* Hr'g Tr. at 13:20–24 (Aug. 22, 2023) (claiming StakeHound "was agreeing to a freeze, but we need assets – access to a small fraction of assets to be able to fund legal fees"). It turns out StakeHound has been paying its lawyers all along, and using Subject Property to do it. According to the Motion to Reconsider, StakeHound

---

[7] StakeHound claims falsely that Celsius "acknowledged that StakeHound holds assets against which CNL does not assert any competing claim," selectively citing the August 22, 2023 hearing transcript. MTR ¶ 29. But a few pages later in the same transcript, Celsius made crystal clear that the opposite is true. "It is not that Celsius doesn't contend it has a claim [to any part of the Subject Property]. [] Celsius' claims are valued at $160 million plus. And our understanding is that the only assets [StakeHound has] amount to about $90 million. So we think our claims are massively in excess of any assets they have." Hr'g Tr. at 21 (Aug. 22, 2023).

used that property to pay $713,590 in legal fees for the period from July 26, 2023 through September 15, 2023, ***including $145,679 in the week before the TRO was entered alone***. *Compare* Motion to Reconsider ¶ 11 with Second Castellana Dec. ¶ 5 (indicating StakeHound paid $567,911 in legal fees for the period from July 26, 2023 through September 8, 2023). No more of the Subject Property should be "carved out" to further reward StakeHound's lawyers for their scorched-earth litigation campaign in this case.

### D.  StakeHound Can Have No Administrative Claim Against Celsius

StakeHound tries to add an *in terrorem* element to its Motion to Reconsider, threatening the Court that StakeHound will hold up confirmation of Celsius' plan of reorganization if the Court does not acquiesce in StakeHound's demand for a carve-out and bond. StakeHound argues that if it is prohibited from making supposedly "critical" payments during the course of the TRO and injunction, it would have an "administrative priority claim" against Celsius "in the hundreds of millions of dollars" for "damage to its business and going concern value." *See* MTR ¶ 31. According to StakeHound, it can then hold up confirmation by requiring Celsius to reserve "the full amount" of its claim.

StakeHound's logic is riddled with errors. First, as discussed at length above, StakeHound has utterly failed to offer evidence that the requested carve-out is necessary to avoid harm of any kind, much less "hundreds of millions of dollars" in damages to StakeHound's "going concern value." Among other things, StakeHound is not a going concern, and is deeply insolvent. StakeHound admits it only ever had one real customer – Celsius, which first provided ETH to StakeHound in late January, 2021. Not even four months later, StakeHound shut down its operations as a result of its catastrophic loss of Celsius' February 2021 Staked ETH. In the ensuing 2.5 years, its lone "operation" has been collecting rewards on the coins that Celsius provided. The actual "business" part of its business – its liquid staking operations – ceased long ago, as

StakeHound freely admits. *See* Castellana ¶ 6 (describing StakeHound's business as "facilitate[ing] liquid staking"); *id.* ¶ 34 (alleging that "StakeHound halted its liquid staking activities with immediate effect" on "22 June 2021" as a result of its loss of Celsius' ETH). Nothing that happens in 2023 can impact StakeHound's "going concern value," since StakeHound has not been a "going concern" since early 2021, and StakeHound admits to facts demonstrating that it is hopelessly insolvent, and has been for years. *See* TRO at 8–10,

Second, even if StakeHound could prove some form of harm, its related claim would not have administrative priority status. Section 503(b) is construed "narrowly" in order "to promote the bankruptcy goal of equality of distribution." *In re Patient Educ. Media, Inc.*, 221 B.R. 97, 101 (Bankr. S.D.N.Y. 1998) "The party asserting the status of an administrative claimant has the burden of proof." *Holzer v. Barnard*, No. 15-CV-6277 (JFB), 2016 WL 4046767, at *8 (E.D.N.Y. July 27, 2016). "In order to be entitled to priority under section 503(b)(1)(A), a party "must demonstrate that (1) his claim arose from a transaction with or on account of consideration furnished to the debtor-in-possession, and (2) the transaction or consideration directly benefitted the debtor-in-possession." *Id.*

Here, StakeHound will not possibly be able to prove either element. Far from incurring costs and expenses to "preserve" the Celsius estate, StakeHound has waged a scorched earth litigation war against Celsius, first by commencing an arbitration in flagrant violation of the automatic stay seeking to retain estate property, and second by resisting turnover of estate property that could be used and distributed by Celsius for the benefit of its creditors in this proceeding. Under these circumstances, StakeHound cannot possibly show that it has incurred fees in connection with furnishing consideration to Celsius or that StakeHound's actions "directly benefited" Celsius. Just the opposite is true.

13

## **CONCLUSION**

For the foregoing reasons, Celsius respectfully submits that StakeHound's Motion to
Reconsider should be denied.

Dated:          September 19, 2023
                New York, New York

                                        AKIN GUMP STRAUSS HAUER & FELD LLP

                              By:    */s/ Mitchell P. Hurley*
                                     Mitchell P. Hurley
                                     Dean L. Chapman Jr.
                                     One Bryant Park
                                     New York, New York 10036
                                     Telephone: (212) 872-1000
                                     Facsimile: (212) 872-1002
                                     mhurley@akingump.com
                                     dchapman@akingump.com

                                     Elizabeth D. Scott (admitted *pro hac vice*)
                                     Nicholas R. Lombardi (admitted *pro hac vice*)
                                     2300 N. Field Street, Suite 1800
                                     Dallas, TX 75201
                                     Telephone: (214) 969-2800
                                     Facsimile: (214) 969-4343
                                     edscott@akingump.com
                                     nlombardi@akingump.com

                                     *Special Litigation Counsel for Debtors and*
                                     *Plaintiff Celsius Network Limited*