UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,[1]<br><br>                        Debtors. | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>Jointly Administered |
| CELSIUS NETWORK LIMITED,<br><br>                        Plaintiff,<br>               v.<br><br>STAKEHOUND SA,<br><br>                        Defendant. | Adversary Proceeding<br><br>No. 23-01138 (MG) |

## JOINT PRETRIAL ORDER

The parties having conferred among themselves and with the Court pursuant to Fed. R. Civ. P. 16, the following statements of the case and issues to be tried, stipulations of fact, summaries of legal issues and contentions, and lists of exhibits and witnesses are adopted as the Pretrial Order herein.

I.    **NATURE OF THE CASE**

    a.  **Nature of the Case and Jurisdiction**

On July 11, 2023, Plaintiff Celsius Network Limited ("Celsius") commenced the above-captioned adversary proceeding (the "Adversary Proceeding") against Defendant StakeHound S.A. ("StakeHound"). In its amended complaint dated August 22, 2023 [ECF No.

---

[1] The Debtors (the "Debtors") in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The Debtors' service address in these Chapter 11 Cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

31] (the "Amended Complaint"), Celsius alleges claims for: (i) violation of the automatic stay; (ii) turnover pursuant to section 542 of the Bankruptcy Code, (iii) a declaratory judgment pursuant to section 502(d) of the Bankruptcy Code disallowing any claim by StakeHound as a result of its failure to turnover estate property; (v) breach of contract; and (vi) accounting, unjust enrichment and other equitable claims and remedies. On August 25, 2023, StakeHound moved to dismiss all claims alleged in the Amended Complaint for lack of personal jurisdiction [ECF No. 45]. On September 15, 2023, StakeHound withdrew its motion to dismiss and conceded it is subject to the jurisdiction of the Court for purposes of this Adversary Proceeding [ECF No. 66].

    b. **The Injunction Motion**

On August 23, 2023, Celsius filed the Notice of Motion for Temporary Restraining Order [ECF No. 33] and Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 39] and on August 25, 2023 filed the Notice of Motion for Preliminary Injunction [ECF No. 47] and [Proposed] Order Granting Preliminary Injunction [ECF No. 47-1] (together, the "Injunction Motion"). The Injunction Motion requested a temporary restraining order, and seeks a preliminary injunction, preventing the dissipation of assets, including native ETH, MATIC, and DOT tokens (or their corresponding nodes) plus rewards earned on those tokens, in StakeHound's possession, custody, or control that are sought to be recovered and/or may be required to satisfy any judgment obtained by Celsius.

On September 8, 2023, the Court entered the Order Granting TRO [ECF No. 59] (the "TRO"). The TRO (i) granted Celsius' request for a temporary restraining order prohibiting and preliminarily enjoining StakeHound, and all persons acting in concert with StakeHound, "from transferring any assets or property within StakeHound's possession, custody or control pending the outcome of the preliminary injunction hearing" (the "Subject Property"); (ii) scheduled a

hearing (the "Hearing") on Celsius' Motion for a Preliminary Injunction (the "Injunction Motion") for September 27, 2023; (iii) permitted StakeHound "to spend $200,000 in money or money's worth of the [Subject Property]" pending the originally scheduled Hearing (the "TRO Carveout").

On September 15, 2023, StakeHound filed a motion to amend the TRO pursuant to Federal Rule of Civil Procedure 59 and Federal Rule of Bankruptcy Procedure 9023 [ECF No. 74] (the "Motion to Amend").  The Motion to Amend asked the Court to amend the TRO and increase the total TRO Carveout to $500,000 for the period through the entry of the Court's decision following the originally scheduled September 27 hearing on the Injunction Motion.  On October 9, 2023, the parties filed the Joint Stipulation and Agreed Order Between Plaintiff Celsius Network Limited and Defendant StakeHound SA regarding (I) StakeHound SA's Motion to Amend TRO Order, (II) Adjournment of the Preliminary Injunction Hearing Until October 25, 2023, and (III) Extension of the Temporary Restraining Order Until the Preliminary Injunction Hearing [ECF No. 89] (the "Joint Stipulation").  The Joint Stipulation (i) adjourned the Hearing until October 25, 2023; (ii) required StakeHound to withdraw its Motion to Amend; (iii) extended the TRO through and including the date on which the Court decides the Injunction Motion; and (iv) contingent upon withdrawal of the Motion to Amend, modified the TRO to permit certain specifically identified expenditures by StakeHound above the initial TRO Carveout.

    c. **The Motion to Compel**

On April 24, 2023, StakeHound commenced an arbitration in Switzerland against Celsius (the "Swiss Arbitration") seeking declaratory relief regarding the validity and effect of contracts between StakeHound and Celsius, among other things.  On August 30, 2023, the Court entered an order finding that StakeHound's prosecution of the Swiss Arbitration was a violation of the automatic stay. [ECF No. 53].  StakeHound agreed to suspend the Swiss Arbitration.  On August

25, 2023, StakeHound filed the Notice of Motion to Compel Arbitration or, in the Alternative, for Abstention [ECF No. 46], and on September 22, 2023, StakeHound filed its Amended Memorandum of Law in Support of Motion to Compel Arbitration or, in the Alternative, for Abstention [ECF No. 83] (together, the "Motion to Compel"). The Motion to Compel asks the Court to (i) lift the automatic stay and compel arbitration of Celsius' breach of contract, turnover, unjust enrichment, conversion, constructive trust, and accounting claims (the "Subject Claims") and (ii) stay the remaining claims asserted in the Amended Complaint (violation of the automatic stay and declaratory judgment that any claims by StakeHound be disallowed); or, alternatively (iii) to abstain from exercising jurisdiction over Celsius' claims under the doctrine of international comity. The Court is set to consider the Motion to Compel, along with the Injunction Motion, at the Hearing on October 25, 2023.

## II.   BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY JUDGE MAY ENTER FINAL ORDERS OR JUDGMENT

This Court has subject matter jurisdiction over the Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(a) and (b); and the *Amended Standing Order of Reference* M10-468 of the United States District Court for the Southern District of New York (the "Southern District of New York") dated February 1, 2012 referring to the Bankruptcy Judges of the Southern District of New York all cases and proceedings arising under, arising in, or related to a case under title 11 of the United States Code (the "Bankruptcy Code") issued pursuant to 28 U.S.C. § 157. Venue in the Southern District of New York is proper under 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises under, arises in and relates to cases commenced under the Bankruptcy Code.

The parties agree that this Adversary Proceeding includes at least two "core" claims: the first cause of action – violation of the automatic stay; and the fourth cause of action – declaratory

judgment pursuant to section 502(d) of the Bankruptcy Code disallowing any claim by StakeHound due to its alleged failure to turnover estate property. The parties agree that the fifth, sixth, seventh, eighth, and ninth causes of action (breach of contract claims under Swiss law and equitable claims under New York law) are noncore. StakeHound contends these claims must be arbitrated before this Court considers the core claims, but Celsius argues that arbitration of these claims should be stayed. The parties disagree whether the second cause of action (turnover under section 542(b)) and the third cause of action (turnover under section 542(e)) are core or noncore.

If it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments with respect to the noncore issues to be decided or the relief sought in the Motions consistent with Article III of the U.S. Constitution, Celsius consents to entry of final orders and judgments by this Court with respect to the relief sought in the Motions. StakeHound does not consent to the entry of final orders or judgment by the bankruptcy court.

### III.  STIPULATED FACTS

The parties admit, stipulate, and agree that:

    **a. The Parties**

1.    Celsius is a private limited company incorporated under the laws of England and Wales with its principal place of business located at The Harley Building, 77-79 New Cavendish Street, London, U.K. W1W 6XB.

2.    StakeHound is a private *societe anonyme* incorporated under the laws of Switzerland with its registered offices c/o MN Associes, Place de Longemalle 1, 1204 Geneve, Switzerland. Its cofounder and CEO is Albert Castellana ("Castellana").

    **b. Background**

3.  StakeHound launched its business providing liquid staking services in October 2020. Staking is a process by which cryptocurrency holders permit their cryptocurrency assets ("Native Tokens") to be utilized to support the operation of a Proof of Stake blockchain. Once staked, the Native Tokens are used to validate transactions on the network. In return for staking Native Tokens, their holders receive a share of transaction fees or newly created cryptocurrencies ("Rewards").

4.  Native Tokens are illiquid as long as they are staked. In liquid staking, the service provider or protocol issues a tokenized representation of a particular cryptocurrency, or a wrapped token ("stToken"), in exchange for the same cryptocurrency (Native Token). The service provider or protocol then stakes the Native Tokens (and/or operates the nodes for staked Native Tokens) and distributes Rewards to the holders of stTokens. Simultaneously, stTokens can be used in decentralized finance networks.

5.  StakeHound announced in June 2021 that it suspended operation of its platform. Prior to that, it engaged primarily in the business of providing liquid staking services. In return for staking Native Tokens, StakeHound's customers received in exchange the same number of stTokens and a corresponding entitlement to receive Rewards as agreed between StakeHound and its customers.

6.  StakeHound provided liquid staking services to Celsius and other customers. Celsius was StakeHound's largest customer. Celsius holds approximately 96% of all stETH ever generated by StakeHound. Also, all the native MATIC and DOT that StakeHound ever received was transferred to it by Celsius (other than Rewards received by StakeHound on the MATIC and DOT supplied to it by Celsius).

   c.  **The Staking Services Agreement**

7. In August or September 2020, Celsius was introduced to StakeHound through Jason Stone, an employee of Celsius.

8. In November 2020, Celsius staked approximately 24,960 of its ETH (the "November 2020 Staked ETH") by transferring it to the ETH2 deposit contract (the "Deposit Smart Contract"). At the time, all ETH transferred to the Deposit Smart Contract, including the November 2020 Staked ETH, was locked and unavailable for withdrawal pending completion of an ongoing upgrade to the Ethereum blockchain (the "Upgrade").

9. On January 20, 2021, Celsius and StakeHound entered into the Staking Services Agreement (the "SSA"). Pursuant to the SSA, Celsius agreed to transfer the nodes associated with the November 2020 Staked ETH (plus Rewards) to StakeHound in exchange for the same number of stETH (plus stETH associated with Rewards to be earned on the native ETH).

10. On January 23, 2021, pursuant to section 1.2 of the SSA, Celsius transferred to StakeHound the nodes for the November 2020 Staked ETH (plus Rewards). On the same day, StakeHound caused approximately 25,436 stETH to be minted and transferred to Celsius, an amount equal to the number of ETH associated with the nodes for the November 2020 Staked ETH (plus Rewards).

d. **The February 2021 Staked ETH**

11. On February 2, 2021, Celsius transferred approximately 34,999.99 native ETH (the "February 2021 Staked ETH") from a wallet owned by Celsius to a wallet identified by StakeHound. On the same day, StakeHound staked 34,976 ETH to fund 1,093 validators. In exchange, on the same day, StakeHound minted and transferred to Celsius 35,000 stETH. StakeHound contends that the February 2021 Staked ETH transaction was governed by StakeHound Services Terms and Conditions (the "SSTC"); Celsius disagrees.

### e. The Revenue Sharing Agreement and Term Sheets

12. On April 21, 2021, Celsius and StakeHound entered into a Revenue Sharing Agreement (the "RSA").

13. On April 21, 2021, Celsius and StakeHound entered into a term sheet (the "MATIC Term Sheet") pursuant to the RSA. Pursuant to the MATIC Term Sheet, Celsius transferred 40 million native MATIC tokens to StakeHound and received 40 million stMATIC in return.

14. Also on April 27, 2021, Celsius and StakeHound entered into another term sheet (the "DOT Term Sheet," and together with the MATIC Term Sheet, the "Term Sheets") pursuant to the RSA. Pursuant to the DOT Term Sheet, Celsius transferred 66,000 native DOT tokens to StakeHound and received 66,000 stDOT tokens in return.

15. StakeHound immediately staked the MATIC and DOT, and has been receiving Rewards on those native tokens since.

### f. Loss of the Private Keys to Native ETH Tokens

16. On May 2, 2021, private keys relating to the withdrawal of 38,178 ETH, including all of the February 2021 Staked ETH, plus all ETH provided to StakeHound by customers other than Celsius (the "Lost ETH"), were lost (the "Key Loss Event"). StakeHound claims that the blockchain security provider Fireblocks, Inc. is responsible for the Key Loss Event. StakeHound claims that, as a result of the Key Loss Event, StakeHound suspended its platform in May 2021, which it announced in June 2021.

### IV. PARTIES' CONTENTIONS

#### a. Celsius' Contentions

1. Celsius' contentions as to the ultimate issues of fact and law to be tried at the Hearing are set forth in Celsius' (i) Memorandum in Support of Motion for Temporary Restraining

Order and Preliminary Injunction [ECF No. 39]; (ii) Reply Memorandum in Support of Motion for TRO [ECF No. 50]; (iii) Supplemental Brief in Further Support of Temporary Restraining Order and Preliminary Injunction [ECF No. 54]; (iv) *Grupo Mexicano* Reply Brief [ECF No. 57]; (v) Reply Memorandum in Support of Motion for Preliminary Injunction [ECF No. 72]; (vi) Opposition to StakeHound's Motion to Compel Arbitration or, in the Alternative, for Abstention [ECF No. 62]; and (vii) the declarations made in support of these submissions.

      b. **StakeHound's Contentions**

2.     StakeHound's contentions as to the ultimate issues of fact and law to be tried at the Hearing are set forth in StakeHound's (i) Objection to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 42]; (ii) Motion to Compel [ECF Nos. 46, 83]; (iii) Supplemental Memorandum Addressing Unavailability of Freezing Injunction in Favor of Plaintiff [ECF No. 56]; (iv) Supplemental Objection to Plaintiff's Motion for a Preliminary Injunction [ECF No. 64]; (v) Reply Memorandum in Support of Motion to Compel Arbitration or, in the Alternative, for Abstention [ECF No. 69]; and (vi) the declarations made in support of these submissions.

**V.    ISSUES TO BE TRIED**

The parties respectfully refer to and incorporate their pretrial legal submissions. Without waiver of such submissions and to summarize, the parties identify the following issues to be tried at the Hearing: (a) whether Celsius is entitled to a Preliminary Injunction and (b) whether StakeHound's Motion to Compel should be granted.

**VI.    EXHIBITS**

The so ordered Joint Scheduling Stipulation Between Plaintiff Celsius Network Limited and Defendant StakeHound SA [ECF No. 85] (the "Scheduling Stipulation") sets Saturday,

October 21, 2023, at 3:00 p.m. EDT, as the deadline for the parties to exchange a list of exhibits and deposition designations they intend to offer at the Hearing. The Scheduling Stipulation sets Monday, October 23, 2023, at 3:00 p.m. EDT as the deadline for the parties to identify any objections they intend to assert concerning the other party's exhibits and deposition designations (the "Objection Deadline"). The parties will update this Joint Pretrial Order following those exchanges. Except to the extent the parties raise objections with respect to the other party's exhibit lists or deposition designations by the Objection Deadline, the parties stipulate to the admissibility of all designated deposition testimony and all documents produced by parties or third parties in this litigation identified on the parties' forthcoming exhibit lists.

## VII. CELSIUS' WITNESS LIST

Celsius intends to submit the testimony of the following witnesses by declaration at the Hearing:

1. Felix Dasser;
2. Richard Man; and
3. Connor Nolan.

The Declarations that each of Messrs Dasser, Man, and Nolan submitted in connection with Celsius' Injunction Motion and StakeHound's Motion to Dismiss and Motion to Compel, together with all exhibits thereto, will serve as their direct testimony in this matter.

Celsius intends to take cross examination testimony of the following StakeHound witnesses at the Hearing:

1. Albert Castellana Lluís;
2. Edgars Nemše;
3. Bernhard Berger; and

4. Any other witness on StakeHound's witness list.

### VIII. STAKEHOUND'S WITNESS LIST

StakeHound intends to submit the testimony of the following witnesses by declaration at the Hearing:

1. Albert Castellana Lluis;

2. Edgars Nemše; and

3. Bernhard Berger.

The Declarations that each of Messrs Castellana, Nemše and Berger submitted in connection with Celsius' Injunction Motion and StakeHound's Motion to Compel, and Motion to Amend, together with all exhibits thereto, will serve as their direct testimony in this matter.

StakeHound intends to take cross examination testimony of the following Celsius witnesses at the Hearing:

1. Felix Dasser;

2. Richard Man; and

3. Any other witness on Celsius' witness list.

\*    \*    \*

No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown.

### IX. RELIEF SOUGHT

#### a. The Injunction Motion

Celsius respectfully requests that the Court enter an order on the Injunction Motion that:

11

1. Asset preservation injunction:

    a. StakeHound and its officers, agents, servants, employees, attorneys and any other persons who are in active concert or participation with any such persons (the "StakeHound Parties") are enjoined from taking any action directly or indirectly to transfer, utilize, dispose of, encumber, sell, gift, exchange or convey any of the Subject Property until a final, non-appealable judgment is entered resolving this action, or until otherwise ordered by the Court (the "Injunction Period").

    b. Notwithstanding paragraph 1(a), in the event that StakeHound needs to transfer, utilize, dispose of, encumber, sell, gift, exchange or convey any of the Subject Property prior to the end of the Injunction Period, StakeHound shall provide to Celsius, via email to Celsius' counsel, five (5) days' written notice (the "Notice") of any desired sale or transfer of the Subject Property (the "Notice Period") by identifying the specific property (including amount and value) that StakeHound wishes to transfer, and the purpose for the proposed transfer. StakeHound shall promptly provide additional information that Celsius may reasonably request concerning the nature and purpose of the proposed transfer or transfers subject to the Notice, and to make itself available to meet and confer during the Notice Period if requested. Unless Celsius objects in writing (by email to StakeHound's counsel) prior to the end of the Notice Period, StakeHound may proceed with such sale or transfer subject to any right under applicable law that Celsius has, which expressly is reserved. If Celsius objects prior to the end of the Notice Period, then StakeHound shall not proceed with

    the intended sale or transfer unless and to the extent the objection is resolved by agreement or further order of the Court.

   c. StakeHound shall provide Celsius with all information necessary to allow Celsius to monitor any transfer of any digital asset held by StakeHound or its officers and directors. Such information shall include, but is not necessarily limited to, the current number and on-chain location of all Subject Property.

2. Arbitration injunction: StakeHound is ordered, within three business days of the date of the order, to withdraw the Swiss Arbitration, and immediately cease and desist from taking any further efforts to pursue or prosecute the Swiss Arbitration or take any other action in violation of the automatic stay.

3. Additional provisions:

   a. Any party or entity subject to the order may seek a hearing in this Court upon five (5) days' notice seeking to modify the order as to such party or entity, or clarifying their obligations under the order.

   b. The Plaintiff shall have the right to seek an emergency hearing to enforce the terms of the order and to seek contempt sanctions against any person or entity that it reasonably believes is in violation of the order.

   c. Pursuant to Federal Rule of Civil Procedure 65(b), made applicable to this adversary proceeding pursuant to Bankruptcy Rule 7065, no additional notice to any person is required prior to entry and issuance of the order.

   d. Pursuant to Bankruptcy Rule 7065, the security provisions of Federal Rule of Civil Procedure 65(c) are waived.

    e. Plaintiff is authorized and empowered to take such action as may be necessary to implement and effectuate the order.

    f. Notwithstanding any Bankruptcy Rule or Federal Rule of Civil Procedure, the terms of the order shall be immediately effective and enforceable upon its entry.

4. The Court shall retain exclusive jurisdiction to hear and determine all matters arising from the implementation of the order.

    **b. The Motion to Compel**

StakeHound respectfully requests that the Court:

1. Decide the Motion to Compel as a threshold matter before considering any other pending motion;

2. Lift the automatic stay and compel arbitration of Celsius' breach of contract, turnover, unjust enrichment, conversion, constructive trust and accounting claims in Switzerland; and

3. Stay the prosecution of Celsius' remaining claims pending the resolution of the Swiss Arbitration;

4. Or, in the alternative, abstain from exercising jurisdiction over Celsius' claims in this Adversary Proceeding based on the doctrine of international comity.

5. In the event that the Motion to Compel is granted, StakeHound is willing to consent to the extension of the Preliminary Injunction through and including the parties' initial appearance before the Swiss arbitrator.

Dated: October 18, 2023

| | |
|---|---|
| */s/ Mitchell P. Hurley* | */s/ Stephanie Wickouski* |
| **AKIN GUMP STRAUSS HAUER & FELD LLP** | **LOCKE LORD LLP** |
| Mitchell P. Hurley | Stephanie Wickouski |
| Dean L. Chapman Jr. | Jeffrey S. Kramer |
| One Bryant Park | Sean A. Feener |
| New York, New York 10036 | 200 Vesey Street, 20th Floor |
| Telephone: (212) 872-1000 | New York, New York 10281 |
| Facsimile: (212) 872-1002 | Tel: (212) 415-8600 |
| Email: mhurley@akingump.com | Fax: (212) 303-2754 |
| dchapman@akingump.com | swickouski@lockelord.com |
| | jkramer@lockelord.com |
| – and – | sean.feener@lockelord.com |
| | Jonathan W. Young (admitted *pro hac vice*) |
| Elizabeth D. Scott (admitted *pro hac vice*) | 111 Huntington Avenue, 9th Floor |
| Nicholas R. Lombardi (admitted *pro hac vice*) | Boston, Massachusetts 02199 |
| 2300 N. Field Street, Suite 1800 | Tel: (617) 239-0367 |
| Dallas, TX 75201 | Fax: (617) 227-4420 |
| Telephone: (214) 969-2800 | Jonathan.young@lockelord.com |
| Facsimile: (214) 969-4343 | |
| edscott@akingump.com | *Counsel to StakeHound SA* |
| nlombardi@akingump.com | |

*Special Litigation Counsel for Debtors and Plaintiff Celsius Network Limited*

**IT IS SO ORDERED.**

Dated: October 19, 2023
      New York, New York

                                          **/s/ Martin Glenn**
                                            MARTIN GLENN
                         Chief United States Bankruptcy Judge