Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 22-10964-mg

4    Adv. Case No. 23-01138-mg

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    CELSIUS NETWORK LLC,

9

10          Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   CELSIUS NETWORK LIMITED,

13              Plaintiff,

14        v.

15   STAKEHOUND SA,

16              Defendant.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19              United States Bankruptcy Court

20              One Bowling Green

21              New York, NY  10004

22

23              September 19, 2023

24              3:00 PM

25

1    B E F O R E :

2    HON MARTIN GLENN

3    U.S. BANKRUPTCY JUDGE

4

5    ECRO:   JONATHAN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    HEARING re Adversary proceeding: 23-01138-m Celsius Network

2    Limited v. StakeHound SA

3    Hybrid Hearing RE: Emergency Motion for Amendment of Order

4    Granting TRO (the "Motion"). (Doc## 67, 68)

5

6    HEARING re Adversary proceeding: 23-01138-mg Celsius Network

7    Limited v. StakeHound S A

8    Hybrid Hearing RE: Motion to Amend Emergency Motion Of

9    StakeHound S A For Amendment Of Order

10   Granting TRO. (Doc## 74, 75)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 4

```
 1    A P P E A R A N C E S :

 2

 3    AKIN GUMP STRAUSS HAUER & FELD LLP

 4         Attorneys for the Debtor/Plaintiff

 5         One Bryant Park

 6         New York, NY 10036

 7

 8    BY:  MITCHELL HURLEY

 9

10    LOCKE LORD LLP

11         Attorneys for the Defendant

12         200 Vesey Street, 20th Floor

13         New York, NY 10281

14

15    BY:  MARY STEPHANIE WICKOUSKI

16

17    ALSO PRESENT TELEPHONICALLY:

18    RICK ARCHER

19    JASMINE ARMAND

20    DEAN CHAPMAN

21    AARON COLODNY

22    SEAN ANDREW FEENER

23    UDAY GORREPATI

24    MIRA HAQQANI

25    TAYLOR HARRISON
```

```
 1   SAMUEL P. HERSHEY

 2   JEFFREY S. KRAMER

 3   NICHOLAS LOMBARDI

 4   MASON PALISSERY

 5   GREGORY F. PESCE

 6   ELIZABETH SCOTT

 7   LUKE SPANGLER

 8   MICHAEL STANLEY

 9   VINCE SULLIVAN

10   DAVID TURETSKY

11   KEITH WOFFORD

12   KAILA ZAHARIS

13   TANZILA ZOMO

14   PHILIP ABELSON

15

16

17

18

19

20

21

22

23

24

25
```

1          P R O C E E D I N G S

2               CLERK:  All right.  Calling Celsius Network

3     Limited v. StakeHound SA, Case Number 23-1138, the 3:00

4     calendar.  Ms. Wickouski, if you could please give your

5     appearance.

6               MS. WICKOUSKI:  Good afternoon, Ms. Anderson.

7     Stephanie Wickouski, from Locke Lord, on behalf of

8     StakeHound SA.  And I'm here with my colleague Jeffrey

9     Kramer, also from the firm of Locke Lord.

10              CLERK:  Thank you so much.  Do we have any

11    additional counsel in the Courtroom?

12              MR. HURLEY:  Yes.  Good afternoon.  Mitch Hurley

13    with Akin Gump Strauss Hauer & Feld, special litigation

14    counsel for Celsius.

15              CLERK:  All right.  Thank you.

16              MR. HURLEY:  Thank you.

17              CLERK:  All right.  Are there any parties on Zoom

18    that are speaking on the record this afternoon?  If so,

19    raise your hands using the Zoom function, raise hand

20    function, and I will ask you to unmute and give your

21    appearance.  Okay.  Recording.

22              For the parties that have joined, is there anyone

23    else in the Courtroom that's going to be speaking on the

24    record?  Is there anyone else on Zoom that's going to be

25    speaking on the record?  Can we proceed with the hearing, or

Page 7

1    are we waiting on anyone?

2              MR. HURLEY:  Celsius is ready.

3              CLERK:  Okay.

4              MS. WICKOUSKI:  We're ready also.

5              CLERK:  Okay.  Thank you.  I'll let the Judge

6    know.

7              THE COURT:  Please be seated.  Just give me a

8    moment.  All right, why don't you first give me an update on

9    where things stand?  I guess, Ms. Wickouski, you want to go

10   first.

11             MS. WICKOUSKI:  Thank you, Your Honor.  First of

12   all, I want to thank the Court for allowing us and expedited

13   hearing on our motion.  In terms of update, we have not -- I

14   think we're still in the same place with respect to our

15   request for modification of the TRO, except for one thing,

16   which is at the time we submitted our motion, we were not

17   aware that the hearing on the 27th may be adjourned.

18             Once we saw that with Mr. Hurley's request on the

19   docket, as Your Honor knows, we consented to the request.

20   But we really did need to update our numbers because,

21   assuming the Court allows the adjournment, that's going to

22   be a somewhat longer period of time that we wanted to try to

23   address.

24             I realized that -- well, we did file sources and

25   uses early this afternoon.  I apologize for the lateness of

1    this being filed.  However, there's been a number of

2    incomings, including Mr. Hurley's letter that he filed with

3    the Court, the letter he sent to me on Friday, as well as

4    the opposition filed this morning that stated that we hadn't

5    been specific or our numbers weren't clear, or we didn't

6    have enough detail.

7              And so I thought it was best for our client to

8    present this in a format that most of us are used to seeing,

9    which is sources and uses.  There are a couple of things

10   that are interesting about that.  One is that I think it

11   shows -- and this point has, I think, gotten lost in the

12   translation -- that there is actually revenue being

13   generated that has been generated that is on hand, as well

14   as assets that are not in dispute, including primarily

15   StakeHound' bank account.

16             And because the way we read the order as drafted,

17   it was our belief that we were not allowed to touch any of

18   that, only $200,000 of the subject assets.  So we proceeded

19   under that assumption.  But one of the things that we're

20   asking is for clarification on that point.  And if that was

21   what was intended, we're asking the Court to modify it.  And

22   we've specifically presented why we need the money,

23   specifically what's involved and the impact on the

24   StakeHound assets.

25             And you know, one thing I would note is to

Page 9

1    quantify this, this really doesn't have a noticeable effect

2    on the StakeHound estate or recovery.  Even if one were to

3    assume that the Celsius -- even if one were to assume that

4    Celsius wins on its claim, gets a judgment, and somehow has

5    -- that results in $1 million or half a million dollars less

6    than what they would have recovered otherwise, that amount

7    does not move the needle in this bankruptcy case.  And

8    that's demonstrated clearly by the numbers in their

9    disclosure statement.

10            By my calculations -- and I'm no math genius here

11   -- but that would result in one cent for every $10,000.

12   That's -- not only is that material, that's not even

13   noticeable.  And I think that the relative size of this

14   expenditure does not wreak any irreparable harm on the

15   Debtor, but to the extent there is any harm, it has to be

16   balanced with the harm that StakeHound faces if its

17   operations shut down.  And you know --

18            THE COURT:  You know, my answer to that is it may

19   translate into pennies for the estate.  But if you owe them

20   $100 million, it's $100 million.  That's a lot of money, to

21   me.  So I don't credit your analysis of why you say it's not

22   material.  It's a lot of money.  Maybe you're right, maybe

23   they're right, but it's a lot of money.

24            MS. WICKOUSKI:  Well, I think that there's another

25   factor here, which is the amount -- not only is the amount

Page 10

1    that we are asking to be able to spend not material, even

2    assuming the Debtor recovered it, but the amount is not

3    likely to result in a diminution of the assets of

4    StakeHound.  It's likely to result in preservation and even

5    enhancement of them.

6              And I appreciate that this is relief that we're

7    asking that's discretionary with the Court.  The Court has

8    entered a TRO.  We first of all want to know that we're

9    reading it properly, but we also --

10             THE COURT:  I have some question whether -- I'm

11   going to have questions, first to Mr. Hurley.  When I read

12   his filing, which sort of sets out -- I'll hear from him

13   first and then you'll have a chance to respond to it -- the

14   amount that it appears that StakeHound has the amounts it's

15   used paid since the voluntary freeze and since the TRO

16   seemed rather staggering to me.  It raised -- you know, I'm

17   not jumping to any conclusions yet, but it raised some

18   pretty serious questions to me.

19             MS. WICKOUSKI:  I don't think that -- I don't

20   think that that's accurate.  I think that the amounts that

21   were utilized were from the Debtor's bank account and not

22   from the assets that we agreed to freeze.  And I think --

23             THE COURT:  Hang on a second, okay?  The TRO, the

24   operative part of the TRO, was the order entered on

25   September 8th.  In bold and all caps on page 12, "StakeHound

Page 11

1    and all persons acting in concert with StakeHound are here

2    are prohibited and preliminary enjoined from transferring

3    any assets or property within StakeHound's possession,

4    custody or control to any person or entity, pending the

5    outcome of the preliminary injunction hearing."  And it goes

6    on from there.

7            You know, then the last sentence also in bold and

8    all caps, "Notwithstanding the terms of the TRO StakeHound

9    shall be permitted to spend $200,000 in money or money's

10   worth of the subject assets between now and the PI hearing."

11   So $200,000 from the subject assets.  But the freeze was

12   from transferring any assets or property within StakeHound's

13   possession, custody, or control to any person or entity.

14   Where you think it -- they were free to transfer money from

15   their bank accounts?

16            MS. WICKOUSKI:  No, that --

17            THE COURT:  They're not.

18            MS. WICKOUSKI:  That didn't -- that's correct.

19   That did not occur since this TRO was entered.  And this is

20   demonstrated by our sources or uses.  Only $161,000 was

21   utilized.  StakeHound has not even utilized the full

22   $200,000.  I believe what Mr. Hurley incorrectly refers to

23   is the fact that while we were in a voluntary freeze, which

24   Mr. Hurley negotiated --

25            THE COURT:  Right.  I have that stipulation and

1   that says in Paragraph 1 -- leave some language out --

2   StakeHound will not sell or transfer or otherwise dispose of

3   tokens, either ETH, DOT and MATIC, and associated rewards

4   that are subject to this litigation -- that's the subject

5   property -- subject to notice of opportunity.

6           MS. WICKOUSKI:  That's correct.

7           THE COURT:  It is correct that that language

8   doesn't say anything about the bank accounts.

9           MS. WICKOUSKI:  That is correct.  And that is what

10  we agreed to and that was abided by.  There was, to my

11  knowledge, I believe -- and don't have a witness here for

12  this -- but around $1 million in a bank account that was not

13  -- you know, not related to this.

14          THE COURT:  When you say not related to this, was

15  not subject to the voluntary --

16          MS. WICKOUSKI:  No, not subject to --

17          THE COURT:  -- freeze that was in that

18  stipulation?

19          MS. WICKOUSKI:  That's correct.  It was not

20  tokens.  It was not rewards.

21          THE COURT:  Okay.  And since the TRO, you're

22  saying they've not -- other than the $200,000 carveout,

23  nothing else has been spent from any of the assets of

24  StakeHound?

25          MS. WICKOUSKI:  That's correct.  That's correct.

Page 13

1   And part of the -- I suppose that because there is a

2   difference between what we agreed to in the voluntary freeze

3   and what Celsius asked for in the TRO and the language of

4   the TRO, I think it's fair to say we had a question in terms

5   of whether the scope of this was intended, but we were not

6   going to act without asking Your Honor.

7              THE COURT:  My intention was all -- they were not

8   to transfer any assets other than the 200 from any accounts.

9              MS. WICKOUSKI:  Yes.  Well, and that's what we

10  did.

11             THE COURT:  Other than the two -- I gave you the

12  $200,000 --

13             MS. WICKOUSKI:  Yes.

14             THE COURT:  -- carveout, which Celsius objected to

15  a carveout, but I approved the carveout.

16             MS. WICKOUSKI:  I understand, Your Honor, and

17  that's what we had -- that's how we read it and that's what

18  we have abided by.  What we're asking today, and we wanted

19  to illustrate this, that the -- and dollars don't have faces

20  on them in the sense that what our client is concerned about

21  is being able to pay their necessary bills, and they don't

22  like to have to pick and choose between vendors to pay, and

23  they're going to run out of money.

24             So, if the Court were inclined to grant the relief

25  with respect to the bank account being used, or to raise the

Page 14

1    carveout an incremental $300,000, you know, we're not

2    suggesting how the Court grants this relief.  What we do

3    want is an accommodation so we can get through to the next

4    hearing.

5              THE COURT:  Can I ask a couple of questions?  So I

6    think in what I read it alluded to the fact that there's a

7    mediation plan?  When is that?

8              MS. WICKOUSKI:  Well, Your Honor, we did want to

9    discuss that, because when I saw Mr. Hurley's letter asking

10   for a continuance, I immediately consulted our client and

11   obviously recommended to them that we agree, but also

12   discussed with them the prospect that we use the additional

13   time to pursue a mediation.

14             So, Mr. Hurley and I have not discussed that.  I

15   don't know what the Debtor's response to that is, but we're

16   prepared to talk about that today.

17             THE COURT:  So that hasn't been agreed to?

18             MS. WICKOUSKI:  Hasn't.  Has not been agreed to.

19   It would be my hope that if the Debtor were agreeable and

20   Your Honor allowed it, that we could go right away to

21   discuss the selection of a mediator, who --

22             THE COURT:  Let me raise a very practical problem,

23   because I think Mr. Hurley, I think, in a letter had

24   suggested adjourning it, I think until October 10th or 11th,

25   or something like that.

Page 15

1          MR. HURLEY:  11th, Your Honor.

2          THE COURT:  It doesn't work.  As you know, Mr.

3   Hurley, the Celsius confirmation hearing starts on October

4   2.  It's not going on that week.  That's because I'm out of

5   town.

6          MS. WICKOUSKI:  Mm hmm.

7          THE COURT:  I'm not here.  So, I will tell you

8   all, in reviewing my calendar, it either goes forward on

9   September 27th or Wednesday, October 25th.

10          MS. WICKOUSKI:  I'm sorry, Your Honor, I didn't

11   hear.

12          THE COURT:  Wednesday, October 25th.  So the

13   Celsius confirmation hearing starts at 2:00 on the 2nd,

14   Monday the 2nd.  And we're off the week of the 9th because I

15   was going to be away before this hearing was scheduled.  And

16   then we come back and we resume the confirmation.  Whether

17   it's going to take the whole time, I don't know.  Okay?

18   Those dates have been blocked on my calendar.

19          In order -- and I have, like, the whole month of

20   November in trial.  I can't, you know, hold off the rest of

21   my calendar for two months.  So we've been scheduling -- you

22   just heard me schedule a hearing for noon during the

23   confirmation because, you know, I've been scheduling

24   hearings for 5:00.  I can't schedule an evidentiary hearing

25   for 5:00.

1              MS. WICKOUSKI:  Mm hmm.

2              THE COURT:  Okay.  So realistically, as of now, I

3    mean, it's possible the confirmation hearing will end

4    sooner.  But right now when I looked at my calendar earlier

5    this morning, the first day -- I have matters on the 25th I

6    could move -- would be Wednesday, October 25th.  That's

7    number one.

8              MS. WICKOUSKI:  Understood.  And Your Honor --

9    just to be clear, I mean, we are ready to go forward next

10   week.

11             THE COURT:  So am I, or I will be.  I'm not ready

12   yet, but I will be.

13             MS. WICKOUSKI:  I feel that it was -- when someone

14   asks for a continuance, particularly when they're

15   representing --

16             THE COURT:  Well, they didn't just ask for a

17   continuance.  Let's be very clear about that.  And if I have

18   to address that now, I will.  You know, Mr. Hurley has --

19   you may -- I'm not saying that, you know, what he says is,

20   you know, is the actual -- the facts or the Court would find

21   that.  But he certainly raised in his letter serious issues

22   about discovery and, you know, you responded on that.

23             But let me say that if we go forward on the 27th

24   and Mr. Hurley (indiscernible) on evidence of the failure of

25   StakeHound reasonably to comply with discovery, I am going

Page 17

1   to make adverse findings based on that.  This hearing has

2   been scheduled.  You all knew it was on a very expedited

3   basis.  It puts quite seriously unreasonable burdens on you

4   and me and your clients.  That's what happens with a

5   preliminary injunction.

6          But if in fact we go -- if we have the hearing on

7   the 27th and Mr. Hurley establishes at least what he alleges

8   about the absence of discovery, the importance of the

9   discovery, I will make adverse findings against StakeHound.

10         MS. WICKOUSKI:  I understand, Your Honor, and --

11         THE COURT:  But that's --

12         MS. WICKOUSKI:  -- I strongly disagree with the

13  characterizations.

14         THE COURT:  Okay.  And I'm not --

15         MS. WICKOUSKI:  And we -- my colleague, Jeffrey

16  Kramer, who's been the point person on the discovery in

17  charge of that, can speak to that very directly.  It was

18  completely miscast.

19         And I must say this, even though I realize it's a

20  little bit of putting a pin in this and going on to the

21  another issue, I did note that Mr. Hurley submitted his

22  September 15th letter that was filed on Friday shortly

23  before I filed this motion.  But he neglected to include my

24  response, which was sent the next day.  And I think to the

25  extent that the Court considers that letter in any respect,

Page 18

```
 1   I would ask for the opportunity for the Court to consider my

 2   response as well.

 3             THE COURT:  Let me make clear, I am not deciding

 4   anything on those letters.  Okay?  It raised a -- and I

 5   don't doubt that you'll have a response to it.  The only

 6   point I'm making is that that if we go forward on the 27th

 7   and there's been a material deficiency in the discovery that

 8   reasonably was asked of StakeHound, I will make adverse

 9   findings based on it.  I mean, the plaintiff is entitled to

10   be able to prove his case.  And to be able to do that, was

11   entitled to discovery.  Let me put that -- I don't want to

12   go further on that issue now.  I just --

13             MS. WICKOUSKI:  Well --

14             THE COURT:  -- this gets complicated, okay?

15   Because --

16             MS. WICKOUSKI:  I understand and I understand the

17   --

18             THE COURT:  You agree --

19             MS. WICKOUSKI:  -- the importance of the

20   exclusion.

21             THE COURT:  You would agree to an adjournment?

22             MS. WICKOUSKI:  Yeah.

23             THE COURT:  I can't do a hearing on the date that

24   Mister Hurley suggested.  I'm not here.

25             MS. WICKOUSKI:  Well, and Your Honor, we've
```

Page 19

 1   propounded discovery as well.  I think our discovery is more

 2   relevant to the issues, more targeted, but I'm sure that

 3   Celsius --

 4             THE COURT:  Why am I not surprised you're saying

 5   that?

 6             MS. WICKOUSKI:  I'm sure Celsius would disagree,

 7   and I think we would intend to work all of these issues out

 8   with them.  We're trying very hard.  We're in the mode and

 9   have been for -- I mean, there are four associates who would

10   strongly disagree with the suggestion that we weren't

11   participating in discovery.  They feel like they're

12   participating a whole heck of a lot.

13             So it would not be -- I'm -- as you know, been

14   practicing a long time and I've sought preclusion orders

15   myself.  So I take this whole discovery process very

16   seriously, and I react when someone doesn't comply with

17   discovery.  We have no intention of being in that position

18   because that's not who we are.  And if Your Honor wants to

19   hear more details --

20             THE COURT:  Let me just -- I'm just curious what -

21   - are you sending the associates to Switzerland --

22             MS. WICKOUSKI:  No.

23             THE COURT:  No, I mean, I'm not saying that to be

24   flippant.  There isn't -- look, I practiced law for 34 years

25   before I became a judge, and you know, there are a whole

1    bunch of written opinions in the Southern District of New

2    York on spoliation.

3              MS. WICKOUSKI:  Mm hmm.

4              THE COURT:  Lawyers' obligations have only gotten

5    much more complicated, you know, particularly where you're

6    dealing with foreign clients --

7              MS. WICKOUSKI:  Mm hmm.

8              THE COURT:  -- as you are here.  You know, you and

9    they are operating at their own risk.  If you leave your

10   client to decide what it -- I'll say it instead of the he --

11   I know it talks about an individual -- what it believes is

12   relevant and should be produced, or what searches are

13   required to be made.

14             MS. WICKOUSKI:  We didn't do that.

15             THE COURT:  Clients don't get to do that.

16             MS. WICKOUSKI:  We did not do that.  And we have

17   spent a lot of time with our client getting them to --

18   explaining to them what was necessary and getting the whole

19   universe --

20             THE COURT:  They're aghast at what the discovery

21   process in the United States is.  You know --

22             MS. WICKOUSKI:  Well, it's --

23             THE COURT:  (indiscernible)

24             MS. WICKOUSKI:  These are not lawyers.

25             THE COURT:  I know.

Page 21

1          MS. WICKOUSKI:  They're tech people.  This is the

2     first time they've been through a U.S. legal process.  But

3     it's not correct to say that we are turning over documents

4     that are only what our client culled out.  We're going

5     through the universe of documents.  Hence, my point about my

6     associates, who were working night and day on this.

7          And, you know, frankly, I think given the amount

8     that needs to be done, I can't really quibble over the fact

9     that both sides would probably benefit from more time.  You

10    know, I had originally seen this as a much more targeted

11    dispute in terms of the arbitrability issue.  It's not even

12    immediately obvious to me why there would need to be any

13    discovery.  Yet, that has been pursued and we're responding

14    to it fully.

15          But I really question why that's being done when

16    it's not really obvious why it's necessary to decide the

17    pending motions.  But still, withstanding that --

18          THE COURT:  Well, let me just ask you a question--

19          MS. WICKOUSKI:  -- a request is a request.

20          THE COURT:  -- because -- so, am I correct that

21    you've withdrawn the motion to dismiss?

22          MS. WICKOUSKI:  Yes.  Yes, Your Honor.  We have --

23    we withdrew that last week.

24          THE COURT:  Right.

25          MS. WICKOUSKI:  And --

```
1              THE COURT:  And so, what I'm faced with for the

2    27th or whenever it's rescheduled for, is the motion for

3    preliminary injunction and your motion to compel

4    arbitration?

5              MS. WICKOUSKI:  Yes, Your Honor.

6              THE COURT:  Okay.  Well, let me -- because I think

7    it's relevant to the scheduling issue, let me ask, Mr.

8    Hurley, what is Celsius' view about mediation?

9              MR. HURLEY:  May I have the podium, Your Honor?

10             THE COURT:  Yeah, please.

11             MR. HURLEY:  Thank you, Your Honor.  Mitch Hurley,

12   with Akin Gump, special litigation counsel to Celsius, for

13   the record.

14             THE COURT:  Do you want to introduce your

15   colleagues too?

16             MR. HURLEY:  Absolutely.  My partner, Dean

17   Chapman, and my colleague Nick Lombardi, who I believe is

18   familiar to this Court.

19             THE COURT:  Well, that's -- the reason I ask you

20   to do that is because I always make a disclosure any time

21   one of my former law clerks appears before me.  Mr. Lombardi

22   is one of my former law clerks.  How many years ago,

23   Nicholas?

24             MR. LOMBARDI:  Six years, Your Honor.  Six years.

25             THE COURT:  Good to see you.  But I always --
```

Page 23

1    whenever one of my former law clerks is appearing before me,

2    I want to make sure that that's on the record.  Okay.  Go

3    ahead, Mr. Hurley.

4              MR. HURLEY:  Okay.  So, Your Honor, let me say

5    with respect to mediation, first of all, that as I think the

6    Court is aware, Celsius has been keen from the very

7    beginning to try to get settlement discussions going, with a

8    lot in the record about that going all the way back to

9    April.

10             We were in this Courtroom on September 7th.  You

11   looked us both in the eyes and said, see if you can settle--

12             THE COURT:  Well, we're here today.  But what --

13   let's put aside --

14             MR. HURLEY:  Okay.  Fair enough.

15             THE COURT:  -- what past history is and let's talk

16   about today.

17             MR. HURLEY:  We're only trying to make the point

18   that Celsius has been keen on that from the beginning and

19   remains so.  With respect to mediation itself, it can be

20   very effective.  It can also result in delays.  It can be

21   expensive.  It can slow things down.

22             So from our perspective, while we think mediation

23   makes sense, especially if we get the right mediator for it,

24   it would be very important from our perspective for it to

25   continue alongside the other proceedings in parallel,

1    especially discovery.  And I have to address very briefly

2    some stuff on discovery.  We obviously did send a letter

3    asking for a conference on this, so I think it's fair for me

4    to do a bit on it.  I won't belabor it.

5            So first of all, you just heard Ms. Wickouski say

6    she disregards -- that she doesn't agree with any of my

7    characterizations.  Okay.  There's some facts she can't

8    deny.  We served our discovery on September 4th.  We have

9    not gotten one page.  Okay.  She says in her letter to you

10   yesterday, this is in Paragraph 2, the last sentence.

11           THE COURT:  Look --

12           MR. HURLEY:  I just -- I --

13           THE COURT:  Let me stop you, because I read the

14   letter.  I read --

15           MR. HURLEY:  Okay.

16           THE COURT:  -- her letter.  I meant, read Ms.

17   Wickouski's letter.  I understand and I -- if I have to

18   resolve discovery disputes, I have a procedure for doing

19   that.  That's not right at this moment.

20           MR. HURLEY:  I understand.  This point though,

21   Your Honor, I think is critical to the scheduling question

22   and whether or not it's realistic to go forward on the 27th.

23           THE COURT:  That's why I started by saying that if

24   we have -- if we go forward on the 27th, I'm going to permit

25   you to put on, you know, under oath proof with regard to

Page 25

1    discovery.  And if I find material inadequacy, failure to

2    provide the discovery, I'm going to make adverse findings

3    for the preliminary injunction.

4            I'm not saying that as a threat.  I'm just, it's

5    just a fact.  But I don't consider, with all due respect, I

6    don't consider the letters from either of you as proof of

7    it.  Okay.  I don't want -- I'm not delving into the details

8    of, you know, what was done, what was not done, whether a

9    single page was produced or not produced and why and all of

10   that now.  Okay.  But I'm just -- I raised the issues

11   because, one, the adjournment raises real scheduling issues

12   for me.

13           Okay, and I -- when I told you that the first date

14   that I could do an adjourned injunction hearing is October

15   25th, that's just the reality of it.  You'll either -- when

16   I say you, I'm talking about both of you and your clients --

17   will agree to mediation, which has to happen promptly.

18   Let's put it this way.  If we adjourn the hearing to October

19   25th, I'm not staying discovery.  We will push forward and

20   if, you know what I hope would happen -- let's assume Ms.

21   Wickouski, that you're successful in your motion to compel

22   arbitration.

23           You're then, your client is looking at -- because

24   I assume if Celsius is compelled to arbitrate, they will

25   aggressively and it's going to be expensive for both sides.

1    Okay, and it's going to take time.  I don't know what an --

2    got a single arbitrator as of now?  I mean, it's possible

3    that the result is that I order arbitration but -- or that

4    you vacate the arbitration that was demanded and you start

5    over again because it violated the automatic stay and all

6    that.

7           But let's assume the arbitration goes forward.  It

8    isn't going to happen instantly and there's going to be

9    expense.  And I -- and the time I issued the TRO, I know I

10   said at that point -- and I'm not ruling on this, but

11   there's certainly the possibility that what the Court does

12   is issue a preliminary injunction until the arbitrator has a

13   chance to rule on precautionary measures.  And I've had that

14   happen in cases before and in fact, they read -- you know,

15   it's not a crypto case like this.

16          It's not, you know, not the same issues, but yes,

17   that's what -- arbitrators do that.  Okay.  And you can

18   disagree, but, you know, I think Mr. Hurley made a

19   substantial showing that they were entitled to the relief

20   and they'll make that, you know, they'll certainly attempt

21   to make that showing before the arbitrator or not.  So --

22   but from the standpoint of Celsius, I'm not sure where this

23   whole process gets you.

24          You know, Mr. Hurley, I think the first time you

25   appeared in Celsius before me was in a prior adversary

Page 27

1   proceeding and we know what happened there when the

2   counterparty filed for bankruptcy.  You know, every time I

3   read something about StakeHound's financial position, press

4   as hard as you want and it may wind up with an insolvency

5   proceeding in Switzerland.  So it seems to me the stakes are

6   high for both sides.

7           And what would make good sense to me is not

8   stopping the litigation but make good sense to you, that you

9   and your clients promptly agree on a mediator and try and

10  resolve this whole dispute because it's either before me or

11  before an arbitrator.  It's going to go on for months at

12  great expense to everybody.  I don't think that's in either

13  side's interest here.

14          Let me just say this as well and then you may well

15  disagree with this Mr. Hurley, but I think you and your

16  client need to agree on a sufficient, I'll call it a

17  lifeline to keep StakeHound going until operating, not

18  filing for insolvency, until we get to a preliminary

19  injunction hearing or you get to a settlement.  You know, it

20  may be Celsius' view that StakeHound and StakeHound alone is

21  responsible to Celsius for whatever loss occurred because of

22  Fireblocks.

23          But you know, and you may not want to see counsel

24  paid for pursuing their claim in Israel on it.  But you

25  know, it just strikes me that a disposition, a settlement in

1    this case may include either assignment of the claims or

2    assignment of the recovery in that, you know, the amount of

3    the claim that you believe Celsius has vastly exceeds

4    StakeHound's assets and it clearly is in Celsius' best

5    interest for StakeHound to recover in the proceeding in

6    Israel.  It isn't going to happen for free.

7             So all I can do is decide the matters that are

8    before me.  Okay, and if you all want to go ahead on the

9    27th, you'll go ahead on the 27th and you'll add to what

10   evidence you were going to put on to deal with the

11   inadequacies of StakeHound's responses to discovery and

12   whatever.  And we'll do -- we'll have a hearing and I'll

13   rule, okay.  Not necessarily from the bench, but I'll rule.

14   I don't let things linger.

15            But I'm not sure where that's going to get you at

16   the end of the day, okay, so, okay, you get a preliminary

17   injunction and I will probably not rule from the bench, but

18   I've got -- you know, I thought that StakeHound's argument

19   for arbitration because I've dealt with arbitration a lot,

20   these issues recently -- I'm not saying they're going to

21   win, but I'm not saying they're going to lose either.  And

22   one way or the other, where that's going to leave Celsius is

23   litigating here, litigating in Switzerland for potentially a

24   long time.

25            Sure, you can settle somewhere down the road, but

1    to me, it just makes a lot more sense to put all of your

2    effort immediately into trying to get this resolved and I

3    think, you know, your -- Celsius position, I'm not saying

4    it's unreasonable but not a penny for lawyers, for their

5    lawyers.  I don't know what the actual status of the matter

6    in Israel is and everything.  But frankly, I think it's in

7    Celsius' interest that matter go as quickly as possible as -

8    - with as strong a showing as possible and so that -- how

9    much -- Ms. Wickouski, how much was lost in -- by losing the

10   private key?

11            MR. HURLEY:  The ETH that we provided was about

12   35,000 and there were rewards.  I think it was in the 38,000

13   ETH range.  Very valuable.

14            THE COURT:  That --

15            MR. HURLEY:  Very valuable.

16            THE COURT:  -- translated into dollars?

17            MR. HURLEY:  Changes every day, but 70 million

18   recently.

19            THE COURT:  All right.  Ms. Wickouski, go ahead.

20   You want to say something?

21            MS. WICKOUSKI:  Can we  -- there is also a loss of

22   business claim that StakeHound has against Fireblocks

23   because StakeHound, I think this was actually in

24   (indiscernible) declaration, was the original developer of

25   this liquid staking model and technology and they were very

Page 30

1    positioned to be a major player in this business, but this

2    cast such a pall on their business and their opportunities,

3    there is a substantial claim there and I think that that

4    claim --

5              THE COURT:  Okay --

6              MS. WICKOUSKI:  What I'm --

7              THE COURT:  I'm sure Celsius evaluates --

8              MS. WICKOUSKI:  Well --

9              THE COURT:  Has considered it and evaluated as

10   well.

11             MS. WICKOUSKI:  And we have --

12             THE COURT:  Let --

13             MS. WICKOUSKI:  We have experts that would be

14   recognized even by our opposing counsel and our adversary as

15   being competent in the field to assess damages.  We didn't

16   want to disclose who they are, but we can do that.  And my

17   point being that this isn't just something written on a gum

18   wrapper.  This is a real asset that could (indiscernible) to

19   the benefit of my client and Mr. Hurley's client and it's

20   something that I think really warrants a discussion in the

21   mediation process, but we have to have some ability to get

22   from here to there.  I think that the -- obviously it's in -

23   - it's up to the Court's schedule as to when a continuance

24   would be, we'll react --

25             THE COURT:  I'm -- that I made clear.  It's either

Page 31

1    the September 27th or October 25th.  One or the other.  I

2    mean, I can go further than -- actually, I can't because

3    November, I've got this long trial.

4            MS. WICKOUSKI:  And we have not -- and I was

5    careful in my letter and I'll reiterate it again.  We are

6    not conditioning our consent to a continuance on the Court's

7    granting us a carveout or with Mr. Hurley's client granting

8    us a carveout.  However, this is -- puts us in a very

9    difficult position and we would ask for some good faith

10   accommodation either by the plaintiff or consideration by

11   Your Honor.

12           THE COURT:  Well, let me say this.  I think on the

13   motion that's before me today, which I agreed to hear on

14   very short notice, Celsius has the much better part of the

15   argument.  This is essentially a motion for reconsideration

16   and as a motion for consideration, it's a loser.  Everything

17   that you're arguing in the motion about the economics could

18   have been made right at the time of the TRO hearing.

19           And -- but I wasn't deaf to what you were arguing

20   either.  I mean, I did approve the $200,000 carveout because

21   I thought it would at least allow -- maybe it wouldn't allow

22   them to pay you and the other lawyers, but it would allow

23   them to pay the other necessary expenses to keep their site

24   operating, okay.  That was my intention.  And as I look at

25   the numbers in the papers you've submitted now, it did.  It

1    did exactly that.

2            MR. HURLEY:  It didn't.  What they submitted today

3    shows that of the $200,000, $140,000 -- $100,000 went to

4    Locke Lord, $40,000 went to this British law firm that's

5    also working with them on this and $40,000 went to the

6    staking costs.

7            THE COURT:  All right.

8            MR. HURLEY:  That's how they spent it.  That's why

9    they're saying  there's a crisis, Your Honor, because the

10   $200,000 that you unlocked for them, they didn't use

11   business expenses.  They used most of it to pay lawyers and

12   not even the lawyers working on the Israeli --

13           THE COURT:  Here's what we're going to do.

14           MS. WICKOUSKI:  (indiscernible).

15           THE COURT:  Wait, wait.  Stop.  Stop.  Either the

16   two of you alone or with your troops are going to go out in

17   the hall and you're going to see if you can come to some

18   agreement.  You know, I would say this, Mr. Hurley.  I

19   talked about the necessity for a lifeline to keep StakeHound

20   operating.  Its lawyers are not going to work for nothing

21   for very long. Okay.  You may poo-poo whether paying of

22   legal fees -- if it was the -- if the tables were turned,

23   you'd have a different view of it.  Okay.

24           Just because of my schedule, I can't hear this

25   until October 25th.  That would give you a sufficient runway

 1    to really seriously see if you can settle this and at the

 2    same time move forward with discovery.  Okay.  I think --

 3    I'm not -- Ms. Wickouski, I'm not suggesting that you and

 4    your colleagues have not been diligent about what you're

 5    doing, but -- and I'm not -- I don't want to dive into the

 6    weeds about it today, okay.

 7              But the notion, if correct -- and I'm not basing

 8    on this, that not a single page has been produced yet, we've

 9    got a hearing -- we've got an injunction hearing, witnesses

10    coming up.  Okay.  It seems to me that your client needs to

11    understand what the potential consequences are.  I -- look,

12    I'm not saying -- I'll rule on your motion to compel

13    arbitration and -- but I think it's in both sides' best

14    interest to really seriously now try and settle this matter.

15              And I think whether the litigation in Israel is

16    worth everything you think it's worth or not, I'm sure, you

17    know, lots of people are going to disagree with that, but

18    any resolution is going to have to -- it was Celsius' coins

19    that disappeared.  So any resolution, it seems to me, has to

20    include how you deal with that, who gets that potential

21    claim or how it gets handled.  And there may be other things

22    as well.  I mean, it does -- StakeHound does continue to

23    have assets besides that.  What I want you to do is let's

24    take a recess until four o'clock.

25              MR. HURLEY:  Your Honor, may I just very briefly

Page 34

1    and very directly --

2            THE COURT:  Sure.

3            MR. HURLEY:  -- respond to a couple of points?

4    Okay.  First, regarding settlement, we agree a hundred

5    percent.  We're always eager to find a settlement that makes

6    sense.  We're willing to do that.  On mediation, provided

7    again that we proceed in parallel so everybody still is kind

8    of has the heat on them, I think that's usually helpful in

9    mediation, frankly.  We're in favor of mediation.

10           In terms of the Israel litigation, anything in our

11   submissions or statements that have been interpreted as us

12   saying the claims aren't good, that certainly wasn't our

13   intention because we don't --

14           THE COURT:  I didn't even read it that way because

15   that's the last thing you want to do.

16           MR. HURLEY:  I just want to make it clear for the

17   record in case --

18           THE COURT:  I understand.

19           MR. HURLEY:  -- anybody ever points to this to the

20   future.  We're not saying that.  What we're saying is we

21   don't have enough information to conclude one way or the

22   other what the merits are.  So we are -- and in terms of

23   carve outs, we've said from the very beginning, if there's a

24   fee to keep the notes that coin staked, of course.  Good.

25   If we understand how you want to spend money in Israel,

1    okay.  We'll listen, but we need to have information.

2              THE COURT:  Look, I --

3              MR. HURLEY:  That's really been our --

4              THE COURT:  I'm not disputing any of what you just

5    told me.  Okay.

6              MR. HURLEY:  And then just the last thing because

7    I know you don't want to hear about this.  I'm only going to

8    say this on discovery.  My concern, Your Honor, is the ship

9    already has sailed.  Like where we are now, it'd literally

10   be impossible for September --

11             THE COURT:  You might be very happy going forward

12   --

13             MR. HURLEY:  Okay.  I just want to make it clear

14   for the record.  That's why we sent the letter.

15             THE COURT:  If what you're telling me -- and I

16   have no reason to doubt you -- but it's also not evidence.

17   Okay.  It might be the best position, but I don't know where

18   it gets you.  All it gets you is a preliminary injunction.

19   I mean, it's -- you know.

20             MR. HURLEY:  Understood.  That's all I wanted put

21   on the record, Your Honor.  With that --

22             THE COURT:  It's not -- it's not going to put

23   money in Celsius' pockets.  It's -- okay.

24             MR. HURLEY:  Understood.

25             THE COURT:  You've got a TRO and you'd come out

1   with it with the preliminary injunction.  But Ms. Wickouski

2   may come out of it with a motion to compel arbitration.

3   Okay?  I guess the arbitration's in English.  Maybe you'll

4   get to do that anyway, but --

5             MR. HURLEY:  It is supposed to be in English.

6   Okay, so Your Honor, that's really all I wanted to put on

7   and we're happy to discuss --

8             THE COURT:  Why don't you --

9             MR. HURLEY:  -- if you like.

10            THE COURT:  Here's, to me, what you've got.  Try

11  to come to an agreement.  And you may have to check with

12  your clients about it, but go out there and, one, see

13  whether you can to agree to move the hearing to October 25th

14  subject -- and if you're not going to agree to mediate

15  quickly, it doesn't make any sense to move the hearing.

16  We'll just go ahead.  Okay?

17            And Mr. Hurley, if he believes all the bad things

18  that he has to say, he'll prove it.  Okay?  But it does seem

19  to me, Mr. Hurley, you've got to come to some agreement.

20  I'll call it the lifeline.  But the last thing, quite

21  honestly, that I think Celsius wants is to force them into

22  insolvency in a foreign country.  And you should know from

23  experience in Celsius, that that's a real risk.

24            MR. HURLEY:  Understood.

25            THE COURT:  Okay.  So let's resume at four

Page 37

1    o'clock, okay?  If you need more time, let me -- knock on

2    the door, chambers doors and -- okay.  Are you taking your

3    team?  I want them to say hello to Mr. Lombardi.

4              MR. HURLEY:  We'll leave Mr. Lombardi behind.

5              THE COURT:  Yeah, let him -- four o'clock.

6              (Recess)

7              THE COURT:  All right.  We're back on the record

8    in Celsius Network Limited v. StakeHound SA, Adversary

9    Proceeding 23-01138.  What do you have to report?

10             MR. HURLEY:  Your Honor, for the record, Mitch

11   Hurley of Akin Gump on behalf of Celsius.  So what we'd like

12   to ask Your Honor is if you could provide a control date in

13   two days for this motion.  The parties want to have some

14   time to share some information and see if they can come up

15   with a proposal that would obviate the need to decide the

16   motion.

17             THE COURT:  This motion being Ms. Wickouski's --

18             MR. HURLEY:  Correct.

19             THE COURT:  -- amend to the TRO.

20             MR. HURLEY:  Exactly.  If the parties can agree,

21   great.  We'll submit, presumably, some kind of joint

22   stipulation.  If we can't, then we would need the Court to

23   decide the motion.  Hopefully we can avoid that.  The issue

24   involves time differences, obviously with clients in

25   different places, and there's some information that would

Page 38

```
 1    be, I think really helpful for us to understand, to try and

 2    reach an agreement.

 3              THE COURT:  What time of the day would you like to

 4    do that?  So you're talking about Thursday?

 5              MR. HURLEY:  Yes.  I think probably because of

 6    those time changes, probably a little later in the day makes

 7    sense.  Would you agree, Ms. Wickouski, since your clients

 8    are in --

 9              MS. WICKOUSKI:  Yeah --

10              MR. HURLEY:  -- Switzerland?

11              MS. WICKOUSKI:  I think that gives us the

12    opportunity to at least have the morning to talk to them.

13              THE COURT:  I had trouble getting this computer

14    working.  Let me just step inside and -- or maybe

15    (indiscernible) copy of the calendar.  Hold on.  Give me a

16    minute.  I'll be right -- don't get up when I come back.

17              So does Thursday -- back on the record.  Does

18    Thursday at four o'clock work?  We can do it by Zoom.  We

19    don't -- you don't have to come down here.

20              MS. WICKOUSKI:  Yes, Your Honor, that's fine for

21    me, either in person or Zoom.

22              THE COURT:  Mr. Hurley?

23              MR. HURLEY:  Yes, Your Honor.  Four o'clock

24    Thursday works.

25              THE COURT:  You know, if there's -- Thursday
```

Page 39

1    afternoon, I have a Circuit IT Committee meeting from 12:30

2    to 2:30.  After that I'm free, so if you wanted a different

3    time, Thursday afternoon, I don't have any hearing scheduled

4    in the afternoon after the IT Committee.

5            MR. HURLEY:  Whatever is convenient in that time

6    period for Your Honor.  I could do anything.

7            MS. WICKOUSKI:  Yes, that --

8            THE COURT:  Okay.  So four o'clock Thursday, we'll

9    do it by Zoom so you don't have to come down here.  Okay?

10           MR. HURLEY:  Yes.

11           THE COURT:  All right.  Anything else we need to

12   deal with today?

13           MR. HURLEY:  Not from our perspective, Your Honor.

14           MS. WICKOUSKI:  No, Your Honor.

15           THE COURT:  Do you have any objections of Mr.

16   Lombardi stepping into chambers for a few minutes?

17           MS. WICKOUSKI:  No.

18           THE COURT:  I promise not to talk about the case.

19   Okay.  All right, we're adjourned.  Thank you very much.

20           MR. HURLEY:  Thank you.

21           (Whereupon these proceedings were concluded at

22   4:30 PM)

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  September 21, 2023

| & | | | |
|---|---|---|---|
| **&**   4:3 6:13 | **25th**   15:9,12 | **8** | **adjourn**   25:18 |
| **1** | 16:5,6 25:15 | **8th**   10:25 | **adjourned** |
| **1**   9:5 12:1,12 | 25:19 31:1 | **9** | 7:17 25:14 |
| **10,000**   9:11 | 32:25 36:13 | **9th**   15:14 | 39:19 |
| **100**   9:20,20 | **27th**   7:17 15:9 | **a** | **adjourning** |
| **100,000**   32:3 | 16:23 17:7 | **aaron**   4:21 | 14:24 |
| **10004**   1:21 | 18:6 22:2 | **abelson**   5:14 | **adjournment** |
| **10036**   4:6 | 24:22,24 28:9 | **abided**   12:10 | 7:21 18:21 |
| **10281**   4:13 | 28:9 31:1 | 13:18 | 25:11 |
| **10th**   14:24 | **2:00**   15:13 | **ability**   30:21 | **adv**   1:4 |
| **11501**   40:23 | **2:30**   39:2 | **able**   10:1 13:21 | **adversary**   3:1 |
| **11th**   14:24 | **2nd**   15:13,14 | 18:10,10 | 3:6 26:25 |
| 15:1 | **3** | **absence**   17:8 | 30:14 37:8 |
| **12**   10:25 | **300**   40:22 | **absolutely** | **adverse**   17:1,9 |
| **12151**   40:7 | **300,000**   14:1 | 22:16 | 18:8 25:2 |
| **140,000**   32:3 | **330**   40:21 | **accommodat...** | **afternoon**   6:6 |
| **15th**   17:22 | **34**   19:24 | 14:3 31:10 | 6:12,18 7:25 |
| **161,000**   11:20 | **35,000**   29:12 | **account**   8:15 | 39:1,3,4 |
| **19**   1:23 | **38,000**   29:12 | 10:21 12:12 | **aggressively** |
| **2** | **4** | 13:25 | 25:25 |
| **2**   15:4 24:10 | **40,000**   32:4,5 | **accounts**   11:15 | **aghast**   20:20 |
| **200**   4:12 13:8 | **4:30**   39:22 | 12:8 13:8 | **ago**   22:22 |
| **200,000**   8:18 | **4th**   24:8 | **accurate**   10:20 | **agree**   14:11 |
| 11:9,11,22 | **5** | 40:4 | 18:18,21 24:6 |
| 12:22 13:12 | **5:00**   15:24,25 | **act**   13:6 | 25:17 27:9,16 |
| 31:20 32:3,10 | **6** | **acting**   11:1 | 34:4 36:13,14 |
| **2023**   1:23 | **67**   3:4 | **actual**   16:20 | 37:20 38:7 |
| 40:25 | **68**   3:4 | 29:5 | **agreeable** |
| **20th**   4:12 | **7** | **actually**   8:12 | 14:19 |
| **21**   40:25 | **70**   29:17 | 29:23 31:2 | **agreed**   10:22 |
| **22-10964**   1:3 | **74**   3:10 | **add**   28:9 | 12:10 13:2 |
| **23-01138**   1:4 | **75**   3:10 | **additional**   6:11 | 14:17,18 31:13 |
| 3:1,6 37:9 | **7th**   23:10 | 14:12 | **agreement** |
| **23-1138**   6:3 | | **address**   7:23 | 32:18 36:11,19 |
| | | 16:18 24:1 | 38:2 |
| | | | **ahead**   23:3 |
| | | | 28:8,9 29:19 |

36:16

**akin** 4:3 6:13
22:12 37:11
**alleges** 17:7
**allow** 31:21,21
31:22
**allowed** 8:17
14:20
**allowing** 7:12
**allows** 7:21
**alluded** 14:6
**alongside**
23:25
**amend** 3:8
37:19
**amendment**
3:3,9
**amount** 9:6,25
9:25 10:2,14
21:7 28:2
**amounts** 10:14
10:20
**analysis** 9:21
**anderson** 6:6
**andrew** 4:22
**answer** 9:18
**anybody** 34:19
**anyway** 36:4
**apologize** 7:25
**appearance**
6:5,21
**appeared**
26:25
**appearing** 23:1
**appears** 10:14
22:21

**appreciate**
10:6
**approve** 31:20
**approved**
13:15
**april** 23:9
**arbitrability**
21:11
**arbitrate** 25:24
**arbitration**
22:4 25:22
26:3,4,7 28:19
28:19 33:13
36:2
**arbitration's**
36:3
**arbitrator** 26:2
26:12,21 27:11
**arbitrators**
26:17
**archer** 4:18
**arguing** 31:17
31:19
**argument**
28:18 31:15
**armand** 4:19
**aside** 23:13
**asked** 13:3
18:8
**asking** 8:20,21
10:1,7 13:6,18
14:9 24:3
**asks** 16:14
**assess** 30:15
**asset** 30:18
**assets** 8:14,18
8:24 10:3,22

11:3,10,11,12
12:23 13:8
28:4 33:23
**assignment**
28:1,2
**associated** 12:3
**associates** 19:9
19:21 21:6
**assume** 9:3,3
25:20,24 26:7
**assuming** 7:21
10:2
**assumption**
8:19
**attempt** 26:20
**attorneys** 4:4
4:11
**automatic** 26:5
**avoid** 37:23
**aware** 7:17
23:6

**b**

**b** 2:1
**back** 15:16
23:8 37:7
38:16,17
**bad** 36:17
**balanced** 9:16
**bank** 8:15
10:21 11:15
12:8,12 13:25
**bankruptcy**
1:1,19 2:3 9:7
27:2
**based** 17:1
18:9

**basing** 33:7
**basis** 17:3
**beginning** 23:7
23:18 34:23
**behalf** 6:7
37:11
**belabor** 24:4
**belief** 8:17
**believe** 11:22
12:11 22:17
28:3
**believes** 20:11
36:17
**bench** 28:13,17
**benefit** 21:9
30:19
**best** 8:7 28:4
33:13 35:17
**better** 31:14
**bills** 13:21
**bit** 17:20 24:4
**blocked** 15:18
**bold** 10:25
11:7
**bowling** 1:20
**briefly** 24:1
33:25
**british** 32:4
**bryant** 4:5
**bunch** 20:1
**burdens** 17:3
**business** 29:22
30:1,2 32:11

**c**

**c** 4:1 6:1 40:1,1
**calculations**
9:10

calendar 6:4
15:8,18,21
16:4 38:15
call 27:16
36:20
calling 6:2
caps 10:25
11:8
careful 31:5
carve 34:23
carveout 12:22
13:14,15,15
14:1 31:7,8,20
case 1:3,4 6:3
9:7 18:10
26:15 28:1
34:17 39:18
cases 26:14
cast 30:2
celsius 1:8,12
3:1,6 6:2,14
7:2 9:3,4 13:3
13:14 15:3,13
19:3,6 22:8,12
23:6,18 25:24
26:22,25 27:20
27:21 28:3,4
28:22 29:3,7
30:7 31:14
33:18 35:23
36:21,23 37:8
37:11
cent 9:11
certainly 16:21
26:11,20 34:12
certified 40:3

chambers 37:2
39:16
chance 10:13
26:13
changes 29:17
38:6
chapman 4:20
22:17
characterizat...
17:13 24:7
charge 17:17
check 36:11
choose 13:22
circuit 39:1
claim 9:4 27:24
28:3 29:22
30:3,4 33:21
claims 28:1
34:12
clarification
8:20
clear 8:5 16:9
16:17 18:3
30:25 34:16
35:13
clearly 9:8
28:4
clerk 6:2,10,15
6:17 7:3,5
clerks 22:21,22
23:1
client 8:7 13:20
14:10 20:10,17
21:4 25:23
27:16 30:19,19
31:7 33:10

clients 17:4
20:6,15 25:16
27:9 36:12
37:24 38:7
coin 34:24
coins 33:18
colleague 6:8
17:15 22:17
colleagues
22:15 33:4
colodny 4:21
come 15:16
32:17 35:25
36:2,11,19
37:14 38:16,19
39:9
coming 33:10
committee
39:1,4
compel 22:3
25:21 33:12
36:2
compelled
25:24
competent
30:15
completely
17:18
complicated
18:14 20:5
comply 16:25
19:16
computer
38:13
concern 35:8
concerned
13:20

concert 11:1
conclude 34:21
concluded
39:21
conclusions
10:17
conditioning
31:6
conference
24:3
confirmation
15:3,13,16,23
16:3
consent 31:6
consented 7:19
consequences
33:11
consider 18:1
25:5,6
consideration
31:10,16
considered
30:9
considers
17:25
consulted
14:10
continuance
14:10 16:14,17
30:23 31:6
continue 23:25
33:22
control 11:4,13
37:12
convenient
39:5

[copy - dispose]                                                            Page 4

copy  38:15
correct  11:18
  12:6,7,9,19,25
  12:25 21:3,20
  33:7 37:18
costs  32:6
counsel  6:11
  6:14 22:12
  27:23 30:14
counterparty
  27:2
country  36:22
  40:21
couple  8:9 14:5
  34:3
course  34:24
court  1:1,19
  7:7,12,21 8:3
  8:21 9:18 10:7
  10:7,10,23
  11:17,25 12:7
  12:14,17,21
  13:7,11,14,24
  14:2,5,17,22
  15:2,7,12 16:2
  16:11,16,20
  17:11,14,25
  18:1,3,14,18
  18:21,23 19:4
  19:20,23 20:4
  20:8,15,20,23
  20:25 21:18,20
  21:24 22:1,6
  22:10,14,18,19
  22:25 23:6,12
  23:15 24:11,13
  24:16,23 26:11

29:14,16,19
30:5,7,9,12,25
31:12 32:7,13
32:15 34:2,14
34:18 35:2,4
35:11,15,22,25
36:8,10,25
37:5,7,17,19
37:22 38:3,13
38:22,25 39:8
39:11,15,18
court's  30:23
  31:6
courtroom
  6:11,23 23:10
credit  9:21
crisis  32:9
critical  24:21
crypto  26:15
culled  21:4
curious  19:20
custody  11:4
  11:13

d

d  6:1
damages  30:15
date  18:23
  25:13 37:12
  40:25
dates  15:18
david  5:10
day  16:5 17:24
  21:6 28:16
  29:17 38:3,6
days  37:13
deaf  31:19

deal  28:10
  33:20 39:12
dealing  20:6
dealt  28:19
dean  4:20
  22:16
debtor  1:10 4:4
  9:15 10:2
  14:19
debtor's  10:21
  14:15
decide  20:10
  21:16 28:7
  37:15,23
deciding  18:3
declaration
  29:24
defendant  1:16
  4:11
deficiency  18:7
delays  23:20
delving  25:7
demanded
  26:4
demonstrated
  9:8 11:20
deny  24:8
detail  8:6
details  19:19
  25:7
developer
  29:24
difference  13:2
differences
  37:24
different  32:23
  37:25 39:2

difficult  31:9
diligent  33:4
diminution
  10:3
directly  17:17
  34:1
disagree  17:12
  19:6,10 26:18
  27:15 33:17
disappeared
  33:19
disclose  30:16
disclosure  9:9
  22:20
discovery
  16:22,25 17:8
  17:9,16 18:7
  18:11 19:1,1
  19:11,15,17
  20:20 21:13
  24:1,2,8,18
  25:1,2,19
  28:11 33:2
  35:8
discretionary
  10:7
discuss  14:9,21
  36:7
discussed
  14:12,14
discussion
  30:20
discussions
  23:7
dismiss  21:21
dispose  12:2

**disposition**
27:25
**dispute** 8:14
21:11 27:10
**disputes** 24:18
**disputing** 35:4
**disregards**
24:6
**district** 1:2
20:1
**dive** 33:5
**doc** 3:4,10
**docket** 7:19
**documents**
21:3,5
**doing** 24:18
33:5
**dollars** 9:5
13:19 29:16
**door** 37:2
**doors** 37:2
**dot** 12:3
**doubt** 18:5
35:16
**drafted** 8:16
**due** 25:5

**e**

**e** 2:1,1 4:1,1
6:1,1 40:1
**eager** 34:5
**earlier** 16:4
**early** 7:25
**economics**
31:17
**ecro** 2:5
**effect** 9:1

**effective** 23:20
**effort** 29:2
**either** 12:3
15:8 25:6,15
27:10,12 28:1
28:21 30:25
31:10,20 32:15
38:21
**elizabeth** 5:6
**emergency** 3:3
3:8
**english** 36:3,5
**enhancement**
10:5
**enjoined** 11:2
**entered** 10:8
10:24 11:19
**entitled** 18:9
18:11 26:19
**entity** 11:4,13
**especially**
23:23 24:1
**essentially**
31:15
**establishes**
17:7
**estate** 9:2,19
**eth** 12:3 29:11
29:13
**evaluated** 30:9
**evaluates** 30:7
**everybody**
27:12 34:7
**evidence** 16:24
28:10 35:16
**evidentiary**
15:24

**exactly** 32:1
37:20
**exceeds** 28:3
**except** 7:15
**exclusion**
18:20
**expedited** 7:12
17:2
**expenditure**
9:14
**expense** 26:9
27:12
**expenses** 31:23
32:11
**expensive**
23:21 25:25
**experience**
36:23
**experts** 30:13
**explaining**
20:18
**extent** 9:15
17:25
**eyes** 23:11

**f**

**f** 2:1 5:5 40:1
**faced** 22:1
**faces** 9:16
13:19
**fact** 11:23 14:6
17:6 21:8 25:5
26:14
**factor** 9:25
**facts** 16:20
24:7
**failure** 16:24
25:1

**fair** 13:4 23:14
24:3
**faith** 31:9
**familiar** 22:18
**favor** 34:9
**fee** 34:24
**feel** 16:13
19:11
**feener** 4:22
**fees** 32:22
**feld** 4:3 6:13
**field** 30:15
**file** 7:24
**filed** 8:1,2,4
17:22,23 27:2
**filing** 10:12
27:18
**financial** 27:3
**find** 16:20 25:1
34:5
**findings** 17:1,9
18:9 25:2
**fine** 38:20
**fireblocks**
27:22 29:22
**firm** 6:9 32:4
**first** 7:8,10,11
10:8,11,13
16:5 21:2 23:3
24:5 25:13
26:24 34:4
**flippant** 19:24
**floor** 4:12
**force** 36:21
**foregoing** 40:3
**foreign** 20:6
36:22

[format - hope]                                                    Page 6

| | | | |
|---|---|---|---|
| **format** 8:8 | **given** 21:7 | **green** 1:20 | 15:15,22,24 |
| **former** 22:21 | **gives** 38:11 | **gregory** 5:5 | 16:3 17:1,6 |
| 22:22 23:1 | **glenn** 2:2 | **guess** 7:9 36:3 | 18:23 25:14,18 |
| **forward** 15:8 | **go** 7:9 14:20 | **gum** 30:17 | 27:19 28:12 |
| 16:9,23 18:6 | 16:9,23 17:6 | **gump** 4:3 6:13 | 31:18 33:9,9 |
| 24:22,24 25:19 | 18:6,12 23:2 | 22:12 37:11 | 36:13,15 39:3 |
| 26:7 33:2 | 24:22,24 27:11 | | **hearings** 15:24 |
| 35:11 | 28:8,9 29:7,19 | **h** | **heat** 34:8 |
| **four** 19:9 33:24 | 31:2 32:16 | **half** 9:5 | **heck** 19:12 |
| 36:25 37:5 | 36:12,16 | **hall** 32:17 | **hello** 37:3 |
| 38:18,23 39:8 | **goes** 11:5 15:8 | **hand** 6:19 8:13 | **helpful** 34:8 |
| **frankly** 21:7 | 26:7 | **handled** 33:21 | 38:1 |
| 29:6 34:9 | **going** 6:23,24 | **hands** 6:19 | **hershey** 5:1 |
| **free** 11:14 28:6 | 7:21 10:11 | **hang** 10:23 | **high** 27:6 |
| 39:2 | 13:6,23 15:4 | **happen** 25:17 | **history** 23:15 |
| **freeze** 10:15,22 | 15:15,17 16:25 | 25:20 26:8,14 | **hmm** 15:6 16:1 |
| 11:11,23 12:17 | 17:20 21:4 | 28:6 | 20:3,7 |
| 13:2 | 23:7,8 24:24 | **happened** 27:1 | **hold** 15:20 |
| **friday** 8:3 | 25:2,25 26:1,8 | **happens** 17:4 | 38:15 |
| 17:22 | 26:8 27:11,17 | **happy** 35:11 | **hon** 2:2 |
| **full** 11:21 | 28:6,10,15,20 | 36:7 | **honestly** 36:21 |
| **fully** 21:14 | 28:21,22 32:13 | **haqqani** 4:24 | **honor** 7:11,19 |
| **function** 6:19 | 32:16,17,20 | **hard** 19:8 27:4 | 13:6,16 14:8 |
| 6:20 | 33:17,18 35:7 | **harm** 9:14,15 | 14:20 15:1,10 |
| **further** 18:12 | 35:11,22 36:14 | 9:16 | 16:8 17:10 |
| 31:2 | **good** 6:6,12 | **harrison** 4:25 | 18:25 19:18 |
| **future** 34:20 | 22:25 27:7,8 | **hauer** 4:3 6:13 | 21:22 22:5,9 |
| **g** | 31:9 34:12,24 | **he'll** 36:18 | 22:11,24 23:4 |
| **g** 6:1 | **gorrepati** 4:23 | **hear** 10:12 | 24:21 31:11 |
| **generated** 8:13 | **gotten** 8:11 | 15:11 19:19 | 32:9 33:25 |
| 8:13 | 20:4 24:9 | 31:13 32:24 | 35:8,21 36:6 |
| **genius** 9:10 | **grant** 13:24 | 35:7 | 37:10,12 38:20 |
| **getting** 20:17 | **granting** 3:4 | **heard** 15:22 | 38:23 39:6,13 |
| 20:18 38:13 | 3:10 31:7,7 | 24:5 | 39:14 |
| **give** 6:4,20 7:7 | **grants** 14:2 | **hearing** 3:1,3,6 | **hope** 14:19 |
| 7:8 32:25 | **great** 27:12 | 3:8 6:25 7:13 | 25:20 |
| 38:15 | 37:21 | 7:17 11:5,10 | |
| | | 14:4 15:3,13 | |

hopefully 37:23
hundred 34:4
hurley 4:8 6:12
6:12,16 7:2
10:11 11:22,24
14:14,23 15:1
15:3 16:18,24
17:7,21 18:24
22:8,9,11,11
22:16 23:3,4
23:14,17 24:12
24:15,20 26:18
26:24 27:15
29:11,15,17
32:2,8,18
33:25 34:3,16
34:19 35:3,6
35:13,20,24
36:5,9,17,19
36:24 37:4,10
37:11,18,20
38:5,10,22,23
39:5,10,13,20
hurley's 7:18
8:2 14:9 30:19
31:7
hybrid 3:3,8
hyde 3:25 40:3
40:8

**i**

illustrate 13:19
immediately
14:10 21:12
29:2
impact 8:23

importance
17:8 18:19
important
23:24
impossible
35:10
inadequacies
28:11
inadequacy
25:1
inclined 13:24
include 17:23
28:1 33:20
including 8:2
8:14
incomings 8:2
incorrectly
11:22
incremental
14:1
indiscernible
16:24 20:23
29:24 30:18
32:14 38:15
individual
20:11
information
34:21 35:1
37:14,25
injunction
11:5 17:5 22:3
25:3,14 26:12
27:19 28:17
33:9 35:18
36:1
inside 38:14

insolvency
27:4,18 36:22
instantly 26:8
intend 19:7
intended 8:21
13:5
intention 13:7
19:17 31:24
34:13
interest 27:13
28:5 29:7
33:14
interesting
8:10
interpreted
34:11
introduce
22:14
involved 8:23
involves 37:24
irreparable
9:14
israel 27:24
28:6 29:6
33:15 34:10,25
israeli 32:12
issue 17:21
18:12 21:11
22:7 26:12
37:23
issued 26:9
issues 16:21
19:2,7 25:10
25:11 26:16
28:20
it'd 35:9

it's 35:22

**j**

jasmine 4:19
jeffrey 5:2 6:8
17:15
joined 6:22
joint 37:21
jonathan 2:5
judge 2:3 7:5
19:25
judgment 9:4
jumping 10:17

**k**

kaila 5:12
keen 23:6,18
keep 27:17
31:23 32:19
34:24
keith 5:11
key 29:10
kind 34:7
37:21
knew 17:2
knock 37:1
know 7:6 8:25
9:17,18 10:8
10:16 11:7
12:13 14:1,15
15:2,17,20,23
16:18,19,20,22
19:13,25 20:5
20:8,11,21,25
21:7,10 24:25
25:8,20 26:1,9
26:14,16,18,20
26:24 27:1,2

27:19,23,25
28:2,18 29:3,5
32:18 33:17
35:7,17,19
36:22 38:25
**knowledge**
12:11
**knows** 7:19
**kramer** 5:2 6:9
17:16

**l**

**language** 12:1
12:7 13:3
**lateness** 7:25
**law** 19:24
22:21,22 23:1
32:4
**lawyers** 20:4
20:24 29:4,5
31:22 32:11,12
32:20
**leave** 12:1 20:9
28:22 37:4
**ledanski** 3:25
40:3,8
**legal** 21:2
32:22 40:20
**letter** 8:2,3
14:9,23 16:21
17:22,25 24:2
24:9,14,16,17
31:5 35:14
**letters** 18:4
25:6
**lifeline** 27:17
32:19 36:20

**likely** 10:3,4
**limited** 1:12
3:2,7 6:3 37:8
**linger** 28:14
**liquid** 29:25
**listen** 35:1
**literally** 35:9
**litigating** 28:23
28:23
**litigation** 6:13
12:4 22:12
27:8 33:15
34:10
**little** 17:20
38:6
**llc** 1:8
**llp** 4:3,10
**locke** 4:10 6:7
6:9 32:4
**lombardi** 5:3
22:17,21,24
37:3,4 39:16
**long** 19:14
28:24 31:3
32:21
**longer** 7:22
**look** 19:24
24:11 31:24
33:11 35:2
**looked** 16:4
23:11
**looking** 25:23
**lord** 4:10 6:7,9
32:4
**lose** 28:21
**loser** 31:16

**losing** 29:9
**loss** 27:21
29:21
**lost** 8:11 29:9
**lot** 9:20,22,23
19:12 20:17
23:8 28:19
29:1
**lots** 33:17
**luke** 5:7

**m**

**m** 3:1
**made** 20:13
26:18 30:25
31:18
**major** 30:1
**make** 17:1,9
18:3,8 22:20
23:2,17 25:2
26:20,21 27:7
27:8 34:16
35:13 36:15
**makes** 23:23
29:1 34:5 38:6
**making** 18:6
**martin** 2:2
**mary** 4:15
**mason** 5:4
**material** 9:12
9:22 10:1 18:7
25:1
**math** 9:10
**matic** 12:3
**matter** 1:6
29:5,7 33:14
**matters** 16:5
28:7

**mean** 16:3,9
18:9 19:9,23
26:2 31:2,20
33:22 35:19
**meant** 24:16
**measures**
26:13
**mediate** 36:14
**mediation** 14:7
14:13 22:8
23:5,19,22
25:17 30:21
34:6,9,9
**mediator** 14:21
23:23 27:9
**meeting** 39:1
**merits** 34:22
**mg** 1:3,4 3:6
**michael** 5:8
**million** 9:5,5
9:20,20 12:12
29:17
**mineola** 40:23
**minute** 38:16
**minutes** 39:16
**mira** 4:24
**miscast** 17:18
**mister** 18:24
**mitch** 6:12
22:11 37:10
**mitchell** 4:8
**mm** 15:6 16:1
20:3,7
**mode** 19:8
**model** 29:25
**modification**
7:15

modify  8:21
moment  7:8
  24:19
monday  15:14
money  8:22
  9:20,22,23
  11:9,14 13:23
  34:25 35:23
money's  11:9
month  15:19
months  15:21
  27:11
morning  8:4
  16:5 38:12
motion  3:3,4,8
  3:8 7:13,16
  17:23 21:21
  22:2,3 25:21
  31:13,15,16,17
  33:12 36:2
  37:13,16,17,23
motions  21:17
move  9:7 16:6
  33:2 36:13,15

n

n  4:1 6:1 40:1
necessarily
  28:13
necessary
  13:21 20:18
  21:16 31:23
necessity  32:19
need  7:20 8:22
  21:12 27:16
  35:1 37:1,15
  37:22 39:11

needle  9:7
needs  21:8
  33:10
neglected
  17:23
negotiated
  11:24
network  1:8,12
  3:1,6 6:2 37:8
new  1:2,21 4:6
  4:13 20:1
nicholas  5:3
  22:23
nick  22:17
night  21:6
noon  15:22
note  8:25 17:21
notes  34:24
notice  12:5
  31:14
noticeable  9:1
  9:13
notion  33:7
notwithstand...
  11:8
november
  15:20 31:3
number  6:3
  8:1 16:7
numbers  7:20
  8:5 9:8 31:25
ny  1:21 4:6,13
  40:23

o

o  2:1 6:1 40:1
o'clock  33:24
  37:1,5 38:18

38:23 39:8
oath  24:25
objected  13:14
objections
  39:15
obligations
  20:4
obviate  37:15
obvious  21:12
  21:16
obviously
  14:11 24:2
  30:22 37:24
occur  11:19
occurred  27:21
october  14:24
  15:3,9,12 16:6
  25:14,18 31:1
  32:25 36:13
okay  6:21 7:3,5
  10:23 12:21
  15:17 16:2
  17:14 18:4,14
  22:6 23:2,4,14
  24:7,9,15 25:7
  25:10,13 26:1
  26:17 28:8,13
  28:16,16 30:5
  31:24 32:21,23
  33:2,6,10 34:4
  35:1,5,13,17
  35:23 36:3,6
  36:16,18,25
  37:1,2 39:8,9
  39:19
old  40:21

once  7:18
operating  20:9
  27:17 31:24
  32:20
operations
  9:17
operative
  10:24
opinions  20:1
opportunities
  30:2
opportunity
  12:5 18:1
  38:12
opposing  30:14
opposition  8:4
order  3:3,9
  8:16 10:24
  15:19 26:3
orders  19:14
original  29:24
originally
  21:10
outcome  11:5
outs  34:23
owe  9:19
own  20:9

p

p  4:1,1 5:1 6:1
page  10:25
  24:9 25:9 33:8
paid  10:15
  27:24
palissery  5:4
pall  30:2
papers  31:25

**paragraph**
   12:1 24:10
**parallel** 23:25
   34:7
**park** 4:5
**part** 10:24 13:1
   31:14
**participating**
   19:11,12
**particularly**
   16:14 20:5
**parties** 6:17,22
   37:13,20
**partner** 22:16
**past** 23:15
**pay** 13:21,22
   31:22,23 32:11
**paying** 32:21
**pending** 11:4
   21:17
**pennies** 9:19
**penny** 29:4
**people** 21:1
   33:17
**percent** 34:5
**period** 7:22
   39:6
**permit** 24:24
**permitted** 11:9
**person** 11:4,13
   17:16 38:21
**persons** 11:1
**perspective**
   23:22,24 39:13
**pesce** 5:5
**philip** 5:14

**pi** 11:10
**pick** 13:22
**pin** 17:20
**place** 7:14
**places** 37:25
**plaintiff** 1:13
   4:4 18:9 31:10
**plan** 14:7
**player** 30:1
**please** 6:4 7:7
   22:10
**pm** 1:24 39:22
**pockets** 35:23
**podium** 22:9
**point** 8:11,20
   17:16 18:6
   21:5 23:17
   24:20 26:10
   30:17
**points** 34:3,19
**poo** 32:21,21
**position** 19:17
   27:3 29:3 31:9
   35:17
**positioned**
   30:1
**possession**
   11:3,13
**possibility**
   26:11
**possible** 16:3
   26:2 29:7,8
**potential** 33:11
   33:20
**potentially**
   28:23

**practical** 14:22
**practiced**
   19:24
**practicing**
   19:14
**precautionary**
   26:13
**preclusion**
   19:14
**preliminary**
   11:2,5 17:5
   22:3 25:3
   26:12 27:18
   28:16 35:18
   36:1
**prepared**
   14:16
**present** 4:17
   8:8
**presented** 8:22
**preservation**
   10:4
**press** 27:3
**presumably**
   37:21
**pretty** 10:18
**primarily** 8:14
**prior** 26:25
**private** 29:10
**probably** 21:9
   28:17 38:5,6
**problem** 14:22
**procedure**
   24:18
**proceed** 6:25
   34:7

**proceeded** 8:18
**proceeding** 3:1
   3:6 27:1,5 28:5
   37:9
**proceedings**
   23:25 39:21
   40:4
**process** 19:15
   20:21 21:2
   26:23 30:21
**produced**
   20:12 25:9,9
   33:8
**prohibited**
   11:2
**promise** 39:18
**promptly**
   25:17 27:9
**proof** 24:25
   25:6
**properly** 10:9
**property** 11:3
   11:12 12:5
**proposal** 37:15
**propounded**
   19:1
**prospect** 14:12
**prove** 18:10
   36:18
**provide** 25:2
   37:12
**provided** 29:11
   34:6
**pursue** 14:13
**pursued** 21:13
**pursuing** 27:24

push 25:19
put 18:11
  23:13 24:25
  25:18 28:10
  29:1 35:20,22
  36:6
puts 17:3 31:8
putting 17:20

**q**

quantify 9:1
question 10:10
  13:4 21:15,18
  24:21
questions
  10:11,18 14:5
quibble 21:8
quickly 29:7
  36:15
quite 17:3
  36:20

**r**

r 2:1 4:1 6:1
  40:1
raise 6:19,19
  13:25 14:22
raised 10:16,17
  16:21 18:4
  25:10
raises 25:11
range 29:13
rather 10:16
reach 38:2
react 19:16
  30:24
read 8:16
  10:11 13:17

14:6 24:13,14
24:16 26:14
27:3 34:14
reading 10:9
ready 7:2,4
  16:9,11
real 25:11
  30:18 36:23
realistic 24:22
realistically
  16:2
reality 25:15
realize 17:19
realized 7:24
really 7:20 9:1
  21:8,15,16
  30:20 33:1,14
  35:3 36:6 38:1
reason 22:19
  35:16
reasonably
  16:25 18:8
recently 28:20
  29:18
recess 33:24
  37:6
recognized
  30:14
recommended
  14:11
reconsiderati...
  31:15
record 6:18,24
  6:25 22:13
  23:2,8 34:17
  35:14,21 37:7
  37:10 38:17

40:4
recording 6:21
recover 28:5
recovered 9:6
  10:2
recovery 9:2
  28:2
refers 11:22
regard 24:25
regarding 34:4
reiterate 31:5
related 12:13
  12:14
relative 9:13
relevant 19:2
  20:12 22:7
relief 10:6
  13:24 14:2
  26:19
remains 23:19
report 37:9
representing
  16:15
request 7:15
  7:18,19 21:19
  21:19
required 20:13
rescheduled
  22:2
resolution
  33:18,19
resolve 24:18
  27:10
resolved 29:2
respect 7:14
  13:25 17:25
  23:5,19 25:5

respond 10:13
  34:3
responded
  16:22
responding
  21:13
response 14:15
  17:24 18:2,5
responses
  28:11
responsible
  27:21
rest 15:20
result 9:11
  10:3,4 23:20
  26:3
results 9:5
resume 15:16
  36:25
revenue 8:12
reviewing 15:8
rewards 12:3
  12:20 29:12
rick 4:18
right 6:2,15,17
  7:8 9:22,23
  11:25 14:20
  16:4 21:24
  23:23 24:19
  29:19 31:18
  32:7 37:7
  38:16 39:11,19
risk 20:9 36:23
road 28:25
  40:21
rule 26:13
  28:13,13,17

33:12
**ruling**  26:10
**run**  13:23
**runway**  32:25

**s**

**s**  3:7,9 4:1 5:2
6:1
**sa**  1:15 3:2 6:3
6:8 37:8
**sailed**  35:9
**samuel**  5:1
**saw**  7:18 14:9
**saying**  12:22
16:19 19:4,23
24:23 25:4
28:20,21 29:3
32:9 33:12
34:12,20,20
**says**  12:1 16:19
24:9
**schedule**  15:22
15:24 30:23
32:24
**scheduled**
15:15 17:2
39:3
**scheduling**
15:21,23 22:7
24:21 25:11
**scope**  13:5
**scott**  5:6
**sean**  4:22
**searches**  20:12
**seated**  7:7
**second**  10:23
**see**  22:25 23:11
27:23 32:17

33:1 36:12
37:14
**seeing**  8:8
**seem**  36:18
**seemed**  10:16
**seems**  27:5
33:10,19
**seen**  21:10
**selection**  14:21
**sell**  12:2
**send**  24:2
**sending**  19:21
**sense**  13:20
23:23 27:7,8
29:1 34:6
36:15 38:7
**sent**  8:3 17:24
35:14
**sentence**  11:7
24:10
**september**
1:23 10:25
15:9 17:22
23:10 24:8
31:1 35:10
40:25
**serious**  10:18
16:21
**seriously**  17:3
19:16 33:1,14
**served**  24:8
**sets**  10:12
**settle**  23:11
28:25 33:1,14
**settlement**  23:7
27:19,25 34:4
34:5

**share**  37:14
**ship**  35:8
**short**  31:14
**shortly**  17:22
**showing**  26:19
26:21 29:8
**shows**  8:11
32:3
**shut**  9:17
**side's**  27:13
**sides**  21:9
25:25 27:6
33:13
**signature**  40:7
**single**  25:9
26:2 33:8
**site**  31:23
**six**  22:24,24
**size**  9:13
**slow**  23:21
**solutions**  40:20
**somewhat**  7:22
**sonya**  3:25
40:3,8
**sooner**  16:4
**sorry**  15:10
**sort**  10:12
**sought**  19:14
**sources**  7:24
8:9 11:20
**southern**  1:2
20:1
**spangler**  5:7
**speak**  17:17
**speaking**  6:18
6:23,25

**special**  6:13
22:12
**specific**  8:5
**specifically**
8:22,23
**spend**  10:1
11:9 34:25
**spent**  12:23
20:17 32:8
**spoliation**  20:2
**staggering**
10:16
**staked**  34:24
**stakehound**
1:15 3:2,7,9
6:3,8 8:15,24
9:2,16 10:4,14
10:25 11:1,8
11:21 12:2,24
16:25 17:9
18:8 27:17,20
27:20 28:5
29:22,23 32:19
33:22 37:8
**stakehound's**
11:3,12 27:3
28:4,11,18
**stakes**  27:5
**staking**  29:25
32:6
**stand**  7:9
**standpoint**
26:22
**stanley**  5:8
**start**  26:4
**started**  24:23

**starts**  15:3,13
**stated**  8:4
**statement**  9:9
**statements**
    34:11
**states**  1:1,19
    20:21
**status**  29:5
**stay**  26:5
**staying**  25:19
**step**  38:14
**stephanie**  4:15
    6:7
**stepping**  39:16
**stipulation**
    11:25 12:18
    37:22
**stop**  24:13
    32:15,15
**stopping**  27:8
**strauss**  4:3
    6:13
**street**  4:12
**strikes**  27:25
**strong**  29:8
**strongly**  17:12
    19:10
**stuff**  24:2
**subject**  8:18
    11:10,11 12:4
    12:4,5,15,16
    36:14
**submissions**
    34:11
**submit**  37:21
**submitted**  7:16
    17:21 31:25

32:2
**substantial**
    26:19 30:3
**successful**
    25:21
**sufficient**
    27:16 32:25
**suggested**
    14:24 18:24
**suggesting**
    14:2 33:3
**suggestion**
    19:10
**suite**  40:22
**sullivan**  5:9
**suppose**  13:1
**supposed**  36:5
**sure**  19:2,6
    23:2 26:22
    28:15,25 30:7
    33:16 34:2
**surprised**  19:4
**switzerland**
    19:21 27:5
    28:23 38:10

**t**

**t**  40:1,1
**tables**  32:22
**take**  15:17
    19:15 26:1
    33:24
**talk**  14:16
    23:15 38:12
    39:18
**talked**  32:19
**talking**  25:16
    38:4

**talks**  20:11
**tanzila**  5:13
**targeted**  19:2
    21:10
**taylor**  4:25
**team**  37:3
**tech**  21:1
**technology**
    29:25
**telephonically**
    4:17
**tell**  15:7
**telling**  35:15
**terms**  7:13
    11:8 13:4
    21:11 34:10,22
**thank**  6:10,15
    6:16 7:5,11,12
    22:11 39:19,20
**thing**  7:15 8:25
    34:15 35:6
    36:20
**things**  7:9 8:9
    8:19 23:21
    28:14 33:21
    36:17
**think**  7:14 8:10
    8:11 9:13,24
    10:19,20,20,22
    11:14 13:4
    14:6,23,23,24
    17:24 19:1,7
    21:7 22:6 23:5
    23:22 24:3,21
    26:18,24 27:12
    27:15 29:3,6
    29:12,23 30:3

30:20,22 31:12
    33:2,13,15,16
    34:8 36:21
    38:1,5,11
**thought**  8:7
    28:18 31:21
**threat**  25:4
**thursday**  38:4
    38:17,18,24,25
    39:3,8
**time**  7:16,22
    14:13 15:17
    19:14 20:17
    21:2,9 22:20
    26:1,9,24 27:2
    28:24 31:18
    33:2 37:1,14
    37:24 38:3,6
    39:3,5
**today**  13:18
    14:16 23:12,16
    31:13 32:2
    33:6 39:12
**tokens**  12:3,20
**told**  25:13 35:5
**touch**  8:17
**town**  15:5
**transcribed**
    3:25
**transcript**  40:4
**transfer**  11:14
    12:2 13:8
**transferring**
    11:2,12
**translate**  9:19
**translated**
    29:16

translation
  8:12
trial  15:20 31:3
tro  3:4,10 7:15
  10:8,15,23,24
  11:8,19 12:21
  13:3,4 26:9
  31:18 35:25
  37:19
troops  32:16
trouble  38:13
true  40:4
try  7:22 23:7
  27:9 33:14
  36:10 38:1
trying  19:8
  23:17 29:2
turetsky  5:10
turned  32:22
turning  21:3
two  13:11
  15:21 32:16
  37:13

**u**

u.s.  2:3 21:2
uday  4:23
under  8:19
  24:25
understand
  13:16 17:10
  18:16,16 24:17
  24:20 33:11
  34:18,25 38:1
understood
  16:8 35:20,24
  36:24

united  1:1,19
  20:21
universe  20:19
  21:5
unlocked  32:10
unmute  6:20
unreasonable
  17:3 29:4
update  7:8,13
  7:20
use  14:12
  32:10
used  8:8 10:15
  13:25 32:11
uses  7:25 8:9
  11:20
using  6:19
usually  34:8
utilized  10:21
  11:21,21

**v**

v  1:14 3:2,7 6:3
  37:8
vacate  26:4
valuable  29:13
  29:15
vastly  28:3
vendors  13:22
veritext  40:20
vesey  4:12
view  22:8
  27:20 32:23
vince  5:9
violated  26:5
voluntary
  10:15 11:23
  12:15 13:2

**w**

wait  32:15,15
waiting  7:1
want  7:9,12
  10:8 14:3,8
  18:11 22:14
  23:2 25:7 27:4
  27:23 28:8
  29:20 30:16
  33:5,23 34:15
  34:16,25 35:7
  35:13 37:3,13
wanted  7:22
  13:18 35:20
  36:6 39:2
wants  19:18
  36:21
warrants
  30:20
way  8:16 23:8
  25:18 28:22
  34:14,21
we've  8:22
  15:21 18:25
  33:8,9 34:23
wednesday
  15:9,12 16:6
weeds  33:6
week  15:4,14
  16:10 21:23
went  32:3,4,5
wickouski  4:15
  6:4,6,7 7:4,9
  7:11 9:24
  10:19 11:16,18
  12:6,9,16,19
  12:25 13:9,13

13:16 14:8,18
  15:6,10 16:1,8
  16:13 17:10,12
  17:15 18:13,16
  18:19,22,25
  19:6,22 20:3,7
  20:14,16,22,24
  21:1,19,22,25
  22:5 24:5
  25:21 29:9,19
  29:21 30:6,8
  30:11,13 31:4
  32:14 33:3
  36:1 38:7,9,11
  38:20 39:7,14
  39:17
wickouski's
  24:17 37:17
willing  34:6
win  28:21
wind  27:4
wins  9:4
withdrawn
  21:21
withdrew
  21:23
withstanding
  21:17
witness  12:11
witnesses  33:9
wofford  5:11
work  15:2 19:7
  32:20 38:18
working  21:6
  32:5,12 38:14
works  38:24

[worth - zoom]                                                                    Page 15

| | |
|---|---|
| **worth** 11:10 33:16,16 | |
| **wrapper** 30:18 | |
| **wreak** 9:14 | |
| **written** 20:1 30:17 | |

| **x** |
|---|

| **x** 1:5,11,17 |
|---|

| **y** |
|---|

**yeah** 18:22
  22:10 37:5
  38:9
**years** 19:24
  22:22,24,24
**yesterday**
  24:10
**york** 1:2,21 4:6
  4:13 20:2

| **z** |
|---|

**zaharis** 5:12
**zomo** 5:13
**zoom** 6:17,19
  6:24 38:18,21
  39:9