Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
sdavidson@kslaw.com

Thaddeus D. Wilson (*pro hac vice* admission pending)
KING & SPALDING LLP
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
thadwilson@kslaw.com

*Counsel for Fireblocks Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>Jointly Administered |
| CELSIUS NETWORK LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>STAKEHOUND S.A.,<br><br>Defendant. | Adversary Proceeding<br>No. 23-01138 (MG) |

**OBJECTION OF FIREBLOCKS LTD. TO THE MOTION TO
APPROVE SETTLEMENT AGREEMENT WITH
STAKEHOUND S.A. AND RELATED TRANSFERS PURSUANT TO
RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
AND SECTION 363(B) OF THE BANKRUPTCY CODE**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

OBJECTION ............................................................................................................................... 4

    A.    The Proposed Settlement Agreement—in Unredacted Form—Should Be
    Available to All Creditors for Review .................................................................... 4

        1.    The Motion Should Have Been Filed in the Main Bankruptcy Case ......... 4

        2.    Sudden Shifts in Business Require Full Disclosure.................................... 6

        3.    The Settlement Agreement Must Be Unredacted for All Creditors
        to Review and Analyze ............................................................................ 7

        4.    The Redactions May Show that the Settlement Agreement Violates
        Applicable Law ...................................................................................... 12

    B.    The Motion Seeks Relief Without Appropriate Justification .............................. 13

        1.    CNL's Cursory Reference to Section 363(b) in the Motion Is
        Insufficient to Satisfy Its Burden to Use Estate Assets Outside of
        the Ordinary Course of Business ............................................................. 13

        2.    At Least Some of the Proposed Uses of the StakeHound Funding
        Amount Appear to Be Inappropriate or Not Appropriately
        Disclosed................................................................................................ 17

CONCLUSION.......................................................................................................................... 18

**<u>TABLE OF AUTHORITIES</u>**

**Cases**                                                                                                                              **Page(s)**

*Ad Hoc Protective Comm. for 10 1/2 % Debenture Holders v. Itel Corp. (In re Itel Corp.)*,
  17 B.R. 942 (B.A.P. 9th Cir. 1982)........................................................................8

*In re: American Medical Systems, Inc.*,
  MDL No. 2325, 2016 WL 3077904 (S.D.W.Va. May 31, 2016)...........................................10

*In re Barney's, Inc.*,
  201 B.R. 703 (Bankr. S.D.N.Y. 1996).......................................................................8

*In re Celsius Network LLC*,
  644 B.R. 276 (Bankr. S.D.N.Y. 2022).......................................................................7

*Cobra International, Inc. v. BCNY International, Inc.*,
  No. 05-61225-CIV, 2013 WL 11311345 (S.D. Fla. Nov. 4, 2013)........................................10

*In re Endo Int'l plc*,
  No. 22-22549 (JLG), 2022 WL 16935997 (Bankr. S.D.N.Y. Nov. 14, 2022).......................14

*In re Gawker Media LLC*,
  No. 16-11700 (SMB), 2017 WL 2804870 (Bankr. S.D.N.Y. June 28, 2017).......................9

*In re Golden Seahorse LLC*,
  No. 22-11582 (PB), 2023 WL 2472970 (Bankr. S.D.N.Y. Mar. 10, 2023).........................15

*Leader Techs., Inc. v. Facebook, Inc.*,
  719 F. Supp. 2d 373 (D. Del. 2010).........................................................................9

*Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*,
  114 F.3d 379 (2d Cir. 1997)..................................................................................14

*In re Roman Cath. Diocese of Rockville Ctr.*,
  647 B.R. 69 (Bankr. S.D.N.Y. 2022)...............................................................14, 15, 16

*Sokol v. Wyeth, Inc.*,
  No. 07 CIV. 8442 SHS KNF, 2008 WL 3166662 (S.D.N.Y. Aug. 4, 2008)...........................9

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Products Liability Litigation*,
  405 F.Supp.3d 612 (D.N.J. Sept. 18, 2019)................................................................10

*Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*,
  21 F.3d 24 (2d Cir. 1994).....................................................................................8

*In re Vill. Red Rest. Corp.*,
No. 18-10960, 2021 WL 3889793 (Bankr. S.D.N.Y. Aug. 31, 2021) ....................................14

*In re Watford*,
159 B.R. 597 (M.D. Ga.1993), *aff'd*, 61 F.3d 30 (11th Cir. 1995)..........................................14

**Statutes and Rules**

11 U.S.C. § 107(a) ...............................................................................................................7

11 U.S.C. § 107(b)............................................................................................................7, 8

11 U.S.C. § 1109(b).............................................................................................................1

11 U.S.C. § 363(b) ..................................................................................................13, 14, 15

11 U.S.C. § 363(b)(1).........................................................................................................14

Fed. R. Bankr. P. 9019.................................................................................................13, 16

Fireblocks, Ltd. ("**FireBlocks**"), a creditor in certain of the above-captioned bankruptcy cases and a party in interest herein, by and through its undersigned counsel, respectfully submits this objection (the "**Objection**") to the motion ("**Motion**")[1] filed by Celsius Network Limited ("**CNL**" or "**Celsius**") seeking entry of an order approving (i) a proposed settlement agreement dated December 8, 2023, (the "**Settlement Agreement**" or "**Agreement**") between CNL and StakeHound S.A. ("**StakeHound**" and, together with CNL, the "**Parties**") concerning the claims and causes of action asserted in the above-captioned adversary proceeding (the "**Adversary Proceeding**") and the arbitration initiated by StakeHound in Switzerland (the "**Swiss Arbitration**"); (ii) CNL's acquisition of "virtually all of the assets in StakeHound's possession, custody or control" (Motion at ¶ 1); and (iii) CNL's entry into a new business line and proposed non-ordinary course transfer of assets to StakeHound in connection with that Settlement Agreement.  In support of this Objection, Fireblocks respectfully states as follows:

## PRELIMINARY STATEMENT

1.      On January 3, 2023, Fireblocks filed a proof of claim in the Celsius Network LLC bankruptcy case (Proof of Claim No. 20588) and a proof of claim in the Celsius Network Limited bankruptcy case (Proof of Claim No. 20590).  As such Fireblocks Ltd. is a creditor and party in interest in these bankruptcy cases and has standing and a right to be heard in connection with the Motion. *See* 11 U.S.C. § 1109(b) ("A party in interest, including . . . a creditor . . . may raise and may appear and be heard on any issue in a case under this chapter.").

2.      CNL alleges in the Motion that, on May 2, 2021, private keys relating to the withdrawal of 38,178 ETH, including all of the February 2021 Staked ETH, plus all ETH provided

---

[1] For consistency purposes only, capitalized terms not otherwise defined in this Objection shall have the meanings ascribed to them in the Motion. However, by doing so, Fireblocks expressly does not adopt any position taken by CNL or StakeHound, disputes the assertions made in the Motion, and asserts that the relief requested should be denied.

to StakeHound by customers other than CNL, were lost (the "**Key Loss Incident**"). StakeHound claims that Fireblocks is responsible for the Key Loss Incident. Fireblocks wholly disagrees.

3.     StakeHound claims that, as a result of the Key Loss Incident, StakeHound suspended its platform in May 2021, which it announced in June 2021. Following the Key Loss Incident, StakeHound initiated legal proceedings against Fireblocks in Israel. Fireblocks has denied any responsibility for the Key Loss Incident and is vigorously disputing the allegations and claims made against it in the Fireblocks Litigation.  The Fireblocks Litigation is ongoing in Israel.

4.     CNL asserts in the Motion that, on December 8, 2023, the Parties executed the Settlement Agreement, through which they intend to settle fully and discontinue both (i) the Adversary Proceeding, and (ii) the Swiss Arbitration.

5.     However, the Settlement Agreement goes much further than settling claims among the Parties. It also purports to provide CNL a "substantial interest" in the Fireblocks Litigation through an alleged funding arrangement. Motion, ¶ 41. Specifically, upon receipt of the Initial CNL ETH Transfer from StakeHound, CNL proposes to transfer approximately $10 million (referred to in the Motion as the "StakeHound Funding Amount") to StakeHound to, among other things, fund the Fireblocks Litigation. *Id.* While the Settlement Agreement purports to grant CNL a security interest in certain Collateral, such security interest will ***only*** be granted if "StakeHound has not succeeded in obtaining Release or Forbearance Agreements" from certain of its own creditors specified in the Settlement Agreement. Settlement Agreement, ¶ 6(a). Pursuant to the Settlement Agreement, it appears that if the requisite Release or Forbearance Agreements are obtained, CNL will have no security interest in any of the Collateral, meaning that there is a substantial risk that there is no source of repayment from StakeHound.

6.      In this regard, it appears that the StakeHound Funding Amount may never be repaid to Celsius. While not entirely clear in the Motion and Settlement Agreement because substantial portions of both have been redacted, the repayment of the StakeHound Funding Amount appears to be directly tied to a recovery on the Fireblocks Litigation. If there is no recovery by StakeHound in the Fireblocks Litigation, CNL will **not** be repaid **any** of the Fireblocks Funding Amount.

7.      Moreover, Section 4 of the Settlement Agreement provides that the StakeHound Funding Amount is coming out of the bankruptcy estate's assets—meaning that assets to which creditors would otherwise be entitled will not only fund the Fireblocks Litigation but will also be used to pay for StakeHound's own legal fees and expenses, tax obligations and numerous professional advisors.

8.      On December 8, 2023, CNL filed the Motion as well as an *ex-parte* motion for entry of an order authorizing it to shorten the notice period for the Motion ("**Notice Motion**") [ECF No. 106]. Additionally, on the same day, CNL filed an *ex-parte* motion for entry of an order authorizing it to redact and file under seal certain confidential information set forth in the Motion. ("**Seal Motion**") [ECF No. 107]. The Motion, Notice Motion and Seal Motion were filed only in the Adversary Proceeding; they were not filed on the docket for the main bankruptcy case (*i.e.*, Celsius Networks LLC, Case No. 22-10964).

9.      On December 13, 2023, the Court entered orders granting both the Notice Motion and the Seal Motion, shortening the notice period for the Motion ("**Notice Order**") [2] and

---

[2] Fireblocks does not believe that Celsius provided appropriate justification to shorten the notice period for the Motion. The fact that the Creditors Committee supports the relief requested in the Motion is not, in and of itself, justification to shorten a notice period. The fact that the cryptocurrencies at issue may fluctuate in price should also not be a justification for shortened notice; if it were, then any motion seeking approval of a settlement agreement where the settlement consideration is in anything but US dollars would justify shortened notice. Lastly, the Fireblocks Litigation is proceeding in Israel and allowing the regular notice period to run its course would not have affected that litigation. It appears that the real reason for seeking to shorten notice was to fast-track this proposed settlement agreement without appropriate notice and have it approved without sufficient time for parties to scrutinize it. With that said, Fireblocks is not asking the Court to reconsider the Notice Order. However, if the Court agrees with

authorizing certain portions of the Motion and Settlement Agreement to be redacted and filed under seal ("**Seal Order**"). [ECF Nos. 108, 109]. Importantly however, in the Seal Order, the Court specifically held that "[n]othing in this Order shall restrict or prejudice in any way the right of any party in interest or the U.S. Trustee to seek relief from this Court to unseal any part of the 9019 Motion or the Settlement Agreement attached thereto." Seal Order, ¶ 6.

10.    As discussed in more detailed below, Fireblocks believes that the Motion is not properly supported, it was not properly noticed to creditors and other parties in interest, and the redactions proposed by CNL are inappropriate given the facts of this case. Accordingly, Fireblocks requests that the relief requested in the Motion be denied.

## OBJECTION

### A.    The Proposed Settlement Agreement—in Unredacted Form—Should Be Available to All Creditors for Review

11.    CNL filed the Motion on the eve of the holidays and sought expedited relief for approval of a heavily redacted Settlement Agreement that entails using substantial estate assets to acquire substantially all assets of a non-debtor without appropriate disclosure or justification.  Such relief should be rejected.

#### 1.    The Motion Should Have Been Filed in the Main Bankruptcy Case

12.    The Motion and accompanying Settlement Agreement were filed only in the Adversary Proceeding. Because of the nature of the relief sought—through the guise of a settlement, Celsius is apparently seeking to engage in a new line of business (*i.e.*, litigation funding), and is seeking to use considerable estate assets in the process (in essence acquiring

---

Fireblocks that the Motion was not properly noticed and that the redactions are inappropriate, if Celsius is directed to refile the Motion, it should be done on regular notice to give all parties in interest an appropriate amount of time to fully analyze the unredacted Settlement Agreement, conduct necessary discovery, and voice any appropriate concerns.

StakeHound without expressly saying so)—the Motion and Settlement Agreement should have been filed in the main bankruptcy case. They were not, and this was not appropriate.

13.     Celsius may argue that copies of the Motion and Settlement Agreement could be obtained by visiting the website of Stretto (its noticing agent) or the Court's website. This, however, is misleading because creditors and parties in interest typically monitor the docket of the main bankruptcy case (here, Celsius Network LLC); they do not monitor adversary proceeding dockets unless they have a specific interest in the issues being addressed therein.

14.     In addition, with the shortening of notice of the Motion, parties in interest, whose financial interests in these bankruptcy cases may be affected by the outcome of the Motion, have not been provided appropriate notice of the relief requested in the Motion or a sufficient opportunity to appear and be heard on the relief requested in the Motion. For example, notwithstanding the fact that it is a creditor and its prominent role in the Settlement Agreement, Fireblocks was not served with a copy of the Motion. Fireblocks only discovered the existence of the Motion through checking the Adversary Proceeding docket. But other creditors and parties in interest likely had no reason to follow the Adversary Proceeding and certainly have not had adequate time to consider whether the Debtors' attempts to use estate assets outside the ordinary course of business are appropriate or lawful.

15.     Fireblocks, and any other party in interest who may have become aware of the Motion, have had less than a week to review the Motion and Settlement Agreement and draft this Objection; there has not been an appropriate amount of time to conduct discovery into the relief requested by CNL. Important discovery would include, among other things, (i) communications between CNL and StakeHound relating to the Settlement Agreement and the Fireblocks Litigation, (ii) communications between CNL and the Creditors Committee relating to the Settlement

Agreement and the Fireblocks Litigation, (iii) communications between StakeHound and the Creditors Committee relating to the Settlement Agreement and the Fireblocks Litigation, (iv) relevant documents concerning the Fireblocks Litigation and CNL's "funding" commitment contained in the Settlement Agreement and what that really entails, (v) relevant documents concerning any assets that will remain with StakeHound if the Settlement Agreement is approved and implemented, (vi) relevant documents concerning the liabilities that CNL is proposing to fund, and (vii) liabilities of StakeHound that the Debtors' estates may actually assuming under applicable law.

16.     CNL should be required to file the Motion on the main bankruptcy case docket—on regular notice—so that all creditors (including Fireblocks) and other parties in interest can be provided with appropriate notice of the relief sought, seek appropriate discovery, and have a sufficient amount of time to respond to the relief requested.

**2.     Sudden Shifts in Business Require Full Disclosure**

17.     As mentioned above, Celsius is purporting to start a new business—litigation funding. Any information regarding a sudden shift in the Debtors' business model should have been disclosed to, and voted on by, the Debtors' creditors as part of the plan confirmation process. *In re Boylan Int'l, Ltd.*, 452 B.R. 43, 51 (Bankr. S.D.N.Y. 2011)(stating that proponents of a plan modification shall comply with Section 1125, which mandates postpetition disclosure if the plan is materially modified). Without proper and full disclosure of this new business, the Debtors' creditors would be unable to make an informed choice as to whether such a risky use of estate assets is appropriate. And, it is questionable whether creditors and other parties in interest actually fully understand the ramifications of the relief requested in the Motion since it was only filed in the Adversary Proceeding and not in the main bankruptcy case.

18.    Here, Celsius' creditors (if they are actually aware of this Motion) were not informed until now of this proposed new business line (litigation funding) and effective acquisition of StakeHound that has been proposed within the Settlement Agreement. All creditors are entitled to appropriate notice of this additional business that CNL is proposing to undertake, especially given that it is requesting to use a substantial amount of money (*i.e.*, approximately $10 million of estate assets and possibly more in light of the heavily redacted Motion and Settlement Agreement) to fund this new business line.

**3.    The Settlement Agreement Must Be Unredacted for All Creditors to Review and Analyze**

19.    Section 107(a) of the Bankruptcy Code recognizes the right of public access in a bankruptcy case. Specifically, it provides that "[e]xcept as provided in subsection (b) and (c) [of this section]  . . ., a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a).

20.    As this Court explained at the inception of these very bankruptcy cases:

> There is a strong presumption and public policy in favor of public access to court records.  The right of public access is rooted in the public's First Amendment right to know about the administration of justice.  The public interest in openness of court proceedings is at its zenith when issues concerning the integrity and transparency of bankruptcy court proceedings are involved.  The presumption of open access to court records is codified in section 107 of the Bankruptcy Code.  Nevertheless, Congress implemented statutory exemptions to prevent disclosure of certain information in a bankruptcy case. Nonetheless, "Courts have zealously upheld the public's right to access and narrowly construed the exceptions. Information that might "conceivably" or "possibly" fall within a protected category is not sufficient to seal documents.  Ultimately, the decision whether to seal bankruptcy court records lies within the discretion of the bankruptcy court.

*In re Celsius Network LLC*, 644 B.R. 276, 287-88 (Bankr. S.D.N.Y. 2022)(citations and internal quotation marks omitted). And, "[t]he moving party bears the burden of showing that the information is confidential under section 107(b)." *Id.* at 288.

21.     While the right of public access is not absolute, the exceptions on the public's First Amendment right to know are strictly limited to the exceptions set forth in Section 107(b) of the Bankruptcy Code. "On request of a party in interest, the bankruptcy court . . . may (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter . . . in a case under this title." 11 U.S.C. § 107(b). Commercial information is generally accepted to mean "information which would cause 'an unfair advantage to competitors by providing them information as to the commercial operations'" of the party seeking to seal the information. *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994) (quoting *Ad Hoc Protective Comm. for 10 1/2 % Debenture Holders v. Itel Corp. (In re Itel Corp.)*, 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982)). The commercial information at hand must be "so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit the entity's competitors." *In re Barney's, Inc.*, 201 B.R. 703, 709 (Bankr. S.D.N.Y. 1996).

22.     CNL does not adequately explain the basis for the extensive redactions contained in the Motion and Settlement Agreement. The only statement in the Sealing Motion that provides any clue is the following:  "CNL has proposed narrowly tailored redactions that are limited to only the highly sensitive, confidential information necessary to protect CNL's and StakeHound's commercial interests, including concerning the pursuit of the Fireblocks Litigation."  Sealing Motion, ¶ 12. While Fireblocks, other creditors and parties in interest have no way of knowing what is contained in the redacted portions of the Motion and Settlement Agreement, there is no indication that the redacted information is a trade secret, confidential research, development or commercial information about operations. There is also no hint that the redacted information is

scandalous or defamatory to CNL or StakeHound. The redacted information could demonstrate that the Settlement Agreement is unlawful, it could contain information regarding payments being made to other parties from estate assets, and it could contain concessions that could impact the Fireblocks Litigation. Creditors and parties in interest simply do not know because the information is redacted.

23.    There is no business reason to redact the information because it would not provide Celsius' competitors an advantage. Such information is not critical to the operations of StakeHound, which the Motion suggests has largely ceased operations. *See* Motion, ¶ 22 (stating that "StakeHound suspended its platform in May 2021").

24.    CNL essentially asserts that the redacted information pertains to litigation strategy that should be protected; that argument is meritless. First, CNL and StakeHound are currently adverse in the pending Adversary Proceeding and Swiss Arbitration, and by definition, the Settlement Agreement cannot contain information covered by the attorney-client privilege. Thus, the Settlement Agreement cannot be withheld on the basis of a purported legal privilege—common interest or otherwise. *See Sokol v. Wyeth*, No. 07 Civ. 8442, 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008)("If a communication is not protected by the attorney-client privilege or the attorney work-product doctrine, the common-interest privilege does not apply."); *see also Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010)(holding protected interest must be "identical, not similar, and be legal, not solely commercial.").[3]

25.    Second, and importantly, litigation funding agreements are discoverable if they are relevant to claims and defenses in the case. *See In re Gawker Media LLC,* 2017 WL 2804870, at

---

[3] Nowhere in the Motion does CNL assert that any of the information it seeks to redact is privileged. This is not surprising since, as noted in the text above, CNL and StakeHound are adverse to each other.

*7 (Bankr. S.D.N.Y. June 28, 2017)(allowing discovery in bankruptcy case into litigation financing agreements and relationships); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Products Liability Litigation*, 405 F.Supp.3d 612, 615 (D.N.J. Sept. 18, 2019). Courts have stated that discovery will be ordered "where there is a sufficient showing that a non-party is making ultimate litigation or settlement decisions, the interests of plaintiffs . . . are sacrificed or are not being protected, or conflicts of interest exist." *Id.* Statements indicating that the entity funding the litigation is not making decisions is an insufficient response to the prevention of production of documents. *See Cobra International, Inc. v. BCNY International, Inc.*, No. 05-61225-CIV, 2013 WL 11311345, at*3 (S.D. Fla. Nov. 4, 2013). Courts have also stated that if the documents are relevant to understanding the plaintiffs' motivation to undergo certain procedures that were funded by third-party funding companies, those documents would be discoverable. *In re: American Medical Systems, Inc.*, MDL No. 2325, 2016 WL 3077904 at *5 (S.D.W.Va. May 31, 2016).

26.    At this time, CNL has no rights in the Fireblocks Litigation and it will only have such rights if the Settlement Agreement is approved and then it will have only those rights as stated in the Settlement Agreement (many of which Fireblocks and other creditors cannot see). StakeHound has asserted claims against Fireblocks and it may have confidential information it wants to protect, but StakeHound has not sought such relief in this or any other court. While CNL is proposing to fund the Fireblocks litigation, it is not its confidential information it seeks to protect but that of a third party.

27.    Even if, however, certain of the information could appropriately be redacted as being litigation strategy (which Fireblocks asserts should not be the case), there are various

passages in the Motion and Settlement Agreement that appear to have nothing at all to do with litigation strategy. A few examples in just the Motion are:

i.      In footnote 5 in the Motion, CNL states: "The 'Altcoinomy Tokens' are amounts StakeHound has outstanding to Altcoinomy SA ("Altcoinomy") in an amount not to exceed [REDACTED]." It is unclear how the redacted portion concerns litigation strategy or other sensitive information.

ii.     In footnote 9 in the Motion, the end portion of the defined term "Celsius Representative" is redacted. It is unclear how the redacted portion of this defined term concerns litigation strategy or other sensitive information.

iii.    On pages 13 and 14 of the Motion, there are sections titled "Conduct of Fireblocks Litigation" and "[REDACTED] Fireblocks Litigation," with the entire descriptions redacted. It is unclear how the mere title of a section can concern litigation strategy or otherwise be sensitive information.

iv.     In footnote 14 in the Motion, the definition of "Pivot Point" is completely redacted. There is no way for any party in interest to tell what this term means, how it fits within the settlement and whether it affects other parties' rights since CNL is requesting the use of approximately $10 million in estate assets.

v.      The second category on page 15 of the Motion is entirely redacted. There is no way for any party in interest to tell what this category concerns, how it fits within the settlement and whether it affects other parties' rights.

vi.     The third category on page 15 of the motion is entitled "In Kind Recovery of ETH Prior to Fireblocks Recovery Date" and the first category on page 16 of the Motion is entitled "No In Kind Recovery of ETH Prior to Fireblocks Recovery Date." However, the entire descriptions of both categories are redacted.  It is unclear how the redacted portions concern litigation strategy or other sensitive information, especially since they apparently concern a possible recovery of ETH before the Fireblocks Litigation has concluded.

vii.    The amount of ETH referenced in the first line on page 20 of the Motion and in footnote 17 is redacted. It is unclear how the redacted portions concern litigation strategy or other sensitive information.

viii.   Almost all of pages 22 and 23 of the Motion (and all of paragraph 50 on page 25) are redacted. There is no way to tell what is stated, how it fits within the settlement and whether it affects other parties' rights since CNL is requesting the use of approximately $10 million in estate assets.[4]

---

[4]  The Settlement Agreement also contains significant redactions.  17 of the 27 pages in the Settlement Agreement have redactions. Whole definitions are redacted. *See* Settlement Motion, ¶¶ 1(k), 1(aa), 1(nn). And, all or substantially all of the text on various pages are redacted.  *See id.,* pp. 15-17, 20.

28.     Contrary to CNL's assertion that its redactions are "narrowly tailored," as explained above, there are large portions of the Motion and the Settlement Agreement that are redacted with just a conclusory assertion that such redactions are necessary to protect confidential and sensitive information. Yet, this is not a situation where a debtor is seeking to redact portions of a settlement that would provide other creditors or competitors a significant advantage in their negotiations with the debtor or in their business dealings. Here, CNL is seeking court approval to use a significant sum of money—approximately $10 million—out of the ordinary course of business. In such a situation, CNL must be transparent so that creditors and other parties in interest can be adequately informed and able to evaluate the relief requested and decide whether an objection is warranted.

29.     Accordingly, CNL has not provided a sufficient justification for the redactions it has made to the Motion and Settlement Agreement, and the entire Motion and Settlement Agreement should be filed in their unredacted forms. Even if certain portions of the Motion and Settlement Agreement have been appropriately redacted (and Fireblocks believes they have not), CNL should be directed to review the Motion and Settlement Agreement again and only redact those portions that truly concern litigation strategy; all other portions of the Motion and Settlement Agreement should be unredacted for all of the world to see.

**4.    The Redactions May Show that the Settlement Agreement Violates Applicable Law**

30.     Through the redactions, CNL may be seeking to hide critical information that could determine whether certain terms in the Settlement Agreement are unlawful. Because Fireblocks and other creditors are unable to review and analyze that information, there may be substantive objections that Fireblocks and other creditors might have, but are unable to make. This is especially troubling considering the unique nature of the ongoing litigation between Fireblocks and StakeHound.

31.     The Fireblocks Litigation is currently being conducted in Israel, which has its own set of laws and procedures. Because of the redactions in the Settlement Agreement, Fireblocks and other creditors have no idea whether those redacted portions are in violation of Israeli or any other applicable law. It is even more troubling that Celsius has sought this relief on an expedited basis, without creditors having an understanding of (i) the full impact of the Settlement Agreement, (ii) how much certain parties (including adverse lawyers who are not estate professionals) will be paid and outside the context of formal Bankruptcy Code and U.S. Trustee procedures for making such payments, (iii) the risks associated with starting a new business line, and (iv) the very substantial risk of non-recovery in the underlying litigation and the resulting nonrepayment of the StakeHound Funding Amount.

32.     Without appropriately disclosing the negative ramifications of such actions, CNL and StakeHound have improperly fast-tracked the Settlement Agreement. For those reasons, Fireblocks reserves its rights to object to the Settlement Agreement on other bases once the Court requires a fully unredacted (or less redacted) Settlement Agreement to be filed on the docket.

**B.      The Motion Seeks Relief Without Appropriate Justification**

**1.      CNL's Cursory Reference to Section 363(b) in the Motion Is Insufficient to Satisfy Its Burden to Use Estate Assets Outside of the Ordinary Course of Business**

33.     The relief requested in the Motion is primarily based on Bankruptcy Rule 9019. Bankruptcy Rule 9019 states that "[o]n motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019. However, the Settlement Agreement not only seeks to settle the claims made in the Adversary Proceeding and Swiss Arbitration; it also provides that CNL has agreed to use assets from its bankruptcy estate, outside the ordinary course of business, to provide "a litigation funding loan" (Motion, ¶ 2) to StakeHound so that StakeHound can continue prosecuting the StakeHound Litigation against Fireblocks.

13

Motion, ¶ 32. This portion of the Settlement Agreement clearly implicates Section 363(b) of the Bankruptcy Code. Yet, CNL's discussion of Section 363(b) and how it is satisfied here is relegated to a few short sentences buried at the back of its Motion. *See* Motion ¶¶ 56, 58. Not only did Celsius not file the Motion in its main bankruptcy case where creditors and other parties in interest would be on full notice of the proposed non-ordinary course use of estate assets, but Celsius's relegation of why such relief is appropriate is also woefully inadequate, especially when CNL is seeking to use $10 million of estate assets that, in certain situations, may ***never be paid back***.

34.     Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). When determining whether the property was used outside of the ordinary course of business, bankruptcy courts need sound business justification. *In re Roman Cath. Diocese of Rockville Ctr.*, 647 B.R. 69, 74 (Bankr. S.D.N.Y. 2022). "The term 'ordinary course of business' generally has been accepted 'to embrace the reasonable expectations of interested parties of the nature of transactions that the debtor would likely enter in the course of its normal, daily business.'" *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) (quoting *In re Watford*, 159 B.R. 597, 599 (M.D. Ga.1993), *aff'd*, 61 F.3d 30 (11th Cir. 1995) (unpublished table decision)). "Thus, the 'key' to assessing whether a transaction is an ordinary course transaction is 'to distinguish between routine operations (which a debtor can pursue without the need for individualized court approval) and transactions that are sufficiently unusual, unique or significant from the perspective of creditors that they require court approval.'" *In re Endo Int'l plc*, No. 22-22549 (JLG), 2022 WL 16935997, at *6 (Bankr. S.D.N.Y. Nov. 14, 2022) (quoting *In re Vill. Red Rest. Corp.*, No. 18-10960, 2021 WL 3889793, at *17 (Bankr. S.D.N.Y. Aug. 31, 2021)).

35.    First, CNL's funding of litigation for StakeHound is not within its ordinary course of business, as CNL acknowledges. "Celsius initially offered two primary products: its users could transfer digital assets to Celsius and (a) earn rewards on digital assets and/or (b) take loans based upon the deposit of those transferred digital assets, with a contractual right to the return of like kind assets upon repayment."[5] [ECF No. 2902]. Celsius's own disclosure statement approved by the Court acknowledges its business is a finance platform, although Fireblocks understands from public reports and objections filed by other parties in the bankruptcy case that Celsius may be trying to become a mining operation. Yet, despite already established facts, Celsius is attempting to enter into another realm of business—funding litigation—which is obviously outside the ordinary course of its business.

36.    Because litigation funding is outside of Celsius's ordinary course of business, it necessarily needs Court approval under Section 363(b) of the Bankruptcy Code to use estate assets, and any such request must be based on sound business justification. *See In re Golden Seahorse LLC*, No. 22-11582 (PB), 2023 WL 2472970, at *6 (Bankr. S.D.N.Y. Mar. 10, 2023) (disagreeing with the debtor that court approval is not necessary because it was out of the ordinary course of business); *Roman Cath. Diocese of Rockville Ctr.*, 647 B.R. at 74 (stating that "[i]n determining whether to authorize the use of property outside of the ordinary course of business, bankruptcy courts require sound business justification").

37.    While there are a few cursory and conclusory references to Section 363(b) in the Motion, CNL should be required to file a separate motion—in the main bankruptcy case and not merely in the Adversary Proceeding so that all creditors and parties in interest can receive

---

[5]    *See Disclosure Statement For The  Joint Chapter 11 Plan Of Reorganization Of  Celsius Network LLC And Its Debtor Affiliates*, dated June 27, 2023 [ECF No. 2902], at 100.

appropriate notice (and not shortened notice)—where CNL seeks court approval to use substantial assets of its bankruptcy estate and provides appropriate and sufficient justification for such relief. Burying this important relief in the last few paragraphs of what is a Bankruptcy Rule 9019 settlement motion in an adversary proceeding is insufficient for CNL to carry its burden to obtain authority to use estate assets out of the ordinary course of business. *See Roman Cath. Diocese of Rockville Ctr.*, 647 B.R at 74 ("The debtor carries the burden of demonstrating that a use, sale or lease out of the ordinary course of business will aid the debtor's reorganization.").

38.     The problem is exacerbated because the StakeHound Funding Amount may never be paid back to Celsius and therefore may be lost forever to its creditors. If StakeHound is successful in obtaining all of the Release or Forbearance Agreements from its creditors, the $10 million StakeHound Funding Amount will ***not*** be secured by a first priority lien on the Collateral. In addition, if StakeHound does not prevail in the Fireblocks Litigation—as Fireblocks believes will happen—it appears StakeHound will not be required to pay any of the StakeHound Funding Amount back to CNL.  The Motion states that "***if*** a recovery is obtained from Fireblocks, ***to the greatest extent possible***, CNL is entitled to the full repayment of the StakeHound Funding Amount . . . ."  Motion, ¶ 42 (emphasis added).[6] But there is absolutely ***no*** discussion of what happens if StakeHound receives ***no*** recovery from the Fireblocks Litigation; it appears that the StakeHound Funding Amount does not have to be paid back.

---

[6]  In addition, footnote 21 in the Motion (at p.20), states: "In the event that the Fireblocks Litigation is discontinued for any reason, any balance of the StakeHound Funding Amount shall be returned to CNL or its delegate within five business days of the decision to discontinue and the Security Interest shall be deemed released." It appears that any portion of the StakeHound Funding Amount that was used prior to a discontinuance is out of the door and will not be repaid. In addition, it is not at all clear what happens if there remains a portion of the StakeHound Funding Amount if a judgment is rendered in Fireblocks' favor and StakeHound is unsuccessful. It appears that StakeHound can retain such sums, which would be detrimental to the bankruptcy estate.

39.    Celsius is attempting to use $10 million of estate resources at the cost of other creditors' recoveries with the "hope" that it will be paid back at some point in the future if the Fireblocks Litigation is successful. However, there remains the very real possibility that no amount will ever be paid back. Such important ramifications require an extensive explanation and justification that is clearly absent in the Motion. The relief requested in the Motion should this be denied on this basis alone.

**2.    At Least Some of the Proposed Uses of the StakeHound Funding Amount Appear to Be Inappropriate or Not Appropriately Disclosed**

40.    At the outset of the Motion, CNL portrays the provisions in the Settlement Agreement about the Fireblocks Funding Amount as merely a "litigation funding loan" (Motion, ¶ 2), but it appears to be much more than that. Section 4 of the Settlement Agreement concerns the "permitted uses of the StakeHound Funding Amount" and while Section 4(a) of the Settlement Agreement provides that the "StakeHound Funding Amount shall be used *solely* for the professional fees and costs of the Fireblocks Litigation described in 4(a)" (emphasis added), paragraph 4(c) of the Settlement Agreement paints a much different picture.

41.    Section 4(c) of the Settlement Agreement provides that "*[i]n addition* to the Fireblocks Litigation Funding, the StakeHound Funding Amount can be used solely to satisfy the obligations (and up to the amounts) specifically identified" in that paragraph. When viewed collectively, it seems like CNL is, in essence, taking over the StakeHound business and not merely providing litigation funding, even though that is never sufficiently explained in the Motion. For example, StakeHound is permitted to use the StakeHound Funding Amount to pay certain accounts payable, employee salaries, accounting fees, tax obligations and "[o]ther necessary corporate costs and expenses" that do not exceed a certain redacted amount. This is a far cry from merely litigation funding.

42.     In addition, StakeHound can use the StakeHound Funding Amount to pay "[p]rofessional fees and costs incurred by Locke Lord LLP, SW Legal, KeyStone Law and any Swiss Law expert retained by StakeHound (solely in connection with their respective representation of StakeHound on or before the Effective Date), not to exceed" a certain redacted amount. Locke Lord has appeared as counsel of record for StakeHound in the Adversary Proceeding. This implies that CNL agreed to use estate resources to pay StakeHound's counsel's fees and expenses that were incurred in litigation between CNL and StakeHound. This does not appear to be appropriate, but even if it could be, it has not been adequately disclosed or explained.

43.     In essence, it appears that Celsius is acquiring StakeHound and its defunct operations without saying as much. As CNL concedes in Paragraph 1 of the Motion, "If the Settlement Agreement is approved, StakeHound will be required to transfer to CNL virtually all of the assets in StakeHound's possession, custody or control . . . ." That is an impermissible acquisition done under the guise of a Settlement Agreement. And, to make matters worse, most of these corporate payments are proposed to be approved *not by the Court* but rather by some undisclosed "Celsius Representative," whose identity is being concealed from creditors. *See* Settlement Agreement, ¶¶ 1(f), 4(c). None of these transactions are in the ordinary course of Celsius' business, and the Court should deny the requested relief.

## CONCLUSION

44.     Because the Motion is flawed and based on inadequate notice and disclosure, the Court should deny the relief sought in the Motion or, at a minimum, require Celsius to file an unredacted version of the proposed Settlement Agreement on the main bankruptcy case docket and reset the hearing on appropriate notice so that Fireblocks and other creditors and parties in interest have adequate time to analyze whether such an agreement and the relief it seeks is lawful and in the best interests of the Debtors' estates.

Dated: December 15, 2023
        New York, New York

KING & SPALDING LLP

By:    */s/ Scott Davidson*
        Scott Davidson
        1185 Avenue of the Americas 34th Floor
        New York, New York 10036
        Telephone: (212) 556-2100
        sdavidson@kslaw.com

        Thaddeus D. Wilson (*pro hac vice*
        admission pending)
        1180 Peachtree Street NE, Suite 1600
        Atlanta, Georgia 30309
        Telephone: (404) 572-4600
        thadwilson@kslaw.com

        *Counsel for Fireblocks Ltd.*