Mitchell P. Hurley
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
mhurley@akingump.com
dchapman@akingump.com

Elizabeth D. Scott (admitted *pro hac vice*)
Nicholas R. Lombardi (admitted *pro hac vice*)
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
edscott@akingump.com
nlombardi@akingump.com

*Special Litigation Counsel for Debtors
and Plaintiff Celsius Network Limited*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*, | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |
| CELSIUS NETWORK LIMITED, | |
| Plaintiff, | Adversary Proceeding |
| v. | No. 23-01138 (MG) |
| STAKEHOUND SA, | |
| Defendant. | |

**CELSIUS NETWORK LIMITED'S REPLY IN SUPPORT OF ITS MOTION TO
APPROVE SETTLEMENT AGREEMENT WITH STAKEHOUND S.A. AND RELATED
TRANSFERS PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURES AND SECTION 363(B) OF THE BANKRUPTCY CODE**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    Fireblocks Tacitly Concedes That the Substantive Standards For Approving the Settlement Agreement Have Been Met ............................................2

    II.    The Motion Was Properly Noticed in Compliance with Applicable Rules and Case Management Procedures ........................................................................5

    III.    The 9019 Motion and Settlement Agreement Were Appropriately Redacted Pursuant to Bankruptcy Code sections 107(b) and 105(a) and Bankruptcy Rule 9018 ........................................................................................................8

    IV.    None of Fireblocks' Other Contentions Are Meritorious .......................................11

CONCLUSION ..............................................................................................................................12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re 4 Front Petroleum, Inc.*,
  No. 04-10979-R, 2007 WL 3005183 (Bankr. N.D. Okla. Oct. 11, 2007) ................................9

*In re 50-Off Stores, Inc.*,
  213 B.R. 646 (Bankr. W.D. Tex. 1997) .................................................................................10

*Acton v. Fullmer* (*In re Fullmer*),
  323 B.R. 287 (Bankr. Nev. 2005) ............................................................................................4

*In re Adelphia Commc'ns Corp.*,
  327 B.R. 143 (Bankr. S.D.N.Y. 2005) .....................................................................................3

*In re Adelphia Commc'ns Corp.*,
  368 B.R. 140 (Bankr. S.D.N.Y. 2007) .....................................................................................4

*Air Line Pilots Ass'n, Int'l. v. Am. Nat'l Bank & Tr. Co. of Chicago* (*In re Ionosphere Clubs, Inc.*),
  156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) ...........................................3

*Am. Eagle Outfitters, Inc. v. Payless ShoeSource, Inc.*,
  No. CV 07-1675 ERK VVP, 2009 WL 3786210 (E.D.N.Y. Nov. 12, 2009) .........................10

*E. Profit Corp. Ltd. v. Strategic Vision US, LLC*,
  No. 18-cv-2185 (LJL), 2020 WL 7490107 (S.D.N.Y. Dec. 18, 2020) ...................................11

*In re Islet Scis., Inc.*,
  Case No. 19-13366-mkn (Bankr. D. Nev. Sept. 24, 2019) .......................................................9

*In re MF Global Inc.*,
  No. 11–2790 (MG) ...................................................................................................................3

*Motorola, Inc. v. Off. Comm. of Unsecured Creditors* (*In re Iridium Operating LLC*),
  478 F.3d 452 (2d Cir. 2007) .....................................................................................................3

*In re Orion Pictures Corp.*,
  21 F.3d at 27 ...........................................................................................................................10

*In re Pasquinelli Homebuilding, LLC*,
  No. 11 B 14829, 2013 WL 594459 (Bankr. N.D. Ill. Feb. 14, 2013) ......................................9

*In re Roman Cath. Diocese of Rockville Ctr.*,
 647 B.R. 69 (Bankr. S.D.N.Y. 2022) ................................................................................ 4

*In re Rosenberg*,
 419 B.R. 532 (Bankr. E.D.N.Y. 2009) .............................................................................. 3

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*,
 405 F. Supp. 3d 612 (D.N.J. 2019) ................................................................................ 11

**Statutes and Rules**

11 U.S.C. § 105(a) ..................................................................................................................... 8

11 U.S.C. § 107(b) ..................................................................................................................... 8

11 U.S.C. § 363(b) ............................................................................................................ 1, 4, 6, 8

Fed. R. Bankr. P. 2002 ............................................................................................................ 6, 7

Fed. R. Bankr. P. 2002(m) .......................................................................................................... 6

Fed. R. Bankr. P. 9018 ............................................................................................................... 8

Fed. R. Bankr. P. 9019 ..................................................................................................... *passim*

**PRELIMINARY STATEMENT**

As explained in Celsius' opening papers, the Settlement Agreement[1] subject to this Motion represents an unquestionable triumph for Celsius, and a bright spot for Celsius' creditors in these challenging bankruptcy cases. If approved, the Settlement Agreement will result in StakeHound promptly transferring to Celsius more than 27,500 ETH, 47.9 million MATIC and 90,940 DOT, ***tokens that collectively are worth more than $105 million at recent prices***. The Settlement Agreement also calls for StakeHound and Celsius to pursue recovery from Fireblocks, the blockchain security provider responsible for losing tens of thousands of ETH tokens originally transferred from Celsius to StakeHound, in litigation currently pending in Israel ("Fireblocks"). If that litigation is successful, Fireblocks could be required to pay tens or hundreds of millions of dollars in damages, the lion's share of which could be returned to Celsius and its creditors, in addition to the nine-figure value transfer due to Celsius in the near term.

Unsurprisingly, the Settlement Agreement enjoys the enthusiastic support of the UCC. Not only will the Settlement Agreement immediately and materially increase the value to be distributed to creditors, it puts an end to expensive, time consuming and uncertain litigation between Celsius and StakeHound. That the Settlement Agreement is consistent with a sound exercise of the debtors' business judgment, and in the best interests of Celsius' estates, hardly can be disputed with a straight face.

Indeed, in a singular testament to the value and wisdom of the bargain struck by Celsius, the Settlement Agreement is opposed by exactly one party, and one party alone: ***Fireblocks***. The last thing Fireblocks wants is what the Settlement Agreement provides: StakeHound and Celsius

---

[1] Capitalized terms used but not defined herein shall have the meaning given to them in *Celsius' Motion to Approve Settlement Agreement with StakeHound S.A. and Related Transfers Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedures and Section 363(B) of the Bankruptcy Code* [ECF No. 105].

1

acting in a coordinated effort to prosecute claims against Fireblocks in Israel worth up to $180 million or more.

Apart from Fireblocks' obvious conflict of interest, the objection it submits also cannot be sustained on the merits. Unable to seriously dispute that the standards applicable to this Rule 9019 motion have been met, Fireblocks purports instead to appoint itself the proxy for all *other* creditors, not one of whom has raised any objection of its own. Fireblocks argues primarily that different notice should have been provided to other creditors in connection with the Motion, and that aspects of the Settlement Agreement relating to the litigation against Fireblocks in Israel must be unredacted and filed publicly.

Fireblocks has no standing to speak for anyone but itself, and, in any event, the arguments it raises fail by their own terms. Celsius provided exactly the notice required by the rules and orders applicable in these cases, and the redactions to the Settlement Agreement are appropriately designed to ensure the confidentiality of litigation strategy and financing information that Fireblocks could use (and obviously wants to use) to prejudice the litigation in Israel. Fireblocks' objection [ECF No. 111] (the "Objection") should be recognized and rejected for what it clearly is: a desperate and transparent attempt to derail and delay the Settlement Agreement at any cost, and forestall a reckoning for Fireblocks' catastrophic 2021 loss of ETH supplied by Celsius and staked by StakeHound.

**ARGUMENT**

**I.    Fireblocks Tacitly Concedes That the Substantive Standards For Approving the Settlement Agreement Have Been Met**

Not once in its 18-page Objection does Fireblocks dispute that the Settlement Agreement meets the standard for Rule 9019 approval. Nor could it. Settlements are important in bankruptcy cases because they can "help clear a path for the efficient administration of the bankrupt estate."

2

*Motorola, Inc. v. Off. Comm. of Unsecured Creditors* (*In re Iridium Operating LLC*), 478 F.3d 452, 455 (2d Cir. 2007); *see also In re MF Global Inc.*, No. 11–2790 (MG) SIPA, 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012) (citation omitted) ("Settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate."). Under Rule 9019, to approve a proposed settlement, the court must find the settlement to be fair and equitable, reasonable, and in the best interests of the debtor's estates and creditors. *See Air Line Pilots Ass'n, Int'l. v. Am. Nat'l Bank & Tr. Co. of Chicago* (*In re Ionosphere Clubs, Inc.*), 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). "It is not necessary for the court to conduct a 'mini-trial' of the facts or the merits underlying the dispute." *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (citations omitted). "Rather, the court only need be apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment about the settlement." *Id.* (citations omitted). "[A] court may not simply defer to a debtor in possession's judgment, but must independently evaluate the reasonableness of the settlement." *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009) (citations omitted). In so doing, the court may give weight to the opinion of bankruptcy counsel supporting the settlement. *See id.*

As Celsius described in its opening memorandum of law, in determining whether a settlement meets the requirements of Rule 9019, courts in the Second Circuit consider whether the following factors weigh in favor of the settlement: the probability of success in litigation, the difficulties of collecting any litigated judgment, the complexity and likely duration of the litigation, the proportion of creditors who do not object to or support the proposed settlement, the competence and experience of counsel who support the settlement, the relative benefits to be received by members of any affected class, the extent to which the settlement is the product of arm's-length

3

bargaining, and the debtor's informed judgment that the settlement is fair and reasonable. *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 225-26 (Bankr. S.D.N.Y. 2007). Not one of the arguments raised by Fireblocks in its Objection are relevant to any of these factors.

The same is true as to Section 363(b). Fireblocks complains in the Objection that Celsius' discussion of why the Section 363(b) standard is satisfied "is relegated to a few short sentences buried at the back of its Motion." Obj. ¶ 33. But that is because the factual predicate necessary to satisfy the Section 363(b) standard is substantially the same as that needed to satisfy Rule 9019 which Celsius lays out at length over the first 26 pages of its brief. "In determining whether to approve a proposed sale under section 363, courts generally apply standards that, although stated various ways, represent essentially a business judgment test." 3 Collier on Bankruptcy P 363.02[4] (16th ed. 2023) (citations omitted). In evaluating the use of property under Section 363, "the bankruptcy court" must "determines independently whether the judgment [to use the property] is a reasonable one." *Id.*; *see also Acton v. Fullmer* (*In re Fullmer*), 323 B.R. 287, 298 (Bankr. Nev. 2005) (citing Section 363(b) for the proposition that "[t]ransactions outside the [ordinary course] . . . require the independent review of the court and the creditor body"); *In re Roman Cath. Diocese of Rockville Ctr.*, 647 B.R. 69, 75 (Bankr. S.D.N.Y. 2022) (finding, based solely on motion of debtor and argument of counsel, that Debtor's request to opt into particularized treatment under a reorganization plan approved in another case satisfied both the Section 363(b) "good business reason" standard and the Rule 9019 "reasonable exercise of its business judgment" standard).

That the Settlement Agreement at issue meets these standards is beyond any reasonable dispute. If approved, StakeHound will be required to promptly transfer to Celsius virtually all of the assets in its possession, custody, or control, including 100% of its MATIC and DOT, and nearly 100% of its ETH tokens and rewards. On top of those assets – worth more than $105 million at

4

recent prices by themselves – Celsius stands to recover substantial additional amounts in connection with the litigation against Fireblocks. The alternative would be for Celsius to continue enormously expensive and time consuming cross-border litigation against StakeHound, with no guarantee of success, while potentially delaying or even undermining efforts to recover from Fireblocks in connection with its loss of valuable ETH originally transferred by Celsius to StakeHound. No one, not even Fireblocks, can seriously contend that the Settlement Agreement is not in the best interests of the estates, or is inconsistent with sound exercise of business judgment. Fireblocks' Objection is instead an absurd and transparent pleading designed to prevent a well-funded adversary from pursuing Fireblocks for its wrongful acts in losing tens of thousands of ETH.

## II. The Motion Was Properly Noticed in Compliance with Applicable Rules and Case Management Procedures

Unable to contest the substantive standards applicable to this motion, Fireblocks instead argues that notice of the motion was inadequate because Celsius did not file the motion "on the main docket." *See*, *e.g.*, Obj. ¶ 13. As a preliminary matter, Fireblocks itself received actual notice of the motion, and has suffered no injury of which it can complain. Fireblocks criticizes this Court's order shortening the notice period for the Motion (which it defines as the "Notice Order"), but expressly does "***not ask[] the Court to reconsider the Notice Order***." Obj. at 3 n.2. Since Fireblocks admits it received actual notice of the motion, and seeks no relief concerning the length of that notice, Fireblocks' Objection concerning notice has no cognizable basis. Certainly, Fireblocks has no standing to challenge the notice provided to *other* creditors of Celsius, none of whom have raised any objections of their own. *Compare* Obj. ¶ 14 (purporting to speak for "other creditors and parties in interest" who Fireblocks does not bother to identify). Notably, moreover, the actual statutory representative for Celsius' creditors – the UCC – supports the motion

5

enthusiastically, and agrees that the notice provided by Celsius, including to creditors, was entirely sufficient.[2]

Presumably that is because Celsius provided exactly the notice that is required under the rules and orders applicable to these cases. Federal Rule of Bankruptcy Procedure 2002 addresses the issue of notice to creditors, and, among other things, empowers the Court to determine "the form and manner in which notices shall be sent." Fed R. Bankr. P. 2002(m). Under paragraph 22 of the Case Management Procedures,[3] parties are to serve "Court Filing[s] … including under Bankruptcy Rule[] … 9019" (i) "*only* on the Service List" and, (ii) in the case of a 9019 motion, on "all parties to the relevant compromise and settlement, or that may be directly affected by such compromise or settlement." *Id.* ¶ 22(d) (emphasis added). That is precisely what Celsius did. *See* Aff. of Service by Janira N. Sanabria, an employee of Stretto [A.P. ECF No. 110] (establishing mail and email service on the Service List).[4]

Celsius' compliance with the terms of the Case Management Procedures by itself defeats Fireblocks' notice-based objection. It is nevertheless worth observing that Fireblocks' lengthy critique of the Court's Case Management Procedures are incoherent and unpersuasive. Fireblocks complains that because Celsius was not required to file the motion on the main docket, Fireblocks only received notice of the motion by "checking the Adversary Proceeding docket." Obj. ¶ 14. If true, Fireblocks has only itself to blame. Like any other person or entity, under the Case

---

[2] *See The Official Committee of Unsecured Creditors' (I) Statement In Support and (II) Joinder to the Debtors' Limited Reply In Support of Its Motion To Approve Settlement Agreement With Stakehound S.A. and Related Transfers Pursuant to Rule 9019 of the Federal Rules Of Bankruptcy Procedures and Section 363(B) of the Bankruptcy Code.*

[3] *See Second Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [ECF No. 2560] (approving Case Management Procedures attached as Exhibit 1 thereto).

[4] Separately, the Court has made clear that parties should **not** file adversary proceeding materials on the already crowded main docket.

6

Management Procedures, Fireblocks could have added itself to the Service List at any time simply by "filing a request to receive service of Bankruptcy Court Filings pursuant to Bankruptcy Rule 2002." *See* Case Management Procedures ¶ 9(b). Had it done so, Fireblocks would have been served with the motion when it was filed, along with hundreds of creditors and other parties-in-interest who bothered to take the minimal step necessary to join the Service List.

Moreover, as Fireblocks expressly acknowledges, "copies of the Motion and Settlement Agreement could be obtained by visiting the website of Stretto ([Celsius'] noticing agent)." *See* Obj. ¶ 13. Indeed, the Case Management Procedures lists the Stretto website first among the sources for obtaining "any Court Filing … filed with the Court in these Chapter 11 cases." Case Management Procedures at 2. Fireblocks suggests that parties could stay abreast of case developments on Stretto only by onerous daily monitoring of the website, but that is mistaken. Simply by clicking on the bright orange "Subscribe" tab on the main page of the Stretto/Celsius website, Fireblocks and any other creditor can elect to receive direct notices by email each time a document is filed (or with less frequency if preferred) concerning the main case and any adversary proceeding, entirely free of charge.

Fireblocks baselessly speculates that Celsius' creditors "typically" monitor only the "main bankruptcy docket" for developments relating to the StakeHound adversary proceeding rather than either periodically visiting the Stretto website or signing up for direct email notifications from Stretto. Obj. ¶ 13. In addition to being entirely evidence-free, Fireblocks' claim also is irrelevant. As discussed above, the Court was well within its authority under the Bankruptcy Rules to establish the notice requirements provided under the Case Management Procedures, which do not require filing adversary proceeding materials on the main docket.[5] Notably, moreover, Fireblocks

---

[5] Recently, the "main docket" reflected more than 4,120 entries, and at least seventeen (17) adversary proceedings have been filed in connection with these cases. Requiring – or even permitting – parties to file adversary

7

*did* file its December 15, 2023 Objection on the main docket, which necessarily provided notice to creditors in the form preferred by Fireblocks. Since that time, not a single other creditor has emerged to join the Objection, or otherwise voice any concern in respect of the Motion or notice thereof. Fireblocks stands alone. Indeed, the only creditor input on the motion has been from the UCC which, as noted, offers its full-throated support. Fireblocks' bid to act as an unappointed proxy to complain about notice provided to other creditors should be rejected.[6]

### III. The 9019 Motion and Settlement Agreement Were Appropriately Redacted Pursuant to Bankruptcy Code sections 107(b) and 105(a) and Bankruptcy Rule 9018

Next, Fireblocks argues that the motion should be denied because the parties' redactions to the Settlement Agreement and motion are not justified. Once again, Fireblocks is mistaken. As Celsius explained in its motion to seal,[7] the Settlement Agreement and 9019 motion include confidential information concerning the litigation that is currently pending in Israel against Fireblocks, and that could lead to serious prejudice to Celsius and StakeHound if publicly revealed. *Id*. ¶¶ 3-5. As the Court tacitly found when it granted the sealing motion, these are exactly the kind of circumstances that justify redactions in accordance with Bankruptcy Code sections 107(b) and 105(a) and Bankruptcy Rule 9018.[8]

---

proceeding-related materials in the main case would serve only to further clutter an already crowded docket, and obscure more than it would reveal. Presumably for this reason, after Celsius filed materials on the main docket related to a different adversary proceeding in November, 2022, including a 9019 motion, ECF No. 1352, Chambers telephoned and instructed counsel not to do so again.

[6] Bizarrely, Fireblocks implies some impropriety based on the timing of the filing of the Motion, which Fireblocks characterizes as "on the eve of the holidays." Obj. ¶ 11. In fact, the Court indicated it would hear the Motion on December 21, 2023, provided the motion was filed by 5:00 p.m. on December 8, 2023, and Celsius did so. *See* Dec. 6, 2023 Hearing Tr. at 11:13-16, 14:4-9.

[7] *Ex-Parte Motion for Entry of an Order Authorizing Celsius Network Limited to Redact and File Under Seal Certain Confidential Information Set Forth in the Motion to Approve Settlement Agreement with StakeHound S.A. and Related Transfers Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 363(b) of the Bankruptcy Code* (the "Motion to Seal") [ECF No. 107],

[8] After filing the Motion to Seal, Celsius contacted the Court by email and offered to answer any questions the Court might have concerning the material redacted from the public docket. *See* December 11, 2023 Email

8

Nevertheless, according to Fireblocks, Celsius' redactions are inappropriate because "there is no indication that the redacted information is a trade secret, confidential research, development or commercial information about operations." Obj. ¶ 22. Fireblocks does not even acknowledge, much less seek to distinguish, the extensive case law Celsius cited in the Motion to Seal demonstrating that the protection of sensitive litigation strategy and other information also justifies sealing. *See* Motion to Seal [ECF No. 107] ¶ 13 (*citing, e.g., In re Islet Scis., Inc.*, Case No. 19-13366-mkn (Bankr. D. Nev. Sept. 24, 2019), Doc No. 136 at 2 (granting motion to seal agreement containing "the terms of sensitive litigation financing" and "litigation strategy, attorney work product, or otherwise protectable commercially sensitive information"); *In re Pasquinelli Homebuilding, LLC*, No. 11 B 14829, 2013 WL 594459, at *2 (Bankr. N.D. Ill. Feb. 14, 2013) (sealing trustee's application to retain a litigation consultant and that consultant's fee applications "to protect the Trustee's litigation efforts and to level the playing field" given that the defendants in any suit the trustee may bring would be able to protect from disclosure the information regarding their own consulting experts); *In re 4 Front Petroleum, Inc.*, No. 04-10979-R, 2007 WL 3005183, at *1 (Bankr. N.D. Okla. Oct. 11, 2007) (citation omitted) (sealing trustee's motion to authorize joint prosecution agreement, including because it contained information concerning "proposed litigation strategy of the Trustee and the Creditor Trust")).

Fireblocks also challenges the redactions because, supposedly, "CNL and StakeHound are currently adverse in the pending Adversary Proceeding and Swiss Arbitration, and by definition, the Settlement Agreement cannot contain information covered by the attorney-client privilege. Obj. ¶ 24. Fireblocks' contention is both irrelevant and incorrect. First, it is not necessary that information be subject to attorney-client privilege to be entitled to protection from public

---

Correspondence to the Court, attached hereto as Exhibit A. The Court did not respond to Celsius email, but granted the Motion to Seal (the "<u>Sealing Order</u>") a little more than a day later. [ECF No. 108].

9

disclosure. To qualify for protection under 107(b) and 9018, the information to be sealed need only be "confidential" and "commercial in nature." *In re Orion Pictures Corp.*, 21 F.3d at 27. As just discussed, redacted information relating to financing provided by Celsius to StakeHound and the pursuit of litigation against Fireblocks clearly satisfies the confidentiality requirement under the applicable rules. *See, e.g.*, *In re 50-Off Stores, Inc.*, 213 B.R. 646, 654-55 (Bankr. W.D. Tex. 1997).

Second, merely because Celsius and StakeHound have been adverse to one another concerning certain matters does not preclude them from sharing a common interest with respect to claims against Fireblocks. *See, e.g.*, *Am. Eagle Outfitters, Inc. v. Payless ShoeSource, Inc.*, No. CV 07-1675 ERK VVP, 2009 WL 3786210, at *2 (E.D.N.Y. Nov. 12, 2009) (explaining that the existence of some "diverging interests does not eradicate, but rather only limits, the scope of the protection … to matters … where their interests do not diverge"). In this case, the litigation in Israel against Fireblocks arises from Fireblocks' failure to maintain security keys necessary to retrieve more than 35,000 ETH that were originally transferred by Celsius to StakeHound. The parties share a common interest in seeking to hold Fireblocks to account with respect to the loss, just as this Court already has contemplated. *See, e.g.*, Aug. 7, 2023 Hearing Tr. 22:6-12 ("THE COURT: Well, [the] little that I know about the issues about Fireblocks and StakeHound certainly suggest to me that you -- that Celsius and StakeHound share an interest in recovery. … [Y]ou know, it's certainly sounded like you shared an interest that would support a common interest, agreement or something like that.").

Finally, Fireblocks' contention that the Settlement Agreement is "discoverable" is both dubious[9] and immaterial. Fireblocks already has a copy of the Settlement Agreement, albeit a

---

[9] Fireblocks argues that the Settlement Agreement is a "litigation funding agreement" and therefore discoverable. Even if that characterization of the Settlement Agreement were accurate, courts are split as to whether

10

redacted version. The issue here is not one of discovery, but of confidentiality. As discussed at length above, there can be no serious doubt that the Court was justified in entering the Sealing Order and preventing Fireblocks – Celsius' litigation adversary – from accessing confidential, sensitive information concerning the Israeli litigation.

### IV. None of Fireblocks' Other Contentions Are Meritorious

Fireblocks offers a host of additional "kitchen sink" arguments in its desperate bid to hinder and delay Celsius and StakeHound from holding Fireblocks responsible for its wrongdoing. For example, Fireblocks contends that Celsius is "purporting to start a new line of business," but that obviously is not so. *See* Obj. ¶¶ 12, 17, 18. In connection with the Settlement, Celsius will receive two primary forms of consideration: (i) the near term transfer of more than $105 million worth of cryptocurrency (at recent prices) that StakeHound previously claimed it owned, and (ii) a share in proceeds of claims against Fireblocks, including relating to Fireblocks' loss of more than 35,000 ETH originally transferred by Celsius (which, in turn, ultimately came from Celsius' customers) to StakeHound. To be sure, the compromise requires Celsius to loan back a comparatively small portion of the transferred sums for use in prosecuting the Fireblocks Litigation (earning interest for Celsius at 20%), but that is a small price to pay for the extraordinary value Celsius gets in return. And Celsius' stake in the Fireblocks litigation will be managed post-effective date by the Plan Administrator, just like a number of other assets. This is neither a separate "line of business," nor even "new." Rather, the acquired litigation interests represent one part of a larger, very

---

to allow discovery of litigation funding agreements, and the courts that allow such discovery do not do so in all circumstances. *See, e.g.*, *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019) (citation omitted) (agreeing with the "plethora of authority that holds that discovery directed to a plainitff's litigation funding is irrelevant"); *see also E. Profit Corp. Ltd. v. Strategic Vision US, LLC*, No. 18-cv-2185 (LJL), 2020 WL 7490107, at *8 (S.D.N.Y. Dec. 18, 2020) (citations omitted) ("[C]ourts in this Circuit have rejected claims for such documents when the only asserted relevance is that they will permit the requesting party to peer into its adversary's strategy, the adversary's reasons for pursuing what the requesting party might believe is baseless litigation, and the adversary's rationale for accepting or rejecting settlement offers.").

lucrative, compromise, and are of a piece with other, similar post-emergence activities that the Plan has long contemplated.[10]

Second, Fireblocks purports to worry "that StakeHound can retain" any remaining "portion of the StakeHound Funding Amount if a judgment is rendered in Fireblocks' favor and StakeHound is unsuccessful," and that Celsius' only recourse for repayment of the StakeHound Funding Amount is a recovery from Fireblocks. Obj. at 16 n.6. Fireblocks is wrong on both counts. The Settlement Agreement makes clear that if the Fireblocks litigation is "discontinued" for any reason – a term broad enough to encompass a termination of the action as the result of a judgment in Fireblocks' favor or other judicial action – any remaining balance of the StakeHound Funding Amount must be returned to Celsius promptly. *See* Settlement Agreement ¶ 7(b)(ii). In addition, the Settlement Agreement identifies the *exclusive* purposes for which the StakeHound Funding Amount can be used, none of which include StakeHound pocketing any portion of the StakeHound Funding Amount if the litigation has been terminated for any reason. *See id.* ¶ 4. And while Celsius believes a large recovery against Fireblocks is likely, that is not the *sole* means by which the StakeHound Funding Amount can be repaid. *See, e.g., id.* ¶¶ 6, 9(c), 9(d).

## CONCLUSION

For the foregoing reasons, Celsius respectfully requests that the Court reject the Objection, approve the Settlement Agreement, and grant such other relief as the Court may deem just and proper.

---

[10] The Settlement Agreement contemplates using a portion of the StakeHound Funding Amount to pay certain identified (and capped) amounts owed by StakeHound to its lawyers, a feature that Fireblocks contends "does not appear to be appropriate." Obj. ¶ 42. The Settlement Agreement represents a *compromise* among the parties. StakeHound long contended that all of the assets in its possession – including the $105 million worth of coins (at recent prices) it will soon transfer to Celsius if the Settlement Agreement is approved – were its own property, which it could use for any purpose, including to pay its own attorneys' fees. There is nothing "inappropriate" about Celsius agreeing as part of its compromise with StakeHound that a capped portion of the $10 million Celsius is *loaning* to StakeHound – a loan on which Celsius stands to earn interest of 20% per year – can be used for that purpose.

12

Dated: December 20, 2023
New York, New York

        AKIN GUMP STRAUSS HAUER & FELD LLP

By: *Mitchell P. Hurley*
    Mitchell P. Hurley
    Dean L. Chapman Jr.
    One Bryant Park
    New York, New York 10036
    Telephone: (212) 872-1000
    Facsimile: (212) 872-1002
    mhurley@akingump.com
    dchapman@akingump.com

    Elizabeth D. Scott (admitted *pro hac vice*)
    Nicholas R. Lombardi (admitted *pro hac vice*)
    2300 N. Field Street, Suite 1800
    Dallas, TX 75201
    Telephone: (214) 969-2800
    Facsimile: (214) 969-4343
    edscott@akingump.com
    nlombardi@akingump.com

    *Special Litigation Counsel for Debtors and*
    *Plaintiff Celsius Network Limited*