**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:  david.turetsky@whitecase.com
           sam.hershey@whitecase.com
           jweedman@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email:  kwofford@whitecase.com

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email:  mandolina@whitecase.com
           gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email:  aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*, | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |
| CELSIUS NETWORK LIMITED, | |
| Plaintiff, | Adversary Proceeding |
| v. | No. 23-01138 (MG) |
| STAKEHOUND S.A., | |
| Defendant. | |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
(I) STATEMENT IN SUPPORT AND (II) JOINDER TO THE DEBTORS'
LIMITED REPLY IN SUPPORT OF ITS MOTION TO APPROVE SETTLEMENT
AGREEMENT WITH STAKEHOUND S.A. AND RELATED TRANSFERS PURSUANT
TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND
<u>SECTION 363(B) OF THE BANKRUPTCY CODE</u>**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively the

"**Debtors**") files this (i) Statement in Support of *Debtors' Motion to Approve Settlement Agreement with StakeHound S.A. and Related Transfers Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 363(B) of the Bankruptcy Code* [Docket No. 105] (the "**9019 Motion**") and (ii) Joinder to the Debtors' *Limited Reply Motion to Approve Settlement Agreement with StakeHound S.A. and Related Transfers Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 363(B) of the Bankruptcy Code* [Docket No. 113] (the "**Reply**"). The Committee respectfully states as follows.[1]

## BACKGROUND

1.      The mediation with Judge Wiles and the resulting proposed Settlement Agreement were precipitated by StakeHound's initiation of a Swiss arbitral proceeding last Spring. In response, the Debtors filed a complaint in the Bankruptcy Court alleging, among other things, that the Swiss arbitration violated the automatic stay. [Docket No. 1]. After extensive briefing, on September 8, 2023 the Bankruptcy Court entered a temporary restraining order to freeze StakeHound's assets subject to this dispute, which was essentially all of that company's assets. [Docket No. 59]. Discovery requests were exchanged between the parties and the Court set a date to hear Debtors' motion for a preliminary injunction. It was clear to the Committee that mediation and a favorable settlement would be far preferable to expensive proceedings both in the Bankruptcy Court and in Switzerland.

2.      The Settlement Agreement presented in these Motions represents an overwhelmingly positive result for the Debtors and their creditors in these cases. This result was hard-fought and conducted at arm's-length, during two in-person mediation days with Judge Michael E. Wiles, and follow-up negotiations between the parties over a series of weeks. The

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the 9019 Motion and the Reply.

2

Committee, the Debtors, and the members of the Debtors' Special Committee all participated in the mediation and support approval of the proposed Settlement Agreement, which memorializes the agreement in principle reached during the mediation.

3. The Settlement Agreement was submitted for approval by the Bankruptcy Court through the 9019 Motion on December 8, 2023. The Settlement Agreement avoids costly and unpredictable litigation and if approved, will bring in over $100 million worth of cryptocurrency to the Debtors' estate for creditors. *See* 9019 Motion at ¶ 1

4. On December 15, 2023 Fireblocks Ltd. ("**Fireblocks**") filed the *Objection of Fireblocks Ltd. to the Motion to Approve Settlement Agreement with StakeHound S.A. and Related Transfers Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 363(B) of the Bankruptcy Code* [Docket No. 111] (the "**Objection**").

## JOINDER

5. Bankruptcy Rule 9019(a) provides that "after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). This rule "empowers the Bankruptcy Court to approve compromises and settlements that are in the best interests of the estate. *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

6. In determining whether to approve a settlement as fair and equitable and in the best interests of a Debtor's estate, courts in the Second Circuit consider the *Iridium* factors: (a) the balance between the litigation's possibility of success and the settlement's future benefits; (b) the likelihood of complex and protracted litigation, with its attendant expense, inconveniences, and delay; (c) the paramount interest of the creditors; (d) whether other parties in interest affirmatively support the proposed settlement; (e) the nature and breadth of releases to be obtained by officers and directors; (f) whether the competency and experience of counsel support the settlement; and

(g) the extent to which the settlement is the product of arm's-length bargaining. *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *see also Drexel Bunham Lambert*, 960 F.2d 285, 292 (2d Cir. 1992); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993), *aff'd,* 17 F.3d 600 (2d Cir. 1994).

7.  The Committee respectfully submits that the Rule 9019 standard for approval has been met here. Over $100 million of crypto will to be returned to the Debtors' estates; ownership of this crypto was hotly contested by StakeHound. *See* 9019 Motion at ¶ 1. StakeHound maintained throughout the currently pending dispute that this crypto was the property of StakeHound rather than the estate — but all of it is being returned to the Debtors. Moreover, this result was reached without the need to engage in arbitration in Switzerland or further litigation in this Court, either of which would have been costly and time-consuming. The Debtors have agreed to make a $10 million loan back to StakeHound, the primary purpose of which is to fund litigation to recover damages arising from Ethereum lost by Fireblocks (the "**Fireblocks Litigation**"). The Debtors' creditors will, if the Fireblocks Litigation is successful, also receive a significant share of the proceeds of that litigation under the terms of the Settlement Agreement.

8.  The paramount interest of creditors in favor of approving the Settlement Agreement is demonstrated by the fact that not a <u>single</u> unconflicted creditor has objected to its approval. The only objector to the 9019 Motion to approve the Settlement Agreement is alleged creditor Fireblocks, the <u>defendant</u> in the Fireblocks Litigation in Israel. With tongue-in-cheek, Fireblocks purports to be supporting the bests interests of creditors in these cases, by objecting to the Settlement Agreement or seeking delay of its approval. Nothing could be further from the truth. While delaying or denying approval of the Settlement Agreement is clearly in the interests of Fireblocks as a defendant, such a delay or denial of approval does not benefit the creditors of these

estates.

9. The Fireblocks Objection is without merit and should be overruled by this Court for several reasons. Most importantly, much of the Fireblocks Objection is premised on the use of $10 million as a secured loan to fund the Fireblocks Litigation — Fireblocks alleges risks to the recovery of such funds, that funding such litigation is a "new" line of business of CNL (which Fireblocks ignores has a confirmed plan with a litigation administrator precisely to pursue such recoveries), and the like. Objection ¶¶ 5-7, 28, 35-39. But the flaw in these arguments is that the $10 million in "estate assets" being so used would not be established as assets of the estate at all, but for the approval of the Settlement. The Debtors' funding of the $10 million is premised on StakeHound delivering virtually all of its crypto, including all of the crypto claimed by Celsius that is still in StakeHound's possession, to Celsius — even though the claim of Celsius to ownership is hotly disputed. The Debtors' agreement to advance back $10 million as a loan, to pursue a litigation to recover assets from which Celsius and its creditors benefit, is an integral part of the deal to return the $100 million of assets that Celsius claims. So the argument that "estate assets" are being squandered ignores that, absent the Settlement Agreement being approved, these might not be "estate assets" at all.

10. Further, the structure of the Settlement Agreement, which the Committee actively participated in negotiating, benefits the estates disproportionately when crypto prices rise, as actually happened after the agreement-in-principle was reached. StakeHound turns over all of the disputed crypto to Celsius, even if crypto prices rise, and StakeHound only receives the fixed $10 million litigation funding amount, which it must repay with interest upon any Fireblocks Litigation recovery. There is no upward adjustment of the funding amount. On the eve of the proposed distribution of liquid cryptocurrency to the estates' creditors under the confirmed plan, the

5

Committee submits that this is a highly beneficial structure for the estates and their creditors.

11. Finally, notice of the Motion here to creditors was plainly sufficient. The Debtors detailed in their Reply how notice complies with the Case Management Procedures[2] entered in these cases. Reply at p. 5-6. As this Court is well aware, the creditors of Celsius have been active and engaged throughout these cases and have made their views known both to the Committee directly, as well as to the Court. Creditors have not been reluctant to offer their constructive criticism in any instance where they believe the Committee has misstepped. This Settlement Agreement is not one of those cases.

12. For the foregoing reasons, the Committee also hereby joins the Reply of the Debtors and supports entry of the proposed Order, and any such further relief as this Court finds just and proper.

*[Remainder of page intentionally left blank]*

---

[2] *See Second Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [ECF No. 2560] approving Case Management Procedures attached as Exhibit 1.

| | |
|---|---|
| Dated: December 20, 2023<br>New York, New York | Respectfully submitted,<br><br>*/s/ Keith H. Wofford*<br>**WHITE & CASE LLP**<br>Keith H. Wofford<br>Southeast Financial Center<br>200 South Biscayne Blvd., Suite 4900<br>Miami, Florida 33131<br>Telephone: (305) 371-2700<br>Facsimile: (305) 358-5744<br>Email: kwofford@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina (admitted *pro hac vice*)<br>Gregory F. Pesce (admitted *pro hac vice*)<br>111 South Wacker Drive, Suite 5100<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Facsimile:  (312) 881-5450<br>Email:  mandolina@whitecase.com<br>         gregory.pesce@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Aaron E. Colodny (admitted *pro hac vice*)<br>555 South Flower Street, Suite 2700<br>Los Angeles, California 90071<br>Telephone: (213) 620-7700<br>Facsimile: (213) 452-2329<br>Email:  aaron.colodny@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>David M. Turetsky<br>Samuel P. Hershey<br>Joshua D. Weedman<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Facsimile: (212) 354-8113<br>Email: david.turetsky@whitecase.com<br>         sam.hershey@whitecase.com<br>         jweedman@whitecase.com<br><br>*Counsel to the Official Committee of Unsecured Creditors* |